1  RICHARD L. KELLNER (State Bar No. 171416)
   rlk@kellnerlaw.com
2  KELLNER LAW GROUP PC
   1180 South Beverly Drive, Suite 610
3  Los Angeles, California 90035
   Telephone: (310) 780-6759
4  Facsimile: (310) 277-0635

5  Special Litigation Attorneys for Plaintiff and
   Chapter 7 Trustee, RICHARD A. MARSHACK

6  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
7  TINHO MANG, #322146
   tmang@marshackhays.com
8  870 Roosevelt
   Irvine, CA 92620
9  Telephone: 949-333-7777
   Facsimile: 949-333-7778
10
   General Counsel for Plaintiff and Chapter 7 Trustee,
11 RICHARD A. MARSHACK

12         **UNITED STATES BANKRUPTCY COURT**

13     **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| 14  In re | Case No.: 8:19-bk-13560-SC |
| 15  EAGAN AVENATTI, LLP, | Chapter 7 |
| 16       Debtor. | Adv. No.: 8:20-ap-01086-SC |
| 17 | **AMENDED COMPLAINT FOR PRELIMINARY INJUNCTION; DECLARATORY JUDGMENT, TORTIOUS INTEFERENCE WITH CONTRACTUAL RELATIONS; INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; VIOLATION OF THE AUTOMATIC STAY; AND FURTHER RELIEF** |
| 18  RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan Avenatti, LLP, | |
| 19       Plaintiff, | |
| 20    v. | |
| 21  THE X-LAW GROUP, PC, a professional corporation; FILIPPO MARCHINO, an individual; | |
| 22  ELBA HERNANDEZ, individually and as personal representative and successor in interest to Andres | |
| 23  Ramirez, deceased; YOUNG BLUE LLC, a limited liability company; and SANDY LE, individually and | |
| 24  on behalf of Tina Ngan Le, decedent, | |
| 25       Defendants. | |

26

27

28

AMENDED COMPLAINT
1

Plaintiff is Richard A. Marshack, chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("EA"). As the Trustee was not appointed until after EA filed bankruptcy on September 13, 2019 ("Petition Date"), the Trustee does not have personal knowledge of the facts alleged herein that occurred prior to the Petition Date and therefore makes those allegations on information and belief. Such allegations are based on the following:  EA's files; the records of EA's former equity receiver, Brian Weiss ("Receiver"); the testimony of EA's former managing partner, Michael J. Avenatti, in various proceedings; information provided by other attorneys who worked at EA; information provided by counsel for the City of Pasadena in the Hernandez case, and documents filed with the Los Angeles County Superior Court, the United States Bankruptcy Court for the Central District of California, and the United States District Court for the Central District of California.

## JURISDICTION AND VENUE

1.   In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Santa Ana Division of the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334, because the claims asserted arise under Title 11 of the United States Code or arise in or relate to the Chapter 7 case of the debtor, EA, currently pending in the Bankruptcy Court as Case No. 8:19-bk-13560-CB ("EA Bankruptcy Case"). The outcome of this adversary proceeding will have a significant effect on the Estate because it asserts claims for the establishment and protection of the Estate's property rights and recovery of the proceeds of those rights. The claims for relief in this Complaint constitute a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and (O). Regardless of whether this is a core proceeding, consent is given to the entry of final orders and judgment by the Bankruptcy Court. The defendants are notified that Fed. R. Bankr. P. 7012(b) requires each defendant to state whether the defendant does or does not consent to entry of final orders or judgment by the Bankruptcy Court.

2.   Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409 because the EA Bankruptcy Case is pending in this district and division. This Court also has personal jurisdiction over defendants.

**PARTIES**

3.   Plaintiff, Richard A. Marshack, is the chapter 7 trustee of the Estate.

4.   Defendant The X-Law Group, PC ("X-Law"), is a California professional corporation with a primary place of business in Los Angeles County, California.

5.   Defendant Filippo Marchino ("Marchino") is an individual with a primary place of business in Los Angeles County, California, and the president of X-Law.

6.   Defendant Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased ("Hernandez"), is an individual who resides in Los Angeles County, California. Hernandez is a former client of EA.

7.   Defendant Young Blue, LLC ("Young Blue") is a Delaware limited liability company that owns or owned real estate in Los Angeles County. Young Blue is a former client of EA.

8.   Defendant Sandy Le, individually and on behalf of Tina Ngan Le, decedent ("Le"), is an individual who resides in Los Angeles County, California. Le is a former client of EA.

**GENERAL ALLEGATIONS**

9.   EA was a California based litigation law firm formed in the mid-2000s. From approximately 2012 through 2019, the managing partner of EA was Michael J. Avenatti ("Avenatti").

10.   EA primarily handled plaintiff contingency matters, whereby the firm only received legal fees after a case was resolved in favor of EA's client. EA's general business practice was to enter into a fee agreement with each client providing that EA would be paid a certain percentage of the proceeds of any judgment or settlement obtained on behalf of the client and granting EA a lien on those proceeds to secure its right to fees.

11.   In 2016, an arbitration claim was filed against EA and Avenatti by Jason Frank Law ("JFL"), the professional corporation of Jason Frank, an attorney who previously worked at EA. EA fared badly in the early stages of the arbitration due to Avenatti's refusal to comply with discovery requests. Two days before a major discovery deadline in the arbitration, Avenatti orchestrated the filing of an involuntary bankruptcy case against EA in the Middle District of Florida on March 1, 2017, thereby staying the arbitration.

AMENDED COMPLAINT

3

12.     Avenatti consented to EA being placed into Chapter 11 bankruptcy on March 10, 2017, and the case was subsequently transferred to this Bankruptcy Court on May 16, 2017 (*In re Eagan Avenatti, LLP*, Case No. 8:17-bk-11961-CB) ("2017 Bankruptcy").

13.     The 2017 Bankruptcy was dismissed on March 15, 2018, as part of a structured settlement approved by the Bankruptcy Court. That structured settlement required EA, following the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including JFL. Shortly after the 2017 Bankruptcy was dismissed, EA defaulted on its obligations under the settlement agreement. As a result of EA failing to make any of the required payments to JFL, the Bankruptcy Court entered a judgment in favor of JFL and against EA in the amount of $10 million on May 22, 2018 ("JFL Judgment").

14.     On June 11, 2018, JFL filed a motion in the 2017 Bankruptcy, seeking assignment of EA's fee rights to JFL to satisfy the JFL Judgment. On July 11, 2018, the Bankruptcy Court entered an order denying the request for an assignment but restraining EA from transferring its fee rights in a number of cases and requiring EA to disclose the receipt of fees by EA or Avenatti.

15.     On August 31, 2018, the JFL Judgment was registered before the United States District Court for the Central District of California and was assigned to Chief Judge Virginia A. Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES] ("Judgment Enforcement Case").

16.     As part of the Judgment Enforcement Case, JFL moved for the appointment of an independent receiver for the assets of EA. Avenatti stipulated to the appointment of Brian Weiss as the equity receiver for EA ("Receiver"). Pursuant to that stipulation, on February 13, 2019, the District Court entered a Receivership and Restraining Order against EA and Avenatti.

17.     On September 13, 2019, the Receiver filed a voluntary petition under Chapter 7 of Title 11 initiating this case.

18.     X-Law and Marchino have had an intimate and multifaceted relationship with EA and Avenatti since at least 2013. Among other things, Avenatti asserted during the 2017 Bankruptcy that EA had entered into an agreement with X-Law under which EA purportedly agreed to assign a portion of its fee rights to X-Law, pay the salaries of X-Law employees, and pay the entire rent for office space shared by EA and X-Law. After the dismissal of the 2017

AMENDED COMPLAINT

4

1 Bankruptcy and entry of the JFL Judgment, Avenatti and Marchino signed an agreement dated "as

2 of August 1, 2018" under which EA purported to transfer all of its personal property, including the

3 computer servers on which its client files were stored, to X-Law.

4 **EA's Representation of Hernandez**

5       19.     EA represented Hernandez in her capacity as guardian ad litem for her minor son,

6 Andres Ramirez ("Ramirez"), who was severely injured when he was struck by a car while riding

7 his bicycle through an intersection in the city of Pasadena, California ("Pasadena").

8       20.     Trustee is in possession of an executed retainer agreement (in Spanish) executed by

9 Hernandez with EA. Paragraph 8 of the retainer agreement contains an attorney lien provision.

10       21.     EA performed at least the following legal services on behalf of Hernandez:  filing a

11 tort claim with Pasadena on October 7, 2016; when the claim was rejected as untimely, filing an

12 application with Pasadena for leave to file a late claim; when that application was denied, filing a

13 petition in the Los Angeles Superior Court ("Superior Court") for leave to file a complaint against

14 Pasadena, which was granted; filing a complaint against Pasadena in the Superior Court;

15 amending the complaint to add as a defendant Jacquelyn Licea, the driver of the car that struck

16 Ramirez; and litigating the Superior Court case from its inception from December 2016 through

17 June 2018.

18       22.     The subject action is in the Los Angeles Superior Court under Case No. BC664114

19 ("Hernandez Case").

20       23.     On June 1, 2018, less than two weeks after the JFL Judgment was entered against

21 EA, X-Law obtained a substitution of attorney from Avenatti pursuant to which it became

22 Hernandez' counsel in place of EA in the Hernandez Case. Marchino signed the substitution on

23 behalf of X-Law. The substitution was filed with the Superior Court on July 26, 2018, *after* the

24 Bankruptcy Court had entered the order restraining EA from transferring its fee rights in a number

25 of cases, specifically including Hernandez' case.

26       24.     On February 25, 2019, 13-year-old Ramirez passed away.

27       25.     On April 26, 2019, Hernandez filed an action in the Probate Court of the Los

28 Angeles Superior Court under Case Number 19STPB03950, seeking to be appointed the personal

representative of her son's estate ("Probate Action"). Hernandez contends that she is the sole heir and has the sole right to any proceeds generated in the Hernandez Case on behalf of her deceased son.

26.     On May 30, 2019, Hernandez was appointed the personal representative of Ramirez's estate – based upon the representation that he had died intestate.

27.     On June 12, 2019, the Receiver filed a Notice of Lien in the Hernandez Case – based upon EA's quantum meruit entitlement to fees.

28.     From the latter part of 2019 through August 2020, first the Receiver and then the Trustee (by and through his counsel) has attempted to get information regarding the status of the Hernandez Case. In response, X-Law (through Mr. Marchino) denied the existence of any valid lien and even stated that it wanted the Trustee to produce a copy of the retainer – even though X-Law had continued representation of Hernandez (and, until his demise, Hernandez's son).

29.     On August 6, 2020, Mr. Marchino made the following representation to Trustee's counsel:

> I write today to inform you and the Trustee that our case, *The Estate of Andres Ramirez v. City of Pasadena*, has now concluded and the Estate of Andres Ramirez received no net recovery. There being no recovery, the Estate of Eagan Avenatti LLP is not entitled to assert a lien in the matter. . . .

30.     Upon information and belief, Mr. Marchino's representation and statement on August 6, 2020 was false and deceitful. Upon further information and belief, the Hernandez Case was actually settled for approximately $10.35 million – and the attorney fees that X-Law is claiming for the Hernandez Case (that originated and was litigated by EA) is likely to be in excess of $4 million.

31.     At the same time, a petition was filed by Hernandez in the Probate Action for a Court determination that Hernandez is the sole heir and entitled to all distributions of the Decedent's Estate (as her deceased son's only legal heir). The Petition was filed in May 2020, and there is no mention in the Petition about the settlement in the Hernandez Case or EA's claim to fees from settlement proceeds in the Hernandez Case.

AMENDED COMPLAINT

32.    The Trustee has no knowledge whether X-Law has already appropriated all of the fees generated in the Hernandez Case.

**EA's Representation of Young Blue**

33.    Young Blue was another of EA's clients. Young Blue owned residential property at 2587 Cascadia Drive, Glendale, CA. Young Blue retained EA to represent it in asserting claims against Karen Pena ("Pena"), the owner of the neighboring property, and Elizabeth Herron / Elizabeth Herron Architect (collectively, "Herron"), who performed work on Pena's property that damaged Young Blue's property.

34.    EA performed at least the following legal services on behalf of Young Blue:  filing a complaint against Pena and Herron in the Superior Court; obtaining entry of default against Pena; and obtaining a default judgment against Pena in November 2018.

35.    On September 30, 2019, X-Law filed a substitution of attorney indicating that Young Blue consented to X-Law becoming counsel. Marchino signed the substitution on behalf of X-Law. The section of the form for former counsel to consent to the substitution is blank. (Since the Trustee was then in sole legal control of EA, Avenatti could no longer sign the substitution on EA's behalf.)

36.    Young Blue's case remains pending in the Superior Court under case no. BC693618 ("Young Blue Case").

**EA's Representation of Sandy Le**

37.    EA represented Le in connection with claims arising from the death of Le's daughter, Tina Ngan Le ("Tina Le"), in a multi-vehicle automobile accident.

38.    Trustee is in possession of an executed retainer agreement executed by Le with EA. The retainer agreement contains an attorney lien provision.

39.    EA performed at least the following legal services on behalf of Le:  filing a complaint in the Superior Court against Mario Martin Saldivar, the driver of the car that struck the car in which Tina Le was a passenger, and against various Doe defendants who contributed to the

accident; obtaining an order to examine, photograph, and download information from the vehicles involved in the accident; and litigating the case from its inception in January 2018 until October 2018.

40.    On October 1, 2018, X-Law obtained a substitution of attorney signed by Avenatti under which X-Law became Le's counsel in place of EA. Marchino signed the substitution on behalf of X-Law. The substitution of attorney occurred after the JFL Judgment had been entered against EA, the Bankruptcy Court had entered the order restraining EA from transferring fee rights, and JFL had filed the Judgment Enforcement Case and was seeking discovery from EA and Avenatti.

41.    Le's case remains pending in the Superior Court under case no. BC691517 ("Le Case," and, with the Hernandez Case and the Young Blue Case, the "Cases").

**X-Law Opposes the Estate's Claim to Fees**

42.    X-Law has sent multiple communications to the Receiver and the Trustee contesting the Estate's right to fees and/or to receive a portion of the proceeds of a settlement, judgment, or other recovery in the Cases. Marchino signed and/or sent each of these communications. Marchino also made statements to opposing counsel in at least one of the Cases contesting the Estate's rights.

**FIRST CLAIM FOR RELIEF**

**(Against X-Law and Marchino, For Preliminary Injunction**

**Under 11 U.S.C. § 105(a))**

43.    The Trustee incorporates by reference and realleges paragraphs 1-42 of this Complaint.

44.    Under California law, as the former attorneys for Hernandez, Young Blue, and Le ("Clients"), EA has a right to payment for the reasonable value of the services it provided to the Clients, regardless of whether or not EA has a written fee agreement with the Clients and/or a lien on the proceeds of any recovery.

45.    Under California law, when the contingency fee in an action "is insufficient to meet

the quantum meruit claims of both discharged and existing counsel, the proper . . . rule is to use an appropriate pro rata formula which distributes the contingent fee among all discharged and existing attorneys."[1]

46.    When EA filed bankruptcy, its right to compensation in the Cases became property of the Estate. Any action to exercise control over that right is stayed pursuant to 11 U.S.C. § 362.

47.    Under California Rule of Professional Conduct 1.15(c)(2), when a lawyer or law firm is holding funds in its trust account and "a client or other person disputes the lawyer or law firm's right to receive a portion of trust funds, the disputed portion shall not be withdrawn until the dispute is finally resolved."

48.    Accordingly, if a recovery is obtained in any of the Cases, the correct procedure would be for X-Law to receive the complete recovery into its trust account, disburse to the client the net recovery remaining after deduction of costs and the contingency fee, and then hold the contingency fee amount in its trust account pending a judicial determination of the appropriate allocation of the contingency fee between the Estate and X-Law.

49.    However, based on (1) X-Law and Marchino's expressed belief that the Estate is not entitled to fees and/or to receive a portion of the proceeds of a settlement, judgment, or other recovery in the Cases, and (2) X-Law's deceit in making material misrepresentations that the action involving the Estate of Andres Ramirez did not result in any positive proceeds (despite the fact that it is believed a settlement in excess of $10 million was entered and pending a request for distribution to Hernandez), the Trustee believes that there is a strong risk of X-Law and Marchino retaining for their own benefit the entire contingency fee portion of any recovery in the Cases (likely without even notifying the Trustee that such a recovery has occurred).

50.    Under 11 U.S.C. § 105(a), a bankruptcy court may enter "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

51.    In the present case, issuance of a preliminary injunction is necessary to prevent contingency fee funds that are proceeds of the Estate's fee rights from being misappropriated or

---

[1] *Spires v. Am. Bus Lines* (1984) 158 Cal.App.3d 211, 216.

AMENDED COMPLAINT

1  dissipated and to ensure that those funds are preserved intact until the court can rule on the

2  Trustee's substantive claims for relief under the Declaratory Judgment Act.

3      52.    Upon information and belief, X-Law Group presently holds $10,350,000 in its

4  client trust account for the benefit of the Estate of Andres Ramirez. The Trustee presumes that X-

5  Law Group and/or Marchino have not taken any attorneys' fees from the settlement in the

6  Hernandez Case because it would be unethical and unlawful for them to take attorneys' fees from

7  the settlement until the Probate Court determines whether Hernandez has a right to those proceeds.

8  If X-Law Group and/or Marchino unlawfully appropriate a portion of the $10,350,000 settlement

9  for its attorneys' fees (including that portion subject to the Trustee's claims), the Trustee intends

10 to amend the Complaint to allege conversion.

11     53.    The Trustee has a strong likelihood of success on the merits of his claims under the

12 Declaratory Judgment Act. Because California law provides that a discharged law firm is entitled

13 to payment for the reasonable value of its services, and because EA provided substantial services

14 in the Cases, the Estate is entitled to <u>some</u> portion of the contingency fee in each Case.

15     54.    There is a substantial risk of X-Law and/or Marchino misappropriating the Estate's

16 share of the contingency fees in the Cases absent the entry of the requested preliminary injunction.

17     55.    The balance of hardships favors the Trustee. If the preliminary injunction is not

18 issued, the Trustee may be unable to recover the pro rata share of the contingency fees in the

19 Cases that are proceeds of property of the Estate. In contrast, if X-Law was already planning to

20 comply with its ethical obligation to hold the contingency fee portion of any recovery in its trust

21 account pending resolution of the competing claims, then the preliminary injunction will not cause

22 any hardship whatsoever to X-Law or Marchino.

23     56.    Because the proposed preliminary injunction relates only to the contingency fee

24 portion of any recovery, the injunction should affect only the Estate, X-Law, and Marchino. The

25 injunction will have no effect on the Clients' rights to receive the net amount remaining after

26 deduction of costs and the contingency fee from the total recovery.

27     57.    Accordingly, the Court should issue a preliminary injunction requiring X-Law and

28 Marchino to deposit the entire amount of the contingency fee portion of the recovery with the

AMENDED COMPLAINT

10

1    Clerk of the Court until the Court can hear and determine the Trustee's claim for a declaratory

2    judgment allocating those fees between the Estate and X-Law.

### SECOND CLAIM FOR RELIEF

**(Against Hernandez and X-Law, For Declaratory Judgment**

**Under 28 U.S.C. § 2201)**

6    58.    The Trustee incorporates by reference and realleges paragraphs 1-57 of this

7    Complaint.

8    59.    EA provided representation to Hernandez as a representative of the Andres

9    Ramirez in the Hernandez Case and performed substantial services on her behalf.

10    60.    The Trustee has a valid and enforceable quantum meruit claim for services

11    rendered by EA in the Hernandez Case.

12    61.    Upon information and belief, the Hernandez action has settled, and X-Law Group

13    is in possession of the approximately $10.35 million in settlement proceeds. It is presumed that X-

14    Law Group has placed the entire proceeds into its client trust account, since it would be unethical

15    and unlawful to disburse such monies until leave is provided by the Probate Court. Of course, if t

16    X-Law Group and/or Marchino have taken payment of its full attorneys' fees, it would constitute

17    conversion and a violation of the Rules of Professional Conduct. Under such circumstances, the

18    Trustee shall amend this Complaint to allege conversion.

19    62.    X-Law Group and Marchino have disavowed the attorney lien filed by the Trustee

20    in the Hernandez Case, and has stated that they will not provide any payment to the Trustee for

21    EA's quantum meruit claim. In fact, X-Law Group and Marchino have actually materially lied to

22    the Trustee by falsely stating that there has been no recovery in the Hernandez case.

23    63.    Accordingly, an actual controversy has arisen and exists between the Trustee and

24    the Hernandez/the Attorney Defendants concerning EA's right to a portion of the monies

25    presumably held in trust by the X-Law Group from the settlement in the Hernandez case.

26    64.    A judicial determination is necessary and appropriate at this time under the

27    circumstances so that the parties can ascertain the extent of the Trustee/EA's right to a portion of

28    the proceeds from the settlement of the Hernandez case for attorneys' fees.

AMENDED COMPLAINT

11

65.    The Trustee seeks a declaratory judgment under 28 U.S.C. § 2201 establishing the amount of fees to which the Estate is entitled and allocating the contingency fee in the Hernandez Case between the Estate and X-Law.

### THIRD CLAIM FOR RELIEF

**(Against Young Blue and X-Law, For Declaratory Judgment**

**Under 28 U.S.C. § 2201)**

66.    The Trustee incorporates by reference and realleges paragraphs 1-65 of this Complaint.

67.    EA represented Young Blue in the Young Blue Case and performed substantial services on its behalf.

68.    If and when a recovery is received in the Young Blue Case, the Estate and X-Law will be entitled to receive pro rata shares of the contingency fee portion of that recovery, to be calculated based on California law and evidence provided by each party at that time regarding the reasonable value of its services in the context of the overall case, the basis for the recovery, and the firms' relative contributions to that recovery.

69.    The Trustee will then request that the Court enter a declaratory judgment under 28 U.S.C. § 2201 establishing the amount of fees to which the Estate is entitled and allocating the contingency fee in the Young Blue Case between the Estate and X-Law.

### FOURTH CLAIM FOR RELIEF

**(Against Le and X-Law, For Declaratory Judgment Under 28 U.S.C. § 2201)**

70.    The Trustee incorporates by reference and realleges paragraphs 1-69 of this Complaint.

71.    EA represented Le in the Le Case and performed substantial services on her behalf.

72.    If and when a recovery is received in the Le Case, the Estate and X-Law will be entitled to receive pro rata shares of the contingency fee portion of that recovery, to be calculated based on California law and evidence provided by each party at that time regarding the reasonable value of its services in the context of the overall case, the basis for the recovery, and the firms' relative contributions to that recovery.

AMENDED COMPLAINT

12

73.     The Trustee will then request that the Court enter a declaratory judgment under 28 U.S.C. § 2201 establishing the amount of fees to which the Estate is entitled and allocating the contingency fee in the Le Case between the Estate and X-Law.

### FIFTH CLAIM FOR RELIEF

### (Against X-Law and Marchino, for Tortious Interference with Contractual Relations)

74.     The Trustee incorporates by reference and realleges paragraphs 1-73 of this Complaint.

75.     EA represented Hernandez in her capacity as guardian ad litem for her minor son, Andres Ramirez, who was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ("Pasadena").

76.     Trustee is in possession of an executed retainer agreement (in Spanish) executed by Hernandez with EA. Paragraph 8 of the retainer agreement provides EA with a contractual right to an attorney lien for its services rendered in connection with the Hernandez Case.

77.     On July 16, 2019, Hernandez filed an Amended Complaint in the Hernandez Case that named the Estate of Andres Ramirez as a substitute plaintiff because of his death and added herself (Elba Hernandez) as the sole heir to the Estate of Andres Ramirez. Specifically, Elba Hernandez alleged in the amended complaint:

> "Plaintiff ELBA HERNANDEZ is the mother of decedent Andres Ramirez. She is also the personal representative of the ESTATE OF ANDRES RAMIREZ and is a successor in interest of Ramirez. She is entitled to bring this wrongful death/survivorship action pursuant to Code of Civil Procedure Sections 377.60 and 377.30 on behalf of Plaintiff The Estate of ANDRES RAMIREZ, on behalf of Andres Ramirez, deceased, and on behalf of herself and the other Andres Ramirez heirs. Ramirez died without issue, and ELBA HERNANDEZ would be entitled to Ramirez's estate through the rules of intestate succession."

78.     Defendants X-Law and Marchino had actual knowledge of EA's contractual right to an attorney lien under the prior retainer agreement between EA and Hernandez, as well as quantum meruit claims. Indeed, Marchino had previously left EA and was the receptor of cases

referred by Avenatti upon his arrest (for crimes unrelated to the Hernandez representation).

79.    In or around the Spring/Summer of 2020, defendants X-Law and Marchino negotiated a settlement of $10.35 million in the Hernandez case. In order to circumvent the EA lien (asserted by the Trustee) and EA's quantum meruit rights/claims, defendants X-Law and Marchino devised a scheme by which it could circumvent not only scrutiny of its attorneys' fees by the Trustee in Probate Court – but also circumvent the Trustee's/EA's contractual right to a lien for attorneys' fees and quantum meruit claim to attorneys' fees.

80.    Upon information and belief, even though Hernandez's claims in the Complaint were wholly derivative of the Estate of Andres Ramirez (as the asserted "sole heir" of that Estate), X-Law and Marchino fraudulently and improperly structured the settlement such that the Estate of Andres Ramirez **received nothing**, and Elba Hernandez received 100% of the $10.35 million settlement.

81.    Upon further information and belief, Hernandez, X-Law and Marchino have not advised the Probate Court that the claims for the Estate of Andres Ramirez have been compromised to "zero."

82.    Upon further information and belief, Hernandez has not revealed to the Probate Court: (a) the terms of the $10.35 million settlement; (b) that Hernandez has taken the entire $10.35 million settlement and provided "nothing" for the Estate of Andres Ramirez; (c) anything that would provide the Probate Court with the opportunity to review the claim for attorneys' fees on behalf of the Estate of Andres Ramirez pursuant to Probate Code § 2647; and (d) the Trustee's claims for attorneys' fees from the underlying action and Estate of Andres Ramirez.

83.    By this scheme, defendant X-Law and Marchino intended Hernandez to breach her contractual obligations relating to the EA – including claims for quantum meruit – by its unjustified and/or wrongful conduct.

84.    To further curtail any scrutiny of this deceptive scheme, Defendant X-Law and Marchino have dismissed the Hernandez Case, with prejudice – yet, have not advised nor received permission from the Probate Court for doing so.

85.    Hernandez has in fact breached her contractual obligation relating to the EA, the

claim for attorneys' fees, as well as the implied covenant of good faith and fair dealing.

86.     The breach caused by defendant X-Law and Marchino constitutes unjustified and/or wrongful conduct.

87.     This is also revealed by the deceitful letter by Marchino on August 6, 2020 that "*The Estate of Andres Ramirez v. City of Pasadena,* has now concluded and the Estate of Andres Ramirez received no net recovery. There being no recovery, the Estate of Eagan Avenatti is not entitled to assert a lien in the matter. . ."

88.     Thereafter, defendant X-Law and Marchino dismissed the Hernandez case, with prejudice.

89.     The foregoing is part of a pattern of reprehensible conduct by X-Law and Marchino to defraud multiple courts, the Trustee and the EA Estate.

90.     As a result of X-Law and Marchino's wrongful and/or unjustified conduct, the Trustee/EA has been damaged.

### SIXTH CLAIM FOR RELIEF

**(Against X-Law and Marchino, for Tortious Interference With Prospective Economic Advantage)**

91.     The Trustee incorporates by reference and realleges paragraphs 1-90 of this Complaint.

92.     EA represented Hernandez in her capacity as guardian ad litem for her minor son, Andres Ramirez, who was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ("Pasadena").

93.     Trustee is in possession of an executed retainer agreement (in Spanish) executed by Hernandez with EA. Paragraph 8 of the retainer agreement provides EA with a contractual right to an attorney lien for its services rendered in connection with the Hernandez Case.

94.     On July 16, 2019, Hernandez filed an Amended Complaint in the Hernandez Case that named the Estate of Andres Ramirez as a substitute plaintiff because of his death and added herself (Elba Hernandez) as the sole heir to the Estate of Andres Ramirez. Specifically, Elba Hernandez alleged in the amended complaint:

AMENDED COMPLAINT

15

"Plaintiff ELBA HERNANDEZ is the mother of decedent Andres Ramirez. She is also the personal representative of the ESTATE OF ANDRES RAMIREZ and is a successor in interest of Ramirez. She is entitled to bring this wrongful death/survivorship action pursuant to Code of Civil Procedure Sections 377.60 and 377.30 on behalf of Plaintiff The Estate of ANDRES RAMIREZ, on behalf of Andres Ramirez, deceased, and on behalf of herself and the other Andres Ramirez heirs. Ramirez died without issue, and ELBA HERNANDEZ would be entitled to Ramirez's estate through the rules of intestate succession."

95.    Defendants X-Law and Marchino had actual knowledge of EA's contractual right to an attorney lien/fees under the prior retainer agreement between EA and Hernandez. Indeed, Marchino had previously left EA and was the receptor of cases referred by Avenatti upon his arrest (for crimes unrelated to the Hernandez representation).

96.    In or around the Spring/Summer of 2020, defendants X-Law and Marchino negotiated a settlement of $10.35 million in the Hernandez case. In order to circumvent the EA lien (asserted by the Trustee), defendants X-Law and Marchino devised a scheme by which it could circumvent the scrutiny of its attorneys' fees by the Trustee in Probate Court – and also circumvent the Trustee's/EA's contractual right and quantum meruit claim to attorneys' fees.

97.    Upon information and belief, even though Hernandez's claims in the Complaint were wholly derivative of the Estate of Andres Ramirez (as the asserted "sole heir" of that Estate), X-Law and Marchino fraudulently and improperly structured the settlement such that the Estate of Andres Ramirez **received nothing**, and Elba Hernandez received 100% of the $10.35 million settlement.

98.    Upon further information and belief, Hernandez, X-Law and Marchino have not advised the Probate Court that the claims for the Estate of Andres Ramirez have been compromised to "zero."

99.    Upon further information and belief, Hernandez has not advised the Probate Court: (a) of the terms of the $10.35 million settlement; (b) that Hernandez has taken the entire $10.35 million settlement and provided "nothing" for the Estate of Andres Ramirez; (c) that Hernandez

1  has deprived the Probate Court with the opportunity to review the claim for attorneys' fees on

2  behalf of the Estate of Andres Ramirez pursuant to Probate Code § 2647; and (d) the Trustee's

3  claims for attorneys' fees on behalf of the EA estate.

4      100.    By this scheme, defendants X-Law and Marchino intended Hernandez to breach her

5  contractual obligations relating to the EA attorney lien and claim to attorneys' fees by its

6  unjustified and/or wrongful conduct.

7      101.    To further curtail any scrutiny of this deceptive scheme. Defendant X-Law and

8  Marchino have dismissed the Hernandez Case, with prejudice – yet, have not advised nor received

9  permission from the Probate Court for doing so.

10     102.    To further this scheme, the parties did not effectuate a "referral fee" to EA – which

11 is almost always provided in a situation where: (a) it is a high damages case; (b) where the prior

12 law firm had done substantial work on the case; and (c) where there is a "friendly" relationship

13 between the law firms. Upon information and belief, X-Law and Marchino were aware that such

14 referral fees are enforceable upon client approval – which was not sought by X-Law and

15 Marchino.

16     103.    Defendants X-Law and Marchino have committed the aforestated intentional and

17 unjustified acts designed to interfere or disrupt the Trustee/EA's rights related to the EA attorney

18 lien, its claim to attorneys' fees and its probable future economic benefit.

19     104.    Defendants X-Law and Marchino have actually and intentionally interfered and/or

20 disrupted the Trustee/EA's contractual rights and prospective economic advantage related to the

21 EA attorney lien.

22     105.    As a result of the foregoing, the Trustee/EA has been damaged.

23

24              **SEVENTH CLAIM FOR RELIEF**

25            **(For Further Relief Under 28 U.S.C. § 2202)**

26     106.    The Trustee incorporates by reference and realleges paragraphs 1-105 of this

27 Complaint.

28     107.    If and when a declaratory judgment is entered in favor of the Trustee on the

AMENDED COMPLAINT

1    Second, Third, or Fourth Claims for Relief, the Trustee requests that the Court also grant further

2    relief under 28 U.S.C. § 2202 by directing the Clerk of the Court to disburse the deposited fees in

3    accordance with the allocation established by the declaratory judgment.

**EIGHTH CLAIM FOR RELIEF**

**(Against X-Law and Marchino For Violation of Automatic Stay and Turnover 11 U.S.C.**

**§§ 362, 105, and 542)**

7    108.    The Trustee incorporates by reference and realleges paragraphs 1-107 of this

8    Complaint.

9    109.    EA has a right to quantum meruit fees in connection with the Hernandez/Ramirez

10   case.

11   110.    EA has a written fee agreement executed by Hernandez which grants EA a lien on

12   the underlying recovery to secure payment of its fees.

13   111.    EA's right to fees and the lien on the recovery constitutes property of the estate that

14   is protected by 11 U.S.C. § 362(a)(3).

15   112.    In structuring the settlement of the Hernandez/Ramirez case to allocate no recovery

16   to the probate claims and to allocate all of the $10.35 million settlement to Ms. Hernandez

17   individually, Defendants exercised control over property of the estate.

18   113.    Plaintiff alleges that the case was settled and that X-Law/Marchino received all

19   attorneys' fees likely in excess of $4 million. Because some portion of the attorneys' fees

20   constitute estate property, X-Law/Marchino have exercised control over and are in possession of

21   property of the estate.

22   114.    X-Law/Marchino have failed and refused to turn over any portion of the attorneys'

23   fees to the estate even though such fees are property that the trustee can use for the benefit of the

24   estate.

25   115.    As a result of X-Law/Marchino's violations of the stay, the bankruptcy estate has

26   suffered damages including attorneys' fees and costs in seeking to remedy the stay violations.

27   116.    Plaintiff is entitled to recover all such damages according to proof.

28

AMENDED COMPLAINT

18

## NINTH CLAIM FOR RELIEF

### (Against X-Law and Marchino For Uniform Voidable Transactions Act  Cal. Civil Code § 3493, et seq.)

117.    The Trustee incorporates by reference and realleges paragraphs 1-116 of this Complaint.

118.    On May 22, 2018, the Bankruptcy Court entered a judgment in favor of JFL and against EA in the amount of $10 million ("JFL Judgment").

119.    Upon information and belief, Marchino was an attorney/partner at EA at the time the judgment was entered.

120.    On July 11, 2018, the Bankruptcy Court entered an order that, among other things, restrained EA from transferring its fee rights in a number of cases.

121.    Though at least August 8, 2018, Marchino worked on the Hernandez case as an EA partner.

122.    In violation of the July 11, 2018 Order and with full knowledge of the $10 million JFL Judgment, Michael Avenatti thereafter entered an agreement with Marchino and EA where the Hernandez case was transferred to Marchino's firm (X-Law) and EA waived its right to fees in the Hernandez case.

123.    The transfer or the Hernandez case and the waiver of the right to fees occurred after the JFL Judgment was entered.

124.    The aforesaid transfer and waiver was made with actual intent to hinder, delay and defraud JFL – a creditor of the debtor.

125.    The aforesaid transfer and waiver was made without Marchino and/or X Law Group receiving any or equivalent value in exchange for the transfer.

126.    At the time of the aforesaid transfer and waiver, EA, X-Law and Marchino believed or reasonably should have believed that the JFL Judgment was beyond the ability of EA to pay the obligation when due.

127.    At the time of the aforesaid transfer and waiver, Marchino had full knowledge of the value of the Hernandez case, the JFL judgment against EA, EA's insolvency and EA's

quantum meruit claims as a result of his work on the case as a partner at EA.

128.    In addition, at around the same time of the aforesaid transfer and waiver, EA entered a separate agreement that transferred many of its other assets of EA to X-Law and/or Marchino for no actual consideration.  Upon information and belief, Marchino is the sole principal of X-Law.

129.    The aforesaid transfer and waiver of EA's rights to a portion of the fees in the Hernandez case has been concealed until it was recently revealed in a Motion to Expunge that was filed by X-Law and Marchino in this case.

130.    At the time of the aforesaid transfer and waiver of EA's rights to portion of the fees in the Hernandez case, EA was insolvent.

131.    Pursuant to Cal. Civ. Code § 3439.07, the waiver of EA's claim to fees should be voided.

132.    Pursuant to Cal. Civ. Code § 3439.07, Plaintiff is entitled to injunctive and other equitable relief provided by statute.

**WHEREFORE,** the Trustee, on behalf of the Estate, prays for judgment against defendants as follows:

1.    On the First Claim for Relief, for a preliminary injunction requiring X-Law and Marchino to deposit the entire amount of the contingency fee portion of the recovery with the Clerk of the Court until the Court can hear and determine the Trustee's claim for a declaratory judgment allocating those fees between the Estate and X-Law;

2.    On the Second Claim for Relief, for a declaratory judgment against Hernandez and X-Law establishing the amount of fees to which the Estate is entitled and allocating the contingency fee in the Hernandez Case between the Estate and X-Law;

3.    On the Third Claim for Relief, for a declaratory judgment against Young Blue and X-Law establishing the amount of fees to which the Estate is entitled and allocating the contingency fee in the Young Blue Case between the Estate and X-Law;

AMENDED COMPLAINT

4.      On the Fourth Claim for Relief, for a declaratory judgment against Le and X-Law establishing the amount of fees to which the Estate is entitled and allocating the contingency fee in the Le Case between the Estate and X-Law;

5.      On the Fifth Claim for Relief, damages in an amount determined by the Court;

6.      On the Sixth Claim for Relief, damages in an amount determined by the Court;

7.      On the Seventh Claim for Relief, for an order directing the Clerk of the Court to disburse the deposited fees in accordance with any declaratory judgment entered on the Second, Third, or Fourth Claims for Relief;

8.      On the Eighth Claim for Relief, for damages for X-Law and Marchino's violations of the automatic stay in amounts to be determined by the Court;

9.      On the Ninth Claim for Relief, the voiding of EA's waiver of the firms' claim to attorneys' fees in the Hernandez case and all other relief and remedies provided under Cal. Civ. Code § 3439.07 and

10.    For such other relief as the Court deems just and proper.

Dated: October 26, 2020                    MARSHACK HAYS LLP
                                           D. Edward Hays
                                           Tinho Mang

                                           In Association with,

                                           KELLNER LAW GROUP PC

                                           By ____/s/ *Richard L. Kellner*_____
                                                  Richard L. Kellner
                                           Special Litigation Attorneys for
                                           Richard A. Marshack,
                                           Chapter 7 Trustee for Eagan Avenatti, LLP

AMENDED COMPLAINT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1180 South Beverly Drive, Suite 610, Los Angeles, California 90035

A true and correct copy of the foregoing document entitled (*specify*): AMENDED COMPLAINT FOR PRELIMINARY
INJUNCTION; DECLARATORY JUDGMENT, TORTIOUS INTEFERENCE WITH CONTRACTUAL RELATIONS;
INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; VIOLATION OF THE
AUTOMATIC STAY; AND FURTHER RELIEF
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
10/26/2020           , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

INTERESTED PARTY: David B Golubchik dbg@lnbyb.com, stephanie@lnbyb.com
ATTORNEY FOR CHAPTER 7 TRUSTEE: D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com;
kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

☑ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)   10/26/2020           , I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.
MAIL REDIRECTED TO TRUSTEE
Eagan Avenatti, LLP

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)               , I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.
JUDGE'S COPIES NOT REQUIRED THROUGH THE END OF 2020
Judge Clarkson will excuse compliance with LBR 5005-2(d) (requiring Judge's copies) through the end of 2020, at which
time the situation will be re-evaluated.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

10/26/2020    Irma DeLeon
_____        _____
Date             Printed Name                 Signature

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## PROOF OF SERVICE ATTACHMENT


• **DEFENDANT AND ATTORNEY FOR REMAINING DEFENDANTS: Filippo Marchino**
fm@xlawx.com,
tc@xlawx.com
• **CHAPTER 7 TRUSTEE: Richard A Marshack (TR)** pkraus@marshackhays.com,
rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
• **ATTORNEY FOR DEFENDANT FILIPPO MARCHINO: Kurt Ramlo** kr@lnbyb.com,
kr@ecf.inforuptcy.com
• **ATTORNEY FOR CHAPTER 7 TRUSTEE: John P. Reitman** jreitman@landaufirm.com,
srichmond@landaufirm .com;vrichmond@landaufirm .com;avedrova@landaufirm .com
• **UST: United States Trustee (SA)** ustpregion16.sa.ecf@usdoj.gov