Kurt Ramlo (State Bar No. 166856)
David B. Golubchik (State Bar No. 185520)
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Tel: (310) 229-1234; Fax: (310) 229-1244
KR@LNBYB.com; DBG@LNBYB.com

Attorneys for Defendants The X-Law
Group, P.C. and Filippo Marchino

Filippo Marchino (State Bar No.  256011)
Thomas E. Gray (State Bar No.  299898)
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380; Fax: (213) 599-3370
FM@XLAWX.COM; TG@XLAWX.COM

Attorneys for Defendants Young Blue LLC,
Elba Hernandez, The Estate of Andres Ramirez,
and Sandy Le

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:19-bk-13560-SC |
| EAGAN AVENATTI, LLP, | Chapter 7 |
| Debtor. | Adv. No.: 8:20-ap-01086-SC |
| | **Notice of Motion and Motion for Sanctions; Memorandum of Points and Authorities** |
| RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan Avenatti, LLP, | [Declarations of Filippo Marchino, Thomas Gray, and Kurt Ramlo filed concurrently] |
| Plaintiff, | Judge: Scott C. Clarkson |
| v. | Date:  January 20, 2021 |
| | Time: 1:30 pm. |
| THE  X-LAW  GROUP,  P.C.,  a  professional corporation; et al, | Place: Courtroom 5C |
| | 411 W. Fourth St. |
| Defendants. | Santa Ana, CA 92701 |

# TABLE OF CONTENTS

Page(s)

MEMORANDUM OF POINTS AND AUTHORITIES ……………………..................4

I.    INTRODUCTION ……………………………………………………………..4

II.   FACTUAL BACKGROUND…………………………………………………...5

III.  PROCEDURAL HISTORY …………………………………………………...6

        A. X-LAW'S MOTION TO DISMISS………………………………………....6

        B. TRUSTEE'S MOTION FOR LEAVE TO AMEND……………………….7

        C. DEFENDANTS' MOTION TO STRIKE LIENS……………………….…8

        D. DEFENDANTS' ATTEMPT TO MEET AND CONFER………………….9

IV.   LEGAL STANDARD ………………………………………………………….9

V.    COMPLIANCE WITH SAFE HARBOR PERIOD ………………………...11

VI.   ARGUMENT …………………………………………..……………...11

        a.  The Amended Complaint is Frivolous Because It Ignores the Extensive
            and Clear California Law Governing the Manner in Which Fee
            Disputes Are Resolved…………………………………………………..11

        b.  Any Claim for Declaratory Relief Against the Clients is Frivolous
            Because the Underlying Cases Are Still Ongoing…………………………..14

        c.  Any Claim for Declaratory Relief Against X-Law Is Frivolous Because
            X-Law Cannot Be Sued for Quantum Meruit Unless the Trustee has
            Established in a Prior Lawsuit Against the Clients That It Has
            Valid Liens ……………………………………………………………….....15

        d.  The Claims Related to the Ramirez Litigation Are Especially Frivolous…….15

                i.  The Tortious Interference with Contract Claim is Frivolous Because
                    the Underlying Contract is Void, and the Claim is Premised on
                    Privileged Conduct …………………………………………………...17

                ii. The Tortious Interference with Prospective Economic Advantage is
                    Frivolous as Well ……………………………………………….......19

                iii. The Voidable Transfer Claim Is Frivolous…………………………21

1

## TABLE OF CONTENTS (cont'd)

2

**Page(s)**

3

**VII.    BECAUSE THE TRUSTEE'S COUNSEL HAVE OPTED TO IGNORE
CONTROLLING LAW AND THE COURT FILINGS IN THE
UNDERLYING CASES, THEREBY WASTING DEFENDANTS'
RESOURCES AND THE COURT'S TIME, MONETARY SANCTIONS
ARE WARRANTED** ...................................................................**23**

4

5

6

**VIII.   THE TRUSTEE'S COUNSEL SHOULD BE SANCTIONED IN THE
AMOUNT OF $61,831.10, PAYABLE TO DEFENDANTS**............................**24**

7

**IX.     CONCLUSION** ...............................................................**26**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

<span style="text-align:center">CASES</span>

A-Mark Coin Co. v. Gen. Mills, Inc.
  148 Cal. App. 3d 312, 195 Cal. Rptr. 859 (Ct. App. 1983)------------------------------------------17

Baxter v. Superior Court
  19 Cal. 3d 461, 466, 563 P.2d 871 (1977) ------------------------------------------------------------17

Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Vill. Square Venture Partners
  52 Cal. App. 4th 867, 60 Cal. Rptr. 2d 830 (1997) ------------------------------------------------20

Borowski v. DePuy, a Div. of Boehringer Mannheim Co.
  850 F.2d 297 (7th Cir. 1988)-----------------------------------------------------------------------------11

Carroll v. Interstate Brands Corp.
  99 Cal. App. 4th 1168, 1172, 121 Cal. Rptr. 2d 532 (2002)--------------------------------------- 1

Chambers v. Kay
  29 Cal. 4th 142, 56 P.3d 645 (2002) -------------------------------------------------------------------20

Crossroads Inv'rs, L.P. v. Fed. Nat'l Mortg. Assn.
  13 Cal. App. 5th 757, 222 Cal. Rptr. 3d 1 (2017)---------------------------------------------------19

Cuevas-Martinez v. Sun Salt Sand, Inc.
  35 Cal. App. 5th 1109, 248 Cal. Rptr. 3d 200 (2019) ---------------------------------------------17

Della Penna v. Toyota Motor Sales, U.S.A., Inc.
  11 Cal. 4th 376, 902 P.2d 740 (1995)------------------------------------------------------------------20

Estate of Falco v. Decker
  (1987) 188 Cal.App.3d 1004------------------------------------------------------------------------- 11, 22

Fracasse v. Brent
  6 Cal. 3d 784, 494 P.2d 9, 13 (1972) ------------------------------------------------------------12, 13, 21

Gemini Aluminum Corp. v. California Custom Shapes, Inc.
  95 Cal. App. 4th 1249, 116 Cal. Rptr. 2d 358 (2002)----------------------------------------------20

GeneThera, Inc. v. Troy & Gould Prof'l Corp.
  171 Cal. App. 4th 901, 90 Cal. Rptr. 3d 218 (2009)-----------------------------------------------18

Grant & Eisenhofer, P.A. v. Brown
  No. CV175968PSGPJWX, 2018 WL 3817859, at *9 (C.D. Cal. Mar. 27, 2018) ----------------13

Heller Ehrman LLP v. Davis Wright Tremaine LLP
  4 Cal. 5th 467, 411 P.3d 548 (2018) ---------------------------------------------------------------- 21, 22

1

## TABLE OF AUTHORITIES (CONT'D)

Page(s)

Holgate v. Baldwin
 425 F.3d 671 (9th Cir. 2005)--------------------------------------------------------------------10

In re Bailey
 197 F.3d 997, 1002 (9th Cir. 1999) ----------------------------------------------------- 13, 16

In re DeVille
 361 F.3d 539 (9th Cir. 2004)---------------------------------------------------------------- 9

In re Grantham Bros.
 922 F.2d 1438 (9th Cir. 1991) ------------------------------------------------------------10

In re Marriage of Kilbourne
 (1991) 232 Cal.App.3d 1518------------------------------------------------------------14

J.W. v. Superior Court
 17 Cal. App. 4th 958, 964, 22 Cal. Rptr. 2d 527 (1993) ------------------------------------17

Jones v. Martin
 41 Cal. 2d 23, 27, 256 P.2d 905 (1953) --------------------------------------------------13

Lujan v. Defs. of Wildlife
 504 U.S. 555 (1992)----------------------------------------------------------------------23

Mahony v. Haines
 66 Cal. App. 456, 459–60, 226 P. 620 (Cal. Ct. App. 1924) -------------------------------- 11, 14

Mason v. Levy & Van Bourg
 77 Cal. App. 3d 60, 143 Cal. Rptr. 389 (1978)-------------------------------------------18

Matter of Nelson
 650 F. App'x 528 (9th Cir. 2016)----------------------------------------------------------10

Mojtahedi v. Vargas
 228 Cal. App. 4th 974, 979, 176 Cal. Rptr. 3d 313, 316 (2014) ----------------------------12, 13, 15

Olsen v. Harbison
 191 Cal. App. 4th 325, 119 Cal. Rptr. 3d 460 (2010) ------------------------------- 12, 13, 15, 19

Rus, Miliband & Smith v. Conkle & Olesten
 113 Cal. App. 4th 656, 6 Cal. Rptr. 3d 612 (2003) -------------------------------------- 2

S. California Gas Co. v. Flannery
 232 Cal. App. 4th 477, 488, 181 Cal. Rptr. 3d 436, 444 (2014) ---------------------------12

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

Schick v. Lerner
  193 Cal. App. 3d 1321, 238 Cal. Rptr. 902 (1987) --------------------------------------------18

Spokeo, Inc. v. Robins
  136 S. Ct. 1540 (2016) --------------------------------------------------------------------------23

Strawn v. Morris, Polich & Purdy, LLP
  30 Cal. App. 5th 1087, 242 Cal. Rptr. 3d 216 (2019) --------------------------------------18

Sweeley v. Gordon
  47 Cal. App. 2d 385, 118 P.2d 16 (1941) ----------------------------------------------------18

Szabo Food Serv., Inc. v. Canteen Corp.
  823 F.2d 1073 (7th Cir. 1987) ---------------------------------------------------------------11

Truesdell v. S. California Permanente Med. Grp.
  293 F.3d 1146 (9th Cir. 2002) ---------------------------------------------------------------10

Westside Ctr. Assocs. v. Safeway Stores 23, Inc.
  42 Cal. App. 4th 507, 49 Cal. Rptr. 2d 793 (1996) ----------------------------------------20

STATUTES

Civ.Code § 3051----------------------------------------------------------------------------------13
Civ.Code § 3110----------------------------------------------------------------------------------13
Cal. Civ. Proc. Code § 366.2(a) --------------------------------------------------------------16
Cal. Fam. Code § 6602 ----------------------------------------------------------------1, 4, 16

OTHER AUTHORITIES

CACI 4200 --------------------------------------------------------------------------------------21
California Practice Guide: Professional Responsibility ¶ 5:799 (The Rutter Group 2019) -------13
Mark L. Tuft, Ellen R. Peck, and Kevin E. Mohr, California Practice Guide: Professional
  Responsibility ¶ 3:122.1 (2019) ------------------------------------------------------------17
Mark L. Tuft, Ellen R. Peck, and Kevin E. Mohr, California Practice Guide: Professional
  Responsibility ¶ 5:1060.1 (2019)------------------------------------------------------------22
Matter of Respondent H, No. 89-O-11979, 1992 WL 348560, at *9 (Cal. Bar Ct. Nov. 13, 1992)
  ---------------------------------------------------------------------------------------------13

RULES

Cal. Rules Prof. C. Rule 1.5.1 ---------------------------------------------------------------20
Fed. R. Bankr. P. 9011(c) -------------------------------------------------------------- 9, 11, 24
Fed. R. Bankr. P. 9011, 1997 Amendment Advisory Committee Notes----------------------------10
Fed. R. Bankr. P. 9011 --------------------------------------------------------------- passim

**PLEASE TAKE NOTICE** that on January 20, 2020, at 1:30 pm, in Courtroom 5 D of the United States Bankruptcy Court for the Central District of California, Santa Ana Division, located at 411 West Fourth Street, Santa Ana, California 92701, Defendants The X-Law Group, P.C., Filippo Marchino, Young Blue LLC, Elba Hernandez, The Estate of Andres Ramirez, and Sandy Le will and hereby do move the Court for an order sanctioning counsel for Richard A. Marshack (hereinafter "Trustee"), Chapter 7 Trustee for Eagan Avenatti, LLP (the "Debtor" or "EA") Richard L. Kellner, Kellner Law Group PC, D. Edward Hays, Tinho Mang, and Marshack Hays LLP pursuant to Bankruptcy Rule 9011 in the amount of $61,831.10, on the following grounds:

(1) the Amended Complaint is frivolous because it ignores the extensive and clear California law governing the manner in which fee disputes are resolved; (2), any claim for declaratory relief against the Clients is frivolous because the underlying cases are still ongoing; (3) any claim for declaratory relief against X-Law is frivolous because X-Law cannot be sued for quantum meruit unless the Trustee has established in a prior lawsuit against the clients that EA has valid liens.  The Court has already found that there are not any valid liens, when the Trustee failed to oppose the motion striking them; (4) the Trustee's claims pertaining to the <u>Ramirez</u> litigation are especially frivolous. EA's purported client in the litigation was a minor but EA never obtained, as required by California Family Code § 6602, a court's approval of any contract with the minor, which now precludes EA from asserting a lien.  In addition, after EA withdrew from the case, the minor passed away, and the one-year period for bringing claims against a deceased individual expired prior to EA filing the initial complaint in this matter. Finally, the Trustee seeks fees from any recovery Ramirez's mother, Hernandez, may obtain from the wrongful death case she filed upon the death of her son. While the mother of Ramirez was his guardian during the time of purported representation by EA, the Trustee cannot argue that EA has a claim in the current wrongful death litigation because, under clear California law, EA never represented the mother. The guardian of a minor is not a client of an attorney and EA had no privity of contract whatsoever with the wrongful death heirs, including Ramirez's mother, as EA withdrew from representing Ramirez while he was still alive; (5) the claim for tortious interference with contractual relations relating to the Ramirez settlement is frivolous because (i) there was no valid underlying contract,

1

(ii) EA waived its entitlement to fees, (iii) X-Law owed no duty to the Trustee or the estate of EA, and (iv) X- Law's purported conduct is privileged because it was advising its client and because the claims against it are barred by the litigation privilege; (6) the claim for tortious interference with prospective economic advantage is frivolous for the same reasons he has not stated a claim for interference with contractual relations. In addition, the Trustee cannot sue X-Law to obtain inexistent referral fees that X-Law and EA never agreed to and that a client did not consent to. Finally, the Trustee has failed to allege that X-Law's conduct was independently wrongful; (7) the claim for fraudulent transfer is frivolous. X-Law was not a recipient of any transfer when EA waived its fees in Ramirez and the transfer of an engagement from one firm to another cannot constitute a fraudulent transfer. In addition, any transfer could not have caused any harm in light of the fact that EA had waived its entitlement to fees in the Ramirez case, had a void contingent fee agreement that was also voided by its former client, and is not, and never was, entitled to fees for any of the settlement money that Hernandez received, which is the entirety of the Ramirez settlement.

This motion is based on this notice of motion, the accompanying Memorandum of Points and Authorities, previously filed Requests for Judicial Notice, Declaration of Filippo Marchino, Declaration of Thomas Gray, Declaration of Kurt Ramlo, all pleadings and documents on file with the Court, and such further written and/or oral evidence and argument as the Court may allow.

Defendants The X-Law Group, P.C., Filippo Marchino, Young Blue LLC, Elba Hernandez, The Estate of Andres Ramirez, and Sandy Le, and each them, do not consent to entry of final orders or judgment by the bankruptcy court.

///

///

///

///

///

///

1

**PLEASE TAKE FURTHER NOTICE** that LBR 9013-1(f) requires a written response

2   to be filed and served at least 14 days before the hearing.

3

4   DATED: December 8, 2020          **LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**

5                                    By:_____
                                     DAVID B. GOLUBCHIK
6                                    KURT RAMLO
                                     Attorneys for Defendants The X-Law Group, P.C.
7                                    and Filippo Marchino

8                                    **THE X-LAW GROUP, P.C.**

9                                    By:_____
10                                   FILIPPO MARCHINO
                                     Attorneys for Defendants Young Blue LLC, Elba Hernandez,
11                                   The Estate of Andres Ramirez, and Sandy Le

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Richard A. Marshack, chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Eagan Avenatti, LLP ("EA") has filed a frivolous Amended Complaint against Defendants The X-Law Group, P.C. and Filippo Marchino (collectively "X-Law"), Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased, Young Blue LLC, and Sandy Le (collectively, the "Clients").  For that reason, Defendants ask that pursuant to Bankruptcy Rule 9011 the Court sanction the Trustee's counsel Richard L. Kellner, Kellner Law Group PC, D. Edward Hays, Tinho Mang, and Marshack Hays LLP in the amount of $61,831.10, payable to Defendants, for attorneys' fees incurred in the course of responding to the Amended Complaint and preparing this motion.  The Amended Complaint is frivolous for at least the following reasons, which have been repeatedly explained to the Trustee's counsel:

*First*, the Amended Complaint is frivolous because it ignores the extensive and clear California law governing the manner in which fee disputes are resolved.

*Second*, any claim for declaratory relief against the Clients is frivolous because the underlying cases are still ongoing.

*Third,* any claim for declaratory relief against X-Law is frivolous because X-Law cannot be sued for quantum meruit unless the Trustee has established in a prior lawsuit against the clients that it has valid liens.  The Court has already found that there are not any valid liens, when the Trustee failed to oppose the motion striking them.

*Fourth*, the Trustee's claims pertaining to the <u>Ramirez</u> litigation are especially frivolous. EA's purported client in the litigation was a minor but EA never obtained, as required by California Family Code § 6602, a court's approval of any contract with the minor, which now precludes EA from asserting a lien.  In addition, after EA withdrew from the case, the minor passed away, and the one-year period for bringing claims against a deceased individual expired prior to EA filing the initial complaint in this matter. Finally, the Trustee seeks fees from any recovery Ramirez's mother, Hernandez, may obtain from the wrongful death case she filed upon the death

of her son. While the mother of Ramirez was his guardian during the time of purported representation by EA, the Trustee cannot argue that EA has a claim in the current wrongful death litigation because EA never represented the mother. The guardian of a minor is not a client of an attorney and EA had no privity of contract whatsoever with the wrongful death heirs, including Ramirez's mother, as EA withdrew from representing Ramirez while he was still alive.

*Fifth*, the claim for tortious interference with contractual relations relating to the Ramirez settlement is frivolous because (i) there was no valid underlying contract, (ii) EA waived its entitlement to fees, (iii) X-Law owed no duty to the Trustee or the estate of EA, and (iv) X- Law's purported conduct is privileged because it was advising its client and because the claims against it are barred by the litigation privilege.

*Sixth*, the claim for tortious interference with prospective economic advantage is frivolous for the same reasons he has not stated a claim for interference with contractual relations. In addition, the Trustee cannot sue X-Law to obtain inexistent referral fees that X-Law and EA never agreed to and that a client did not consent to. Finally, the Trustee has failed to allege that X-Law's conduct was independently wrongful.

*Seventh*, the claim for fraudulent transfer is frivolous. X-Law was not a recipient of any transfer when EA waived its alleged right to fees from Ramirez in the <u>Ramirez</u> case and the transfer of an engagement from one firm to another cannot constitute a fraudulent transfer. In addition, any transfer could not have caused any harm in light of the fact that EA had a void contingent fee agreement that was also voided by its former client, and is not, and never was, entitled to fees for any of the settlement money that Hernandez received in compromise of her claims (and not in compromise of the probate estate's claims).

## II.    FACTUAL BACKGROUND

At its core, the Trustee's Amended Complaint involves three cases, <u>Ramirez v. City of Pasadena</u> Los Angeles County Superior Court Number BC664114 ("<u>Ramirez</u>"), <u>Young Blue LLC v. Herron</u>, Los Angeles County Superior Court Number BC693618 ("<u>Young Blue</u>"), and <u>Le v. Saldivar</u>, Los Angeles County Superior Court Number BC691517 ("<u>Le</u>"), each of which is, as the

Trustee's counsel could easily verify if they wished, still pending.  [Dkt. No. 101 Ex. 1, Ex. 2, Ex. 3.] All of the Trustee's claims center around the Estate of EA's purported entitlement to fees from recoveries in these cases via settlement or judgment.  The bulk of the Trustee's claims relate to Ramirez, which has settled with one defendant, but not the other.

The Trustee alleges that EA represented Elba Hernandez ("Hernandez") "in her capacity as guardian ad litem for her minor son, Andres Ramirez ("Ramirez"), who was severely injured when he was struck by a car." [Dkt. No. 92 at ¶ 19.]  The Trustee claims that EA performed services on behalf of Hernandez, but that is, on its face, plainly false. [Id. ¶ 21.] EA represented only Andres Ramirez. [Dkt. No. 32 Ex. 2.]  Hernandez could not have been, and in fact was not, a party in the personal injury lawsuit while her son was alive, and her only role during that time was that of the guardian of her son while EA purported to represent him. [Dkt. No. 32 Exs. 1-3.] EA withdrew from representing Ramirez in the summer of 2018, and he passed away on February 25, 2019, i.e., after EA had withdrawn as counsel for him. [Dkt. No. 92 ¶ 23, 24.] The Trustee does not allege that EA ever sought approval from the state court of the retainer it wanted to use in order to represent the child in his personal injury action. The failure to make that allegation is not surprising because court records reveal that this mandatory procedure was not followed. [Dkt. No. 32 Exs. 1, 3, 4.] In addition, EA has waived any entitlement to fees from Ramirez relating to the Ramirez case. [Dkt. No. 92 ¶ 122.]

## III.  PRODCEDURAL HISTORY

The Trustee first initiated this adversary proceeding six months ago.  [May 15, 2020 Complaint.]  Initially, the Trustee sought a preliminary injunction and declaratory judgments determining the amount of fees that the estate is entitled in the three cases based on purported liens.  [Id. at ¶¶ 34-59.]

A. X-LAW'S MOTION TO DISMISS: In response to the adversary proceeding, X-Law filed an a motion to dismiss explaining that the claims against X-Law were not ripe, that the Trustee needed to establish that the estate had valid liens by obtaining a judgment against the Clients prior to being able to sue X-Law, and that the Trustee could never obtain any fees from

the settlement of the Ramirez case because the one-year time period to bring claims against the decedent's estate had already run and because the Estate could not be entitled to fees on the mother's wrongful death claims, as she had never been EA's client and her son passed away after EA withdrew from the lawsuit. [Dkt No. 31.] Rather than address the deficiencies in the original complaint, the Trustee instead sought leave to file an amended complaint to add claims related to how the Ramirez case had settled in a manner that resulted in the probate estate not receiving any money. [Dkt. No. 59.] The Trustee filed an opposition to X-Law's motion to dismiss: in it, the Trustee failed to respond to the vast majority of X-Law's arguments and instead spent the majority of his brief discussing the proposed amended complaint. [Dkt. No. 68.] X-Law subsequently filed its reply in support of its motion to dismiss. In it, X-Law pointed out that the Trustee had failed to respond to the vast majority of its arguments, thereby conceding them, and went on to explain why none of the new claims would survive a motion to dismiss. [Dkt. No. 72.]

B. TRUSTEE'S MOTION FOR LEAVE TO AMEND: The Trustee then once against filed *another* proposed amended complaint, still failing to address the countless deficiencies that X-Law had previously pointed out but adding a new voidable transfer claim. [Dkt. No. 76.] X-Law filed an opposition to the Trustee's motion for leave to amend the complaint, reiterating the deficiencies it had previously pointed out and explaining why the voidable transfer claim would not survive a motion to dismiss. [Dkt. No. 77.] In typical fashion, the Trustee's reply in support of his motion for leave to amend the complaint failed to address any of X-Law's arguments regarding its deficiencies, but nevertheless insisted that that Court should grant leave to amend. [Dkt. No. 82.]

C. DEFENDANTS' MOTION TO STRIKE LIENS: Contemporaneously with the above, X-Law and the Clients then filed a motion to strike the purported liens in the underlying cases, explaining that because EA had not complied with the rules governing contingency fee agreements, if any agreements had ever existed in the first place, they were voidable and that the Clients were exercising their right to void them. [Dkt No. 60.] Although the Trustee had vigorously insisted upon his right to amend the complaint, he never bothered to oppose Defendants' motion to strike the purported liens and the Court granted that motion. [Dkt. No. 94.]

D. DEFENDANTS' ATTEMPT TO MEET AND CONFER: When counsel for Plaintiff and Defendants met and conferred regarding preparing their joint report, Mr. Kellner agreed to provide cases substantiating the basis for the claims in the Amended Complaint and Defendants agreed to provide cases demonstrating that the Trustee could not bring such claims, to which Mr. Kellner would provide a response "and act in good faith".  [See Ex. 1 at 14:3-16:23; 22:13-23:25; 26:10-27:25.]  Mr. Kellner failed to keep his promise.  Instead, he merely sent an email candidly admitting that he had no legal authority:

> I await your legal authority that a law firm cannot sue a former client while the underlying litigation is pending. The only legal authorities that I have found only require that the former must endeavor to preserve the client's attorney-client privileges.  In fact, there is a SOL of two years for the commencement of many of those kinds of action.  Parenthetically, I am fully aware of many firms commencing actions for the non-payment of fees in many such circumstances.

[Marchino Decl. Ex. 2 at 15.]  Apparently, the absence of any legal authority supporting the claims in the Amended Complaint did not give Mr. Kellner second thoughts about their validity. Defendants responded with a lengthy email explaining the law in California that clearly holds that former counsel cannot sue their clients until litigation is terminated, and current counsel cannot be sued until former counsel has successfully sued the client and established that there was a valid and enforceable lien in that litigation.  [Id. at 11-14.]

Mr. Kellner provided a response that amounted to arguing that the Ramirez case had already settled and, citing irrelevant authorities, failed to address Defendants' arguments.  [Id. at 9-10.]  Defendants provided a detailed response to Mr. Kellner's email setting forth the reasons why the claims are invalid.  [Id. at 3-8.]  Crucially, Mr. Marchino raised two straightforward points that Mr. Kellner should have been able to address without any difficulty.  First, he asked "Based on your email, you do not appear to dispute that the claims against me, my firm and my clients arising out of the Le or Young Blue litigation are premature, not ripe, and subject to dismissal because the underlying cases are not resolved.  Please let me know when you intend to dismiss them."  [Id. at 3.] Second, he asked "Because the Court has already struck the Ramirez lien, the authority we previously cited indicates that a declaratory relief claim cannot be brought against X-Law. You have promised to furnish us with case law that states otherwise. Do you intend to

1    produce this case law or not?" [Id. at 4.]

2         Mr. Kellner only provided the puzzling response "Hasn't there been a settlement/payment

3    in Young Blue?  Please advise if there has been any resolution in Le as well."  [Id. at 3.]

4    Considering the fact that Defendants have repeatedly pointed out in briefing before this court that

5    these cases had not settled and that there were still court filings being made in Young Blue and

6    Le, Mr. Kellner should have known the answer to this question.  Nevertheless, Mr. Marchino

7    explained that these cases had not settled.  [Id. at 2.]  Mr. Kellner provided no further response,

8    except to state that "in anticipation of Mr. Marchino's email regarding his motion to dismiss, our

9    full response will be in the opposition." [Marchino Decl. Ex. 3.]

10         As this timeline of events indicates, the Trustee and his counsel have refused every

11   opportunity to respond to Defendants' arguments about the deficiencies in the original complaint

12   and the Amended Complaint, much less correct them.  His counsel now faces the ultimate

13   consequence of their obstinate refusal to withdraw the frivolous Amended Complaint: facing

14   sanctions under Bankruptcy Rule 9011.

15

16   **IV.   LEGAL STANDARD**

17

18        By presenting to the court (whether by signing, filing, submitting, or later
         advocating) a . . . pleading . . ., an attorney . . . is certifying that to the best of the
19       person's knowledge, information, and belief, formed after an inquiry reasonable
         under the circumstances,
20       **(1)** it is not being presented for any improper purpose, such as to harass or to cause
         unnecessary delay or needless increase in the cost of litigation;
21       **(2)** the claims, defenses, and other legal contentions therein are warranted by existing
         law . . .;
22       **(3)** the allegations and other factual contentions have evidentiary support or, if
         specifically so identified, are likely to have evidentiary support after a reasonable
23       opportunity for further investigation or discovery

24   Fed. R. Bankr. P. 9011(b).  When attorneys fail to abide by these rules, they and their firms are

25   subject to sanctions.  See Fed. R. Bankr. P. 9011(c).

26        Because of their similar language, Courts look to Rule 11 precedent whe interpreting Rule

27   9011.  See In re DeVille, 361 F.3d 539, 552 (9th Cir. 2004).  In fact, the Advisory Committee

28

1   Notes to Bankruptcy Rule 9011 specifically direct the reader to the Advisory Committee Note for

2   the 1993 amendments to Rule 11.  See Fed. R. Bankr. P. 9011, 1997 Amendment Advisory

3   Committee Notes.

4       A complaint is sanctionable if it is either legally frivolous or factually misleading.  See

5   Truesdell v. S. California Permanente Med. Grp., 293 F.3d 1146, 1153 (9th Cir. 2002).  "When,

6   as here, a "complaint is the primary focus of Rule 11 proceedings, a district court must conduct a

7   two-prong inquiry to determine (1) whether the complaint is legally or factually baseless from an

8   objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry

9   before signing and filing it." Holgate v. Baldwin, 425 F.3d 671, 676 (9th Cir. 2005).  "The

10  reasonable inquiry test is meant to assist courts in discovering whether an attorney, after

11  conducting an objectively reasonable inquiry into the facts and law, would have found the

12  complaint to be well-founded."  Id. at 677.

13      Even "one baseless allegation provides a sufficient basis for Rule 9011 sanctions."  Matter

14  of Nelson, 650 F. App'x 528, 530 (9th Cir. 2016); see also Holgate, 425 F.3d at 677; In re

15  Grantham Bros., 922 F.2d 1438, 1442 (9th Cir. 1991) ("The fact that the sanctioned claim, the

16  collateral attack, was only one of the counts contained in Needler's complaint does not insulate

17  him from Rule 11 sanctions.").

18      As will be explained in greater detail below, the Amended Complaint is frivolous because

19  its claims are objectively at odds with well-established California law.  In addition, portions of the

20  Amended Complaint are purposefully factually misleading because they invent facts (for example,

21  EA representing Ms. Hernandez), ignore the status of the underlying cases, which are still ongoing,

22  and ignore that the court approval procedure for contingent fee agreements involving minors was

23  never followed.  Significantly, Defendants have pointed out these deficiencies in multiple court

24  filings in this ligation and in email correspondence with the Trustee's counsel, often stating the

25  same arguments that are now made in this motion and the concurrently pending anti-SLAPP

26  motion nearly verbatim.  Rather than fulfill their obligation under Rule 9011 to determine that

27  they had an adequate factual and legal basis for their claims, or even review the extensive contrary

28  authority Defendants have provided, the Trustee's counsel first promise and then never deliver

10

1    inexistent supportive authority, and second struthiously refuse to dismiss these frivolous claims

2    or even address the contrary controlling authority.  This '"ostrich-like tactic of pretending that

3    potentially dispositive authority against [his] contention does not exist,' [is] precisely the type of

4    behavior that would justify imposing Rule 11 sanctions." Borowski v. DePuy, a Div. of

5    Boehringer Mannheim Co., 850 F.2d 297, 304–05 (7th Cir. 1988) (quoting Szabo Food Serv., Inc.

6    v. Canteen Corp., 823 F.2d 1073, 1081 (7th Cir. 1987)).

7

8    **V.    COMPLIANCE WITH SAFE HARBOR PERIOD**

9         On December 8, 2020, more than 21 days before this motion was filed, Defendants served

10   a copy of this motion on counsel for the Trustee as provided in Rule 7004.  See Fed. R. Bankr. P.

11   9011(c)(1)(A).  At the time of the filing of this motion, the Trustee and his counsel have failed to

12   withdraw or correct the Amended Complaint.

13

14   **VI.   ARGUMENT**

15        **a.   The Amended Complaint is Frivolous Because It Ignores the Extensive and**

16             **Clear California Law Governing the Manner in Which Fee Disputes Are**

17             **Resolved.**

18        The Trustee's Amended Complaint demonstrates a purposeful ignoring of California law

19   governing attorney fee disputes.  First, and perhaps most fundamentally, "[i]n order for an attorney

20   to recover upon a contract for services in the conduct of an action it is necessary for him to show

21   an actual termination of the litigation in which he is employed." Mahony v. Haines, 66 Cal. App.

22   456, 459–60, 226 P. 620 (Cal. Ct. App. 1924).  In other words, although "[a] litigant's former

23   attorney [may be] entitled to recover the reasonable value of services rendered to the time of

24   discharge, . . . the right to such recovery does not ripen until the litigant prevails."[1] Southern Cal.

25   _____

26   [1] There is a substantial difference between a lawyer being passively discharged by the client, and
     a lawyer actively withdrawing from a case. While multiple references herein speak of attorneys

27   being discharged by their clients, EA withdrew from all the cases referenced herein, and did so
     without cause, thereby voiding its rights to any fees. See Estate of Falco v. Decker (1987) 188

28   (footnote continued)

Gas Co. v. Flannery, 232 Cal. App. 4th 477, 488, 181 Cal. Rptr. 3d 436, 444 (2014).  This is because "the attorney's action for reasonable compensation accrues only when the contingency stated in the original agreement has occurred - i.e., the client has had a recovery by settlement or judgment."  Fracasse v. Brent, 6 Cal. 3d 784, 792, 494 P.2d 9 (1972).  The ultimate consequence of this is that an attorney is forbidden from bringing a declaratory relief action based on a contingency agreement until such time that there is a settlement or judgment.  Id. at 792–93 ("In light of these rules, it seems clear that there is no present controversy such as would justify the court in exercising its discretion to entertain an action for declaratory relief").

Second, former counsel is not permitted to short circuit this mandatory fee dispute procedure by simply suing the current counsel.  See Mojtahedi v. Vargas, 228 Cal. App. 4th 974, 979, 176 Cal. Rptr. 3d 313, 316 (2014) ("Without first establishing a right to any portion of his clients' settlement proceeds, plaintiff in this case lacks any basis to assert that defendant fraudulently withheld any money from him."); Olsen v. Harbison, 191 Cal. App. 4th 325, 332, 119 Cal. Rptr. 3d 460, 465 (2010) ("Plaintiff had a written retainer agreement with [the client]… and then was fired by the client. Under these circumstances, plaintiff might be entitled to quantum meruit—from the client. Instead, he sought to recover the value of services rendered from defendant. There is no basis for such a claim, and the trial court properly sustained defendant's demurrer to this cause of action.")

This rule is absolute; even if the clients did not dispute the entitlement to or the amount of fees owed (which is not the case here, as the clients dispute any entitlement by EA), the former counsel would ***still need to sue the clients first***.  See Mojtahedi, 228 Cal. App. 4th at 978.  Former counsel is required to "allege facts establishing that he adjudicated the existence, value, [and] enforceability of his lien" if it wishes to assert a cause of action against current counsel.  Id. at 978 (affirming trial court's sustaining of demurrer where this information was missing from the complaint).

---

Cal.App.3d 1004, 1014 (attorney who withdraws without justifiable cause forfeits attorney's right for quantum meruit recovery for services rendered before withdrawal.)

1    There is an additional issue.  "Without an enforceable lien, plaintiff cannot prove that he

2    has a right to a portion of the settlement money."  <u>Mojtahedi</u>, 228 Cal. App. 4th at 977.  "Unlike

3    other liens, 'an attorney's lien is not created by the mere fact that an attorney has performed

4    services in a case.'  An attorney's lien is created only by an attorney fee contract with an express

5    provision regarding the lien or by implication in a retainer agreement that provides the attorney

6    will be paid for services rendered from the judgment itself."  <u>Id.</u> at 977–78 (quoting <u>Carroll v.</u>

7    <u>Interstate Brands Corp.</u>, 99 Cal. App. 4th 1168, 1172, 121 Cal. Rptr. 2d 532 (2002)).  This is not

8    in any way automatic.  "[A]n attorney under a contingent fee agreement has no special or charging

9    lien, unless it has been specifically contracted for."  <u>Jones v. Martin</u>, 41 Cal. 2d 23, 27, 256 P.2d

10   905 (1953), <u>overruled on other grounds by</u> <u>Fracasse v. Brent</u>, 6 Cal. 3d 784, 494 P.2d 9 (1972).

11   "Unlike a service lien or a mechanic's lien, for example (Civ.Code, §§ 3051, 3110), an attorney's

12   lien is not created by the mere fact that an attorney has performed services in a case."  <u>Carroll</u>, 99

13   Cal. App. 4th at 1172.  "Because an attorney's lien is not automatic and requires a contract for its

14   creation, **a direct contractual relationship between the attorney and the client is essential**."

15   <u>Id.</u> at 535 (emphasis added).  The Court has already struck the purported liens.  [Dkt. No. 94.]

16   Where a law firm cannot establish that it has a valid lien, it "is no different from any other

17   plaintiff who claims the defendant [former client] owes it money; it has the right to pursue its

18   claims, but not to deprive the defendant of possession and use of her property and assets in the

19   meantime."  <u>Grant & Eisenhofer, P.A. v. Brown</u>, No. CV175968PSGPJWX, 2018 WL 3817859,

20   at *9 (C.D. Cal. Mar. 27, 2018); <u>cf.</u> <u>In re Bailey</u>, 197 F.3d 997, 1002 (9th Cir. 1999) (where

21   predecessor counsel's contract was void, there could be no valid lien and successor counsel could

22   not have committed conversion).  This is significant because without a lien, it is impossible for a

23   prior law firm to sue successor counsel.  <u>See</u> <u>Olsen</u>, 191 Cal. App. 4th at 332; Mark L. Tuft et al.,

24   <u>California Practice Guide: Professional Responsibility</u> ¶ 5:799 (The Rutter Group 2019); <u>Matter</u>

25   <u>of Respondent H</u>, No. 89-O-11979, 1992 WL 348560, at *9 (Cal. Bar Ct. Nov. 13, 1992) (attorney

26   could not be disciplined for failing to keep in trust amount of fees due to former counsel while

27   knowing of "lien" claim when there was not adequate proof that lien in fact existed).

28

13

Defendants have repeated this recitation of the law in substantially identical form to the paragraphs above on multiple occasions. [Dkt. No. 31 at 5-7; Dkt. No. 60 at 3-5; Dkt. No. 100 at 15-19; Marchino Decl Ex. 2 at 12-14.] At no point in this litigation have the Trustee's counsel made any attempt to identify contrary authority or come up with some explanation of how the Trustee's claims for declaratory relief are proper. Indeed, to the extent that the Trustee's counsel has responded at all, their responses are non sequiturs and red herrings. For example, Mr. Kellner's statement that "here is a SOL of two years for the commencement of many of those kinds of action" [Marchino Decl. Ex. 2 at 15.] is irrelevant because, as was noted above, "the right to such recovery does not ripen until the litigant prevails." <u>Southern Cal. Gas Co.</u>, 232 Cal. App. 4th at 488. Likewise, Mr. Kellner has stated that "there are myriad cases dealing with the independent right to prosecute a claim against a law firm for fraud and other misdeeds – especially in the matrimonial context. In such cases, the existence of a prospective fee is considered a marital asset. *See, e.g.*, *In re Marriage of Kilbourne* (1991) 232 Cal.App.3d 1518. As you know, we have detailed the malfeasance in the Amended Complaint." [Marchino Decl. Ex. 2 at 9-10.]. However, that case involves a court in a divorce proceeding reserving jurisdiction to determine the value of contingent fees at a later time and merely states that "Civil Code section 4800 expressly empowers the trial court to reserve jurisdiction to make a property division at a later time." <u>In re Marriage of Kilbourne</u>, 232 Cal. App. 3d 1518, 1525, 284 Cal. Rptr. 201 (Ct. App. 1991). It has, quite literally, nothing to do with any of the claims here.

### b. Any Claim for Declaratory Relief Against the Clients is Frivolous Because the Underlying Cases Are Still Ongoing.

As was noted above, the California Supreme Court stated almost 100 years ago that "[i]n order for an attorney to recover upon a contract for services in the conduct of an action it is necessary for him to show an actual **termination** of the litigation in which he is employed." <u>Mahony</u>, 66 Cal. App. at 459–60, emphasis added. Nevertheless, all three of the underlying cases are still ongoing. [Dkt. No. 101 Ex. 1, Ex. 2, Ex. 3] The Trustee and his counsel have never disputed that the lawsuits are still proceeding against at least some of the defendants. Even the

14

1  <u>Ramirez</u> litigation is still ongoing as to one defendant.  Moreover, it is exceedingly easy for the

2  Trustee's counsel to verify that the litigation is ongoing, because the status of the cases can be

3  verified online.  Defendants have warned of this fatal defect on many occasions.  [Dkt. No. 31 at

4  3, 8; Dkt. No. 72 at 4, 10, 11; Dkt. No. 100 at 18; Marchino Decl. Ex. 2 at 3, 12.]  Defendants

5  have even submitted copies of the case summary pages in conjunction with their anti-SLAPP

6  motion.  These pages show that there is a trial setting conference scheduled for February 4, 2021

7  in the <u>Ramirez</u> case, and trial setting conference scheduled for May 3, 2021 in the <u>Le</u> case, and a

8  hearing on an application for order for appearance and Examination scheduled for December 18,

9  2020 in the <u>Young Blue</u> case.  [Dkt. No. 101 Ex. 1, Ex. 2, Ex. 3.]  Any competent attorney would

10  have checked whether the cases were ongoing before filing the Amended Complaint.  But not the

11  Trustee's counsel, who not only have eschewed an undemanding yet essential check, but have

12  further inexplicably ignored the evidence showing the cases as ongoing that has been proffered by

13  Defendants here.

14

15         c.   **Any Claim for Declaratory Relief Against X-Law Is Frivolous Because X-Law**

16              **Cannot Be Sued for Quantum Meruit Unless the Trustee has Established in a**

17              **Prior Lawsuit Against the Clients That It Has Valid Liens.**

18         As was already noted above, the Trustee is required to sue its former clients *and* win before

19  it can sue X-Law for declaratory relief or other similar claims.  <u>See</u> <u>Mojtahedi</u>, 228 Cal. App. 4th

20  at 979; <u>Olsen</u>, 191 Cal. App. 4th at 332.  Obviously, the Trustee failed to meet this requirement.

21  Otherwise he would not be suing the clients *in this action*.  The frivolousness of these claims is

22  compounded by the fact that the Court has found that there are not any valid liens, when the

23  Trustee failed to oppose the motion striking them.  [Dkt. No. 94.]  Defendants have warned of this

24  fatal defect on many occasions.  [Dkt. No. 31 at 1, 7-8, 11-12; Dkt. No. 60 at 4; Dkt. No. 72 at 1,

25  4, 11; Dkt. No. 100 at 23; Marchino Decl. Ex. 2 at 3-4, 12-14.]

26

27         d.  **The Claims Related to the Ramirez Litigation Are Especially Frivolous.**

28         Under California law, "[a] contract for attorney's fees for services in litigation, made by or

15

1     on behalf of a minor, is void unless the contract is approved, on petition by an interested person,

2     by the court in which the litigation is pending or by the court having jurisdiction of the

3     guardianship estate of the minor. If the contract is not approved and a judgment is recovered by

4     or on behalf of the minor, the attorney's fees chargeable against the minor shall be fixed by the

5     court rendering the judgment." Cal. Fam. Code § 6602.

6          Here, the Amended Complaint itself reveals that this procedure was not followed: there is

7     not even an allegation that this was done. Moreover, there is no evidence of this procedure being

8     followed in the <u>Ramirez</u> personal injury case. [RJN Ex. 1, 3, 4.] Therefore, any contingent fee

9     contract that might have existed is void and X-Law owes no duty to the Trustee. <u>See</u> <u>In re Bailey</u>,

10     197 F.3d 997, 1002 (9th Cir. 1999) (successor counsel could not have committed conversion when

11     predecessor's counsel's contractual lien was void because contract had not been approved under

12     Cal. Fam. Code § 6602. Regardless of whether the Ramirez case is considered settled for the

13     purpose of bringing a quantum meruit or declaratory relief claim for fees, the Ramirez lien is void

14     and the Trustee cannot sue X-Law. Once again, any competent attorney would have checked

15     whether §6602 was complied with before filing the Amended Complaint. But not the Trustee's

16     counsel.

17        If this was not enough, the Trustee has an additional problem: "[i]f a person against whom

18     an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise,

19     and whether accrued or not accrued, dies before the expiration of the applicable limitations period,

20     and the cause of action survives, an action may be commenced within one year after the date of

21     death, and the limitations period that would have been applicable does not apply." Cal. Civ. Proc.

22     Code § 366.2(a). Now, more than a year after Ramirez' death, the Trustee wants to sue. He has

23     waited too long, and the Trustee counsel knows and, purposefully, ignored and ignores it.

24          Finally, in an apparent attempt to avoid these dispositive issues, the Trustee attempts to

25     imply that EA somehow represented Hernandez, Ramirez's mother and guardian to him while he

26     was purportedly represented by EA. This argument, which is knowingly predicated on a

27     fabrication, fares no better. It is beyond dispute that "[a] guardian *ad litem* is not a party to an

28     action, but merely the representative of record of a party." <u>J.W. v. Superior Court</u>, 17 Cal. App.

16

4th 958, 964, 22 Cal. Rptr. 2d 527 (1993). "Attorneys for a minor . . . may be selected by a guardian or conservator, **but the attorney-client relationship exists with the minor or incompetent person, not the guardian or conservator**." Mark L. Tuft, Ellen R. Peck, and Kevin E. Mohr, California Practice Guide: Professional Responsibility ¶ 3:122.1 (2019) (emphasis added).

EA had no valid lien on the proceeds of Hernandez's wrongful death claim and the Trustee has no cause to sue her here. EA's client was Ramirez, not Hernandez, and EA withdrew as counsel while he was still alive. Hernandez had no claim until Ramirez passed away, and he did not pass away until 9 months after EA was no longer involved in his case. See Baxter v. Superior Court, 19 Cal. 3d 461, 466, 563 P.2d 871 (1977) (parents have no claims relating to harm to child, including loss consortium with child). Having no contractual relationship with Hernandez, and hence no possible lien, the Trustee cannot interfere in any manner with her recovery. Therefore, because Hernandez is the only recipient of settlement money from the Ramirez litigation the declaratory relief claim and other similar claims relating to that case are frivolous, and egregiously so. [Dkt. No. 92 at ¶ 80, 97, 112.]

Once again, Defendants have pointed these fatal defects on multiple occasions, but the Trustee's counsel continue to purposefully and steadfastly ignore these issues. [Dkt. No. 31 at 13-15; Dkt. No. 60 at 8-9; Dkt. No. 100 at 26-27; Marchino Decl. Ex. 2 at 4.]

### i.  The Tortious Interference with Contract Claim is Frivolous Because the Underlying Contract is Void, and the Claim is Premised on Privileged Conduct.

The claim for tortious interference with contractual relations is frivolous because "[a]s its name implies, the existence of a valid contract is essential to the cause of action." Cuevas-Martinez v. Sun Salt Sand, Inc., 35 Cal. App. 5th 1109, 1120, 248 Cal. Rptr. 3d 200 (2019). As was explained above, the contract at issue here, the Ramirez Retainer agreement, was always void and, in any event, has been voided. A-Mark Coin Co. v. Gen. Mills, Inc., 148 Cal. App. 3d 312, 322, 195 Cal. Rptr. 859, 866 (Ct. App. 1983) (no tortious interference claim can be premised on

17

1   void contract).  This is no minor deficiency; bringing a tortious interference with contractual

2   relations claim when the plaintiff and his counsel know that there is not a valid contract (as is the

3   case here) is grounds for a malicious prosecution action.  See Cuevas-Martinez, 35 Cal. App. 5th

4   at 1120.  Therefore, sanctions are certainly warranted here.

5       Moreover, the claim is frivolous for another reason: X-Law owes a duty to its clients, not

6   the Trustee or the Estate of EA.  "It would be inconsistent with an attorney's duty to exercise

7   independent professional judgment on behalf of his client to impose upon him an obligation to

8   take into account the interests of predecessor attorneys."  Mason v. Levy & Van Bourg, 77 Cal.

9   App. 3d 60, 67, 143 Cal. Rptr. 389 (1978).  The Trustee takes issue with how X-Law's resolution

10  of Ramirez affects EA, but ignores that X-Law's duty is to its clients, not to the Trustee or EA.

11  X-Law cannot be sued for advising its clients to settle a case in a manner that is prejudicial to

12  EA's purported lien because that requires the Court to second guess the decisions behind why the

13  case was settled in that manner to begin with.  "It can hardly be said that a client's intention in

14  instituting a lawsuit is to benefit his attorney or that his intention in transferring his lawsuit from

15  one attorney to another is to benefit the former attorney. The scope of liability for negligence

16  should not be extended to such a situation."  Id. at 68.  The same is true for the Trustee's tortious

17  interference claim.

18      X-Law cannot be sued for a claim that, if taken as true, would mean that X-Law informed

19  Hernandez (the individual who would actually make any allocation decisions) of her right to not

20  allocate any of the settlement proceeds to the estate of Ramirez.  See Sweeley v. Gordon, 47 Cal.

21  App. 2d 385, 387, 118 P.2d 16 (1941).  Moreover, the litigation privilege also protects X-Law

22  from liability from making settlement offers to other parties.  See GeneThera, Inc. v. Troy &

23  Gould Prof'l Corp., 171 Cal. App. 4th 901, 910, 90 Cal. Rptr. 3d 218, 224 (2009).  In addition, X-

24  Law's conduct as the attorney and therefore an agent for its clients is privileged.  See Strawn v.

25  Morris, Polich & Purdy, LLP, 30 Cal. App. 5th 1087, 1102, 242 Cal. Rptr. 3d 216 (2019).

26  "[A]bsent extraordinary circumstances, an attorney may not be held liable for urging a client to

27  breach a contract with some third party."  Schick v. Lerner, 193 Cal. App. 3d 1321, 1329, 238 Cal.

28  Rptr. 902 (1987).

1    Finally, the litigation privilege bars tortious interference claims between counsel that arise

2    out of fee disputes.  See Olsen v. Harbison, 191 Cal. App. 4th 325, 337, 119 Cal. Rptr. 3d 460,

3    469 (2010).  The litigation privilege also bars liability on purported misrepresentation to the

4    probate court or concealment of facts from the probate court.  See Graham-Sult, 756 F.3d at 742

5    ("[T]he litigation privilege protects the . . . Defendants from liability based on (1) filings made in

6    the probate court; and (2) statements made to (and information concealed from) both Plaintiffs

7    and the probate court related to the probating of the estate."); Crossroads Inv'rs, L.P. v. Fed. Nat'l

8    Mortg. Assn., 13 Cal. App. 5th 757, 786, 222 Cal. Rptr. 3d 1, 27 (2017) ("The litigation privilege

9    also protects a defendant's silence having some relation to a judicial proceeding when the silence

10    is communicative. For example, courts have held the privilege applies when circumstances impose

11    on the defendant a duty to speak and the defendant remains silent, thereby communicating that the

12    circumstances do not exist.")

13    Once again, Defendants have pointed these fatal defects on multiple occasions, but the

14    Trustee's counsel continue to ignore these issues.  [Dkt. No. 72 at 21-22; Dkt. No. 77 at 15-16;

15    Dkt. No. 100 at 28-29; Marchino Decl. Ex. 2 at 4-5.]

16

17    **ii.  The Tortious Interference with Prospective Economic Advantage is**

18    **Frivolous as Well.**

19    The tortious interference with prospective economic advantage claim is almost entirely

20    duplicative of the tortious interference with contract claim and frivolous for the same reasons.  The

21    one portion of the claim that is distinct from the contractual relations claims is the Trustee's bizarre

22    allegation that "the parties did not seek a 'referral fee' to EA – which is almost always provided

23    in a situation where: (a) it is a high damages case; (b) where the prior law firm had done substantial

24    work on the case; and (c) where there is a 'friendly' relationship between the law firms. Upon

25    information and belief, X-Law and Marchino were aware that such referral fees are enforceable

26    upon client approval – which was not sought by X-Law and Marchino."  [Dkt. No. 92 at ¶ 102.]

27    It is unclear why the Trustee believes that violation of what could only be, at most, a professional

28    courtesy is tantamount to tortious conduct. However, the law is clear that written client consent

19

must be provided before such an agreement is entered into.  See California Rules of Professional

Conduct Rule 1.5.1 and former Rule 2-200.  The Trustee never alleges that consent was provided,

meaning that the claim fails for lack of causation.  See Westside Ctr. Assocs. v. Safeway Stores

23, Inc., 42 Cal. App. 4th 507, 530, 49 Cal. Rptr. 2d 793 (1996) ("A plaintiff seeking to recover

for a future loss must show with reasonable certainty that the loss actually would have accrued.")

Referring attorneys cannot use lawsuits to obtain referral fees that clients did not consent

to.  See Chambers v. Kay, 29 Cal. 4th 142, 155–56, 56 P.3d 645 (2002) ("Chambers, in effect,

seeks the aid of this court in dividing the fees of a client without satisfaction of the rule's written

consent requirement. We decline such aid.").  This remains true even if the Trustee attempts to

articulate the referral fee as a quantum meruit claim.  Id. at 162 ("According to Chambers, a trial

court remains free to award the entire fee provided for in a fee-sharing agreement as a proper

quantum meruit determination where, as here, the amount specified in the agreement is based on

the understanding that that attorney's services were completed.  In essence, Chambers contends

that, notwithstanding the absence of the required written client consent, he should be allowed to

accomplish indirectly a division of fees under the guise of a quantum meruit claim. We reject the

contention.").

In addition, the prospective advantage claim is frivolous because the Trustee has failed to

identify how X-Law's actions were independently wrongful.  It is "plaintiff's burden to prove, as

an element of the cause of action itself, that the defendant's conduct was independently wrongful

and, therefore, was not privileged." Gemini Aluminum Corp. v. California Custom Shapes, Inc.,

95 Cal. App. 4th 1249, 1257, 116 Cal. Rptr. 2d 358 (2002) (quoting Bed, Bath & Beyond of La

Jolla, Inc. v. La Jolla Vill. Square Venture Partners, 52 Cal. App. 4th 867, 881, 60 Cal. Rptr. 2d

830 (1997)).  This is "conduct that was wrongful by some legal measure other than the fact of

interference" itself.  Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393, 902

P.2d 740 (1995).

Once again, Defendants have pointed these fatal defects on multiple occasions, but the

Trustee's counsel continue to ignore these issues.  [Dkt. No. 72 at 22-23; Dkt. No. 77 at 16-17;

Dkt. No. 100 at 29-30; Marchino Decl. Ex. 2 at 5-6.]

20

### iii. The Voidable Transfer Claim Is Frivolous.

The Trustee alleges voidable transfers arising from both actual fraud and constructive fraud. The complaint, however, fails to allege any transfer or any transfer that caused harm to the Debtor and its creditors. See CACI 4200, 4202 (each require showing that "That [*debtor*] [transferred property . . . to [*defendant*]; . . . That [*plaintiff*] was harmed).

The plain language of the September 18, 2018 letter contradicts the Trustee's allegations. Although the Trustee alleges that "[i]n violation of the July 11, 2018 Order and with full knowledge of the $10 million JFL Judgment, Michael Avenatti thereafter entered an agreement with Marchino and EA where the Hernandez case was transferred to Marchino's firm (X-Law) and EA waived its right to fees in the Hernandez case", the letter demonstrates that this is purposefully misleading. [Dkt. No. 76, Ex. 4 at ¶ 125.] The letter does not suggest any agreement with Ramirez or X-Law to waive fees; to the contrary it states that "We want to inform you [the client – Andres Ramirez] that given the limited amount of time we worked on your case, **Eagan Avenatti will not seek to recover fees from any recovery you may ultimately receive**." [Dkt. No. 76 Ex. 1, emphasis added.] The letter was signed by Avenatti and on EA letterhead, and addressed to Ramirez himself and not even X-Law. [Id.] It is clear from the letter that EA acted unilaterally and that X-Law had no involvement in this decision by EA. X-Law only served as successor counsel for Ramirez.

Because a contingent fee agreement is between the attorney and client, any waiver of fees is at best a transfer from EA to Ramirez, and not to X-Law. This is another instance of the Trustee attempting to sue X-Law when his actual dispute is with the client.

To be clear, transferring a *client or lawsuit* cannot be a fraudulent transfer. "It has long been recognized in this state that the client's power to discharge an attorney, with or without cause, is absolute." Fracasse v. Brent, 6 Cal. 3d 784, 790, 494 P.2d 9, 13 (1972). The California Supreme Court recently addressed this issue when it addressed a question the Ninth Circuit certified for it to hear. Heller Ehrman LLP v. Davis Wright Tremaine LLP, 4 Cal. 5th 467, 471, 411 P.3d 548 (2018). There a law firm had filed for chapter 11 bankruptcy and the bankruptcy administrator had attempted to set aside a waiver of the dissolved firm's right to fees earned by attorneys after

21

1    the dissolution of the firm that the administrator contended was a fraudulent transfer.  Id. at 472.

2    The court held that a law firm could not have a property interest in ongoing matters because that

3    "would also risk impinging on the client's right to discharge an attorney at will."  Id. at 479.  It

4    recognized that a contrary rule could result in clients being pressured to use second-choice counsel

5    rather than continue to use counsel who they had worked with previously and had moved on to

6    other firms.  Id.  Applying the California Supreme Court's ruling, the Ninth Circuit held that there

7    could be no fraudulent transfer because the law firm had no interest in the property.  In re Heller

8    Ehrman LLP, 716 F. App'x 693, 695 (9th Cir. 2018).

9        To the extent that the Trustee assumes that because EA waived its fees, X-Law received

10    additional fees, that assumption is never stated and is fundamentally flawed.  Attorneys are

11    permitted to draft their contingent fee agreements in a manner where this would not occur.  See

12    Mark L. Tuft, Ellen R. Peck, and Kevin E. Mohr, California Practice Guide: Professional

13    Responsibility ¶ 5:1060.1 (2019) (explaining scenario where successor counsel drafts contingent

14    fee in a manner that would not result in sharing contingent fee with predecessor counsel).

15        The harm and causation elements of fraudulent transfer also are not met for several

16    reasons.  As the letter itself indicates, EA waived its fees because it was never entitled to any,

17    because EA was "unable to continue representing" Ramirez.  [Dkt. No. 76 Ex. 1.]  "[R]ecovery

18    for services in quantum meruit is allowed only when the attorney has *justifiable* cause for

19    withdrawing. An attorney who voluntarily abandons a case without good cause will be denied

20    compensation."  Estate of Falco, 188 Cal. App. 3d at 1014.  In order to establish good cause exists,

> 21    the attorney has the burden of proof to show: (1) counsel's withdrawal was
> 22    mandatory, not merely permissive, under statute or state bar rules; (2) the
>       overwhelming and primary motivation for counsel's withdrawal was the obligation
> 23    to adhere to these ethical imperatives under statute or state bar rules; (3) counsel
>       commenced the action in good faith; (4) subsequent to counsel's withdrawal, the
> 24    client obtained recovery; and (5) counsel has demonstrated that his work contributed
>       in some measurable degree towards the client's ultimate recovery.

25    Id. at 1016.  The reason for this rule "is the inequity of allowing lawyers to capitalize on their own

26    voluntary actions in leaving clients lawyerless."  Rus, Miliband & Smith v. Conkle & Olesten,

27    113 Cal. App. 4th 656, 675, 6 Cal. Rptr. 3d 612 (2003).  EA waived fees that it could never have

28    collected because it abandoned, without cause, Ramirez.  Therefore, there was not any property

1    that EA transferred to *anyone*.  The letter was a mere formality recognizing that EA was already

2    not entitled to any fees.

3          In addition, the letter also demonstrates that Ramirez, not his mother Hernandez, was the

4    only client that EA represented and the only client whose fees were waived.  [Dkt. No. 76 Ex. 1.]

5    Combined with the fact that the time has run for the Trustee to sue Ramirez's estate and that

6    Hernandez, not the estate of Ramirez, received the entirety of the partial settlement, EA transferred

7    nothing of value to Hernandez or EA.  The Trustee would be unable to recover any fees regardless

8    of whether the letter's waiver is enforceable or voidable.  For the same reason, the Trustee lacks

9    Article III standing to bring the claim because he has not alleged an injury in fact.  "To establish

10   injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected

11   interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or

12   hypothetical.'"  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548(2016) (quoting Lujan v. Defs. of

13   Wildlife, 504 U.S. 555, 580 (1992)).  The Trustee's voidable transfer claim is a strong example of

14   a claim where there is no injury in fact.  Voiding the transfer would have no consequence, but the

15   Trustee nevertheless asks the Court to address this baseless claim.

16         Once again, Defendants have pointed these fatal defects on multiple occasions, but the

17   Trustee's counsel continue to ignore these issues.  [Dkt. No. 77 at 18-21; Dkt. No. 100 at 32-34;

18   Marchino Decl. Ex. 2 at 7-8.]

19

20   **VII.  BECAUSE  THE  TRUSTEE'S  COUNSEL  HAVE  OPTED  TO  IGNORE**

21   **CONTROLLING  LAW  AND  THE  COURT  FILINGS  IN  THE  UNDERLYING**

22   **CASES, THEREBY WASTING DEFENDANTS' RESOURCES AND THE COURT'S**

23   **TIME, MONETARY SANCTIONS ARE WARRANTED.**

24         As the preceding sections have made clear, the Trustee's counsel are not merely engaging

25   in zealous advocacy for their client.  Rather, they have obstinately refused to look at the controlling

26   authority and the court filings in the underlying cases that reveal facts that are dispositive to the

27   claims asserted here, even when Defendants have explained these issues to them time and time

28   again.  Nor is this pattern of behavior the product of overeager inexperienced attorneys; The

1    Trustee's counsel have many decades of experience between them.  Finally, this is not a situation

2    where an attorney was forced to quickly file a document and did not have sufficient time to review

3    the issues.  Here, the Trustee's counsel have had months to consider these fatal deficiencies and

4    even insisted on amending the complaint to add new defective claims while a motion to dismiss

5    was pending that addressed the fatal deficiencies of the existing claims.  In short, the Trustee's

6    counsel have no excuse for their ongoing pattern of conduct and must be held accountable for the

7    consequences of their actions, which have taken up a significant amount of Defendants' and the

8    Court's time and caused Defendants to incur tens of thousands of dollars in attorneys' fees.

9

10   **VIII. THE TRUSTEE'S COUNSEL SHOULD BE SANCTIONED IN THE AMOUNT OF**

11   **$61,831.10, PAYABLE TO DEFENDANTS.**

12       For their conduct in drafting a frivolous Amended Complaint, the Trustee's counsel

13   Richard L. Kellner, Kellner Law Group PC, D. Edward Hays, Tinho Mang, and Marshack Hays

14   LLP should be sanctioned in the amount of $61,831.10, payable to Defendants, for attorneys' fees

15   incurred in the course of responding to the Amended Complaint and preparing this motion.

16       Specifically, Defendants seek fees and costs totaling $22,670.70 that were incurred in the

17   presenting of this motion.  Fed. R. Bankr. P. 9011(c)(1)(A).  Defendants' counsel Thomas E.

18   Gray's hourly rate is $525/hour. [Id. at ¶ 3.]  Mr. Gray spent a total of 15.4 hours preparing

19   this motion.  [Id. at ¶ 5.]  X-Law's counsel Kurt Ramlo's hourly rate is $610/hour.  Mr. Ramlo

20   spent a total of 4 hours preparing this motion.  [Id. at ¶ 8.]  Paralegal time is also being spent on

21   this motion at $250/hour.  [Id. at ¶ 4, 9.]  It is estimated that the costs of filing this motion will be

22   $71.60.  [Id. at ¶ 10.]  Mr. Gray will spend a an estimated 0.5 hours in reviewing the Trustee's

23   anticipated opposition to this motion and 6 hours in preparing a reply.   [Gray Decl. at ¶ 5.]  Mr.

24   Ramlo will spend a an estimated 2 hours in reviewing the Trustee's anticipated opposition to this

25   motion and 10 hours in preparing a reply and preparing for and attending the hearing on this

26   motion.  [Id. at ¶ 8.]  X-Law's counsel David Golubchik's hourly rate is $635/hour and Mr.

27   Golubchik will spend a an estimated 1 hour in reviewing the Trustee's anticipated opposition to

28   this motion and 1 hour in preparing a reply.  [Id. at ¶ 3, 8] It is estimated that the costs of filing

1   the reply will be $71.60.  [Id. at ¶ 10.]

2          In addition, Defendants seek fees and costs totaling $39,160.40 that were preparing the

3   portions of Defendants' Special Motion to Strike and Motion to Dismiss (the anti-SLAPP

4   Motion")[2] that are addressed in this motion.  This the portion of the "attorneys' fees for the services

5   directly and unavoidably caused by the violation of the certification requirement."  Fed. R. Civ.

6   P. 11, 1993 Amendment Advisory Committee Notes.   Mr. Gray spent a total of 36.3 hours

7   preparing these portions of the anti-SLAPP Motion. [Gray Decl. ¶ 4.]  Mr. Ramlo spent a total of

8   12.1 hours preparing these portions of the anti-SLAPP Motion.  [Ramlo Decl. at ¶ 5.]  2.8 hours

9   of paralegal time has also been spent on the anti-SLAPP Motion at $250/hour.  [Id. at ¶ 4, 6.]

10  Defendants incurred $167.20 in costs of filing the anti-SLAPP Motion.   [Id. at ¶ 7.]  Mr. Gray

11  will spend a an estimated 0.5 hours in reviewing the Trustee's anticipated opposition to the anti-

12  SLAPP Motion and 10 hours in preparing a reply.   [Gray Decl. ¶ 4.]  Mr. Ramlo will spend a an

13  estimated 1 hour in reviewing the Trustee's anticipated opposition to the anti-SLAPP Motion and

14  6 hours in preparing a reply to it. [Ramlo Decl. ¶ 5.] Mr. Golubchik will spend an estimated 1

15  hour in reviewing the Trustee's anticipated opposition to the anti-SLAPP Motion and 2 hours in

16  preparing a reply. [Id. at ¶ 5.]  [Id.] It is estimated that the costs of filing the reply will be $167.20.

17  [Id. at ¶ 7 .]

18

19

20

21

22

23  //

24  //

25  _____

26  [2] Defendants will be entitled to a greater amount of fees pursuant to Cal. Civ. Proc. Code §
    425.16(c)(1) when they prevail on their anti-SLAPP motion, but fees are only awarded against the
27  party, not its counsel.   The total amount of fees Defendants have incurred in defending themselves
28  over the course of this lawsuit is significantly higher than what is sought in this motion.

## IX.  CONCLUSION

For the foregoing reasons, the Trustee's counsel Richard L. Kellner, Kellner Law Group PC, D. Edward Hays, Tinho Mang, and Marshack Hays LLP should be sanctioned in the amount of $61,831.10, payable to Defendants, for attorneys' fees incurred in the course of responding to the Trustees' frivolous Amended Complaint.

DATED: December 8, 2020        **LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**

By: _____
DAVID B. GOLUBCHIK
KURT RAMLO
Attorneys for Defendants The X-Law Group, P.C.
and Filippo Marchino

**THE X-LAW GROUP, P.C.**

By _____
FILIPPO MARCHINO
Attorneys for Defendants Young Blue LLC, Elba Hernandez,
The Estate of Andres Ramirez, and Sandy Le