Kurt Ramlo (State Bar No. 166856)
David B. Golubchik (State Bar No. 185520)
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Tel: (310) 229-1234; Fax: (310) 229-1244
KR@LNBYB.com; DBG@LNBYB.com

Attorneys for Defendants The X-Law
Group, P.C. and Filippo Marchino

Filippo Marchino (State Bar No. 256011)
Thomas E. Gray (State Bar No. 299898)
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380; Fax: (213) 599-3370
FM@XLAWX.COM; TG@XLAWX.COM

Attorneys for Defendants Young Blue LLC,
Elba Hernandez, The Estate of Andres Ramirez,
and Sandy Le

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:19-bk-13560-SC |
| EAGAN AVENATTI, LLP, | Chapter 7 |
| Debtor. | Adv. No.: 8:20-ap-01086-SC |
| | **Reply in Support of Defendants' Special Motion to Strike and Motion to Dismiss** |
| RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan Avenatti, LLP, | |
| Plaintiff, | Judge: Scott C. Clarkson |
| v. | Date: January 20, 2021 |
| | Time: 1:30 pm. |
| THE X-LAW GROUP, P.C., a professional corporation; et al, | Place: Courtroom 5C |
| | 411 W. Fourth St. |
| Defendants. | Santa Ana, CA 92701 |

1

**TABLE OF CONTENTS**

2

3

4

5

6

7

**TABLE OF AUTHORITIES**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

The Opposition of Richard A. Marshack, chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Eagan Avenatti, LLP ("EA"), to Defendants The X-Law Group, P.C. and Filippo Marchino (collectively "X-Law") and Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased, Young Blue LLC, and Sandy Le (collectively, the "Clients") Motion to Dismiss and Special Motion to Strike contains a large number of meritless arguments, none of which preclude this Court from dismissing the Amended Complaint as Defendants have requested. The Trustee's arguments fail for at least the following reasons:

*First*, the right to recover attorneys' fees accrues when litigation has terminated. The Trustee has failed to identify any authority holding the contrary; a contrary rule would be at odds with the clear policy stated in <u>Fracasse v. Brent</u>, 6 Cal. 3d 784, 494 P.2d 9 (1972).

*Second,* the Trustee must successfully sue the Clients <u>before</u> suing X-Law and he has identified no authority holding otherwise.

*Third*, the Trustee cannot seek declaratory or injunctive relief here. The authorities the Trustee cites do not give bankruptcy courts a greater ability to issue such relief than other courts.

*Fourth*, the Trustee cannot sue X-Law for quantum meruit under a <u>Jewel</u> claim theory, which was never alleged in the Amended Complaint. The quantum meruit claims alleged in the Amended Complaint are barred because of the lack of valid retainer agreements.

*Fifth*, the claim against the Ramirez estate is time barred because the Trustee has failed to comply with the rules for the timely submission of probate claims. None of the Trustees' attempts to circumvent this fatal defect are viable.

*Sixth*, the Trustee has failed to state a claim for violation of automatic stay and turnover because turnover is not a remedy to determine disputed rights.

*Seventh*, the Trustee has failed to state a claim for voidable transfer.

*Eighth*, the Trustee's claims against EA's prior clients are entirely barred by the Mandatory Fee Arbitration Act, embodied in California Bus. & Prof. Code Section 6201(a). The claims for

1

relief against the Clients are not core proceedings, Defendants have not waived their right to demand arbitration, and there is no contradiction in Hernandez seeking to compel arbitration when she denies being EA's client and the Trustee has not shown otherwise.

*Eighth*, Defendants are entitled to attorneys' fees under the anti-SLAPP statute.

*Ninth*, the Trustee has not established a probability of prevailing on his claims.

*Tenth*, even if some of the Trustee's claims are not dismissed pursuant to the anti-SLAPP statute, Defendants' anti-SLAPP motion is not frivolous because the Trustee has in fact abandoned some of his claims, which entitles Defendants to fees.

## II.    ARGUMENT

### A.    **The Trustee Purposefully Misrepresents The Manner in Which Fee Disputes Are Resolved Under California Law.**

#### 1.    **The Right to Recover Fees Accrues When Litigation Has Terminated.**

Almost 100 years ago, <u>Mahony v. Haines</u> held that "[i]n order for an attorney to recover upon a contract for services in the conduct of an action it is necessary for him to show an actual termination of the litigation in which he is employed." 66 Cal. App. 456, 459–60, 226 P. 620 (Cal. Ct. App. 1924). The Trustee, recognizing that this would be fatal to his claims attempts at act as though precedent has an expiration date. However, <u>Fracasse v. Brent</u> is entirely consistent:

> It is apparent that any determination of the 'result obtained' is impossible, and any determination of the 'amount involved' is, at best, highly speculative, until the matter has ***finally been resolved***. Second, and perhaps more significantly, we believe it would be improper to burden the client with an absolute obligation to pay his former attorney regardless of the outcome of the litigation. The client may and often is very likely to be a person of limited means for whom the contingent fee arrangement offers the only realistic hope of establishing a legal claim. Having determined that he no longer has the trust and confidence in his attorney necessary to sustain that unique relationship, he should not be held to have incurred an absolute obligation to compensate his former attorney. Rather, since the attorney agreed initially to take his chances on recovering any fee whatever, we believe that the fact that the success of the litigation is no longer under his control is insufficient to justify imposing a new and more onerous burden on the client. Hence, we believe that the attorney's action for reasonable compensation accrues only when the contingency stated in the original agreement has occurred—i.e., the client has had a recovery by settlement or judgment. It follows that the attorney will be denied compensation in the event such recovery is not obtained.

6 Cal. 3d 784, 792, 494 P.2d 9, 14 (1972) (citation omitted; emphasis added). Even *after* Fracasse, courts still follow the same rule stated in Mahony. See Bradley v. Nevada Power Co., 185 F.3d 865 (9th Cir. 1999) ("Because the court affirms the district court's application of the California rule to the *quantum meruit* fee dispute, only upon the termination of the litigation could it be known whether B & M could recover in *quantum meruit.*"). The reason why the contingency must be the termination of the litigation is well illustrated by the Young Blue case here, where a default judgment was entered in 2018, but the defendant filed a motion to set aside default on August 27, 2020 and where, as the Trustee admits, to this day Young Blue has not been paid. [Dkt. No. 73 at Ex. 2; Dkt. No. 101 Ex. 3; Dkt. No. 109 at 6; Dkt. No. 111, Marchino Decl., Ex. 2.] Unfortunately, judgment is little more than a piece of paper, and until the client has been paid, there may still be significant work that needs to be done on the case. Under the Trustee's interpretation of Fracasse, he could have forced Young Blue to pay a quantum meruit fee before Young Blue was paid any portion of the judgment by the defendant, which is precisely what Fracasse aimed to avoid. In addition, in the case of the purported retainer agreements in the Ramirez case, the Debtor's contingency agreement with the child (which doesn't apply to Hernandez) says that the fees are taken from the "settlement *payment*, arbitration award or judgment in favor of the Client in this matter" "in the event that a *net* recovery be obtained by the Client." [Dkt. No. 4 Reitman Decl., Ex. 16 at 148, 149 (emphasis added).]

Additionally, the Trustee's argument has two problems as it relates to the Ramirez case. First, as the Trustee alleges in the Amended Complaint, although there was a recovery in the Ramirez case, it was not on behalf of Ramirez's estate, but rather Hernandez, which as Defendants have explained in their motion and explain again below, was never and could never have been EA's client. [Dkt. No. 92 at ¶¶ 29, 80, 87, 97; Dkt. No. 100 at 27; Dkt. No. 101 Ex. 1.] Therefore, with regards to the portion of the case that has settled, there is no recovery on behalf of Ramirez and the contingency has not occurred. Second, it would be administratively infeasible to determine EA's quantum meruit award when only part of the case has settled. It would also be impossible to determine whether work done on the case and costs incurred by EA, if any, are relevant to one defendant, the other defendant, or both defendants and award quantum meruit accordingly. Any

3

attempt to do so would be speculative, which is precisely why <u>Fracasse</u> precludes quantum meruit claims before the case has "finally been resolved." 6 Cal. 3d at 792. Likewise, it would be impossible to determine what the "net" recovery would be when only part of the case has settled.

Finally, nothing in <u>Fracasse</u> suggests "that declaratory relief could be proper prior to the actual recovery of fees." [Dkt. No. 109 at 6.] The court merely noted that there might be some circumstances where an attorney could seek declaratory relief, without specifying that it was contemplating an exception to the rule it had stated in the case. <u>Fracasse</u>, 6 Cal. 3d at 793.

### 2.  A Trustee Must Successfully Sue the Clients Before it Can Sue X-Law.

Attempting to avoid the holding of <u>Mojtahedi v. Vargas</u>, the Trustee argues that he "has independent claims against X-Law and Marchino that are not solely dependent upon prevailing on the quantum meruit claims against the EA clients." [Dkt. No. 109 at 7.] However, the plaintiff in that case alleged claims for "fraud, violation of Commercial Code sections 3110(d) and 3420, negligence, and tortious interference with prospective economic advantage." <u>Mojtahedi v. Vargas</u>, 228 Cal. App. 4th 974, 976, 176 Cal. Rptr. 3d 313, 315 (2014). In fact, the term quantum meruit does not appear *anywhere* in the opinion of that case. The Trustee argues that it is possible to sequentially litigate claims against clients before counsel in the same action. [Dkt. No. 109 at 7.] That is impossible, however, because in order to state a claim against the successor counsel, the former counsel <u>must</u> "allege facts establishing that he adjudicated the existence, value, [and] enforceability of his lien." <u>Mojtahedi,</u> 228 Cal. App. 4th at 978. Obviously, these allegations could not be alleged in a complaint if both attorney and client are sued simultaneously. <u>Mojtahedi</u> noted an entirely reasonable concern in issuing its ruling: "[w]ithout first establishing a right to any portion of his clients' settlement proceeds, plaintiff in this case lacks any basis to assert that defendant fraudulently withheld any money from him." <u>Id.</u> at 979. Until the lien has been adjudicated, any claim against successor is entirely speculative to the point of frivolousness. Although the Trustee notes that <u>Mojtahedi</u> did not specifically address former counsel simultaneously suing successor counsel and the client, it is unlikely that such a scenario would not have occurred to the court. The court noted that although there was no dispute between the clients and former counsel regarding the amount owed, a declaratory claim against the clients was still

4

1  necessary before recovery would be compelled from successor counsel. Id. at 978. If the clients and

2  successor attorney could be sued simultaneously, the court would certainly have stated as such.

3      The Trustee complains that fees may "dissipate 'into the ether'", but that complaint is

4  entirely speculative and one that could be said about any other claim that is not ripe. [Dkt. No. 109

5  at 7.] The Trustee's citation to 11 U.S.C. § 105 does not help him, because it "does not authorize

6  bankruptcy courts to create substantive rights that do not exist under state or federal law." Kathleen

7  P. March et. al., Rutter Group Practice Guide: Bankruptcy ¶ 1:1002 (2020). In effect, what the

8  Trustee is asking the Court to do is to create a new cause of action because the claims that the

9  Trustee wishes to pursue are clearly, blatantly, and on their face, not ripe.

10                  **B.  The Trustee Has Failed to Assert Any Legally Cognizable Claim**

11                  **1.  The Trustee Cannot Seek Declaratory or Injunctive Relief Here**.

12      As is often the case in his opposition, the Trustee makes no attempt to distinguish the

13  numerous authorities Defendants have cited in their anti-SLAPP motion that explain why

14  declaratory and injunctive relief are not available here. [Dkt. No. 100 at 21-22.] The crux of the

15  issue here is that the Trustee seeks declaratory and injunctive relief as a means of sidestepping his

16  inability to bring a quantum meruit claim for monetary damages at this time. Unable to do so, he

17  has knowingly and improperly attempted to fashion declaratory and injunctive relief claims into

18  substitutes to the otherwise impermissible premature quantum meruit claim.

19      The Trustees' declaratory relief "claims" are created by the California common law

20  governing contingent fee agreements. The Trustee's cited statutory basis for these claims is 28

21  U.S.C. § 2201, the Declaratory Judgment Act. [Dkt. No. 92 at ¶¶ 58-73.] However, the Declaratory

22  Judgment Act "does not allow [the Court] to bypass the *Erie* doctrine to fashion a remedy that is

23  not available under the state law that created Plaintiffs' cause of action." Bateman v. Nat'l Union

24  Fire Ins. Co. of Pittsburgh, Pa., 423 F. App'x 763, 766 (9th Cir. 2011). It does not create a new

25  cause of action. See Martinez v. USAA Fed. Sav. Bank, 683 F. App'x 584, 585 (9th Cir. 2017). As

26  the Supreme Court held, a declaratory relief "claim is not ripe for adjudication if it rests upon

27  'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas

28  v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agr. Prod. Co., 473

1  U.S. 568, 580–81 (1985)). There is another problem: 28 U.S.C. § 2201 grants the power to "any

2  court of the United States." Bankruptcy courts are not a court of the United States within the

3  meaning of Title 22. <u>See</u> 28 U.S.C. § 451. This means a bankruptcy court cannot provide declaratory

4  relief under 28 U.S.C. § 2201. <u>C.f.</u> <u>In re Demas Wai Yan</u>, 703 F. App'x 582, 583 (9th Cir. 2017)

5  (bankruptcy court could not issue 22 U.S.C. § 1927 sanctions because it is not a "court of the United

6  States"); <u>In re Perroton</u>, 958 F.2d 889, 896 (9th Cir. 1992) (bankruptcy court could not waive fees

7  under 22 U.S.C. § 1915(a) because it is not a "court of the United States"); <u>In re Westin Capital</u>

8  <u>Markets, Inc.</u>, 184 B.R. 109, 118 (Bankr. D. Or. 1995) (bankruptcy court could not issue 22 U.S.C.

9  § 1927 sanctions because it is not a "court of the United States").

10      Even if available, "[t]he purpose of the Declaratory Judgment Act is '"to relieve potential

11  defendants from the Damoclean threat of impending litigation which a harassing adversary might

12  brandish, while initiating suit at his leisure—or never.'" <u>Hal Roach Studios, Inc. v. Richard Feiner</u>

13  <u>& Co.</u>, 896 F.2d 1542, 1555 (9th Cir. 1989). (quoting <u>Societe de Conditionnement en Aluminium</u>

14  <u>v. Hunter Eng'g Co.</u>, 655 F.2d 938, 943 (9th Cir. 1981)). Simply put, declaratory relief is

15  unavailable when there is another adequate alternative remedy. <u>Johnson v. Quality Loan Serv.</u>

16  <u>Corp.</u>, No. LACV1809140VAPJEMX, 2018 WL 6978196, at *15 (C.D. Cal. Dec. 18, 2018)

17  (collecting cases).  The Trustee is not facing any threats of litigation and so declaratory relief is not

18  available.

19      The case the Trustee cites, involves an entirely different scenario where the plaintiff filed a

20  declaratory relief claim and the defendants also filed a similar declaratory relief counterclaim. <u>Pet</u>

21  <u>Check Tech., LLC v. Handlr, Inc.</u>, No. CV 18-962-R, 2018 WL 8333418, at *2 (C.D. Cal. Sept. 11,

22  2018).  None of the cases the Trustee cites address the key issue here: whether the Trustee can

23  obtain a declaratory judgment here when he would not be able to do so under California substantive

24  law. The Trustee generally does not address the Declaratory Judgment Act and does not address

25  whether it is possible to use declaratory relief claims to obtain relief that would otherwise be

26  unavailable under state law. Instead, the Trustee instead addresses declaratory relief pertaining to

27  <u>procedural matters specific to bankruptcy courts</u>.

28      For example, <u>Sears, Roebuck & Co. v. O'Brien</u>, an out of circuit case that relies on 28 U.S.C.

§ 2201 as the basis for declaratory relief, merely states that "the bankruptcy court has the power to issue declaratory judgments when the matter in controversy regards the ***administration*** of a pending bankruptcy estate." 178 F.3d 962, 964 (8th Cir. 1999) (emphasis added). The declaration sought there was whether bankruptcy law preempted state law and whether bankruptcy law was violated. Id. at 965. As was noted above, a bankruptcy court could not enter a 28 U.S.C. § 2201 judgment in the Ninth Circuit. Even if a bankruptcy court has some other source of power to issue declaratory judgments regarding the administration of a bankruptcy estate, the Trustee wants a different type of declaratory judgment, compelling successor counsel to deposit funds for the Estate's implied contract claim against its Clients.

Bankruptcy Rule 7001(9) does not help the Trustee either. Bankruptcy courts that issue declaratory judgments under Rule 7001(9) still hold that "[a] bankruptcy court's discretion to issue declaratory judgments is subject to the constraints of the [Declaratory Judgment] Act and the court's jurisdictional limits. In re Kings Falls Power Corp., 185 B.R. 431, 436 (Bankr. N.D.N.Y. 1995). Likewise, the rule is still that "[a] declaratory judgment is a remedy for an underlying cause of action, not a separate, substantive claim for relief" and the bankruptcy court is still able to strike declaratory relief as duplicative or otherwise inappropriate. See In re Brinson, 485 B.R. 890, 904 (Bankr. N.D. Ill. 2013).

In re Dragnea is equally irrelevant, as it involves using the Declaratory Judgment Act to address the contractual aspects of a confirmed Chapter 11 plan, and the parties had consented to entry of judgment by a bankruptcy judge. 609 B.R. 239, 256-257 (Bankr. E.D. Cal. 2019). In re Segal involved a declaratory relief claim brought against the debtor to determine whether money was property of the debtor or the estate and the debtor conceded it was a core proceeding. 579 B.R. 734, 751 (E.D. Pa. 2016). In re Ryerson involved a similar debtor-trustee dispute, 739 F.2d 1423, 1425 (9th Cir. 1984). In re Rollings involves a company in bankruptcy filing a declaratory relief claim against the manager who had also filed for bankruptcy 451 F. App'x 340, 343 (5th Cir. 2011). In re Crysen/Montenay Energy Co., 902 F.2d 1098, 1105 (2d Cir. 1990) merely states that the sanctions "standard encourages would-be [automatic stay] violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay." In re PG&E Corp.

involved a complaint for "declaratory relief confirming the bankruptcy court's exclusive jurisdiction under Section 365. 603 B.R. 471, 477 (Bankr. N.D. Cal. 2019).  In re Birting Fisheries, Inc. is also inapplicable and involves a bankruptcy court issuing an injunction to enjoin enforcement of a state court order. 300 B.R. 489, 497 (B.A.P. 9th Cir. 2003).

Notably, the Trustee insists that the Young Blue claim is ripe. [Dkt. No. 109 at 9.] However, by the Trustee's own admission, Young Blue has not been paid, something that was actually caused solely by the actions of the Trustee and his counsel. [Id.] As the counsel for the underlying defendant in the Young Blue case has recently candidly admitted, "if there had not been an attorney's lien [asserted], I would have advised my client to have paid the default immediately. . . . It was very frustrating dealing with the attorneys for the receivership/trustee." [Dkt. No. 111, Marchino Decl. Ex. 4.] From the onset of this, X-Law has had to spend dozens of hours dealing with the Trustee's efforts to interfere and prevent the settlement of a case of minimal value. [Dkt. No 111, Marchino Decl. ¶ 6.] Obviously, no quantum meruit claim can be brought when counsel is still having to perform work on the case (and, as a practical matter, as a result of the Trustee's interference, the post-default judgment work has significantly exceeded the amount of effort needed to obtain a default judgment and has eclipsed its value for Young Blue). Hence, it is still impossible to calculate the respective quantum meruit shares, as the Trustee desires.

The Trustee suggests that he had the option to stay the Le case: that is false. Neither of the two cases that the Trustee cites address the ability of a court to stay unripe claims, and instead merely note that federal courts have the power to stay cases. See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 864 (9th Cir. 1979). They do not address how a court should handle unripe claims in federal court. "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint *must be dismissed.*" S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990). It is well settled law that "[i]n determining whether a dispute is ripe, the court looks to the situation as of the time suit was filed. . . . Ripeness is not affected by events occurring after a suit is filed." Democratic Nat'l Comm. v. Watada, 198 F. Supp. 2d 1193, 1197 (D. Haw. 2002); Russo v. Jones, No. CIV 10-00125 LEK, 2010 WL 3834965,

1    at *6 (D. Haw. Sept. 24, 2010) ("This Court must determine whether Plaintiff's claims were ripe at

2    the time he filed his Complaint.")

3        Finally, the Trustee states that Defendants have made the "claim that the Declaratory Relief

4    claims are duplicative of the other claims" as a "basis for dismissal." [Dkt. No 109 at 10.]

5    Defendants never make that argument. Rather, the Trustee alleged the *wrong* claim. The proper

6    claim in these circumstances is one for quantum meruit, not declaratory relief (although the

7    quantum meruit claim would still ultimately be subject to dismissal on a 12(b)(6) or anti-SLAPP

8    motion. The Trustee instead used a declaratory relief claim to allege a pseudo quantum meruit

9    claim, presumably because an actual quantum meruit claim would have been even more obviously

10   unripe. If the Trustee believed his claims were ripe, he should have filed a quantum meruit claim.

11   The law is clear that "[a] claim for declaratory relief is unnecessary where an adequate remedy

12   exists under some other cause of action" and courts will in fact dismiss such declaratory relief

13   claims. Mangindin v. Washington Mut. Bank, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009).

### 2.  The Trustee Cannot Sue X-Law for Quantum Meruit.

15       The Trustee appears to be arguing that X-Law could be liable under some unarticulated

16   claim. [Dkt. No. 109 at 10-11.] Whatever that claim is, it has not been alleged in the Amended

17   Complaint. The Trustee appears to be alleging a Jewel claim, where "in the absence of a partnership

18   agreement, the Uniform Partnership Act requires that attorneys' fees received on cases in progress

19   upon dissolution of a law partnership are to be shared by the former partners according to their right

20   to fees in the former partnership, regardless of which former partner provides legal services in the

21   case after the dissolution." Jewel v. Boxer, 156 Cal. App. 3d 171, 174, 203 Cal. Rptr. 13, 15 (Ct.

22   App. 1984)

23       "Generally, a partnership connotes co-ownership in partnership property, with a sharing in

24   the profits and losses of a continuing business." Chambers v. Kay, 29 Cal. 4th 142, 150–51, 56 P.3d

25   645, 650–51 (2002). The Trustee does not allege that Marchino had any ownership interest in EA.

26   The allegation that Marchino was an EA partner does not suffice, because in the context of law

27   firms, a partner is also a label used for a senior employee. See PCO, Inc. v. Christensen, Miller,

28   Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 389 n. 4, 58 Cal. Rptr. 3d 516,

1    520 (2007). Nor does the Trustee allege that Marchino was *still* a partner at the time of any

2    purported dissolution. In addition, the Trustee does not actually allege that EA has dissolved for the

3    purposes of making the claim. Dissolution only occurs following one of a specified list of events,

4    set by statute and neither receivership nor bankruptcy are mentioned. Cal. Corp. Code § 16801.

5        The continued exitance of Jewel claims in California is dubious at best. The substantive law

6    of partnerships has changed since Jewel, and the California Supreme Court has recently rejected

7    the applicability of Jewel claims to hourly matters on public policy grounds, recognizing that they

8    interfere with a clients' choice of counsel. Heller Ehrman LLP v. Davis Wright Tremaine LLP, 4

9    Cal. 5th 467, 473, 475, 484, 411 P.3d 548, 558, 552-53 (2018). The same rationale would apply to

10   Jewel claims for contingency cases. The rule stated in Jewel was incredibly harsh with regards to

11   how contingent fees should be split among partners following dissolution.  Fees must be split not

12   using the relatively fair rule stated in Fracasse, but rather the court must "allocate such income to

13   the former partners of the old firm in accordance with their respective percentage interests in the

14   former partnership." Jewel, 156 Cal. App. 3d at 176, 180.  Thus, if a departing partner had a small

15   equity interest in his prior firm, he would only be entitled to a small portion of the contingent fee,

16   even if he departed with the case immediately after its inception and would be required to spend

17   years litigating the case through trial.  This would deter partners from agreeing to continue to

18   represent clients.

19       With regards to the declaratory relief claim that the Trustee *did* allege, the Trustee has

20   chosen to pursue a quantum meruit theory. The Trustee purposefully misstates to this Court that

21   "Defendants make the false representation to this Court that a 'valid lien' is a prerequisite for a

22   quantum meruit claim." [Dkt. No. 109 at 11.] Defendants never state that, however. To the contrary,

23   the portion of the anti-SLAPP motion that the Trustee has cited is merely an explanation of the fact

24   that the Trustee does not have any valid liens. [See Dkt. No. 190 at 11(citing "MTD, pp. 23:23 –

25   26:13").] Defendants do not dispute in their motion that it is possible for former counsel to assert a

26   claim against the former *client* in the appropriate circumstances even if no lien exists. The absence

27   of a valid lien is significant however, because it precludes any liability against X-Law for

28   disregarding a lien or other similar theories and defeats all of the Trustee's claims for declaratory

10

1    relief. [Dkt. No. 100 at 23.] <u>Olsen v. Harbison</u> is directly on point here. <u>See</u> 191 Cal. App. 4th 325,

2    119 Cal. Rptr. 3d 460 (2010). There, a client fired their counsel and retained new counsel. <u>Id.</u> at

3    328. After the case settled, former counsel sued successor counsel for quantum meruit, alleging that

4    successor counsel had failed to provide him with any of the attorneys' fees and that the successor

5    counsel had been unjustly enriched. The Court of Appeal explained that "Under these

6    circumstances, plaintiff might be entitled to quantum meruit—from the client. Instead, he sought to

7    recover the value of services rendered from defendant [successor counsel]. There is no basis for

8    such a claim, and the trial court properly sustained defendant's demurrer to this cause of action."

9    <u>Id.</u> at 332. The lien is the mechanism that permits successor counsel to be sued. <u>See</u> Ellen R. Peck,

10   and Kevin E. Mohr, California Practice Guide: Professional Responsibility ¶ 5:799 (2019) ("If a

11   client switches lawyers prior to judgment or settlement, the discharged attorney may enforce a

12   contractual lien against successor counsel.").

13        "Without an enforceable lien, plaintiff cannot prove that he has a right to a portion of the

14   settlement money." <u>Mojtahedi v. Vargas</u>, 228 Cal. App. 4th 974, 977, 176 Cal. Rptr. 3d 313, 315

15   (2014). "The attorney's lien is only enforceable after the attorney adjudicates the value and validity

16   of the lien in a separate action against his client." <u>Id.</u> at 978. In order to sue successor counsel, the

17   prior counsel must "allege facts establishing that he adjudicated the existence, value, [and]

18   enforceability of his lien." <u>Id.</u> When this procedure has not been complied with, an extremely broad

19   variety of claims are precluded. <u>See id.</u> at 976 (affirming dismissal of complaint for claims for

20   "fraud, violation of Commercial Code sections 3110(d) and 3420, negligence, and tortious

21   interference with prospective economic advantage" because former counsel had "failed to establish

22   the existence, amount, and enforceability of his lien on the settlement money"); <u>cf.</u> <u>In re Bailey</u>,

23   197 F.3d 997, 1002 (9th Cir. 1999) (where predecessor counsel's contract was void, there could be

24   no valid lien and successor counsel could not have committed conversion); <u>Matter of Respondent</u>

25   <u>H</u>, No. 89-O-11979, 1992 WL 348560, at *9 (Cal. Bar Ct. Nov. 13, 1992) (attorney could not be

26   disciplined for failing to keep in trust the amount of fees due to former counsel while knowing of

27   "lien" claim when there was not adequate proof that the lien in fact existed).

28        The Trustee attempts to argue that <u>Mojtahedi</u> is inapplicable because it did not involve a

                                         11

1    claim for quantum meruit specifically. [Dkt. No 109 at 12.]  However, he fails to explain why a

2    quantum meruit claim would be available absent a lien when the numerous other claims in that case

3    could not be brought without first establishing the existence of the lien. <u>Mojtahedi</u>, 228 Cal. App.

4    4th at 977I. In any event, the Trustee does not discuss <u>Olsen</u> anywhere in his opposition and that

5    case clearly holds that former counsel cannot be sued for quantum meruit if there is not a lien. <u>See</u>

6    191 Cal. App. 4th at 328.

7          None of the cases the Trustee cites are former versus current attorney lawsuits; they simply

8    stand for the proposition that attorneys may at times recover a quantum meruit recovery *from their*

9    *clients* when their contracts are invalid. <u>See</u> <u>Trafton v. Youngblood</u>, 69 Cal. 2d 17, 26, 442 P.2d

10   648, 654 (1968); <u>Rosenberg v. Lawrence</u>, 10 Cal. 2d 590, 593, 75 P.2d 1082, 1084 (1938); <u>Spires</u>

11   <u>v. Am. Bus Lines</u>, 158 Cal. App. 3d 211, 216, 204 Cal. Rptr. 531, 533 (Ct. App. 1984).

12         The Trustee insists that "there is an open issue as to whether there exists a valid lien in this

13   case – especially with respect to Hernandez." [Dkt. No. 109 at 12.] Unfortunately for the Trustee,

14   that is not true, as this Court has found that there are not any valid liens. [Dkt. No. 94.] Because the

15   liens have been stricken, they do not exist. Although the Trustee may erroneously believe that he

16   can revive the liens in some way, he cannot bring claims based on them at this time because "[a]

17   claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as

18   anticipated, or indeed may not occur at all." <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998)

19   (quoting <u>Thomas v. Union Carbide Agricultural Products Co.</u>, 473 U.S. 568, 580–581 (1985)).

20         The Trustee attempts to argue that the cases Defendants cited are inapplicable because they

21   "do not involve cases seeking to bind a party to the agreement that he or she executed." [Dkt. No.

22   109 at 12.] The problem for the Trustee is that they all discuss scenarios where signatures of *all*

23   *parties* are necessary before they go into effect. This would necessarily include the scenario the

24   Trustee describes. In any event, The Court does not need to look at contract law to resolve this issue

25   when, under California law:

26         (a) An attorney who contracts to represent a client on a contingency fee basis shall, at the
     time the contract is entered into, ***provide a duplicate copy of the contract, signed by both the***

27   ***attorney and the client, or the client's guardian or representative, to the plaintiff, or to the***
     ***client's guardian or representative***.

28         ...

(b) ***Failure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff***, and the attorney shall thereupon be entitled to collect a reasonable fee.

Cal. Bus. & Prof. Code § 6147 (emphasis added). Hernandez, Le, and Young Blue have disputed the existence of the purported contracts that supposedly contain the lien provisions but, if such contracts *did* exist, they each have exercised their right to void their respective contracts as they never received copies of these purported contingent fee contracts, signed by both themselves and EA. [Dkt. No. 60-1. ¶ 8., Dkt. No. 60-3. ¶ 5, Dkt. No. 60-2. ¶ 6.] In fact, the Trustee could only locate two purported contracts, in the Ramirez and Le matters, and the Trustee admits that neither is signed by EA. [Dkt No. 60-4. Ex. 17.] The Trustee merely states that "it is alleged that the retainer that has been executed by the client – and presumably discovery will show that the client received an executed copy of the retainer." [Dkt. No. 109 at 12.] However, the Trustee *does not allege in the Amended Complaint that the retainers were executed by EA.*

As the Court hinted at the prior hearing, the idea that the Trustee will somehow obtain retainer agreements executed by both EA and the Clients through discovery preposterous. As the Court asked the Trustee's counsel Mr. Hays:

> **THE COURT**: Do you think that clients ever write, ever produce or write retainers agreements and send them to the attorneys?
> **MR. HAYS**: No, your Honor.
> **THE COURT**: The attorneys send -- create them and send them to the clients, and then wait for the signatures back, right?
> **MR. HAYS**: That is correct.

[Dkt. No. 111, Marchino Decl. Ex. 5 at 7:19-8:1.] Obviously, the Clients, who have already denied receiving retainer agreements that were executed by EA, are not the ones who are going to have them. If they exist, they were in the custody of EA, and now available to the Trustee. The Trustee has apparently spent time perusing EA's computer server to look for Mr. Marchino's purported emails, so he certainly has had time to find the retainers in the months since the previous hearing. [Dkt. No. 109, Kellner Decl. ¶ 10.] The reality is that such agreements do not exist.

In the case of the Ramirez lien, the Trustee cannot negate Defendants' argument that under Cal. Fam. Code § 6602, the purported Ramirez lien is void because "[a] contract for attorney's fees for services in litigation, made by or on behalf of a minor, is void unless the contract is approved,

13

on petition by an interested person, by the court in which the litigation is pending or by the court having jurisdiction of the guardianship estate of the minor." [Dkt. No. 100 at 26-27.] Instead, the Trustee states that "since the Probate matter is still open (Kellner Decl, ¶ 39) – the Trustee still has the opportunity to obtain such approval." [Dkt. No. 109 at 13.] There are three problems with this. First, the purported contract is presently void, meaning that the lien is void as well. Second, the probate court is the wrong court.[1] Third, Ramirez is deceased. The Trustee fails to cite any case holding that approval may be obtained after the minor client has passed away.

### 3. The Claim Against the Ramirez Estate is Time Barred.

The Trustee asserts that the statute of limitations has been tolled by the filing of the bankruptcy. [Dkt. No. 109 at 13-14.] Unfortunately for the Trustee, "Code of Civil Procedure section 366.2 provides for an outside time limit of one year for filing any type of claim against a decedent." Dobler v. Arluk Med. Ctr. Indus. Grp., Inc., 89 Cal. App. 4th 530, 535, 107 Cal. Rptr. 2d 478 (2001). That state deadline applies in bankruptcy. Kapila v. Belotti (In re Pearlman), No. 6:07-BK-00761-KSJ, 2012 WL 2370389, at *3, 2012 Bankr. LEXIS 2858 (Bankr. M.D. Fla. June 18, 2012). The deadline to file suit was actually earlier.

"A timely filed claim is a condition precedent to filing an action against a decedent's estate." Id. at 346; Cal. Prob. Code § 9351 ("An action may not be commenced against a decedent's personal representative on a cause of action against the decedent unless a claim is first filed as provided in this part and the claim is rejected in whole or in part."). Here, the Trustee has failed to file a claim in probate court before initiating this lawsuit. The deadline to file a claim is, by default, "[f]our months after the date letters are first issued to a general personal representative." Cal. Prob. Code § 9100. Hernandez was appointed on May 30, 2019. [Marchino Decl Ex. 3.] The Trustee may assert lack of knowledge, but EA's receiver had filed and served a notice of lien on June 12, 2019. [Dkt. No. 67 Ex. 18.] Two entries before this in the register of action is the motion for leave to file a first amended complaint, which was filed by "Elba Hernandez, individually and as personal

---

[1] The Trustee also claims that the Hernandez settlement was structured "so that the Probate Court would not have the opportunity to review a fee request not only X-Law, but also the Trustee." [Dkt. No. 109 at 13.] However, the Trustee is unable to articulate why such a settlement is prohibited, or why the probate court would have the authority to review the "fee request."

1    representative and successor in interest to Andres Ramirez, deceased." [Dkt. No. 101 Ex. 1.] Thus,

2    by June 12, 2019, EA had knowledge that Ramirez was deceased and that the estate had been

3    opened and the Trustee has failed to petition the probate court to file a late claim "within 60 days

4    after the creditor has actual knowledge of the administration of the estate." Cal. Prob. Code §

5    9103(a)(1). Instead, the Trustee filed a probate claim (which is not a petition) on September 25,

6    2020. [Request for Judicial Notice Ex. 2.] Because the Trustee has failed to file a timely claim or

7    timely petition to file a late claim, his claim for relief against the Ramirez estate in this action is

8    time barred. More than 60 days have passed since the Trustee has filed his probate claim obviously

9    the Trustee had notice of administration of the estate at the time he filed the claim. The probate

10   court is also unable to allow a claim because the Ramirez passed away more than a year prior. See

11   Cal. Prob. Code § 9103(f) (forbidding probate court from allowing late claim outside of the one-

12   year period provided by Cal. Civ. Proc. Code § 366.2). 11 U.S.C. § 108 will not save him. See

13   Spears Carpet Mills, Inc. v. Century Nat. Bank of New Orleans, 85 B.R. 86, 88 (W.D. Ark. 1988)

14   (deadlines that serve as condition precedents to bringing state law claims are not extended by 11

15   U.S.C. §108(a)). The ultimate consequence of this is that the Court must dismiss the adversary

16   proceeding. Kapila v. Belotti (In re Pearlman), No. 6:07-BK-00761-KSJ, 2012 WL 2370389, at *3,

17   2012 Bankr. LEXIS 2858 (Bankr. M.D. Fla. June 18, 2012) ("The trustee did not file the fraudulent

18   conveyance action against any defendant's probate estate within the [California Probate Code's]

19   one-year time limit, and now is forever barred from bringing any claim against a beneficiary of the

20   estate. Defendants' motion to dismiss is granted. This adversary proceeding is dismissed with

21   prejudice.")

22        The Trustee, without support, states that "the Estate of Ramirez is the successor-in-interest

23   to the representation that had been provided by Ms. Hernandez as the guardian ad litem for Mr.

24   Ramirez while he lived. The representation inured to the Ramirez Estate's benefit – entitling EA to

25   all of the rights under Cal. Probate Code §§ 2644, 2647, and 3601." [Dkt. No. 109 at 13-14.] This

26   argument is totally incoherent because none of the statutes are remotely applicable here.

27        Probate Code § 2644 and 2647 are found in "Chapter 8. Compensation of Guardian,

28   Conservator, and Attorney" of "Part 4. Provisions Common to Guardianship and Conservatorship"

15

of "Division 4. Guardianship, Conservatorship, and Other Protective Proceedings" of the Probate

Code. Probate Code § 2644 states that

> (a) Where it is to the advantage, benefit, and best interest of the ward or conservatee or the estate, the guardian or conservator of the estate may contract with an attorney for a contingent fee for the attorney's services in representing the ward or conservatee or the estate in connection with a matter that is of a type that is customarily the subject of a contingent fee contract, but such a contract is valid only if (1) the contract is made pursuant to an order of the court authorizing the guardian or conservator to execute the contract or (2) the contract is approved by order of the court.
>
> (b) To obtain an order under this section, the guardian or conservator shall file a petition with the court showing the advantage, benefit, and best interest to the ward or conservatee or the estate of the contingent fee contract. A copy of the contingent fee contract shall be attached to the petition.

Cal. Prob. Code § 2644 (West)

Probate Code § 2647 states that

> No attorney fees may be paid from the estate of the ward or conservatee without prior court order. The estate of the ward or conservatee is not obligated to pay attorney fees established by any engagement agreement or other contract until it has been approved by the court. This does not preclude an award of fees by the court pursuant to this chapter even if the contractual obligations are unenforceable pursuant to this section.

Cal. Prob. Code § 2647. These two sections are completely irrelevant, and the Trustee does not

even attempt to explain what they have to do with EA's representation of Ramirez before he passed

away. The Trustee does not claim that Ramirez was involved in a wardship or conservatorship

proceeding, much less that EA served as counsel in one. The Trustee seemingly is purposefully

trying to misguide this Court.

Additionally, there was no need for Ramirez to have a conservator or guardian appointed

because courts appoint a guardian ad litem in the pending action under Cal. Civ. Proc. Code §

372(a)(1). Cal. Civ. Proc. Code § 372(a)(1) ("When a minor, a person who lacks legal capacity to

make decisions, or a person for whom a conservator has been appointed is a party, that person shall

appear either by a guardian or conservator of the estate or by a guardian ad litem appointed by the

court in which the action or proceeding is pending, or by a judge thereof, in each case.") This section

makes clear that a guardian ad litem is neither a conservator nor a guardian. In addition, EA failed

to formally request that Hernandez be appointed guardian ad litem. [Dkt. No. 32 Ex. 1 and 3]

Cal. Prob. Code § 3601 provides for "[t]he court making the order or giving the judgment

referred to in Section 3600" to reimburse attorneys' fees "from the money or other property to be paid or delivered for the benefit of the minor or person with a disability." Cal. Prob. Code § 3600 states:

> This chapter applies whenever both of the following conditions exist:
>   (a) A court (1) approves a compromise of, or the execution of a covenant not to sue on or a covenant not to enforce judgment on, a minor's disputed claim, (2) approves a compromise of a pending action or proceeding to which a minor or person with a disability is a party, or (3) gives judgment for a minor or person with a disability.
>   (b) The compromise, covenant, or judgment provides for the payment or delivery of money or other property for the benefit of the minor or person with a disability.

Because Ramirez has passed away, the survival claims will never, and could never be settled in a manner that meet the requirements of Probate Code § 3600.

The Trustee argues that "Defendants . . . claim that Ms. Hernandez was not the party to the attorney-client relationship with EA in her individual capacity (and, hence, EA's quantum meruit claims could only be applied to the Estate of Ramirez). This argument fails because: (a) it is alleged that Ms. Hernandez's claims are solely derivative as the sole heir of Mr. Ramirez; and (b) she actually signed the retainer and was an intended beneficiary of the services for purposes of *quantum meruit*." [Dkt. No. 109 at 14.] Once again, the Trustee is incorrect. First, if the Trustee is in fact alleging that Hernandez's claims are "*solely* derivative as the sole heir" (emphasis added), then they cannot be based on an intended beneficiary theory.

Second, <u>Valentine v. Read</u>, the case that the Trustee claims holds that "a beneficiary of an estate remains liable (to the extent of the distribution) for *quantum meruit* expenses associated with the distribution" says nothing of the sort. 50 Cal. App. 4th 787, 57 Cal. Rptr. 2d 836 (1996). Rather, the holding in that case is limited to the law of trusts, where "unlike probate administration, trust creditor claims proceedings are not mandatory." <u>Id.</u> at 792.

> If there is neither a probate proceeding nor a trust creditor claims proceeding, "the liability of the trust to any creditor of the deceased settlor shall be as otherwise provided by law." (§ 19008.) Furthermore, trust beneficiaries who have received distributions from the trust under these circumstances are exposed to personal liability. (§ 19400.) Such distributees "may assert any defenses, cross-complaints, or setoffs that would have been available to the deceased settlor if the settlor had not died." (§ 19402, subd. (a).) Their liability is limited to amounts that cannot be satisfied out of the trust estate, and to a pro rata portion of the creditor's claim based on the proportion their distribution bears to the total distributions from the trust estate. (§ 19402, subd. (b).)

17

<u>Id.</u> at 793. What the Trustee ignores is that there is an entirely different rule in probate:

> Subject to subdivision (b), a person to whom property is distributed is personally liable for the claim of a creditor, without a claim first having been filed, if all of the following conditions are satisfied:
>
> (1) The identity of the creditor was known to, or reasonably ascertainable by, a general personal representative within four months after the date letters were first issued to the personal representative, and the claim of the creditor was not merely conjectural.
>
> (2) Notice of administration of the estate was not given to the creditor under Chapter 2 (commencing with Section 9050) and neither the creditor nor the attorney representing the creditor in the matter has actual knowledge of the administration of the estate before the time the court made an order for final distribution of the property.
>
> (3) The statute of limitations applicable to the claim under Section 366.2 of the Code of Civil Procedure has not expired at the time of commencement of an action under this section.

Cal. Prob. Code § 9392(a). The Trustee cannot meet these requirements because the Trustee obviously has knowledge of the administration of the estate before an order for final distribution of the property (which has not yet occurred). Moreover, "[p]ersonal liability under this section for all claims of all creditors shall not exceed the value of the property distributed to the person out of the estate." Cal. Prob. Code § 9392(b). Because the Ramirez estate has not had any recovery, Hernandez could not possibly have any liability.

Third, the Trustee cannot argue that Hernandez has any liability because "she actually signed the retainer and was an intended beneficiary of the services for purposes of *quantum meruit*." [Dkt. No. 109 at 14.] The Trustee acknowledges Hernandez was solely the guardian ad litem for Ramirez. [Dkt. No. 109 at 14.] As such, Hernandez was acting as his agent. See <u>Cruz v. Superior Court</u>, 121 Cal. App. 4th 646, 651–52, 17 Cal. Rptr. 3d 368, 371–72 (2004). It is a basic rule of agency law that "[i]t is presumed, in the absence of an agreement otherwise, that an agent who contracts for a disclosed principal intends to bind only the principal and not to incur a personal liability. Thus, the agent will not ordinarily be held personally liable except on clear and explicit evidence of an intention to substitute his or her personal liability for that of the principal or to add his or her personal liability to that of the principal." 2B Cal. Jur. 3d Agency. None of the extremely limited exceptions that impose personal liability on the agent are available here:

AGENT'S RESPONSIBILITY TO THIRD PERSONS. One who assumes to act as an agent is responsible to third persons as a principal for his acts in the course of his agency, in any of the

following cases, and in no others:

    1. When, with his consent, credit is given to him personally in a transaction;

    2. When he enters into a written contract in the name of his principal, without believing, in good faith, that he has authority to do so; or,

    3. When his acts are wrongful in their nature.

Cal. Civ. Code § 2343. To be clear, "wrongful" means tortious. <u>Peredia v. HR Mobile Servs., Inc.</u>, 25 Cal. App. 5th 680, 693, 236 Cal. Rptr. 3d 157, 167 (2018). Quantum meruit claims are not torts. <u>See</u> <u>Drake v. Toyota Motor Corp.</u>, No. 2:20-CV-01421-SB-PLA, 2020 WL 7040125, at *13 (C.D. Cal. Nov. 23, 2020) (explaining that unjust enrichment is not a tort); <u>Fed. Deposit Ins. Corp. v. Dintino</u>, 167 Cal. App. 4th 333, 346, 84 Cal. Rptr. 3d 38, 49 (2008) (quantum meruit and unjust enrichment are the same).

      The purported Ramirez retainer agreement and draft retainer agreement both identify Hernandez as signing in her capacity as guardian ad litem for Ramirez. [Dkt. No. 74 at Ex. 4; Dkt. No. 4 Reitman Decl. at Ex. 15, Ex. 16.] Therefore, Hernandez did not enter into any implied agreement with EA in her personal capacity and is not responsible for paying EA fees arising out of the <u>Ramirez</u> litigation.

      Nor could EA have provided services to Hernandez for her own benefit while she was guardian ad litem for Ramirez as her personal claims came into existence only after the alleged implied agreement for legal services ended with Ramirez's passing.

      "A person who, incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution." <u>Dinosaur Dev., Inc. v. White</u>, 216 Cal. App. 3d 1310, 1315, 265 Cal. Rptr. 525, 528 (Ct. App. 1989) (quoting Restatement of Restitution § 106). "The burden is on the person making the quantum meruit claim to show the value of his or her services and that they were rendered at the request of the person to be charged. Allowing an attorney to recover the reasonable value of his or her services from a client is premised on the services being requested by the client." <u>Strong v. Beydoun</u>, 166 Cal. App. 4th 1398, 1404, 83 Cal. Rptr. 3d 632, 635–36 (2008) (citation omitted). What this means is that "[t]he client is not liable for quantum meruit fees to a lawyer with whom he or she did not contract and whose services the client did not request." Mark L. Tuft et al.,

California Practice Guide: Professional Responsibility ¶ 5:466.2a (The Rutter Group 2019). Hernandez did not request EA's services in her personal capacity, but as the guardian ad litem of Ramirez. The Trustee may believe that Hernandez benefited from the legal services EA provided, but EA was providing services to Ramirez, *not Hernandez,* and she did not become liable under a quantum meruit theory by virtue of obtaining some purported benefit in the process of EA representing Ramirez.  Hernandez had no claim until after Ramirez passed away, and he did not pass away until 9 months after EA was no longer involved in his case. See Baxter v. Superior Court, 19 Cal. 3d 461, 466, 563 P.2d 871 (1977) (declining to recognize loss of consortium claims brought by parents). Finally, "mere retention and use of the benefit resulting from the work where the recipient was not free to elect whether or not to accept or where that election could not influence the conduct of the other party with reference to the work performed." 55 Cal. Jur. 3d Restitution § 53. Hernandez could not somehow reject the purported incidental benefit she supposedly received from EA while it worked on her son's case.

### 4.    The Trustee Has Failed to State a Claim for Violation of Automatic Stay and Turnover.

Defendants do not dispute that EA's bankruptcy estate owns any claim for fees that EA had. But that does not mean that the Trustee can use the turnover provisions of the bankruptcy code to enforce a money judgment obtained on account of that claim for fees.  Turnover is not a money judgment enforcement mechanism.

The Trustee's violation of automatic stay and turnover argument is somewhat confusing. The Trustee states that he "only seeks turnover to the extent that any entitlement to fees is determined to be Estate property." [Dkt. No. 109 at 14-15.] If that is the case, the Trustee's claim fails because his other claims fail. However, it appears that, in actuality, the Trustee is seeking to obtain relief when he would not be able to under his other claims. The rule is that "a trustee may seek turnover only of estate property." In re Cogliano, 355 B.R. 792, 804 (B.A.P. 9th Cir. 2006). What is the estate's property is a question of California law. In re Costas, 555 F.3d 790, 793 (9th Cir. 2009). "[T]urnover is not intended as a remedy to determine disputed rights of parties to property; rather, it is intended to obtain what is acknowledged to belong to the bankruptcy estate."

1    <u>Glassey v. Amano Corp.</u>, No. C-05-01604RMW, 2006 WL 889519, at *4 (N.D. Cal. Mar. 31,

2    2006), <u>aff'd</u>, 285 F. App'x 426 (9th Cir. 2008). "Turnover proceedings are not to be used to liquidate

3    disputed contract claims....Clearly, Congress envisioned the turnover provision of [Section] 542 of

4    the Code ... to apply to tangible property and money due to the debtor without dispute which are

5    fully matured and payable on demand." <u>In re Even St. Prods. Ltd.</u>, No. LACV 17-1756 JGB, 2020

6    WL 4559511, at *8 (C.D. Cal. Aug. 6, 2020) (quoting <u>In re Charter Co.</u>, 913 F.2d 1575, 1579 (11th

7    Cir. 1990)). Courts do in fact dismiss turnover claims on this basis. <u>See</u> <u>In re Conex Holdings, LLC</u>,

8    518      B.R.      792,      801-03      (Bankr.      D.      Del.      2014);

9    1 Bankruptcy Litigation § 5:48 ("A motion to dismiss a turnover claim was granted where debtor's

10   claims were unliquidated and disputed").

11          The Trustee, unable to explain how the stay was violated, merely points to 11 U.S.C. §

12   362(a)(3), which simply states that the automatic stay applies to "any act to obtain possession of

13   property of the estate or of property from the estate or to exercise control over property of the

14   estate." But this begs the question, what was the act to obtain possession? As Defendants point out

15   in their anti-SLAPP motion and elsewhere in this brief, Hernandez was never a client of EA. If

16   Ramirez never obtained a recovery, then the EA estate never had any property (putting aside that

17   any purported interest is unliquidated). The Trustee is *still* unable to explain how this works. That

18   is not surprising because the Trustee would be forced to argue that the Trustee ultimately has a say

19   in the settlement of claims of EA's former clients, a notion that is utterly alien to the American legal

20   system[2]. In addition, this theory would require the Trustee to abandon his theory that EA is entitled

21   to fees from the portion of the Ramirez settlement that is paid for Hernandez's wrongful death

22   claims. The Trustee's "simple syllogism" only states that "Defendants, during the pendency of the

23   bankruptcy case, sought to eliminate (i.e. destroy) the bankruptcy estate's right to compensation

24   through its self-dealing with Mr. Avenatti." [Dkt. No 109 at 17.] However, that basis is found

25   nowhere in the violation of automatic stay claim in the amended complaint and appears to be the

26   _____

27   [2] Notably, this is exactly what the Trustee did in the Young Blue matter and greatly damaged the
     former client of EA who not only wasn't able to consummate an almost certain settlement, but
28   was also forced to initiate a second piece of litigation against the underlying defendant.

1    Trustee's voidable transfer argument. [Dkt. No. 92 at ¶¶ 108-116.] In any event, Defendants address

2    why the voidable transfer argument fails in the respective section of their anti-SLAPP motion and

3    this reply. [Dkt. No. 100 at 32-34.]

4           **5.   The Trustee Has Failed to State a Claim for Voidable Transfer.**

5           The Trustee's voidable transfer claim is logically incoherent. [Dkt. No. 92 at ¶¶ 117-132.]

6    His attempt to defend the claim is even more so. [Dkt. No. 109 17-20.] Defendants have noted the

7    Trustee's failure to plead fraud with particularity, but the Trustee fails to provide any more in his

8    opposition. [Dkt. No. 96 at 19-20.]

9           The fatal deficiencies of the fraudulent transfer claim can be posed as three questions:    1)

10   what is the transfer?, 2) who is the transferee?, and 3) what are the damages?

11          As best Defendants can determine, there are three possible purported transfers that are

12   alleged here:[3] the transfer of the Ramirez case or client from EA to X-Law, the waiver of fees in

13   the Ramirez case, and the structuring of the settlement of the Ramirez case in a manner that resulted

14   in Hernandez receiving a recovery and the estate of Ramirez not receiving any net recovery.

15          The Trustee now states that "is not contending that it was improper for Marchino to continue

16   to represent Hernandez at X-Law." [Dkt. No. 109 at 19.] Whether that means that the Trustee

17   concedes that a transfer of a case or client cannot be a fraudulent transfer is unclear. However, as

18   Defendants noted in the anti-SLAPP motion, the law is clear that the answer is no. Fracasse v.

19   Brent, 6 Cal. 3d 784, 790, 494 P.2d 9, 13 (1972) ("It has long been recognized in this state that the

20   client's power to discharge an attorney, with or without cause, is absolute."); Heller Ehrman LLP

21   v. Davis Wright Tremaine LLP, 4 Cal. 5th 467, 471, 411 P.3d 548 (2018) (holding that a law firm

22   could not have a property interest in ongoing matters because that "would also risk impinging on

23   the client's right to discharge an attorney at will."

24          The Trustee's discussion of Heller Ehrman LLP seems purposefully misleading. Defendants

25   only relied on it for the more basic premise that California law would not permit a law firm to be

26    

27         _____

28   [3] The Trustee does mention a "separate agreement that transferred many of [the] other assets of EA to X-Law and/or Marchino," but his avoidance claim is related only to fees in the Ramirez litigation.

sued *specifically for receiving a case or client, because California courts recognize that such a lawsuit would impinge on the ability of clients to be represented by counsel of their choice*. Heller Ehrman LLP itself addressed only Jewel waivers, which are waivers of claims the former law firm may have against former partners to seek fees generated on work done after the partners have left the firm. See Heller Ehrman LLP, at 472. To be clear, the Trustee is not alleging in this portion of his opposition brief that the purported fraudulent transfer was a Jewel waiver, or that the case's namesake, Jewel v. Boxer, 156 Cal. App. 3d 171 (Ct. App. 1984), has any applicability here. Second, as the California Supreme Court recognized, the relevant California substantive law had changed subsequent to the cases the Trustee refers to and that "no California court has, in a published opinion, resolved whether there remains a basis for holding that a partnership has a property interest in legal matters pending at a firm's dissolution." Id. at 475.

The second possible transfer is the waiver of fees in the Ramirez case. However, the transferee for that transfer would be *Ramirez*, not X-Law. Although the Trustee now argues that there was a "conspiracy between X-Law/Marchino and Avenatti to strip any right that EA might have for fees", the Amended Complaint only states that "Michael Avenatti thereafter entered an agreement with Marchino and EA where the Hernandez case was transferred to Marchino's firm (X-Law) and EA waived its right to fees in the Hernandez case. [Dkt. No. 92 at ¶ 122; Dkt. No. 109 at 20.] The Trustee makes no allegation that *X-Law* participated in the waiver of the fees. To the contrary, the waiver letter clearly states that "We want to inform you [the client – Andres Ramirez] that given the limited amount of time we worked on your case, **Eagan Avenatti will not seek to recover fees from any recovery you may ultimately receive.**" [Dkt. No. 76 Ex. 1, emphasis added.] The letter was signed by Avenatti and on EA letterhead, and addressed to Ramirez himself and not even X-Law. [Id.] It is clear from the letter that EA acted unilaterally, and that X-Law had no involvement in this decision by EA.

The Trustee has another problem with imposing liability on X-Law for this transfer: X-Law is not the transferee; *Ramirez* is. To be clear, the Trustee is not alleging that X-Law entered into a conspiracy with Ramirez (or Hernandez for that matter). The Trustee is alleging a conspiracy with EA or Avenatti. The Trustee attempts to argue that "the key allegation is that the "agreement" to

23

waive fees was a fraudulent transfer without regard to Marchino's participation in such fraud", but in so doing, the Trustee ignores the absence of an allegation that X-Law was the recipient of the waiver.

The law is clear that a voidable transfer claim is alleged against the recipient. See CACI 4200, 4202 (each require showing that "That [*debtor*] [transferred property . . . to [*defendant*]. Similarly, under the dominion or control test, the transferee would be the *client*, not X-Law. See In re Bullion Reserve of N. Am., 922 F.2d 544, 549 (9th Cir. 1991). Any waived fees would have belonged to *Ramirez*. This is also clear from the way attorneys are required to treat settlement funds that they receive into their trust accounts. Former Rule 4-100(A)[4] of the California Rules of Professional Conduct, the rules in force at the time of EA's misconduct, explicitly states that:

> [A]ll funds received or held for the benefit of clients by a member or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable bank accounts labelled "Trust Account," "Client's Funds Account" or words of similar import. . . . No funds belonging to the member or the law firm shall be deposited therein or otherwise commingled therewith except as follows: . . . .
> (2) In the case of funds belonging in part to a client and in part presently or potentially to the member or the law firm, the portion belonging to the member or law firm must be withdrawn at the earliest reasonable time after the member's interest in that portion becomes fixed. However, when the right of the member or law firm to receive a portion of trust funds is disputed by the client, the disputed portion shall not be withdrawn until the dispute is finally resolved.

There are three basic methods that will result in fees becoming fixed:

- the *client expressly approves the attorney's interest* in a certain amount of the trust funds (e.g., by expressly approving a billing or an accounting of the funds setting forth the amount of fees earned by the attorney); *or*
- the *attorney and client agree* to the amount of the attorney's interest following a dispute; *or*
- the amount of the attorney's interest has been set forth in a *civil judgment, court order or binding arbitration award*.

Tuft, Peck & Mohr, California Practice Guide: Professional Responsibility ) ¶ 9:162.2 (The Rutter Group 2018 (original italics.) The attorney only gains dominion or control over the fees after the client assents or loses in litigation brought by the attorney. The problem for the Trustee, however,

_____

[4] Defendants believe the Rules in place at the time of the release apply, but current Rule 1.15 does not materially differ.

1    is that at least with regards to the portion of the <u>Ramirez</u> case that has settled, the Trustee will not

2    obtain a recovery because the estate did not obtain a recovery.

3         The third possibility is that the Trustee is alleging that the purported structuring of the Ramirez

4    settlement is the fraudulent transfer. [Dkt. No. 92 at ¶ 80, 97.] However, that would be a transfer

5    from the estate of Ramirez to Hernandez, not to X-Law and, in any event, such claims would be

6    barred by the litigation privilege for the reasons set forth in opposition to the Trustee's tortious

7    interference claims. [Dkt. No. 100 at 28-29.]

8         The Trustee characterizes Defendants' client abandonment argument as "spin", but he has

9    not contested that the Court may consider the September 18, 2018 letter because it was referenced

10   in the Amended Complaint on a 12(b)(6) standard, and it certainly may do so for the purposes of

11   the anti-SLAPP motion. [Dkt. No. 100 at 8, 32; Dkt. No. 109 at 20.] In effect, the Trustee asks the

12   Court to treat the contents of the letter as factually accurate for the purpose of his motion, while

13   simultaneously ignoring its contents for the purpose of the anti-SLAPP motion.

14        The Trustee does not dispute that that the Amended Complaint contains no allegations that

15   because EA waived its fees, X-Law received additional fees or that attorneys are not permitted to

16   draft their contingent fee agreements in a manner that X-Law would receive additional fees. Dkt.

17   No. 96 at 33; Mark L. Tuft, Ellen R. Peck, and Kevin E. Mohr, California Practice Guide:

18   Professional Responsibility ¶ 5:1060.1 (2019) (explaining scenario where successor counsel drafts

19   contingent fee in a manner that would not result in sharing contingent fee with predecessor counsel).

20   Again, this is crucial to the question of how X-Law, rather than Ramirez, could possibly be a

21   transferee. Instead, the Trustee argues that "it will be a question for a trier of fact as to whether

22   Hernandez would have accepted the continued representation of Marchino on her case (albeit at X-

23   Law, rather than EA) with a referral that did not increase her attorney fee obligations." [Dkt. No.

24   109 at 20.] However, what Hernandez (who was never EA's client) would have done on her case

25   (one that arose many months after EA abandoned Ramirez) would have done in some "but for"

26   world is irrelevant. The Trustee does not even make an attempt to explain its relevance.

27        Likewise, The Trustee notes that "when such permission was required – but not sought –

28   California courts have enforced referral obligations even in the absence of client approval." This is

a non sequitur. In any event, referring attorneys cannot use lawsuits to obtain referral fees that clients did not consent to. See Chambers v. Kay, 29 Cal. 4th 142, 155–56, 56 P.3d 645 (2002) ("Chambers, in effect, seeks the aid of this court in dividing the fees of a client without satisfaction of the rule's written consent requirement. We decline such aid."). The case the Trustee cites, Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler, involves a narrow exception to the requirement to comply with the client consent rule, but only for class actions. See 212 Cal. App. 4th 172, 186 (2012); Joseph Saveri Law Firm, Inc. v. Michael E. Criden, P.A., No. 14-CV-01740-EDL, 2015 WL 1029364, at *6 (N.D. Cal. Mar. 9, 2015) (explaining the limited scope of Barnes).

Finally, the Trustee does not dispute, and thereby implicitly concedes, that the Trustee must establish that the Trustee would have been able to recover fees but for the waiver. [Dkt. No. 96 at 34.] This can be articulated as Article III standing: "to establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548(2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 580 (1992)). There is also a requirement of injury under the UFTA. "Mere intent to delay or defraud is not sufficient; injury to the creditor must be shown affirmatively. In other words, prejudice to the plaintiff is essential. It cannot be said that a creditor has been injured unless the transfer puts beyond [his] reach property [he] otherwise would be able to subject to the payment of [his] debt." Fid. Nat'l Title Ins. Co. v. Schroeder, 179 Cal. App. 4th 834, 841, 101 Cal. Rptr. 3d 854, 859 (2009); In re First All. Mortg. Co., 298 B.R. 652, 665 (C.D. Cal. 2003), aff'd, 471 F.3d 977 (9th Cir. 2006). The Trustee cannot establish this for the same reasons that the declaratory relief claim regarding Ramirez fails.

### C. **The Claims Against the Clients Should Be Dismissed Because the Trustee Has Failed to Comply with the Mandatory Fee Arbitration Act.**

As is the case elsewhere, the Trustee does not dispute significant portions of Defendants' Mandatory Fee Arbitration Act ("MFA") argument. Specifically, the Trustee does not dispute that (1) he has not complied with the MFAA, (2) if the MFAA applies, Young Blue and Le would be able to invoke it, or (3), that if the MFAA does apply, the remedy for violation here is dismissal of

1    the claims against the Clients. California has created a dispute resolution procedure for "disputes

2    concerning fees, costs, or both, charged for professional services" by attorneys and law firms. Cal.

3    Bus. & Prof. Code § 6200(a). Rather, the Trustee primarily argues that the statute is simply

4    inapplicable in bankruptcy court and that Hernandez has somehow waived her right to invoke it.

5    Arbitration under the MFAA is "mandatory for an attorney if commenced by a client." Cal. Bus. &

6    Prof. Code § 6200.

7        First, the Trustee alleges that the MFAA is inapplicable because this is a "core proceeding."

8    [Dkt. No. 109 at 21.] This is simply false. Putting aside the deficiencies in the claims discussed in

9    the anti-SLAPP motion and above, the declaratory and injunctive relief claims alleged against the

10   Clients could just as easily have been filed in state court (a fact that is made especially obvious

11   when the Trustee attempts to rely on California substantive law on attorneys' fee disputes as the

12   basis for the claims). See In re Eastport Assocs., 935 F.2d 1071, 1077 (9th Cir. 1991). Bankruptcy

13   courts routinely determine that declaratory relief claims that seek a determination of rights under

14   prepetition contracts are noncore proceedings. See In re Temecula Valley Bancorp, Inc., 523 B.R.

15   210, 222 (C.D. Cal. 2014); Siegel v. F.D.I.C., No. CV 11-03969-RGK, 2011 WL 2883012, at *6

16   (C.D. Cal. July 15, 2011); Weinstein v. Kuhl, No. 18-CV-01351-HSG, 2018 WL 4904901, at *4

17   (N.D. Cal. Oct. 9, 2018). In sum, they are a classic example of a claim that "simply attempts to

18   augment the bankruptcy estate." Stern v. Marshall, 564 U.S. 462, 495 (2011). The authorities the

19   Trustee has cited do not hold otherwise. First, 28 U.S.C. § 158(a) on its face demonstrates the claims

20   are non-core.  Section 158(b)(2)(E) does not apply because turnover is not available for disputed

21   claims. Section 158(b)(2)(H) does not apply because the Trustee has not asserted any avoidance

22   claim against the Clients and to the extent he did, the claims would be Stern claims requiring non-

23   core treatment for arbitration purposes, as the Clients have not asserted claims against the Estate.

24   Finally, Section (b)(2)(K) applies only to claims to determine the validity, extent, or priority of

25   liens, which are not asserted in this action and could not be assaerted absent prior order of this Court

26   in accordance with the order striking the Estate's purpoted attorneys' liens filed in the Clients'

27   nonbankruptcy actions. If any claim against the Clients were core, this Court must still compel

28   arbitration, unless arbitration would conflict with the underlying purposes of the Bankrutpcy Code.

27

1    See <u>Kirkland v. Rund (In re EPD Inv. Co., LLC)</u>, 821 F.3d 1146, 1150 (9th Cir. 2016). The Trustee

2    points to no such conflict here.

3        The case the Trustee cites actually *hurts* his argument because it states that, "[i]n non-core

4    proceedings, the bankruptcy court generally does not have discretion to deny enforcement of a valid

5    prepetition arbitration agreement." <u>In re Thorpe Insulation Co.</u>, 671 F.3d 1011, 1021 (9th Cir.

6    2012).

7        The Trustee's waiver argument fares no better. Under the section of the MFAA that is

8    applicable here, the attorney must

9  
10  
11  
12  
> forward a written notice to the client prior to or at the time of service of summons or claim in an action against the client, or prior to or at the commencement of any other proceeding against the client under a contract between attorney and client which provides for an alternative to arbitration under this article, for recovery of fees, costs, or both. The written notice shall be in the form . . . shall include a statement of the client's right to arbitration under this article. Failure to give this notice shall be a ground for the dismissal of the action or other proceeding.

13    Cal. Bus. & Prof. Code § 6201(a). The Trustee cites <u>In re Mkt. Ctr. E. Retail Prop., Inc.</u>, No. 11-

14    09-11696 SA, 2011 WL 1100463 (Bankr. D.N.M. Mar. 22, 2011), <u>but fails to provide a pin cite for</u>

15    <u>the relevant section</u>. Presumably, that is because the case is entirely irrelevant here. That case

16    involved the *pre and post-petition* employment by *the debtor* of an attorney, who the court had

17    ruled was to be treated as employed by the estate as special counsel and who was entitled to submit

18    a claim for compensation for services rendered. <u>Id.</u> at *1. The Court determined, as it had to, that

19    "[a] determination of compensation in a bankruptcy case as an administrative claim is clearly a core

20    proceeding that needs to be decided by the bankruptcy court." <u>In re Mkt. Ctr. E. Retail Prop., Inc.</u>,

21    No. 11-09-11696 SA, 2011 WL 1100463, at *2 (Bankr. D.N.M. Mar. 22, 2011). Obviously, this is

22    not an administrative claim. Second, the *debtor* had initially submitted to the bankruptcy court an

23    application to employ the attorney. <u>Id.</u> at *1. The debtor also delayed an excessive amount of time

24    before invoking the MFAA, allowing the compensation issue to proceed through trial: "three

25    months after findings of fact were orally announced, four months after the trial, about eleven months

26    after Debtor filed its notice of withdrawal of the employment application, and sixteen months after

27    filing the employment application. <u>Id.</u> at *5.

28

The Trustee had until he served the Clients with the complaint to comply with § 6201(a). Up until that time, he had not violated it. As the docket reveals, service was effectuated on the Clients when the Trustee filed the Amended Complaint after they appeared (as the Trustee had served the summons on X-Law, but not the Clients) [Dkt. No. 92.]. Thus raising the MFAA violation in the anti-SLAPP motion, filed less than three weeks after the Trustee served the Clients, cannot be a waiver. Moreover, the MFAA violation is most logically asserted at the motion to dismiss stage. Wager v. Mirzayance, 67 Cal. App. 4th 1187, 1189, 79 Cal. Rptr. 2d 661 (1998) (affirming dismissal obtained through motion to dismiss). Under the MFAA, when the client *does* receive notice, a "request for arbitration shall be served and filed prior to the filing of an answer in the action or equivalent response in the other proceeding." Cal. Bus. & Prof. Code § 6201(b). It is appropriate to also assert the lack of notice before the filling of the answer, as the Clients have done. Such motions are often filed significantly later. See Huang v. Cheng, 66 Cal. App. 4th 1230, 1232, 78 Cal. Rptr. 2d 550 (1998) (motion seeking dismissal was filed at least "a few months" after defendants filed answer);

Finally, the Trustee argues that "because Hernandez claims that she never had an attorney-client relationship with EA – it is quite possible that this should be deemed as an implied waiver of any desire for arbitration." [Dkt. No. 109 at 21.] This argument is preposterous for several reasons. First, parties are explicitly permitted to plead in the alternative in an adversary proceeding and there is no requirement for the defenses to be consistent. See Fed. R. Bankr. P. 7008; Fed. R. Civ. P. 8(d). Thus, there is no contradiction for Hernandez to simultaneously state that she was never the client of EA while also seeking dismissal of the claims against her on the basis that the Trustee filed to comply with the MFAA. What is relevant here is that the Trustee obviously believes Hernandez is a former client of EA. He alleges as such (even though the allegation is preposterous). [Dkt. No. 92 at ¶ 6, 19, 21, 23.] If he believes that Hernandez in fact was EA's client, then he should have complied with the MFAA's requirements. Second, the Trustee is suing Hernandez "individually and as personal representative and successor in interest to Andres Ramirez, deceased." [Id. at ¶ 6.] Because Ramirez was EA's client, it is appropriate for Hernandez to step into the shoes of Ramirez and invoke the MFAA in her capacity "as personal representative and successor in interest."

29

## D. **The Trustee's Claims are Subject to the Anti-SLAPP Statute and Defendants are Entitled to Attorneys' Fees.**

The Trustee discusses whether his claims are subject to the anti-SLAPP statute at length. [Dkt. No. 109 at 21-30.] What is ultimately at stake here is whether Defendants are entitled to be compensated for the significant attorneys' fees incurred in defending themselves against the Trustee's meritless and logically and legally incoherent claims. The answer to that question is a clear and resounding yes.

First, Defendants are entitled to anti-SLAPP attorneys' fees even when the plaintiff voluntarily dismisses his claims after the anti-SLAPP motion has been filed. See Mireskandari v. Associated Newspapers, Ltd., 665 F. App'x 570, 571–72 (9th Cir. 2016) ("[T]he mere fact that Mireskandari has now dismissed the action does not affect ANL's right to recover appropriate fees"); eCash Techs., Inc. v. Guagliardo, 127 F. Supp. 2d 1069, 1084 (C.D. Cal. 2000), aff'd, 35 F. App'x 498 (9th Cir. 2002) (explaining that "when a voluntary dismissal follows the filing of a motion to strike, there is a 'presumption' that the moving party is the 'prevailing party.'"); Robinson v. Alameda Cty., 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012); Sylmar Air Conditioning v. Pueblo Contracting Servs., Inc., 122 Cal. App. 4th 1049, 1054, 18 Cal. Rptr. 3d 882, 885–86 (2004) ("It is settled that a plaintiff may not avoid liability for attorney fees costs by voluntarily *dismissing* a cause of action to which a SLAPP motion is directed") (emphasis in original). Therefore, Defendants are entitled to fees because the Trustee is abandoning his claims against Young Blue and Le, and several claims that have been asserted against X-Law.

Second, the Trustee's remaining state law claims do fall within the scope of the anti-SLAPP statute. The legislature instructed courts that the anti-SLAPP statute "shall be construed broadly." Cal. Civ. Proc. Code § 425.16(a). The Trustee now attempts to avoid the statute's broad reach by claiming that significant portions of his complaint and the allegations in individual claims are completely unnecessary. However, what the Trustee now identifies as the gravamen of his claims would never survive a 12(b)(6) motion because he omits essential elements of the claims. Courts do not permit plaintiffs to distance themselves from their own allegations in such a manner. C.f. Comstock v. Aber, 212 Cal. App. 4th 931, 942, 151 Cal. Rptr. 3d 589, 598 (2012). In determining

30

1    whether a claim falls within the anti-SLAPP statute, Courts can use a "but for" test and ask whether

2    but for the protected activity, the defendant would have a reason to bring a claim against the

3    defendant.  Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 598 (9th Cir. 2010)

4    As Defendants have previously indicated, preliminary injunction is not a cause of action.

5    [Dkt. No. 100 at 22.] Nevertheless, what the Trustee seeks is an asset freeze preliminary injunction,

6    which means that there are a number of particular elements that must be met. "A party seeking an

7    asset freeze must show a *likelihood* of dissipation of the claimed assets, or other inability to recover

8    monetary damages, if relief is not granted." Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir.

9    2009) (emphasis added). "It is critical that the finding of a likelihood of irreparable injury be

10   grounded in facts revealing that the party to be restrained will likely seek to dissipate or secret

11   assets. Otherwise, absent such a showing, any plaintiff could prevail upon this Court to freeze the

12   assets of any defendant against whom damages were sought." Total Access Payments, Inc. v.

13   Maximum Bus. Innovations, Inc., No. CV 10-5475-GHK (RCX), 2010 WL 11552998, at *3 (C.D.

14   Cal. July 29, 2010). The various allegations that Defendants previously identified are not mere

15   evidence that substantiate the Trustee's claim; without them, the Trustee would not *have* a claim.

16   [Dkt. No. 100 at 12-13.] What the Trustee considers to be the gravamen of the claim is not sufficient

17   to obtain a preliminary injunction. [Dkt. No. 109 at 24.]

18   Declaratory relief claims require an "actual controversy". See 28 U.S.C. § 2201; Cal. Civ.

19   Proc. Code § 1060. The Trustee himself alleges one exists, as he must to bring a declaratory relief

20   claim. [Dkt. No. 92 at ¶ 63.] The allegations necessary to create the controversy are that X-Law

21   have "disavowed" the purported lien, and refused to pay the Trustee, and stated that there was no

22   recovery in Ramirez. [Id. at 62.] As Defendants' previously explained, such claims fall within the

23   scope of the anti-SLAPP statute. [Dkt. No. 100 at 11-13.] Courts routinely find that declaratory

24   relief claims prompted by the opposing party engaging in protected speech fall within the scope of

25   the anti-SLAPP statute. See Levy v. City of Santa Monica, 114 Cal. App. 4th 1252, 1259, 8 Cal.

26   Rptr. 3d 507, 513 (2004) (claim for declaration that a playhouse conforms with zoning ordinance

27   after neighbor contacted council member, who in turn contacted planning staff about it); Country

28   Side Villas Homeowners Assn. v. Ivie, 193 Cal. App. 4th 1110, 1117, 123 Cal. Rptr. 3d 251, 257

31

1    (2011) (declaration regarding homeowners' associations' governing documents sought against

2    homeowner who criticized board).

3        The Trustee now states that "the Trustee is not claiming that X-Law had no right to represent

4    Hernandez", but as is noted above, the transfer of case or client is the only transfer to X-Law. [Dkt.

5    No. 109 at 25.] Nevertheless, the Trustee repeatedly referred to the transfer in conjunction with the

6    waiver when discussing the elements of voidable transfer. [Dkt. No. 92 at ¶¶ 122-130.]

7        In addition, the Court must also consider earlier allegations that are incorporated in later

8    portions of the Amended Complaint. See Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC,

9    No. CV119514PSGJCGX, 2013 WL 12123772, at *10 (C.D. Cal. Feb. 26, 2013). That would

10    include the structuring of the settlement allegations that appear earlier and are in the claims that the

11    Trustee has now abandoned, presumably because he cannot dispute the fact that the two tortious

12    interference claims fall within the scope of the anti-SLAPP statute. [Dkt. No. 92 at ¶ 80, 97.]

13    However, allegations about the impropriety of the Ramirez settlement are necessary for *all* of the

14    claims, because seeking some sort of damages or relief relating to the structuring of the settlement,

15    the Trustee is left with claims that are worthless.

16        The Trustee attempts to argue that this case is more like Drell v. Cohen than O&C Creditors

17    Group LLC v. Stephens & Stephens XII, LLC. [Dkt. No. 109 at 22-23.] However, as the Court in

18    O&C explained,

19           In rejecting Cohen's argument, the *Drell* court explained: "Defendants are correct that
a demand letter may be protected, but a complaint is not a SLAPP suit unless the gravamen

20    of the complaint is that defendants acted wrongfully by engaging in the protected activity.
The complaint here did not allege defendants engaged in wrongdoing by asserting their lien.

21    Rather, the complaint asked the court to declare the parties' respective rights to attorney fees.
The complaint necessarily refers to defendants' lien, since their demand letter is key evidence

22    of plaintiff's need to obtain a declaration of rights[ ], but the complaint does not seek to prevent
defendants from exercising their right to assert their lien." (*Drell, supra*, 232 Cal.App.4th at

23    p. 30, 181 Cal.Rptr.3d 191, fn. omitted.) Here, however, the gravamen of the cross-claims is
that Fireman's Fund engaged in wrongdoing by settling the Stephens-Fireman's Fund

24    litigation "around" O'Reilly's attorney lien and disbursing proceeds pursuant to the settlement
agreement and in contravention of that lien. *Drell,* therefore, does not compel reversal.

25

26           Far from providing mere evidentiary support for or being incidental to the challenged
claims, the settlement agreement is the crux of cross-defendants' allegedly wrongful conduct.

27    O&C Creditors cannot allege its claims without the settlement agreement—both because the
allegedly wrongful "disbursement" of "proceeds" occurred only because of the settlement

28    agreement and because the alleged attorney lien could not arise without the settlement. O&C

Creditors' claims are thus based on and arise from a purportedly wrongful settlement agreement, which constitutes a statement and writing "made in connection with an issue under consideration or review by a ... judicial body." (Code Civ. Proc., § 425.16, subds. (b), (e); see *Seltzer, supra*, 182 Cal.App.4th at pp. 962–964, 968–969, 106 Cal.Rptr.3d 290 [plaintiff's claimed injury (non-payment of attorney fees) was a necessary consequence of allegedly wrongful settlement].)

<u>O&C Creditors Grp., LLC v. Stephens & Stephens XII, LLC</u>, 42 Cal. App. 5th 546, 571, 255 Cal. Rptr. 3d 596, 617 (2019). The Trustee repeatedly accuses X-Law of wrongdoing in his claims and its litigation-related actions are the crux of X-Law's purported misconduct. [<u>See</u> Dkt. No. 92 ¶ 47-49, 57 (deceit in communications with the Trustee, attempting to prevent X-Law from disbursing settlement funds); (¶ 62 disavowing an attorneys'' lien and lying to the Trustee); [Dkt. No. 92 at ¶¶ 122-130 repeatedly referring to transfer of representation to X-Law.]

### E.  **The Trustee Has Not Established a Probability of Prevailing.**

The Trustee misstates what the plaintiff may rely in making his prima facie showing for the anti-SLAPP. In truth, "the court may consider affidavits, declarations, and their equivalents if it is reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon *cannot* be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection. If an evidentiary objection is made, the plaintiff may attempt to cure the asserted defect or demonstrate the defect is curable." <u>Sweetwater Union High Sch. Dist. v. Gilbane Bldg. Co.</u>, 6 Cal. 5th 931, 949, 434 P.3d 1152, 1163 (2019). Declarations must meet the same standard used in summary judgment: "made by a person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations." <u>Id.</u> at 945 (quoting Cal. Civ. Proc. Code § 437c(d). As the concurrently filed evidentiary objections to Mr. Kellner's declaration demonstrate, significant amounts of the Trustee's "evidence" is inadmissible, thereby making it impossible for the Trustee to prove many of his 18 "facts" and establishing a probability of prevailing.[5]

---

[5] Especially troubling is the fact that the Clients have all repeatedly requested, in writing, that the Trustee provide them with their client files as required by law. [Marchino Decl. Exs.1-4.] In reviewing the Kellner Declaration, it is clear that the Trustee has purportedly extensively perused EA's servers for documents that he believes will be helpful to his case, while at the same time has

**F.  The Anti-SLAPP Motion is Not Frivolous and Defendants Cannot Be Sanctioned**.

The Trustee vaguely suggests that "if the Defendants still wish to seek attorneys' fees under § 415.16(c)(1), they should do so with the knowledge that they would likely be subjected to liability for their frivolous filing of such claims as demonstrated above." [Dkt. No. 109 at 31.] Defendants will not be intimidated by these hollow threats and will seek their fees.

In response to the anti-SLAPP motion, the Trustee is abandoning several claims against X-Law and the claims against Young Blue and Le in their entirety. When at least some claims are subject to dismissal under the anti-SLAPP statute, the plaintiff cannot be awarded sanctions. Gerbosi v. Gaims, Weil, W. & Epstein, LLP, 193 Cal. App. 4th 435, 450, 122 Cal. Rptr. 3d 73, 85 (2011). In addition, it would be impossible for the Trustee to seek sanctions against Defendants. First, the Trustee has not complied with the 21-day safe harbor period found within Cal. Civ. Proc. Code § 128.5(f). See Cal. Civ. Proc. Code § 425.16(c)(1) (making 128.5 applicable); Moofly Prods., LLC v. Favila, 24 Cal. App. 5th 993, 998, 234 Cal. Rptr. 3d 769, 771 (2018) (procedures and substantive standards of sanctions statute are applicable, including the safe harbor period). Second, the Trustee has failed to clearly articulate who he is seeking sanctions against or the amount requested. See Corralejo v. Quiroga, 152 Cal. App. 3d 871, 874, 199 Cal. Rptr. 733, 735 (Ct. App. 1984); Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial ¶ 9:1094a. (The Rutter Group 2020).

**G. Leave to Amend Should Be Denied.**

Leave to amend "is properly denied . . . if amendment would be futile." Carrico v. City & Cty. of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011). An amended complaint is futile "if the amendment would fail a motion to dismiss under Rule 12(b)(6)." Ewert v. eBay, Inc., 602 F. App'x 357, 359–60 (9th Cir. 2015). The Trustee has already submitted his proposed amended complaint and Defendants have explained why the new claim for quantum meruit against Hernandez and the

shirked his legal and ethical obligation to turn over the client files to the Clients. Hence, there are two possibilities here, both of which are extremely troubling: Either (i) the documents Mr. Kellner mentions do not actually exist, or (ii) if they do exist, the Trustee has deliberately refused to turn them over to the Clients, even though they would constitute a part of their files, and instead chosen to selectively use parts of the Client files against the Clients.

other changes will not allow the Trustee to escape dismissal. [Dkt. No. 111.] The Trustee states that "this is the first juncture that this Court is making a substantive ruling regarding the sufficiency of the allegations." [Dkt. No. 109 at § 31.] This is only because the Trustee insisted on being permitted to amend the original Complaint without the Court ruling on the merits of X-Law's Motion to Dismiss. [Dkt. No. 83 at 3-5.] Ironically, some of the claims the Trustee wished to add are the same ones that he now is abandoning. If the Court does contemplate granting leave to amend, it should not do so until it has ruled on the anti-SLAPP motion.

## III.   CONCLUSION

For the foregoing reasons, the claims asserted against Defendants should be dismissed with prejudice and without leave to amend.  For the convenience of the Court, a chart of the arguments in this and the two other motions set for hearing on the same calendar is attached.

DATED: January 13, 2021

**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**


By:_____/s/ Kurt Ramlo_____
DAVID B. GOLUBCHIK
  KURT RAMLO
Attorneys for Defendants The X-Law Group, P.C.
and Filippo Marchino

**THE X-LAW GROUP, P.C.**

By _____
FILIPPO MARCHINO
Attorneys for Defendants Young Blue LLC, Elba Hernandez,
The Estate of Andres Ramirez, and Sandy Le

| Amended complaint claims for relief | Defs. | Summary | Motion to dismiss | Motion to strike | Motion for sanctions | Motion to Amend |
|---|---|---|---|---|---|---|
| 1.  for preliminary injunction | X-Law & Marchino | Require deposit of contingency fees until determination of Estate's portion of recoveries based on quantum meruit ("**QM**") | QM claim not ripe until recovery<br>Must sue clients first<br>Not an independent cause of action<br>Not proper defendants because Estate has no lien (and client voided retainer agreement)<br>Fails to allege fraud with particularity<br>Debtor did not obtain necessary court approval of retention agreement<br>Probate court approval of Hernandez settlement not required<br>Estate did not comply with mandatory arbitration | Activity in connection with litigation | Frivolous | Retained |
| 2.  for declaratory judgment | Hernandez & X-Law | Establishing Estate's right to portion of recovery | Estate did not comply with mandatory arbitration<br>QM claim not ripe until recovery<br>Must sue clients first<br>Not an independent cause of action<br>X-Law not proper defendant because Estate has no lien (and client voided retainer agreement)<br>Fails to allege fraud with particularity<br>Debtor did not obtain necessary court approval of retention agreement<br>Probate court approval of Hernandez settlement not required<br>Estate barred from recovering from Ramirez estate by probate statute of limitations | Activity in connection with litigation | Frivolous | Retained |
| 3.  for declaratory judgment | Young Blue and X-Law | If Young Blue obtains recovery, estate is entitled to portion based on quantum meruit | Estate did not comply with mandatory arbitration<br>QM claim not ripe until recovery<br>Must sue clients first<br>Not an independent cause of action<br>X-Law not proper defendant because Estate has not lien (and client voided retainer agreement) | Activity in connection with litigation | Frivolous | Omitted |

1

| Amended complaint claims for relief | Defs. | Summary | Motion to dismiss | Motion to strike | Motion for sanctions | Motion to Amend |
|---|---|---|---|---|---|---|
| 4. for declaratory judgment | Le and X-Law | If Le obtains recovery, estate is entitled to portion based on quantum meruit | Estate did not comply with mandatory arbitration<br>QM claim not ripe until recovery<br>Must sue clients first<br>Not an independent cause of action<br>X-Law not proper defendant because Estate has no lien | Activity in connection with litigation | Frivolous | Omitted |
| 5. for tortious interference with contractual relations | X-Law and Marchino | Advised Hernandez to settle claims against Pasadena so probate estate received nothing | Fails to state a claim for relief because no valid contract, waiver, superior duty to client, and litigation privilege<br>Fails to allege fraud with particularity<br>Probate court approval of Hernandez settlement not required | Activity in connection with litigation | Frivolous | Omitted |
| 6. for tortious interference with prospective economic advantage | X-Law and Marchino | See above | See above<br>Failure to provide alleged professional courtesy not actionable<br>Referring attorneys not entitled to fees absent client consent<br>Fails to allege independent wrong | Activity in connection with litigation | Frivolous | Omitted |
| 7. for further relief | Hernandez, Young Blue, Le, and X-Law | Direct Clerk to disburse funds deposited per 1st claim as established by 2d, 3d, and 4th claims | See 2d, 3d, and 4th claims | n/a | Frivolous | Retained |
| 8. for violation of automatic stay and turnover | X-Law and Marchino | Advising Hernandez to settle claims against Pasadena so Hernandez obtained recovery and X-Law and Marchino received contingency fees violated automatic stay and requires turnover | Turnover not available to liquidate disputed right to funds<br>Debtor waived rights to fees<br>Debtor's retention agreement voided by client<br>Debtor's client did not obtain any recovery<br>Defendants' advice on Hernandez recovery not an act that violates stay | n/a | Frivolous | Retained |

| Amended complaint claims for relief | Defs. | Summary | Motion to dismiss | Motion to strike | Motion for sanctions | Motion to Amend |
|---|---|---|---|---|---|---|
| 9.  for uniform voidable transaction | X-Law and Marchino | Debtor's waiver of right to fees from Ramirez was voidable transaction | Fails to allege fraud with particularity<br>Debtor's waiver of alleged rights in fees from client not a transfer to these defendants<br>Debtor not entitled to fees because it withdrew without cause (inability to continue to represent client)<br>Law firm has no property interest in fees earned after client discharges firm<br>Estate barred from recovering from Ramirez estate by probate statute of limitations<br>Claim alleges no injury in fact | Activity in connection with litigation | Frivolous | Retained |