David B. Golubchik (State Bar No. 185520)
Kurt Ramlo (State Bar No. 166856)
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Tel: (310) 229-1234; Fax: (310) 229-1244
DBG@LNBYB.com; KR@LNBYB.com

Attorneys for Defendants The X-Law
Group, P.C. and Filippo Marchino

Filippo Marchino (State Bar No.  256011)
Thomas E. Gray (State Bar No.  299898)
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380; Fax: (213) 599-3370
FM@XLAWX.COM; TG@XLAWX.COM

Attorneys for Defendants Elba Hernandez
and The Estate of Andres Ramirez

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:19-bk-13560-SC |
| EAGAN AVENATTI, LLP, | Chapter 7 |
| Debtor. | Adv. No.: 8:20-ap-01086-SC |
| | **Defendants' Reply in Support of Motion to Dismiss with Table of Contents and Table of Authorities** |
| RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan Avenatti, LLP, | Judge: Scott C. Clarkson |
| Plaintiff, | Date:  May 5, 2021 |
| v. | Time: 1:30 pm. |
| THE  X-LAW  GROUP,  P.C.,  a  professional corporation; et al, | Place: Courtroom 5C |
| Defendants. | 411 W. Fourth St. |
| | Santa Ana, CA 92701 |

1    DATED: April 29, 2021                    **LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**

2                                             By: _____//s// Kurt Ramlo_____
3                                             DAVID B. GOLUBCHIK
                                              KURT RAMLO
4                                             Attorneys for Defendants The X-Law Group, P.C.
                                              and Filippo Marchino
5
                                              **THE X-LAW GROUP, P.C.**
6                                             FILIPPO MARCHINO
7                                             Attorneys for Defendants Elba Hernandez and The Estate of
                                              Andres Ramirez
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

2
**Page(s)**

3
I.    INTRODUCTION ...................................................................................... 1

4
II.    ARGUMENT ............................................................................................ 1

5
A.    In Failing to Address Many of Defendants' Arguments, the
6
Trustee has Waived Any Argument to the Contrary. ............................ 1

7
B.    The Motion to Dismiss Is Based on the Allegations in the
8
Complaint, Not  Factual Disputes or Affirmative Defenses
Not Disclosed in the Complaint ............................................................. 1
9

10
C.    The Trustee Continues to Misstate Wrongful Death Law. .................... 2

11
D.    The Trustee Has Failed to Assert Any Legally Cognizable Claim. ....... 4

12
1.    The Trustee Has Failed to State Any Claim Against Hernandez. ..... 4

13
a.    Any Claim Against Hernandez in Any Capacity is Premature. ... 4

14
b.    The Claims Against the Estate of Ramirez are Barred
15
by the Statute of Repose and the Trustee's Failure to
Comply with the Probate Code ..................................................... 5
16

17
c.    Hernandez Cannot be Liable as the Probate Heir of Ramirez ...... 9

18
d.    Hernandez Cannot be Personally Liable in to Pay for
19
Work Done in the Ramirez Litigation ......................................... 10

20
2.    The Trustee Does Not Have a Valid Declaratory Relief Claim. ..... 17

21
3.    The Trustee Should Not Be Suing X-Law for Declaratory
22
Relief. ............................................................................................... 18

23
a.    The Trustee Cannot Sue X-Law Until He Obtains a
24
Judgment in His Favor Against Hernandez. ................................ 18

25
b.    The Trustee Cannot Sue X-Law on Any Quantum Meruit
or Similar Theory Without a Valid Lien ..................................... 20
26

27
c.    The Trustee Has Not Alleged a Claim for Declaratory
Relief Under a Jewel Theory. ...................................................... 21
28

4.  The Trustee Has Failed to State a Violation of Automatic
Stay Claim. .......................................................................24

   a.  The Trustee Cannot Bring a Claim Seeking Damages. ..............24

   b.  X-Law Cannot Be Liable for the Settlement Structuring. ..........26

   c.  The Trustee's Claim Fails for Lack of Causation and
Damages. ...........................................................................27

   d.  The Trustee Concedes That Clients Have an Absolute
Right to Choose Their Counsel; Whether EA Had a
Quantum Meruit Claim Against Hernandez Is Irrelevant
to This Claim. ....................................................................28

   e.  The Trustee Has Brought a Claim Against the Wrong
Party if it Seeks to Void the Fee Waiver Letter. ........................28

5.  The Trustee Has Failed to State a Claim for Fraudulent
Transfer. ...........................................................................29

   a.  The Trustee Does Not Have A Claim Regarding the
"Transfer" of the Ramirez Case. ............................................29

   b.  The Trustee Does Not Have a Claim Relating to the
Failure to a Failure to Pay Referral Fees. ...................................30

   c.  There Is No Claim Relating to the Fee Waiver Letter. ..............31

   d.  The Fraudulent Transfer Claim Fails for Lack of
Causation and Damages. ...........................................................32

6.  The Claims Against Hernandez Should Be Dismissed
Because the Trustee Has Failed to Comply with the
Mandatory Fee Arbitration Act. ...............................................32

E.  The Trustee Should Not Be Given Leave to Further
Amend the Complaint. ...............................................................34

III.  CONCLUSION ...................................................................35

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

Aramark Facility Servs. v. Serv. Employees Int'l Union, Local 1877, AFL CIO,
    530 F.3d 817 (9th Cir. 2008) ................................................................. 1

Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler,
    212 Cal. App. 4th 172, 151 Cal. Rptr. 3d 134 (2012) ............................... 30, 31

Barrientos v. Wells Fargo Bank, N.A.,
    633 F.3d 1186 (9th Cir. 2011) ................................................................. 24, 25

Bateman v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,
    423 F. App'x 763 (9th Cir. 2011) ................................................................. 17

Baxter v. Superior Court,
    19 Cal. 3d 461, 563 P.2d 871 (1977) ............................................................. 13

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ................................................................................. 15

Bradley v. Breen,
    73 Cal. App. 4th 798, 86 Cal. Rptr. 2d 726 (1999) .................................... 7, 8

Bradley v. Nevada Power Co.,
    185 F.3d 865 (9th Cir. 1999) ...................................................................... 4

California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.,
    94 Cal. App. 4th 151, 114 Cal. Rptr. 2d 109 (2001) ..................................... 11

Calip v. Tanigawa,
    No. 15-CV-02111-MMC, 2017 WL 512780 (N.D. Cal. Feb. 8, 2017) .......... 15

Chambers v. Kay,
    29 Cal. 4th 142, 56 P.3d 645 (2002) .................................................. 22, 30, 31

Chodos v. Borman,
    227 Cal. App. 4th 76,  173 Cal. Rptr. 3d 266 (2014) ..................................... 12

Cullinan v. McColgan,
    87 Cal. App. 684,  263 P. 353 (1927) ........................................................... 12

Dacey v. Taraday,
    196 Cal. App. 4th 962 (2011) ...................................................................... 8

<u>Dawes v. Rich,</u>
    60 Cal. App. 4th 24, 70 Cal. Rptr. 2d 72 (1997) ................................................ 7

<u>Democratic Nat'l Comm. v. Watada,</u>
    198 F. Supp. 2d 1193 (D. Haw. 2002) ............................................ 19

<u>Dinosaur Dev., Inc. v. White,</u>
    216 Cal. App. 3d 1310, 265 Cal. Rptr. 525 (1989) ............................ 10, 11, 13

<u>Dobler v. Arluk Med. Ctr. Indus. Grp., Inc.,</u>
    89 Cal. App. 4th 530, 107 Cal. Rptr. 2d 478 (2001) ........................................ 6

<u>Est. of Elkins v. Pelayo,</u>
    No. 1:13-CV-1483 AWI SAB, 2020 WL 2571387
    (E.D. Cal. May 21, 2020) ................................................................ 2

<u>Fed. Deposit Ins. Corp. v. Dintino,</u>
    167 Cal. App. 4th 333, 84 Cal. Rptr. 3d 38 (2008) ........................................ 10

<u>Fracasse v. Brent,</u>
    6 Cal. 3d 784, 494 P.2d 9 (1972) ................................................................ 4, 5

<u>Galdjie v. Darwish,</u>
    113 Cal. App. 4th 1331, 7 Cal. Rptr. 3d 178 (2003 ........................................ 6

<u>Grant & Eisenhofer, P.A. v. Brown,</u>
    No. CV175968PSGPJWX, 2018 WL 3816723 (C.D. Cal. July 24, 2018) ..... 16

<u>Hal Roach Studios, Inc. v. Richard Feiner & Co.,</u>
    896 F.2d 1542 (9th Cir. 1989) ........................................................ 17

<u>Heller Ehrman LLP v. Davis Wright Tremaine LLP,</u>
    4 Cal. 5th 467, 411 P.3d 548 (2018) .............................................. 23

<u>Hensel v. Cohen,</u>
    155 Cal. App. 3d 563, 202 Cal. Rptr. 85 (1984) ............................................ 12

<u>Huang v. Cheng,</u>
    66 Cal. App. 4th 1230, 78 Cal. Rptr. 2d 550 (1998) ...................................... 34

<u>In re Brinson,</u>
    485 B.R. 890 (Bankr. N.D. Ill. 2013) ............................................ 18

In re Demas Wai Yan,
    703 F. App'x 582, 583 (9th Cir. 2017) ............................................................. 17

In re Heller Ehrman LLP,
    716 F. App'x 693 (9th Cir. 2018) ............................................................. 29, 30

In re Kings Falls Power Corp.,
    185 B.R. 431 (Bankr. N.D.N.Y. 1995) ......................................................... 18

In re Mkt. Ctr. E. Retail Prop., Inc.,
    No. 11-09-11696 SA, 2011 WL 1100463 (Bankr. D.N.M. Mar. 22, 2011) ... 33

In re Mumford's Est.,
    173 Cal. 511, 160 P. 667 (1916) ................................................................ 12

In re Pace,
    67 F.3d 187 (9th Cir. 1995) ........................................................................ 24

In re Perroton,
    958 F.2d 889 (9th Cir. 1992) ...................................................................... 17

In re Schwartz-Tallard,
    765 F.3d 1096 (9th Cir. 2014) .................................................................... 24

In re Westin Capital Markets, Inc.,
    184 B.R. 109 (Bankr. D. Or. 1995) ............................................................ 17

In re Zilog, Inc.,
    450 F.3d 996 (9th Cir. 2006) ...................................................................... 24

In re Zilog, Inc.,
    50 F.3d 996 (9th Cir. 2006) .................................................................. 25, 26

Jewel v. Boxer, 156 Cal. App. 3d 171, 203 Cal. Rptr. 13 (1984) ............... 22, 23, 29

Johnson v. Quality Loan Serv. Corp.,
    No. LACV1809140VAPJEMX, 2018 WL 6978196
    (C.D. Cal. Dec. 18, 2018) ........................................................................... 18

Joseph Saveri Law Firm, Inc. v. Michael E. Criden, P.A.,
    No. 14-CV-01740-EDL, 2015 WL 1029364 (N.D. Cal. Mar. 9, 2015) ......... 31

Kentucky v. Graham,
    473 U.S. 1591 (1985) ................................................................................... 6

*Kincaid v. Kincaid,*
  197 Cal. App. 4th 75, 127 Cal. Rptr. 3d 863 (2011) ...................................... 14

*Kirkland v. Rund (In re EPD Inv. Co., LLC),*
  821 F.3d 1146 (9th Cir. 2016) ...................................................................... 33

*Koo v. Rubio's Restaurants, Inc.,*
  109 Cal. App. 4th 719, 135 Cal. Rptr. 2d 415 (2003) ................................... 14

*Kroeger v. Vertex Aerospace LLC,*
  No. CV 20-3030-JFW(AGRX), 2020 WL 3546086
  (C.D. Cal. June 30, 2020) .............................................................................. 1

*Krouse v. Graham,*
  19 Cal. 3d 59, 562 P.2d 1022 (1977) ............................................................ 2

*Levine v. Levine,*
  102 Cal. App. 4th 1256, 126 Cal. Rptr. 2d 255 (2002) ................................... 8

*Mahony v. Haines,*
  66 Cal. App. 456, 459–60, 226 P. 620 (Cal. Ct. App. 1924) ......................... 4

*Martinez v. USAA Fed. Sav. Bank,*
  683 F. App'x 584 (9th Cir. 2017) ................................................................. 17

*McBride v. Boughton,*
  123 Cal. App. 4th 379, 20 Cal. Rptr. 3d 115 (2004) ..................................... 10

*Mojtahedi v. Vargas,*
  228 Cal. App. 4th 974, 176 Cal. Rptr. 3d 313 (2014) ................................... 18

*Munoz v. MacMillan,*
  195 Cal. App. 4th 648, 124 Cal. Rptr. 3d 664 (2011) ................................... 10

*Olsen v. Harbison,*
  191 Cal. App. 4th 325, 119 Cal. Rptr. 3d 460 (2010) ................................... 20

*Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.,*
  12 Cal. App. 5th 200, 218 Cal. Rptr. 3d 562 (2017) ..................................... 10

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP,*
  150 Cal. App. 4th 384, 58 Cal. Rptr. 3d 516 (2007) ..................................... 22

*Pet Check Tech., LLC v. Handlr, Inc.,*
  No. CV 18-962-R, 2018 WL 8333418 (C.D. Cal. Sept. 11, 2018) ................. 18

vi

Ruiz v. Podolsky,
    50 Cal. 4th 838, 237 P.3d 584 (2010) .............................................. 3, 7

Russo v. Jones,
    No. CIV 10-00125 LEK, 2010 WL 3834965 (D. Haw. Sept. 24, 2010) ........ 19

Smith v. Cimmet,
    199 Cal. App. 4th 1381, 132 Cal. Rptr. 3d 276 (2011) ...................................... 6

Spires v. Am. Bus Lines,
    158 Cal. App. 3d 211, 204 Cal. Rptr. 531 (1984) ........................................... 15

Stern v. Marshall,
    564 U.S. 462 (2011) ..................................................................... 33

Strong v. Beydoun,
    166 Cal. App. 4th 1398, 83 Cal. Rptr. 3d 632 (2008) ..................................... 13

Texas v. United States,
    523 U.S. 296 (1998) ..................................................................... 17

Transp. Co. v. City of Los Angeles,
    922 F.2d 498 (9th Cir. 1990) ........................................................... 19

Valentine v. Read,
    50 Cal. App. 4th 787, 57 Cal. Rptr. 2d 836 (1996) ......................................... 9

Vien Phuong Thi Ho v. Recontrust Co.,
    669 F. App'x 857 (9th Cir. 2016) ...................................................... 1

Wager v. Mirzayance,
    67 Cal. App. 4th 1187, 79 Cal. Rptr. 2d 661 (1998) ...................................... 34

Weisbuch v. Cty. of Los Angeles,
    119 F.3d 778, 783 (9th Cir. 1997) ..................................................... 1

## **Statutes**

11 U.S.C. § 105 ................................................................................. 19

11 U.S.C. § 362 ........................................................................... 24, 26

28 U.S.C. § 158 ................................................................................. 33

28 U.S.C. § 451 ................................................................................. 17

28 U.S.C. § 2201 .................................................................................................. 17

Cal. Bus. & Prof. Code § 6147 ........................................................................... 16

Cal. Bus. & Prof. Code § 6201 ........................................................................... 34

Cal. Civ. Code § 3439.01 .................................................................................... 30

Cal. Civ. Code § 3439.04 .................................................................................... 30

Cal. Civ. Prac. Torts § 23:2 (2020) ...................................................................... 2

Cal. Civ. Proc. Code § 335.1 ................................................................................. 3

Cal. Civ. Proc. Code § 366.1 ................................................................................. 3

Cal. Civ. Proc. Code § 366.2 ................................................................................. 8

Cal. Civ. Proc. Code § 377.10 ............................................................................... 2

Cal. Civ. Proc. Code § 377.11 ............................................................................... 2

Cal. Civ. Proc. Code § 377.30 ............................................................................... 2

Cal. Civ. Proc. Code § 377.34 ............................................................................... 3

Cal. Civ. Proc. Code § 377.60 ............................................................................... 3

Cal. Corp. Code § 16308 ..................................................................................... 23

Cal. Corp. Code § 16801 ..................................................................................... 23

Cal. Fam. Code § 6602 ........................................................................................ 16

Cal. Gov't Code § 901 ......................................................................................... 13

Cal. Prob. Code § 9392 ......................................................................................... 9

Cal. Prob. Code §19402 ........................................................................................ 9

### **Rules**

Bankruptcy Rule 7001(9) ..................................................................................... 18

California Rules of Court Rule 3.1362 ................................................................. 11

Fed. R. Bankr. P. 7008 ......................................................................................... 34

Fed. R. Bankr. P. 7017 ............................................................................ 6

Fed. R. Civ. P. 17(b) ............................................................................... 6

Fed. R. Civ. P. 8 ..................................................................................... 34

## **Other Authorities**

California Practice Guide: Professional Responsibility
    (The Rutter Group 2019) ............................................... 11, 12, 13

Commercial Code sections 3110(d) ...................................................... 18

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial ¶ 9:226.2 (2021) ................. 1

Rutter Group Practice Guide: Bankruptcy ¶ 1:1002 (2020) ................................ 19

Kurt Ramlo (State Bar No. 166856)
David B. Golubchik (State Bar No. 185520)
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Tel: (310) 229-1234; Fax: (310) 229-1244
KR@LNBYB.com; DBG@LNBYB.com

Attorneys for Defendants The X-Law
Group, P.C. and Filippo Marchino

Filippo Marchino (State Bar No.  256011)
Thomas E. Gray (State Bar No.  299898)
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380; Fax: (213) 599-3370
FM@XLAWX.COM; TG@XLAWX.COM

Attorneys for Defendants Elba Hernandez and
The Estate of Andres Ramirez

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>    Debtor.<br><br>---<br><br>RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan Avenatti, LLP,<br><br>    Plaintiff,<br><br>    v.<br><br>THE X-LAW GROUP, P.C., a professional corporation; et al,<br><br>    Defendants. | Case No. 8:19-bk-13560-SC<br><br>Chapter 7<br><br>Adv. No.: 8:20-ap-01086-SC<br><br>**Defendants' Reply in Support of Motion to Dismiss**<br><br>Judge: Scott C. Clarkson<br>Date:  May 5, 2021<br>Time: 1:30 pm.<br>Place: Courtroom 5C<br>    411 W. Fourth St.<br>    Santa Ana, CA 92701 |

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 2 of 36

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Richard A. Marshack, chapter 7 trustee (the "Trustee") for the bankruptcy estates of Eagan Avenatti, LLP ("EA") has filed a Second Amended Complaint, apparently based almost entirely on bizarre and speculative allegations made on information and belief that, as a matter of law, fails to state any claims for relief against Defendants The X-Law Group, P.C. and Filippo Marchino (collectively "X-Law") or Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased ("Hernandez"). While Defendants filed a motion to dismiss explaining why the Trustee's claims are meritless, Plaintiff's opposition either fails to respond to the arguments, or responds with non sequiturs, or simply misstates the law.

### II.    ARGUMENT

#### A.    In Failing to Address Many of Defendants' Arguments, the Trustee has Waived Any Argument to the Contrary.

It is well-established law that failure to respond to arguments results in waiver. See Vien Phuong Thi Ho v. Recontrust Co., 669 F. App'x 857, 859 (9th Cir. 2016); Aramark Facility Servs. v. Serv. Employees Int'l Union, Local 1877, AFL CIO, 530 F.3d 817, 824 (9th Cir. 2008); Kroeger v. Vertex Aerospace LLC, No. CV 20-3030-JFW(AGRX), 2020 WL 3546086, at *9 (C.D. Cal. June 30, 2020). The Trustee has failed to respond to many of Defendants' arguments about the deficiencies present in the Second Amended Complaint, thereby conceding they are correct.

#### B.    The Motion to Dismiss Is Based on the Allegations in the Complaint, Not  Factual Disputes or Affirmative Defenses Not Disclosed in the Complaint

The Trustee at various times in his opposition argues that Defendants' are raising affirmative defenses or factual disputes. That is not the case. Rather, the Trustee's own allegations doom his complaint because "Plaintiffs can plead themselves out of court by pleading particulars that show they have no legal claim. They are not saved by having pleaded legal conclusions that would support the claim where the facts pleaded are inconsistent with those legal conclusions." Judge Virginia A. Phillips et. al , Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial ¶ 9:226.2 (2021) (citing Weisbuch v. Cty. of Los Angeles, 119 F.3d 778, 783 (9th Cir. 1997)).

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 3 of 36

### C.  <u>The Trustee Continues to Misstate Wrongful Death Law.</u>

Defendants previously pointed out the Second Amended Complaint misstates wrongful death law. [Dkt. No. 171 at 6-7.] Now, the Trustee has doubled down and managed to misstate California wrongful death law for almost a page and a half. [Dkt. No. 194 at 20-21.]

The Trustee is conflating wrongful death and survival claims.  As one treatise has explained, there are mutually exclusive damages, different persons entitled to recovery, and different statutes of limitations Cal. Civ. Prac. Torts § 23:2 (2020).  "In a wrongful death action, only those individuals specified in the statute can recover. In a survival action, recovery may be had by the persons entitled to inherit the decedent's estate, for example pursuant to a will." <u>Id.</u> Wrongful death actions *are not* brought for emotional distress damages.  "California cases have uniformly held that damages for mental and emotional distress, including grief and sorrow, are not recoverable." <u>Krouse v. Graham</u>, 19 Cal. 3d 59, 72, 562 P.2d 1022, 1028 (1977).

"A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest ... and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Cal. Civ. Proc. Code § 377.30. Here, the survival claim was brought by Hernandez in her capacity as personal representative. [Dkt. No. 160 Ex. 3 ¶ 9.] "'[Decedent's successor in interest' means the beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or to a particular item of the property that is the subject of a cause of action." Cal. Civ. Proc. Code § 377.11. "beneficiary of the decedent's estate" means the individuals identified in the decedent's will or the intestate heirs, if no will exists." Cal. Civ. Proc. Code § 377.10. Even when the survival claim is brought by the successor in interest, rather than the personal representative, "[i]t is the decedent's estate that recovers any damages in a survival action." <u>Est. of Elkins v. Pelayo</u>, No. 1:13-CV-1483 AWI SAB, 2020 WL 2571387, at *7 (E.D. Cal. May 21, 2020). Thus, survival claims are ultimately brought on behalf of the decedent's estate, with the damages going to the estate.  Therefore, it is ***not accurate*** that "to the extent that a child has a claim for damages based upon injuries leading to his death, the parent succeeds to and can prosecute such claim under Section 377.30." Not only is a survival claim brought for the benefit of the estate, not the parent (who may

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 4 of 36

1    not even receive any money from the estate), but a wrongful death claim would be available in

2    scenarios where a survival one would not (i.e., the survival claim is barred by the statute of

3    limitations or the decedent died instantly).  Cal. Civ. Proc. Code § 335.1, 366.1, 377.34.  The

4    Trustee is ignoring the issue of the difference of capacity between the two distinct claims.

5    Moreover, Defendants did not point out that "Cal. Code of Civil Procedure § 377.30 specifically

6    provides for her succession in interest rights" because that section does no such thing when there is

7    a personal representative, as there was in this case.  [Dkt. No. 194 at 20.] In the opposition, the

8    Trustee also refers to Hernandez's [privileged] "discussions with EA regarding her succession

9    rights", but the Second Amended Complaint makes no such allegations. [Dkt. No. 194 at 20.]

10        In addition, the Trustee completely misstates the significance of the allegations in the

11    Ramirez complaint as being that "her claim was solely derivative of her son's claims." [Id. at 20.]

12    That is false. The quoted language states she brought the action as "personal representative of the

13    ESTATE OF ANDRES RAMIREZ" (which is controlling for the survival claim, and obviously

14    means it was brought on behalf of the estate).  [Id.]. The language "Ramirez died without issue, and

15    ELBA HERNANDEZ would be entitled to Ramirez's estate through the rules of intestate

16    succession" provides standing for the *wrongful death claim*. [Id.] Cal. Civ. Proc. Code § 377.60(a).

17        The Trustee's attempt to paint the wrongful death claim as derivative ignores controlling

18    California law stating that "[u]nlike some jurisdictions wherein wrongful death actions are

19    derivative, Code of Civil Procedure section 377.60 creates a new cause of action in favor of the

20    heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a

21    relative, and distinct from any the deceased might have maintained had he survived."  Ruiz v.

22    Podolsky, 50 Cal. 4th 838, 844, 237 P.3d 584, 588 (2010).  The Trustee does not even attempt to

23    respond to this, even though Defendants cited it in their motion.  [Dkt. No. 171 at 6.]  The Trustee

24    attempts to claim that section 377.60 is "of no moment", but wrongful death is the only claim that

25    was personal to Hernandez, and not to the estate. "Because a wrongful death action compensates

26    an heir for his or her own independent pecuniary losses, it is one for 'personal injury to the heir.'

27    **Thus, in a wrongful death action the 'injury' is not the general loss of the decedent, but the**

28    **particular loss of the decedent to each individual claimant**."    Id. (internal citations and

Case 8:20-ap-01086-SC   Doc 196   Filed 04/28/21   Entered 04/28/21 23:58:44   Desc
Main Document   Page 5 of 36

quotations omitted, emphasis added).  That is also why the statement that "the same proof required for the underlying claim of Mr. Ramirez's injuries would be required for the succession-in-interest claim under Section 377.30 for Ms. Hernandez" is simply false. [Dkt. No. 194 at 21.] Mr. Ramirez's medical bills, for example, would have been relevant for the issue of his or his estate's damages, but had zero bearing on the recovery of Hernandez for her wrongful death claim.

The Trustee states that "the argument in the MTD that Ms. Hernandez's $10.35 million recovery was based at all (let alone solely) upon her emotional distress or other damages fails", but Defendants never made that argument (nor would they have, given the fact that, as was noted above, wrongful death claims are not for emotional distress).

### D. The Trustee Has Failed to Assert Any Legally Cognizable Claim.
#### 1. The Trustee Has Failed to State Any Claim Against Hernandez.
##### a. Any Claim Against Hernandez in Any Capacity is Premature.

Almost 100 years ago, Mahony v. Haines held that "[i]n order for an attorney to recover upon a contract for services in the conduct of an action it is necessary for him to show an actual termination of the litigation in which he is employed." 66 Cal. App. 456, 459–60, 226 P. 620 (1924). The Trustee attempts to act as though precedent has an expiration date. [Dkt. No. 194 at 18 n. 2.] Fracasse v. Brent is entirely consistent: and states "It is apparent that any determination of the 'result obtained' is impossible, and any determination of the 'amount involved' is, at best, highly speculative, until the matter has ***finally been resolved***." 6 Cal. 3d 784, 792, 494 P.2d 9, 14 (1972) (citation omitted; emphasis added). Even *after* Fracasse, courts still follow the same rule stated in Mahony. See Bradley v. Nevada Power Co., 185 F.3d 865 (9th Cir. 1999) ("Because the court affirms the district court's application of the California rule to the *quantum meruit* fee dispute, only upon the termination of the litigation could it be known whether B & M could recover in *quantum meruit.*"). The reason why the contingency must be the termination of the litigation is well illustrated by the Young Blue case, where a default judgment was entered in 2018, but the defendant filed a motion to set aside default on August 27, 2020 and where, as the Trustee admitted, Young Blue has not been paid (even though the Trustee filed a declaratory relief claim against Young Blue relating to the underlying case). [Dkt. No. 73 at Ex. 2; Dkt. No. 101 Ex. 3; Dkt. No.

4

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 6 of 36

1    109 at 6; Dkt. No. 111, Marchino Decl., Ex. 2.] Unfortunately, judgment is little more than a piece

2    of paper, and until the client has been paid, there may still be significant work that needs to be done

3    on the case. Under the Trustee's interpretation of Fracasse, he could have forced Young Blue to

4    pay a quantum meruit fee before Young Blue was paid any portion of the judgment by the

5    defendant, which is precisely what Fracasse aimed to avoid. In addition, in the case of the purported

6    retainer agreements in the Ramirez case, the EA's contingency agreement with Ramirez says that

7    the fees are taken from the "settlement *payment* . . . in favor of the Client in this matter" "in the

8    event that a *net* recovery be obtained by the Client." [Dkt. No. 4 Reitman Decl., Ex. 16 at 148, 149

9    (emphasis added).]

10        The Trustee's argument has two problems. First, as the Trustee alleges in the Second

11    Amended Complaint, although there was a recovery in the Ramirez case, it was not on behalf of

12    Ramirez's estate, but rather Hernandez, which as Defendants have explained in their motion and

13    explain again below, was never and could never have been EA's client. Therefore, with regards to

14    the portion of the case that has settled, there is no recovery on behalf of Ramirez and the

15    contingency has not occurred. Second, it would be administratively infeasible to determine EA's

16    quantum meruit award when only part of the case has settled. It would also be impossible to

17    determine whether work done on the case and costs incurred by EA, if any, are relevant to one

18    defendant, the other defendant, or both defendants and award quantum meruit accordingly. Any

19    attempt to do so would be speculative, which is precisely why Fracasse precludes quantum meruit

20    claims before the case has "finally been resolved." 6 Cal. 3d at 792. Likewise, it would be

21    impossible to determine what the "net" recovery would be when only part of the case has settled.

22        Finally, nothing in Fracasse suggests "that declaratory relief could be proper prior to the

23    actual recovery of fees." [Dkt. No. 109 at 6.] The court merely noted that there might be some

24    circumstances where an attorney could seek declaratory relief, without specifying that it was

25    contemplating an exception to the rule it had stated in the case. Fracasse, 6 Cal. 3d at 793.

26

27             ***b.***   ***The Claims Against the Estate of Ramirez are Barred by the Statute***
              ***of Repose and the Trustee's Failure to Comply with the Probate Code***

28    The Trustee states that "Defendants argue that Trustee's claims are being made against the

1  Estate of Ramirez and thus must be commenced within one year of the time of Mr. Ramirez's

2  death", which he characterizes as a "red herring" argument because "because Trustee's claims are

3  against Ms. Hernandez." [Dkt. No. 194 at 28-29.]  The Trustee cites a section of the Motion to

4  Dismiss that begins by stating "To the extent that the Trustee asserts claims against Hernandez in

5  her capacity as the representative of the Estate of Ramirez, he has failed to comply with the

6  applicable statute of repose and probate procedures." [Dkt. No. 171 at 7.]

7      That the Trustee is *not asserting* such claims is quite a revelation because in  the caption of

8  this case, the Trustee continues to list Ms. Hernandez as being sued "individually and as **personal**

9  **representative** and successor in interest **to Andres Ramirez, deceased**."  [See e.g., Dkt. No. 160,

10  194 (emphasis added).]  Likewise, Hernandez is listed in the parties section of the Second Amended

11  Complaint as "Defendant Elba Hernandez, individually and as **personal representative** and

12  successor in interest **to Andres Ramirez, deceased**." [Dkt. No. 160 ¶ 6 (emphasis added).]

13  Likewise, the Trustee refers to the Ramirez retainer agreement, which was only signed by

14  Hernandez in her capacity as guardian ad litem for Ramirez. [Dkt. No. 160 ¶ 87, 110.; Dkt. No. 74.

15  ¶ 3, Ex. 4; Dkt. No. 4 Ex. 15 and 16.]  The retainer agreement is completely irrelevant unless the

16  Trustee is intending to assert claims against the Estate of Ramirez.

17      It is blackletter California law that a "probate or trust estate is not a legal entity; it is simply

18  a collection of assets and liabilities. As such, it has no capacity to sue or be sued, or to defend an

19  action. Any litigation must be maintained by, or against, the executor [or personal representative]

20  of the estate." Smith v. Cimmet, 199 Cal. App. 4th 1381, 1390–91, 132 Cal. Rptr. 3d 276, 282

21  (2011) (alteration in original, quoting Galdjie v. Darwish, 113 Cal. App. 4th 1331, 1344, 7 Cal.

22  Rptr. 3d 178, 187 (2003)).  This rule applies in federal court as well.  See Fed. R. Bankr. P. 7017;

23  Fed. R. Civ. P. 17(b).  Accordingly, in suing Hernandez in her capacity as personal representative,

24  the Trustee certainly appears to have attempted to bring claims that are what, in practice, is referred

25  to as the decedent's estate.  See, e.g., Ruiz v. Podolsky, 50 Cal. 4th 838, 850, 237 P.3d 584, 591

26  (2010); Dobler v. Arluk Med. Ctr. Indus. Grp., Inc., 89 Cal. App. 4th 530, 536, 107 Cal. Rptr. 2d

27  478 (2001); Kentucky v. Graham, 473 U.S. 159, 166 n. 11 (1985).

28      Regardless of whether the Trustee is still asserting claims against Hernandez in her capacity

1    as the representative of the Estate of Ramirez, Defendants' arguments about the statute of repose

2    are not red herrings because they still relate to the claims against X-Law, as will be discussed in

3    greater detail below.  Moreover, the Trustee still responds to arguments regarding the timeliness of

4    the claims against the Ramirez estate, implying that he *is* bringing such claims.

5         As the court in <u>Bradley v. Breen</u> explained, "[t]he 1990 California Law Revision

6    Commission (Commission) recommendation for enactment of that one-year limitations period [of

7    § 366.2] explained in part that such a statute would effectuate the strong public policies of

8    expeditious estate administration and security of title for distributees, is consistent with the concept

9    that a creditor has some obligation to keep informed of the status of the debtor, is an appropriate

10   period to afford repose[1], and provides a reasonable cutoff for claims that soon would become stale."

11   73 Cal. App. 4th 798, 801, 86 Cal. Rptr. 2d 726 (1999).  It went on to explain that:

12          A year is usually sufficient time for all debts to come to light. Thus it is sound public
            policy to limit potential liability to a year; this will avoid delay and procedural
13          complication of every probate proceeding for the rare claim that might arise more than
            a year after the decedent's death. [¶] (2) The one year limitation period would not apply
14          to special classes of debts where public policy favors extended enforceability.

15   <u>Id.</u> at 801 (quoting Recommendation Relating to Notice to Creditors in Estate Administration (Dec.

16   1989), 20 Cal. Law Revision Com. Rep. (1990) p. 513).  That court, following a plain language

17   analysis, recognized that in the case of a tort defendant's indemnification action, which does not

18   accrue until the tort defendant pays a judgment or settlement, would be barred even though it had

19   not yet accrued.  <u>Id.</u> at 804-05.  Significantly, that court also rejected the argument that it would

20   have been impossible for the tort defendant to even file a cross-complaint against the decedent's

21   estate he was seeking indemnification from, because he was sued long after the decedent died.  <u>Id.</u>

22   at 805.  It recognized that the legislature "determined that the one-year statute of limitations will

23   best effectuate the strong public policy of expeditious and final estate administration, despite the

24   possibility that in a rare case" a cause of action would be foreclosed."  <u>Bradley v. Breen</u>, 73 Cal.

25   App. 4th 798, 805 (1999).  <u>Dawes v. Rich</u> also recognized this, noting "the Legislature plainly

26

27   _____

28   [1] Defendants use the term "statute of repose," rather than "statute of limitations" because of this
     language.

                                                    7

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 9 of 36

1    recognized the risk that in unusual circumstances creditors would not be able to bring an action

2    within one year of death." 60 Cal. App. 4th 24, 36, 70 Cal. Rptr. 2d 72, 80 (1997).  The Trustee

3    believes that Defendants' argument that the quantum meruit claim has not yet accrued and that the

4    statute of limitations to bring such claims has expired is inconsistent.  [Dkt. No. 194 at 29.]  There

5    is no inconsistency; the Trustee's quantum meruit claims fall within the scope of those that are de

6    facto foreclosed by Cal. Civ. Proc. Code § 366.2.

7        The case the Trustee relies on Dacey v. Taraday, fails to address the legislative intent and

8    plain language arguments put forth in these better-reasoned opinions.  196 Cal. App. 4th 962, 983

9    (2011).  In addition, the limitations period stated in § 366.2 can be easily complied with even if the

10   cause of action has not accrued by "the timely filing of a creditor claim", which tolls the statute

11   (and therefore plaintiffs with claims that accrue more than a year after the death are in fact

12   protected).  Levine v. Levine, 102 Cal. App. 4th 1256, 1261, 126 Cal. Rptr. 2d 255, 259 (2002).

13       Second, even if § 366.2 does not apply, the Trustee fails to address his failure to file a timely

14   creditor's claim in the probate court, which provides an independent basis for dismissal.  [Dkt. No.

15   171 at 9-10.]  In fact, Dacey indicates that the rule for creditor's claims is different than that for

16   causes of action.

> both section 366.2 and Probate Code section 9000 et seq. are designed to accomplish the
> Legislature's goal of promoting the prompt administration of estates, but they do not
> address the same liabilities: The statute of limitations cuts off the time for asserting a
> claim against the decedent's estate based on a *cause of action* that existed against the
> decedent before the decedent's death. The Probate Code provides a method for the timely
> handling of a creditor's claim based on a liability or legal obligation of the decedent.

196 Cal. App. 4th at 986.[2]  A creditor's claim is broader than the causes of action discussed in §

366.2. Specifically, a claim is defined as a "demand for payment for any of the following, whether

due, not due, accrued or not accrued, or contingent, and whether liquidated or unliquidated"

including "Liability of the decedent, whether arising in contract, tort, or otherwise."  Cal. Prob.

Code § 9000.  In contrast § 366.2 is limited to an action that "may be brought on a liability of the

---

[2] The defendants in Dacey had waived the failure to file a timely claim argument. Id. at 978-79.
This also likely why Dacey failed to address the fact that, as was noted in Levine, timely filling a
creditor claim would have tolled 366.2.

1   person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued." Cal.

2   Civ. Proc. Code § 366.2.  Therefore, the Trustee could have submitted a creditor claim even though

3   his quantum meruit claim was contingent.  The Trustee himself apparently recognized the need to

4   file a claim, but simply failed to comply with the proper procedure to do so [Dkt. No. 119 Ex. 2.]

5   Nor does the Trustee dispute that these deadlines apply to bankruptcy estate claims brought in

6   bankruptcy court.

7                 *c.  Hernandez Cannot be Liable as the Probate Heir of Ramirez*

8          The Trustee states that "if it was the Estate of Ramirez (instead of Ms. Hernandez) who

9   received the entirety of the $10.35 million fee (Dkt. 160, SAC, [¶] 80), then Trustee would be

10  empowered to seek a cost recovery from the settlement."  [Dkt. No. 194 at 30.]  The authorities he

11  cites are irrelevant and apply to *trusts*, a fact that Defendants have pointed out previously.  [Dkt.

12  No. 116 at 17-18.]  Valentine v. Read, the case that the Trustee claims holds that "a beneficiary of

13  an estate remains liable (to the extent of the distribution) for *quantum meruit* expenses associated

14  with the distribution" says nothing of the sort. 50 Cal. App. 4th 787, 57 Cal. Rptr. 2d 836 (1996).

15  Rather, the holding in that case is limited to the law of *trusts*, where "unlike probate administration,

16  trust creditor claims proceedings are not mandatory." Id. at 792.  The statute the Trustee cites, Cal.

17  Probate Code §19402(b), also solely applies to *trusts*.  What the Trustee ignores is that there is an

18  entirely different rule in probate, which, among other things, limits claims to a scenario when

19  "neither the creditor nor the attorney representing the creditor in the matter has actual knowledge

20  of the administration of the estate before the time the court made an order for final distribution of

21  the property."  Cal. Prob. Code § 9392(a). The Trustee cannot meet this requirement because the

22  Trustee obviously has had knowledge of the administration of the estate before an order for final

23  distribution of the property (which the Trustee does not dispute). [Dkt. No. 167 Ex. 1.] Moreover,

24  "[p]ersonal liability under this section for all claims of all creditors shall not exceed the value of

25  the property distributed to the person out of the estate." Cal. Prob. Code § 9392(b). As the Trustee

26  acknowledges, however, because the Ramirez estate has not had any recovery, Hernandez could

27  not possibly have any liability.   [Dkt. No. 160 ¶ 80; Dkt. No. 194 at 30.]

28

     ***d.  Hernandez Cannot be Personally Liable in to Pay for Work Done in the Ramirez Litigation***

          *i.  <u>The Trustee Implicitly Concedes that Hernandez is Not Liable as Guardian ad Litem</u>*

The Trustee repeatedly refers to a retainer agreement signed by Hernandez in the Second Amended Complaint.  [Dkt No. 160 at ¶23, 87, 102.] The purported Ramirez retainer agreement and draft retainer agreement both identify Hernandez as signing in her capacity as *guardian ad litem* for Ramirez. [Dkt. No. 74 at Ex. 4; Dkt. No. 4 Reitman Decl. at Ex. 15, Ex. 16.]  Indeed, the Trustee himself alleges that "EA was retained to represent Hernandez in her capacity as guardian ad litem for her minor son, Andres Ramirez."  [Dkt No. 160 at ¶ ¶ 86, 109.]  Although it appeared otherwise, the Trustee apparently is not asserting a theory that Hernandez is liable in her capacity as guardian ad litem and has failed to respond to Defendants' argument that she would not be so liable, thereby conceding that she is not.  [Dk.t No. 171 at 11-12.]

          *ii.  <u>Hernandez is Not Liable by Virtue of Somehow Benefiting from Work Done by EA</u>*

As Defendants previously explained in their motion to dismiss, the Trustee cannot state a claim against Hernandez merely because she purportedly benefited from work EA did while representing Ramirez.  [Dkt. No. 171 at 12-14.]  Rather than address the authorities Defendants cited, the Trustee chooses to ignore them, apparently because some of the cases do not use the word "quantum meruit."  [Dkt. No. 194 at 25 n. 4.]  Contrary to what the Trustee implies however, courts recognize that quantum meruit, restitution, and unjust enrichment under California law are all the same concept.  See <u>Munoz v. MacMillan</u>, 195 Cal. App. 4th 648, 661, 124 Cal. Rptr. 3d 664, 675 (2011); <u>Fed. Deposit Ins. Corp. v. Dintino</u>, 167 Cal. App. 4th 333, 346, 84 Cal. Rptr. 3d 38, 49 (2008); <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379, 388 n. 6, 20 Cal. Rptr. 3d 115, 122 n. 6 (2004).  The case the Trustee criticizes Defendants for citing, <u>Dinosaur Development, Inc.</u>, has been cited as an authority for law on "quantum meruit recovery."  <u>Pac. Bay Recovery, Inc. v. California Physicians' Servs., Inc.</u>, 12 Cal. App. 5th 200, 215–16, 218 Cal. Rptr. 3d 562, 574 (2017).

<u>Dinosaur Development</u> addresses the key issue here.  It recognized the rule that "[a] person who, incidentally to the performance of his own duty or to the protection or the improvement of his

1    own things, has conferred a benefit upon another, is not thereby entitled to contribution." <u>Dinosaur</u>

2    <u>Dev., Inc. v. White</u>, 216 Cal. App. 3d 1310, 1315, 265 Cal. Rptr. 525, 528 (1989) (quoting

3    Restatement of Restitution § 106).  In that case, the defendants convinced a government planning

4    department to require the plaintiff to build a road that would increase the value of the defendants'

5    property as a condition for the approval of the plaintiff's building plans.  <u>Id.</u> at 1313–14.  As the

6    court of appeal recognized, it did not matter that the defendants requested that the government

7    require that the road be built, because the plaintiff was required by the government to build the road

8    if it wanted its plan to be approved.  [<u>Id.</u> at 1319.]. This rule is also applied to scenarios where the

9    defendant received a benefit that was incidental to the plaintiff's performance of an agreement with

10   some third party.  <u>California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of California, Inc.</u>, 94 Cal.

11   App. 4th 151, 174, 114 Cal. Rptr. 2d 109, 126 n. 27, 127 (2001) (labeling the claim as one for quasi-

12   contract, but also quoting a case recognizing the term as synonymous with quantum meruit).

13         This policy makes complete sense; there is nothing inequitable about failing to pay someone

14   for work that they were already required to do as a result of an agreement with a third party.  EA

15   had an attorney-client relationship with Ramirez, and could look to the recovery *on his claims* to

16   recover for the work they did *that would benefit Ramirez's case*.

17         The Trustee asks "***why else would any law firm continue to provide legal services in a***

18   ***contingency fee matter when it is anticipated that the plaintiff would die prior to the conclusion***

19   ***of the litigation?***" [Dkt. No. 194 at 25 (emphasis in original).  This is more a reflection of the

20   mercenary attitude of the Trustee and his counsel than a valid argument.  The answer to this is that

21   EA had agreed to represent Ramirez on a contingency basis; that Ramirez could die during the

22   litigation is a risk present in *any* contingency matter (and even more so for someone who, as the

23   Trustee acknowledges, was in a state of unresponsive wakefulness.)  [Dkt. No. 160 at ¶ 20.]  The

24   rule is that "Where withdrawal is not mandatory, the attorney normally must continue

25   representation on the matter undertaken."  Mark L. Tuft et al., <u>California Practice Guide:</u>

26   <u>Professional Responsibility</u> ¶ 10:39 (The Rutter Group 2019).  To even attempt to withdraw without

27   the consent of the client, an attorney would be required to file a motion to be relieved as counsel

28   (which the client, of course, could oppose).  California Rules of Court Rule 3.1362.  The court, of

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 13 of 36

1    course, would be free to deny the motion meaning that the "the lawyer must continue to competently

2    represent the client and proceed in a manner best calculated to further the client's lawful objectives."

3    Mark L. Tuft et al., California Practice Guide: Professional Responsibility ¶ 10:124 (The Rutter

4    Group 2019).  Abandoning Ramirez because EA thought he was going to die is unlikely to have

5    gone over well in the Ramirez trial court; it is not surprising that no motion to withdraw was filed.

6    In addition, abandoning the client would have resulted, and ultimately did result, in EA forfeiting

7    any fees. Hensel v. Cohen, 155 Cal. App. 3d 563, 569, 202 Cal. Rptr. 85, 88 (1984).

8        The Trustee insists that he alleged that Hernandez requested EA's service be provided for

9    her benefit.  [Dkt. No. 194 at 24.] But the allegations he points to merely state that "Hernandez

10   advised EA that she did not expect Ramirez to survive the litigation and still had EA continue to

11   provide legal representation in the case" (which is irrelevant because Ramirez was EA's client so

12   it was already obligated work on the case) and that "EA provided legal services to Hernandez at her

13   explicit and/or implicit request for the legal services" (which is not an allegation that Hernandez

14   made the request, in her personal capacity, for work being done for her (nor Ramriez) that would

15   not otherwise need to be done to advance the Ramirez case.[3]    [Dkt. No. 160 at ¶ 116, 120.]

16   Ultimately, this failure to allege that EA only did work that would only be relevant to a future claim

17   of Hernandez in her personal capacity means the Trustee failed to allege that work was done where

18   Hernandez would be expected to provide compensation for such services.  [Dkt. No. 194 at 7.]

19       While the Trustee ignores this, it is blackletter law that "[t]he person liable to compensate

20   an attorney for his services is the one who employs him, not necessarily the one who receives the

21   benefit of the services."  Cullinan v. McColgan, 87 Cal. App. 684, 698, 263 P. 353, 359 (1927).  In

22   order to seek a quantum meruit recovery, one "must show the circumstances were such that 'the

23   services were rendered under some understanding or expectation of both parties that compensation

24   therefor was to be made.'"  Chodos v. Borman, 227 Cal. App. 4th 76, 96, 173 Cal. Rptr. 3d 266,

25   280 (2014) (quoting In re Mumford's Est., 173 Cal. 511, 523, 160 P. 667, 671 (1916)).

26   _____

27

28   [3] Because the Trustee defines Hernandez to include "individually and as personal representative
     and successor in interest to Andres Ramirez, deceased," clarity is essential.  [Dkt. No. 160 ¶ 6.]

1    "A person who, incidentally to the performance of his own duty or to the protection or the

2    improvement of his own things, has conferred a benefit upon another, is not thereby entitled to

3    contribution." <u>Dinosaur Dev., Inc. v. White</u>, 216 Cal. App. 3d 1310, 1315, 265 Cal. Rptr. 525, 528

4    (1989) (quoting Restatement of Restitution § 106). "The burden is on the person making the

5    quantum meruit claim to show the value of his or her services and that they were rendered at the

6    request of the person to be charged. Allowing an attorney to recover the reasonable value of his or

7    her services from a client is premised on the services being requested by the client." <u>Strong v.</u>

8    <u>Beydoun</u>, 166 Cal. App. 4th 1398, 1404, 83 Cal. Rptr. 3d 632, 635–36 (2008) (citation omitted).

9    What this means is that "[t]he client is not liable for quantum meruit fees to a lawyer with whom

10   he or **she did not contract and whose services the client did not request**." Mark L. Tuft et al.,

11   California Practice Guide: Professional Responsibility ¶ 5:466.2a (The Rutter Group 2019,

12   emphasis added).

13       Here, there are several problems with Trustee's theory.  First, he never alleges that

14   Hernandez understood that she was supposed to compensate EA for the work it did.  This is not

15   surprising; at the time, EA was already to be compensated for working on the <u>Ramirez</u> case by

16   *Ramirez*.    Second, EA already had a duty to represent its client, <u>Ramirez</u>: it could not seek

17   contribution from Hernandez in the course of performing its duty.  Although the Trustee alleges

18   that Ramirez was not expected to survive the litigation, that did not discharge its duty to represent

19   its client.  [Dkt. No. 160 at ¶ 96, 116.]  "[M[ere retention and use of the benefit resulting from the

20   work where the recipient was not free to elect whether or not to accept or where that election could

21   not influence the conduct of the other party with reference to the work performed" is insufficient to

22   form the basis for a cause of action. 55 Cal. Jur. 3d Restitution § 53. Hernandez could not somehow

23   reject the purported incidental benefit she supposedly received from EA while it worked on her

24   son's case.  The Trustee fails to differentiate between services for the benefit of Hernandez and

25   those for the benefit of her son.

26       More importantly, Hernandez had <u>no legal claim</u> until Ramirez passed away, and he did not

27   pass away until nine months after EA was no longer involved in his case.  <u>See</u> <u>Baxter v. Superior</u>

28   <u>Court</u>, 19 Cal. 3d 461, 466, 563 P.2d 871 (1977) (parents have no claims relating to harm to child,

13

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 15 of 36

1  including loss consortium with child).  Government tort claims accrue in the same manner as claims

2  against private defendants. See Cal. Gov't Code § 901. When Ramirez died, his death created a new

3  accrual date and new statute of limitations. Kincaid v. Kincaid, 197 Cal. App. 4th 75, 80, 127 Cal.

4  Rptr. 3d 863, 868 (2011). Thus, EA's petition had no significance, nor does anything that it did in

5  the Ramirez litigation while Ramirez was alive. Had EA (or any law firm for that matter) never

6  taken on the case while Ramirez was still alive, Hernandez would have been able to obtain the same

7  settlement for her claim. In fact, after the death of her son, but prior to filing her complaint,

8  Hernandez submitted a new timely government tort claim to the City of Pasadena, as she was

9  required to do.  [Dkt. No. 118 Ex. 5.]

10

11          iii.    *The Trustee Has Not Stated a Claim under the Theory that*

12                  *Hernandez, in Her Personal Capacity, was the Client of EA and*
                    *The Trustee Has Not Sufficiently Alleged The Existence of An*
                    *Attorney-Client Relationship.*

13          The Trustee never responds to Defendants' argument that "Hernandez understood she was

14  in a contractual relationship with EA as her attorney", which, given the sparse and conclusory

15  allegations about the relationship between Hernandez and EA, only shows that such a relationship

16  is insufficiently alleged. [Dkt. No. 171 at 1-15.]  In fact, the Trustee now merely states that "EA

17  *effectively* provided legal representation to Hernandez as the sole heir to Ramirez in her individual

18  capacity" implying that he now recognizes that there was, in fact, no attorney-client relationship

19  between EA and Hernandez. [Dkt. No. 194 at 12.] Again, this is crucial because "An attorney-client

20  relationship is not created by the unilateral declaration of one party to the relationship... Rather, the

21  relationship can only be created by contract, express or implied." Koo v. Rubio's Restaurants, Inc.,

22  109 Cal. App. 4th 719, 729, 135 Cal. Rptr. 2d 415, 423 (2003).

23

24          iv.    *The Trustee Has Not Alleged the Nature of the Fee*

25                  *Arrangement.*

26          The Trustee falsely states that "Defendants' fallback argument is that even if Hernandez did

27  request the services be provided for her benefit, she did not state the terms of the compensation."

28  But that argument is found nowhere in the Motion to Dismiss.  [Dkt. No. 194 at 25.]  Rather,

Defendants pointed out that "the Trustee has failed to allege what the nature of Hernandez's compensation arrangement with EA was, i.e. contingent, flat rate, or hourly." [Dkt. No. 171 at 15.] The Trustee states that "Hernandez entered the underlying agreement on a contingency fee arrangement with EA" and that "the contingency fee was to be paid from a settlement", but no such allegation is to be found in the Second Amended Complaint. [Dkt. No. 194 at 25, 26.] A complaint must give "fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). This requires, for example, in a complaint involving a contract, the defendants must be given fair notice of the contract's terms. Calip v. Tanigawa, No. 15-CV-02111-MMC, 2017 WL 512780, at *4 (N.D. Cal. Feb. 8, 2017). The Trustee's reliance on Spires v. Am. Bus Lines, does not help him, because if he intends to rely on such a theory, *then that theory should be alleged in the Complaint.* 158 Cal. App. 3d 211, 217, 204 Cal. Rptr. 531 (1984).

v.    *The Trustee Cannot Allocate Fees Between the Two Purported Clients.*

The Trustee attempts to refute Defendants' improper billing practices argument by stating: Hernandez's request that EA continue to provide legal services was with the expectation that the work done would be for her benefit – since she was sole heir and her son was not going to survive the litigation. (Dkt. 160, SAC, ¶¶ 96-99, 116-118.) There would be no double recovery, since this arrangement envisioned only one client at the time of case resolution – and it was Hernandez's expectation that Ramirez would pass away and Hernandez would continue the action

[Dkt. No. 194 at 25.] However, there is no allegation in the Second Amended Complaint that EA *ceased* representing Ramirez. To the contrary, he alleges that "EA continue[d] to provide legal representation in the case" after he was expected to die. The Trustee alleges that EA worked on the case as late as November 19, 2018, months after this was supposedly known, and shortly before his death. [Dkt. No. 160 ¶ 116, 119, 158.] Moreover, even after his death, there would *still* be two clients (Ramirez would have been replaced by his estate).

The Trustee states that "[a]ll of the references to Rule 4-200 on page 16 of the MTD relate to hourly cases – not where the contingency fee was to be paid from a settlement." [Dkt. No. 194 at 26.] What the Trustee ignores is that because the Ramirez retainer agreement was void, and the

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document       Page 17 of 36

1    Trustee apparently is not even alleging a valid contingent fee agreement for Hernandez personally

2    ever existed, any recovery from either client would have been limited to *an hourly recovery*

3    (without any enhancement), contingent on winning the case. Cal. Bus. & Prof. Code § 6147; Cal.

4    Fam. Code § 6602; Grant & Eisenhofer, P.A. v. Brown, No. CV175968PSGPJWX, 2018 WL

5    3816723, at *6 (C.D. Cal. July 24, 2018) (when there is no valid retainer agreement, attorneys are

6    limited to unenhanced loadstar, calculated "the reasonable attorneys' fees and costs based on the

7    value of its hours expended at a reasonable hourly rate"); Dkt. No. 171 at 19-20 (explaining that

8    any purported retainer agreements at issue in this case are void). The Trustee may be conflating the

9    distinction between *billing* and collecting on a bill. Even if only one client ultimately recovered,

10   the Trustee's argument that double billing was not occurring would be the equivalent of an attorney

11   attempting to bill one client for work done that benefited a second as well, and when the first client

12   failed to pay the bill, writing off the first bill and instead billing the second client. The prohibition

13   on double billing without written consent is founded on the commonsense rule that "an attorney

14   may charge a client only for that work the attorney actually does for the client. When a lawyer's fee

15   is based on the time spent on a client's matter, the attorney may ethically charge the client only for

16   that time." Cal. State Bar Standing Comm. On Prof'l Responsibility and Conduct, Formal

17   Op.1996–147 (1996). The Trustee is essentially advocating in choosing the client after the fact,

18   which means that the work was not done, *at that time*, *for that client*.

19

20                    vi.    *The Trustee Cannot Argue Around the Conflict of Interest*
                            *Identified in the Motion to Dismiss*

21           Defendants pointed out in their Motion to dismiss that if EA had in fact represented Hernandez

22   in her personal capacity while her son was alive, it would have simultaneously represented two

23   clients with conflicting interests, which would require the Trustee to allege that EA received the

24   "informed written consent of each client", which he has failed to do. [Dkt. No. 171 at 16-17.] The

25   Trustee does not dispute that the such an allegation would be necessary if such a conflict *did* exist,

26   and instead merely states that "the argument is patently absurd, and without any basis" and

27   conclusively states that "their interests were 100% aligned in the litigation." [Dkt. No. 194 at 26.]

28   But this does not negate the fact that, as Defendants explained, Hernandez would benefit if the case

16

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 18 of 36

1   did not settle until Ramirez passed away because she would, as a practical matter, have to waive

2   her wrongful death claims for it to settle while he was alive.  [Dkt. No. 171 at 17.]  There is no

3   alignment when, on the one hand, Ramirez would have received the money while he was still alive

4   (and could be used, for example, to provide him with higher quality medical care), and on the other

5   hand, he would die without receiving a dime.

6

7               **2.  The Trustee Does Not Have a Valid Declaratory Relief Claim**.

8               As is often the case in his opposition, the Trustee makes no attempt to distinguish the

9   authorities Defendants have cited in their motion to dismiss that explain why declaratory relief is

10  not available here. [Dkt. No. 171 at 17; Dkt No. 194 at 21-22.] The Trustee seeks declaratory as a

11  means of sidestepping his inability to bring a quantum meruit claim for monetary damages.

12              The Trustees' declaratory relief "claim" is created by the California common law governing

13  contingent fee agreements. The Trustee's statutory basis for these claims is 28 U.S.C. § 2201. [Dkt.

14  No. 160 at ¶85-107.] However, the statute "does not allow [the Court] to bypass the *Erie* doctrine

15  to fashion a remedy that is not available under the state law that created Plaintiffs' cause of action."

16  Bateman v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 423 F. App'x 763, 766 (9th Cir. 2011). It

17  does not create a new cause of action. See Martinez v. USAA Fed. Sav. Bank, 683 F. App'x 584,

18  585 (9th Cir. 2017). A declaratory relief "claim is not ripe for adjudication if it rests upon

19  'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas

20  v. United States, 523 U.S. 296, 300 (1998). There is another problem: 28 U.S.C. § 2201 grants the

21  power to "any court of the United States." Bankruptcy courts are not a court of the United States

22  within the meaning of Title 22. See 28 U.S.C. § 451. This means a bankruptcy court cannot provide

23  declaratory relief under 28 U.S.C. § 2201. C.f. In re Demas Wai Yan, 703 F. App'x 582, 583 (9th

24  Cir. 2017); In re Perroton, 958 F.2d 889, 896 (9th Cir. 1992); In re Westin Capital Markets, Inc.,

25  184 B.R. 109, 118 (Bankr. D. Or. 1995).

26              Even if available, "[t]he purpose of the Declaratory Judgment Act is '"to relieve potential

27  defendants from the Damoclean threat of impending litigation which a harassing adversary might

28  brandish, while initiating suit at his leisure—or never.'" Hal Roach Studios, Inc. v. Richard Feiner

17

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 19 of 36

1  & Co., 896 F.2d 1542, 1555 (9th Cir. 1989). Declaratory relief is unavailable when there is another

2  adequate alternative remedy. Johnson v. Quality Loan Serv. Corp., No. LACV1809140VAPJEMX,

3  2018 WL 6978196, at *15 (C.D. Cal. Dec. 18, 2018) (collecting cases).  The Trustee is not facing

4  any threats of litigation and so declaratory relief is not available.

5      The case the Trustee cites involves an entirely different scenario where the plaintiff filed a

6  declaratory relief claim and the defendants also filed a similar declaratory relief counterclaim. Pet

7  Check Tech., LLC v. Handlr, Inc., No. CV 18-962-R, 2018 WL 8333418, at *2 (C.D. Cal. Sept. 11,

8  2018).  None of the cases the Trustee cites address the key issue here: whether the Trustee can

9  obtain a declaratory judgment here when he would not be able to do so under California substantive

10 law. The cases the Trustee cites generally do not address whether it is possible to use declaratory

11 relief claims to obtain relief that would otherwise be unavailable under state law. Instead, the

12 Trustee addresses declaratory relief pertaining to procedural matters specific to bankruptcy courts.

13     Bankruptcy Rule 7001(9) does not help the Trustee. Courts that issue declaratory judgments

14 under Rule 7001(9) still hold that "[a] bankruptcy court's discretion to issue declaratory judgments

15 is subject to the constraints of the [Declaratory Judgment] Act and the court's jurisdictional limits.

16 In re Kings Falls Power Corp., 185 B.R. 431, 436 (Bankr. N.D.N.Y. 1995). The rule is still that "[a]

17 declaratory judgment is a remedy for an underlying cause of action, not a separate, substantive

18 claim for relief" and the bankruptcy court is still able to strike declaratory relief as duplicative or

19 otherwise inappropriate.  See In re Brinson, 485 B.R. 890, 904 (Bankr. N.D. Ill. 2013).

### 3.  The Trustee Should Not Be Suing X-Law for Declaratory Relief.
#### a.  The Trustee Cannot Sue X-Law Until He Obtains a Judgment in His Favor Against Hernandez.

23     Attempting to avoid the holding of Mojtahedi v. Vargas, the Trustee argues that he "has

24 independent claims against X-Law and Marchino that are not solely dependent upon prevailing on

25 the quantum meruit claims against the [sic] EA's former clients." [Dkt. No. 109 at 7.] However, the

26 plaintiff in that case alleged claims for "fraud, violation of Commercial Code sections 3110(d) and

27 3420, negligence, and tortious interference with prospective economic advantage."

28 Mojtahedi v. Vargas, 228 Cal. App. 4th 974, 976, 176 Cal. Rptr. 3d 313, 315 (2014). In fact, the

1    term quantum meruit does not appear *anywhere* in the opinion of that case. The Trustee argues that

2    it is possible to sequentially litigate claims against clients before counsel in the same action. [Dkt.

3    No. 109 at 7.] That is impossible, however, because in order to state a claim against the successor

4    counsel, the former counsel <u>must</u> "allege facts establishing that he adjudicated the existence, value,

5    [and] enforceability of his lien." <u>Mojtahedi</u>, 228 Cal. App. 4th at 978. Obviously, these allegations

6    could not be alleged in a complaint if both attorney and client are sued simultaneously. <u>Mojtahedi</u>

7    noted an entirely reasonable concern in issuing its ruling: "[w]ithout first establishing a right to any

8    portion of his clients' settlement proceeds, plaintiff in this case lacks any basis to assert that

9    defendant fraudulently withheld any money from him." <u>Id.</u> at 979. Until the lien has been

10   adjudicated, any claim against successor is entirely speculative to the point of frivolousness.

11   Although the Trustee notes that <u>Mojtahedi</u> did not specifically address former counsel

12   simultaneously suing successor counsel and the client, it is unlikely that such a scenario would not

13   have occurred to the court. The court noted that although there was no dispute between the clients

14   and former counsel regarding the amount owed, a declaratory claim against the clients was still

15   necessary before recovery would be compelled from successor counsel. <u>Id.</u> at 978. If the clients and

16   successor attorney could be sued simultaneously, the court would certainly have stated as such.

17         The Trustee complains that fees may "dissipate 'into the ether'", but that complaint is

18   entirely speculative and one that could be said about any other claim that is not ripe. [Dkt. No. 194

19   at 19.] The Trustee's citation to 11 U.S.C. § 105 does not help him, because it "does not authorize

20   bankruptcy courts to create substantive rights that do not exist under state or federal law." Kathleen

21   P. March et. al., <u>Rutter Group Practice Guide: Bankruptcy</u> ¶ 1:1002 (2020). In effect, what the

22   Trustee is asking the Court to do is to create a new cause of action because the claims that the

23   Trustee wishes to pursue are clearly, blatantly, and on their face, not ripe.

24         The Trustee suggest that the Court could bifurcate or stay the claims, [Dkt. No. 194 at 28.],

25   but it is well settled law that "[i]n determining whether a dispute is ripe, the court looks to the

26   situation as of the time suit was filed. . . . Ripeness is not affected by events occurring after a suit

27   is filed." <u>Democratic Nat'l Comm. v. Watada</u>, 198 F. Supp. 2d 1193, 1197 (D. Haw. 2002); <u>Russo</u>

28   <u>v. Jones</u>, No. CIV 10-00125 LEK, 2010 WL 3834965, at *6 (D. Haw. Sept. 24, 2010).  Staying or

                                               19

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 21 of 36

1    bifurcating the claims will therefore not cure the lack of ripeness, and unripe claims must be

2    dismissed. S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990).

3

4
### b.   The Trustee Cannot Sue X-Law on Any Quantum Meruit or Similar Theory Without a Valid Lien

5          The Trustee states that "Finally, Defendants make the false representation to this Court that

6    a "valid lien" is a prerequisite for a quantum meruit claim." [Dkt. No. 194 at 28.] The Trustee fails

7    to provide any citation to where Defendants stated this, which is not surprising, as Defendants only

8    discuss liens in the context of claims against X-Law on a quantum meruit or other similar theory

9    and for the purpose of arguing that the declaratory relief claim must be dismissed.  [Dkt. No. 171

10   at 18-20.]  The Trustee made the same argument in the anti-SLAPP motion, and cited the same

11   authority.  [Dkt. No. 109 at 11-12.]  The Trustee has apparently forgotten that Defendants have

12   already refuted this argument.  Defendants previously stated that they "do not dispute in their

13   motion that it is possible for former counsel to assert a claim against the former client in the

14   appropriate circumstances even if no lien exists. The absence of a valid lien is significant however,

15   because it precludes any liability against X-Law for disregarding a lien or other similar theories."

16   [Dkt. No. 116 at 10.]  As Defendants previously noted, "None of the cases the Trustee cites are

17   former versus current attorney lawsuits; they simply stand for the proposition that attorneys may at

18   times recover a quantum meruit recovery from their clients when their contracts are invalid." [Dkt.

19   No. 116 at 12.]

20          The Trustee claims that "Defendants apparently have not read the SAC because the claim

21   for quantum meruit is only against Hernandez. Thus, there is no basis for this argument as well"

22   and that Olsen v. Harbinson is inapplicable because the Trustee has not sued X-Law for quantum

23   meruit.  [Dkt. No. 194 at 26.]  Olsen v. Harbison is directly on point. See 191 Cal. App. 4th 325,

24   119 Cal. Rptr. 3d 460 (2010). There, a client fired their counsel and retained new counsel. Id. at

25   328. After the case settled, former counsel sued successor counsel for quantum meruit, alleging that

26   successor counsel had failed to provide him with any of the attorneys' fees and that the successor

27   counsel had been unjustly enriched. The court explained that "[u]nder these circumstances, plaintiff

28

1   might be entitled to quantum meruit—from the client. Instead, he sought to recover the value of

2   services rendered from [successor counsel]. There is no basis for such a claim" Id. at 332.

3       However, the theory of liability in the declaratory relief claim *is* one seeking some sort of

4   quantum meruit allocation.  The Trustee alleges that he "has a valid and enforceable quantum meruit

5   claim for services rendered by EA in the Hernandez Case." [Dkt. No. 160 at ¶ 89.]. He alleges that

6   X-Law "stated that they will not provide any payment to the Trustee for EA's quantum meruit

7   claim."  [Id. at ¶ 102.]  He alleges that "an actual controversy has arisen and exists between the

8   Trustee and the Hernandez/the Attorney Defendants concerning EA's right to a portion of the

9   monies recovered from the settlement in the Hernandez case." [Id. at ¶ 105.]  The relief the Trustee

10  seeks is "declaratory judgment against Hernandez and X-Law establishing the amount of fees to

11  which the Estate is entitled and allocating the contingency fee in the Hernandez Case between the

12  Estate and X-Law." [Id. at p. 29.]

13      Earlier in his opposition, the Trustee has a section titled "There is No Prohibition Against

14  Trustee Suing Both the Client and Successor Law Firm for Quantum Meruit." [Dkt. No. 194 at

15  19.] He states that "[w]ith respect to the claims against Hernandez (and the Ramirez action), there

16  is absolutely no reason why the *quantum meruit* claims cannot be sequentially litigated in the same

17  action (i.e., the determination of the *quantum meruit* claims against Hernandez, and then the

18  resulting action against X-Law and Marchino relating to the constructive trust created for such

19  monies)."  [Id.]  He goes on to state that

20      *Mojtahedi v. Vargas* (2014) 228 Cal.App.4th 974 does not support Defendants'
        argument. *Mojtahedi* involved a fee dispute in which the prior law firm: (a) only sued
21      the subsequent law firm (and not the client); and (b) only sought relief based upon a lien
        (and not quantum meruit claim).  There is no case that Trustee's counsel has located, nor
22      any cited by Defendants, that prohibits a quantum meruit action from including the client
        and subsequent counsel as parties – with the claims against the client being litigated first.

23  [Id. at 19.]  Presumably, this is a reference to Defendants' repeated citation of the case for the

24  proposition that former counsel must sue the clients before they can sue successor counsel and

25  establish that there is a valid and enforceable lien. [Dkt. No. 171 at 4, 5, 17.]  None of these

26  statements would make sense unless the Trustee is using a quantum meruit theory against X-Law.

27

28

1    Accordingly, the Trustee cannot bring a declaratory relief claim on a quantum meruit type

2    theory against X-Law for the reasons stated in the motion to dismiss.  [Dkt. No. 171 at 18-20.]

3

4                 ***c.    The Trustee Has Not Alleged a Claim for Declaratory Relief Under
                    a Jewel Theory.***

5      The Trustee discusses a <u>Jewel</u> theory of liability.  [Dkt. No. 194 at 26-27.]  However, it is

6    entirely unclear which claims the Trustee believes such a theory pertains to.  Because the Trustee

7    has placed this argument under the heading "Defendants' Assertion That Trustee is Prohibited From

8    Suing X-Law and Marchino is Without Merit" and discusses Defendants' arguments about liens in

9    the same section, Defendants assume that this is supposed to be in response to the section of

10    Defendants' motion to dismiss addressing the Trustee suing The X-Law Group, P.C. for declaratory

11    relief and that the Trustee is asserting a <u>Jewel</u> theory to obtain declaratory relief.  [Dkt. No. 171 at

12    17-20; Dkt. No. 194 at 26-28.]

13      Asserting a <u>Jewel</u> theory fails for several reasons.  First, a <u>Jewel</u> claim exists where "in the

14    absence of a partnership agreement, the Uniform Partnership Act requires that attorneys' fees

15    received on cases in progress upon dissolution of a law partnership are to be shared by the former

16    partners according to their right to fees in the former partnership, regardless of which former partner

17    provides legal services in the case after the dissolution." <u>Jewel v. Boxer</u>, 156 Cal. App. 3d 171, 174,

18    203 Cal. Rptr. 13, 15 (1984) Although the Trustee alleges on dozens of occasions that Marchino

19    was a partner at EA, he does not make a single allegation that The X-Law Group, P.C. was a partner.

20    This is critical because the Declaratory judgment claim is brought against The X-Law Group, P.C.,

21    but <u>not</u> Marchino.  [Dkt. No. 160 at p. 15 (stating "Against Hernandez and X-Law, For Declaratory

22    Judgment"); [Dkt. No. 160 at ¶ 4 defining "X-Law" as "The X-Law Group, PC".]  Therefore, there

23    is no viable claim based on a <u>Jewel</u> theory against either.

24      Even if the Trustee could get past this fatal deficiency, he has numerous other issues with

25    such a claim.  "Generally, a partnership connotes co-ownership in partnership property, with a

26    sharing in the profits and losses of a continuing business." <u>Chambers v. Kay</u>, 29 Cal. 4th 142, 150–

27    51, 56 P.3d 645, 650–51 (2002). The Trustee does not allege that Marchino had any ownership

28    interest in EA. The allegation that Marchino was an EA partner does not suffice because, in the

context of law firms, a partner is also a label used for a senior employee. See PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, 150 Cal. App. 4th 384, 389 n.4, 58 Cal. Rptr. 3d 516, 520 (2007). In fact, the Trustee appears to be asserting that Marchino was not an equity partner and instead cites a partnership by estoppel doctrine. [Dkt. No. 194 at 26 n. 5 (citing California State Bar Formal Opinion No. 1986-90).]   However, that doctrine has zero applicability here.   California State Bar Formal Opinion No. 1986-90 relied on California Corporations Code section 15016(1) which stated "When a person, by words spoken or written or by conduct represents himself or consents to another representing him to anyone, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made."  The equivalent section now states:

> If a person, by words or conduct, purports to be a partner . . . in a partnership or with one or more persons not partners, the purported partner *is liable to a person to whom the representation is made, if that person, relying on the representation, enters into a transaction with the actual or purported partnership*.

Cal. Corp. Code § 16308(a).  Obviously, this statute is intended to protect *third* parties; it does not protect EA (or its bankruptcy estate) because EA obviously knew that Marchino (or The X-Law Group, P.C. for that matter) was not its partner.

Nor does the Trustee allege that Marchino was *still* a partner at the time of any purported dissolution. In addition, the Trustee does not actually allege that EA has dissolved for the purposes of making the claim. Dissolution only occurs following one of a specified list of events, set by statute and neither receivership nor bankruptcy are mentioned. Cal. Corp. Code § 16801.

Finally, the continued existence of Jewel claims in California is dubious at best. The substantive law of partnerships has changed since Jewel, and the California Supreme Court has recently rejected the applicability of Jewel claims to hourly matters on public policy grounds, recognizing that they interfere with a clients' choice of counsel. Heller Ehrman LLP v. Davis Wright Tremaine LLP, 4 Cal. 5th 467, 473, 475, 484, 411 P.3d 548, 558, 552-53 (2018). The same rationale would apply to Jewel claims for contingency cases. The rule stated in Jewel was incredibly harsh with regards to how contingent fees should be split among partners following dissolution because the court must "allocate such income to the former partners of the old firm in accordance

1    with their respective percentage interests in the former partnership." Jewel, 156 Cal. App. 3d at

2    176, 180.  Thus, if a departing partner had a small equity interest in his prior firm, he would only

3    be entitled to a small portion of the contingent fee, even if he departed with the case immediately

4    after its inception and would be required to spend years litigating the case through trial.  This would

5    deter partners from agreeing to continue to represent clients.  Based on the California Supreme

6    Court's holding in Heller Ehrman LLP, were the court to address whether Jewel claims could be

7    brought in the context of contingent fee cases, it would find that they could not.

8

9              **4.  The Trustee Has Failed to State a Violation of Automatic Stay Claim.**
                   ***a.  The Trustee Cannot Bring a Claim Seeking Damages.***

10              It is black letter law that the Trustee cannot seek damages under 11 U.S.C. § 362(k) because

11    he is not an individual.  The Trustee ignores that "an individual injured by any willful violation of

12    a stay provided by this section shall recover actual damages, including costs and attorneys' fees,

13    and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(k) (emphasis

14    added).  "[A] Chapter 7 trustee is not an 'individual' for purposes of 11 U.S.C. § [362(k)] entitled

15    to recover attorney's fees as damages."  In re Pace, 67 F.3d 187, 193 (9th Cir. 1995) (discussing

16    equivalent section of earlier version of 11 U.S.C. § 362).  The Trustee fails to cite this controlling

17    authority, instead citing In re Schwartz-Tallard, a case involving an individual debtor seeking fees

18    for violation of the underlying stay which, therefore, does not negate Defendants' argument.  765

19    F.3d 1096, 1101 (9th Cir. 2014).  The Trustee has not shown that In re Pace has been overturned,

20    or that 11 U.S.C. § 362(k) has been substantively amended in a manner that results in In re Pace's

21    holding no longer being good law.

22              In re Schwartz-Tallard also has nothing to do with the question of whether a claim for

23    contempt can be brought by adversary proceeding, and the Trustee apparently does not dispute that

24    a claim for contempt must be brought by motion, instead stating "separate contempt proceeding is

25    necessary to award damages, Trustee has no impediment to filing a separate motion for contempt

26    to seek the issuance of an order to show cause to recover compensatory damages."  [Dkt. No. 194

27    at 31.]  The Trustee accuses Defendants of "misrepresent[ing]" the holding of In re Zilog, Inc., 450

28    F.3d 996, 1008 n. 12 (9th Cir. 2006) as stating that "misrepresented holding that discharge contempt

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 26 of 36

1  proceedings and automatic stay violations are procedurally indistinguishable from one another."

2  [Dkt. No. 194 at 31.] Defendants did no such thing.

3      Rather, Defendants made an argument that the Trustee cannot bring a "claim" for contempt

4  through an adversary proceeding. [Dkt. No. 171 at 21.] They relied on Barrientos v. Wells Fargo

5  Bank, N.A., a case that held that adversary proceedings are not the appropriate mechanism to seek

6  a contempt order because "contempt proceedings brought by the trustee or a party in interest are

7  contested matters that must be brought by motion in the bankruptcy case under Bankruptcy Rule

8  9014." 633 F.3d 1186, 1189–91 (9th Cir. 2011).  Although Barrientos was decided in the context

9  of a violation of discharge injunction, its invocation of Bankruptcy Rules 9014 and 9020 is equally

10  applicable in the context of seeking a contempt order for violation of the automatic stay.

11  Defendants' citation of In re Zilog, Inc. for the proposition that there is "no material difference

12  between the discharge injunction and the automatic stay for these purposes. A contempt order

13  entered for violation of either is governed by the same standards, namely those applicable to all

14  civil contempt proceeding" is merely used to establish that there is no difference between automatic

15  stay violations and discharge injunction violations that makes it possible to bring a claim for

16  contempt for the former when the latter can only be brought by motion.  50 F.3d 996, 1008 n. 12

17  (9th Cir. 2006).

18      The Trustee notes that he "may properly obtain declaratory relief in an adversary proceeding

19  regarding whether or not the conduct described in the SAC violated the automatic stay." [Dkt. No.

20  194 at 31.]  However, the section of the motion to dismiss that the Trustee is apparently responding

21  to was only addressing the fact that, as the section heading states "The Trustee Cannot Bring a

22  Claim Seeking Damages for Violation of Automatic Stay." [Dkt. No. 171 at 21.]

23      In addition, the Trustee's Second Amended Complaint *does not* in fact seek such a

24  determination.  The violation of automatic stay claim only mentions damages in the body of the

25  claim itself. [Dkt. No. 160 at ¶¶ 135-136.] The prayer seeks damages and a "determination that the

26  Fee Waiver Letter and all actions taken in violation of the July 11th Order and the automatic stay

27  are void ab initio."  [Id. at p. 29.]  There is a material difference between seeking to determine that

28  actions were *void* and a broader question of whether something may have violated the automatic

stay, *regardless of whether it caused any harm*.  Defendants previously explained why X-Law is the wrong party to sue if the Trustee seeks a ruling that something was void and responds to the Trustee's arguments otherwise below.  [Dkt. No. 171 at 24.]  This attempt to reframe the declaratory relief is a much broader manner appears to be the Trustee attempting to have the tail wag the dog: he wishes to seek declaratory relief that would not serve any useful purpose as a vehicle to obtaining fees.

### b.  X-Law Cannot Be Liable for the Settlement Structuring.

The Trustee focuses entirely on Defendants' statement that "X-Law could not make the decision of how to structure the settlement; as a matter of California law, settlement decisions rest in the hands of the client, not her attorney" and calls the argument "disingenuous, because it is obvious that a client may rely on her attorneys to advise her and to structure a settlement for her benefit." [Dkt. No. 194 at 31.]   The Trustee completely ignores the significance of Defendants' argument, including the extensive citation of authority that explains that a client has an absolute right to settle, or refuse to settle a case in the matter she sees fit and the conclusion that

> the clients here, Hernandez/the Estate of Ramirez, were free to settle the lawsuit in any way that they desired. X-Law cannot be held liable for violating a stay when the settlement structure was never, by law, X-Law's decision to make.  X-Law could not have even contracted with its clients to give itself such authority. Relatedly, whatever right the Trustee may believe EA's estate has with regards to fees arising out of the Ramirez litigation, that right cannot extend to giving it the power to veto settlements that it does not approve of

[Dkt. No. 171 at 22.]   The Trustee argues that "To the extent that the attorneys violated the automatic stay in their conduct, they are coliable with their client."  [Dkt. No 194 at 31.]  This ignores the key question: Could Hernandez/the Estate of Ramirez ever be liable for structuring the Ramirez settlement in a particular manner?  The Trustee fails to address this point (and does not dispute that he did not have some sort of veto power of the settlement of the case), instead choosing to engage in typical, incoherent, character assassination against X-Law, this time claiming there is an "actual conflict of interest between X-Law and its client, where X-Law seeks to avoid liability by placing all responsibility on its client." [Dkt. No. 194 at 32.]. But there is no conflict of interest because Hernandez/the Estate of Ramirez did not violate the automatic stay either.

The Trustee alleges that "EA's right to fees and any enforceable lien on the recovery

1    constitutes property of the Estate that is protected by 11 U.S.C. § 362(a)(3)."  [Dkt. No. 160 at ¶

2    129.]  The violation of automatic stay inquiry requires courts to look to state law to determine

3    property interests in bankruptcy proceedings." In re Perl, 811 F.3d 1120, 1127 (9th Cir. 2016).  As

4    the cases Defendants previously cited clearly indicate, although former counsel may have a

5    quantum meruit interest *from a client's settlement recovery*, California law does not recognize the

6    right of an attorney to veto a settlement or settle a claim for zero dollars).  [Dkt. No. 171 at 22.]

7           Significantly, the authority the Trustee cites only addresses scenarios where both attorney and

8    client are liable; he fails to cite any authority where the attorney is liable for violating an automatic

9    stay for advising the client to do something *that does not violate the stay*.  To put it another way,

10   the Trustee is seeking to hold X-Law liable for advising its clients to do something that they are

11   permitted to do.  Defendants are certainly unaware of any such authority holding that attorneys

12   violate an automatic stay for advising clients to do something that does not violate the automatic

13   stay.  In sum, the Trustee's response to Defendants' motion to dismiss does nothing to negate the

14   fact that X-Law cannot be liable for assisting or advising Hernandez on doing something that she

15   was permitted to do.

16                 *c.  The Trustee's Claim Fails for Lack of Causation and Damages.*

17          The Trustee claims that Defendants' statement that there are "a number of fatal problems

18   with regards to causation and damages" is an attempt to "dispute the truth of the allegations in the

19   SAC regarding the intent of Marchino and Avenatti in executing the Fee Waiver Letter, and recycle

20   various other arguments from their MTD without further explanation."  [Dkt. No. 194 at 32.]  The

21   Trustee states that "the SAC specifically alleges that X-Law's conduct in preparing and negotiating

22   a settlement to exclude and/or destroy EA's fee rights violated the automatic stay, and that the EA

23   estate suffered damages in the amount of the *quantum merui*t recovery to EA as a result."  [Id.]  As

24   Defendants previously explained, "[i]f the Trustee does not have a claim against the Ramirez estate

25   because, for example, it is time barred, then he cannot have damages. In an alternate world, where

26   there was no fee waiver and the Ramirez settlement was structured in a manner that would result in

27   the estate receiving money, EA's estate would still have been unable to collect."  [Dkt. No. 171 at

28   23.] Specifically, any claim against the estate of Ramirez (the only one impacted by the structuring

                                             27

of the settlement or the Ramirez fee waiver letter) is time barred under Cal. Civ. Proc. Code § 366.2(a) and barred by failure to comply with the condition precedent of filing a timely creditor's claim (or for that matter file a timely petition to file a late claim) in the probate court. [Id. at 7-10.] This is not a factual dispute; it is based entirely on the date of Ramirez's death, stated in the complaint, [Dkt. No. 160 ¶ 71] and court records showing the dates various documents were filed.[4] If the violation of automatic stay claim pertains to the Ramirez waiver letter, for the waiver to have caused damages, there would necessarily need to have been a recovery for the estate of Ramirez, which contradicts allegations that all of the settlement has been allocated to Hernandez in her personal capacity. [Dkt. No. 160 ¶ 80.] Finally, the allegation that the alleged actions caused damages "is at odds with the Trustee's theory that EA's estate is entitled to fees from Hernandez in her personal capacity." [Dkt. No. 171 at 23.]

### d. The Trustee Concedes That Clients Have an Absolute Right to Choose Their Counsel; Whether EA Had a Quantum Meruit Claim Against Hernandez Is Irrelevant to This Claim.

The Trustee concedes that "the law in California is that a client has an absolute right to choose his or her own counsel." [Dkt. No. 194 at 33.] Therefore, X-Law cannot have somehow violated a bankruptcy court order by virtue of receiving a case or client from EA. The Trustee discusses at length that the fact that "*the client* still must compensate the former attorney in quantum meruit for the value of the services rendered." [Id. (emphasis added).] The operative word here is client. Regardless of whether the Trustee believes he has a claim against Hernandez (individually or in her capacity as the personal representative of the estate of Ramirez), the recourse is a claim against the client, not X-Law. There is no basis for a violation of automatic stay claim or a basis to seek contempt sanctions here.

### e. The Trustee Has Brought a Claim Against the Wrong Party if it Seeks to Void the Fee Waiver Letter.

The Trustee states "The MTD also argues, seemingly on a tangent, that 'Trustee is suing the

---

[4] To be clear, at no point has the Trustee ever opposed Defendants' requests for judicial notice.

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 30 of 36

1   wrong party' for a determination that the Fee Waiver Letter is void." [Dkt. No 194 at 33.]  This is

2   no tangent.  He obviously needs to seek a ruling that the letter is void against the person who the

3   letter was directed to, Ramirez.  As Defendants previously noted, the letter itself states "We want

4   to inform you [the client – Andres Ramirez] that given the limited amount of time we worked on

5   your case, Eagan Avenatti will not seek to recover fees from any recovery you may ultimately

6   receive." [Dkt. No. 76 Ex. 1.] The letter was addressed to Ramirez himself, and not X-Law. [Id.]

7   The Trustee admits as much. [Dkt. No. 160 at ¶ 61.]  Whether the letter is voided has no effect on

8   the relationship between X-Law and the bankruptcy estate of EA; it was only waiving fees Ramirez

9   owed EA, not that X-Law owed EA, if any.

10          The Trustee states that "Defendants seek to rely, at least in part, on the Fee Waiver Letter

11  as an affirmative defense to the claims in the SAC. Joinder of any other party is not necessary for

12  the Court to rule on the validity of Defendants' asserted affirmative defense." [Dkt. Non. 194 at

13  33.] This is entirely circular; the Trustee is essentially stating that he sought relief in the Second

14  Amended Complaint because Defendants would assert a defense at same later point.  Even more

15  confusing is the fact that Defendants have obviously not asserted the waiver letter as an affirmative

16  defense to the Second Amended Complaint at this time.  They have not even filed an answer.

17  Although the Trustee claims that joinder of another party is not necessary, *whatever the Trustee's*

18  *theory of liability against X-Law is, if the waiver letter has any impact on it,* he would need a

19  determination that the letter is void as against Ramirez.  The waiver letter has no impact on the legal

20  relationship between X-Law and EA, it only had an impact on the relationship between Ramirez

21  and EA.  Likewise, if the Trustee is seeking to void Hernandez's settlement with Pasadena, he is

22  obviously suing the wrong party.

23

24          **5.  The Trustee Has Failed to State a Claim for Fraudulent Transfer.**
               ***a.  The Trustee Does Not Have A Claim Regarding the "Transfer" of***
25             ***the Ramirez Case.***

26          The Trustee acknowledges clients have the right to choose their attorney.  [Dkt. No. 194 at

27  38-39.]  Instead, he attempts to rely on the <u>Jewel</u> doctrine and argue that <u>Heller Ehrman LLP</u> does

28  not help Defendants, 4 Cal. 5th 467.  Defendants already explained why the Trustee cannot assert

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 31 of 36

1    a <u>Jewel</u> claim above.  However, there is an additional fatal deficiency with invoking <u>Jewel</u> as a

2    basis for a fraudulent transfer claim.  What is lost on the Trustee is that <u>In re Heller Ehrman LLP</u>

3    itself reveals why there can be no claim here: the purported transfer in that case was that the

4    bankrupt law firm "waived any rights or claims it may have had to seek payment of legal fees

5    generated from non-contingency fee matters by former Heller shareholders after the date they

6    departed from the firm."  716 F. App'x 693, 694 (9th Cir. 2018).  The Trustee does not allege that

7    EA had provided Marchino (or The X-Law Group, P.C. for that matter) a <u>Jewel</u> waiver.

8    The Trustee completely ignores the question of whether there was in fact property

9    transferred.  In the case of the UVTA claim, he never considers what a "transfer" is within the

10   meaning of Cal. Civ. Code § 3439.04.  Specifically, "'transfer' means every mode, direct or

11   indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset

12   or an interest in an asset". Cal. Civ. Code § 3439.01(m).  Asset, in turn, "means property of a

13   debtor". Cal. Civ. Code § 3439.01(a).  Likewise, for a transfer under 11 U.S.C. § 548(a)(1),

14   "[b]ecause the trustee can avoid a transfer only if 'the debtor had an interest in property,' . . ., the

15   waiver was not a fraudulent transfer under 11 U.S.C. § 548(a)(1)."  <u>In re Heller Ehrman LLP</u>, 716

16   F. App'x at 695.  Thus, the key question in the fraudulent transfer claim is what is the property that

17   was transferred.  It certainly isn't the client or the <u>Ramirez</u> case.

18
19                     ***b. The Trustee Does Not Have a Claim Relating to the Failure to a
                            Failure to Pay Referral Fees.***

20   As Defendants noted in their motion to dismiss, "the Trustee cannot argue that EA's estate

21   has some sort of property right to a referral fee that neither Hernandez nor Ramirez authorized."

22   [Dkt. No 171 at 26.]  The Trustee's discussion of the failure to pay referral fees fails to explain how

23   EA had a property interest in referral fees which, as was noted above, is key to asserting a fraudulent

24   transfer claim.  [Dkt. No. 194 at 39.]  The entirety of the Trustee's referral fee allegations are found

25   in one paragraph and amount to an argument that it is customary to provide a referral fee and there

26   is no reason to believe that Hernandez would have rejected such a fee.  [Dkt. No. 160 at ¶¶ 156-

27   157.]  This certainly is not enough to establish EA having a property interest.  Indeed, the Trustee

28   does not even allege, as the cases about referral fees consistently do (including the one he cites),

that there was at least an agreement between the two law firms providing that one would pay the other firm a portion of the fees recovered. See, e.g., Chambers v. Kay, 29 Cal. 4th 142, 146, 56 P.3d 645 (2002); Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler, 212 Cal. App. 4th 172, 174, 151 Cal. Rptr. 3d 134, 136 (2012).

The case the Trustee cites for the equitable estoppel exception, Barnes, involves a narrow exception to the requirement to comply with the client consent rule, but only for class actions. See 212 Cal. App. 4th at 186; Joseph Saveri Law Firm, Inc. v. Michael E. Criden, P.A., No. 14-CV-01740-EDL, 2015 WL 1029364, at *6 (N.D. Cal. Mar. 9, 2015) (explaining the limited scope of Barnes). Equitable estoppel is not a defense outside of an incredibly narrow set of circumstances. In Chambers, the California Supreme Court cited with approval an earlier case that had explained that equitable estoppel was unavailable because the attorneys "could have protected themselves by providing the client with the required written fee-sharing disclosure and obtaining [client] consent." 29 Cal. 4th at 158–59. Barnes is distinguishable because in that case "plaintiff offered to prove that defendants wrongfully prevented it from obtaining client consent." 212 Cal. App. 4th at 180. The "plaintiff was not in direct contact or privity with the class representatives" giving defendants the exclusive ability to disclose the fee splitting agreement to the clients. Id. at 175. Moreover, "[d]efendants threatened that if plaintiff tried to notify the class representatives of the fee-splitting agreement, defendants would consider such action to be tortious interference with defendants' attorney-client relationship." Id. The holding was limited to "the unique circumstances presented by [the] case" where "one attorney refuses to comply with the rules' disclosure and consent requirements and inequitably blocks the other attorney from doing so." Id. at 186. The Trustee's allegations do not put the case within the realm of the incredibly narrow exception found in Barnes because the Ramirez case was not a class action, there was no substitution of clients to evade 2-200, there was no agreement between EA and X-Law on splitting fees, and perhaps most significantly, EA obviously had an attorney-client relationship with Ramirez (and the Trustee falsely claims it had one with Hernandez as well), meaning that EA could simply have spoken directly to Hernandez to obtain the 2-200 consent. Accordingly, the allegations relating to referral fees cannot be a basis for a fraudulent transfer claim.

31

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
                        Main Document      Page 33 of 36

### c.  There Is No Claim Relating to the Fee Waiver Letter.

The Trustee states:

> Defendants argue that any "waived fee" by EA would have gone into Hernandez's possession. This is a true "head scratcher." There is no claim that X-Law charged a higher contingency fee percentage than EA – only that X-Law took the entire fee without providing EA with the customary referral fee for the work already done on the case.

[Dkt. No. 194 at 40.]  This statement is a "true 'head scratcher.'"  The section the Trustee cites explains that Ramirez, not X-Law, is the recipient of any transfer alleged in the Fee Waiver Letter.  [Dkt. No. 171 at 26-28.]  As is explained there, X-Law could not have ultimately received anything as a result of the Fee Waiver Letter, meaning X-Law was not the transferee.  The Trustee does not dispute Defendants' argument that under California law any waived fees would have belonged to Ramirez, not X-Law.  [Id. at 27-28.]

This argument was not intended to respond to the referral fee allegations.  Rather, it was intended to respond to the Fee Waiver Letter allegations.  [Dkt. No. 160 at ¶¶ 153, 155, 165-175.]  If the Trustee is not, in fact, pursuing a fraudulent transfer claim related to the Fee Waiver Letter (even though the allegations of the claim appear to primarily involve the letter), then obviously this argument is irrelevant.  Conversely, if he *is* intended to pursue such a claim, he has completely failed to address this argument and, in doing so, waived the issue.

### d.  The Fraudulent Transfer Claim Fails for Lack of Causation and Damages.

As was noted in the motion to dismiss and above, the fraudulent transfer claim fails against X-Law for lack of causation and damages for the same reasons that the violation of stay claims does: there has been no recovery in favor of Ramirez's estate and the purported transfers have nothing to do with Hernandez, the only plaintiff to have recovery.  [Dkt. No. 171 at 28.]

### 6.  The Claims Against Hernandez Should Be Dismissed Because the Trustee Has Failed to Comply with the Mandatory Fee Arbitration Act.

As is the case elsewhere, the Trustee does not dispute significant portions of Defendants' Mandatory Fee Arbitration Act ("MFAA") argument. Specifically, the Trustee does not dispute that (1) he has not complied with the MFAA and (2), that if the MFAA does apply, the remedy for violation here is dismissal of the claims against the Hernandez (in her individual capacity or as

1   personal representative of the Estate of Ramirez). Rather, the Trustee argues that the statute is

2   simply inapplicable in bankruptcy court and that Hernandez has waived her right to invoke it.

3       First, the Trustee alleges that the MFAA is inapplicable because this is a "core proceeding."

4   [Dkt. No. 194 at 40.] This is simply false. The declaratory and quantum meruit claims alleged

5   against Hernandez are claims that "simply attempts to augment the bankruptcy estate." Stern v.

6   Marshall, 564 U.S. 462, 495 (2011). The authorities the Trustee has cited do not hold otherwise.

7   First, 28 U.S.C. § 158(a) on its face demonstrates the claims are non-core.  Section 158(b)(2)(E)

8   does not apply because turnover is not available for disputed claims. Section 158(b)(2)(H) does not

9   apply because the Trustee has not asserted any avoidance claim and to the extent he did, the claims

10  would be Stern claims requiring non-core treatment for arbitration purposes, as Hernandez has not

11  asserted claims against the Estate. Finally, Section (b)(2)(K) applies only to claims to determine the

12  validity, extent, or priority of liens, which are not asserted in this action and could not be asserted

13  absent prior order of this Court in accordance with the order striking the Estate's purported

14  attorneys' liens filed in Ramirez. If any claim against Hernandez were core, this Court must still

15  compel arbitration, unless arbitration would conflict with the underlying purposes of the

16  Bankruptcy Code.  See Kirkland v. Rund (In re EPD Inv. Co., LLC), 821 F.3d 1146, 1150 (9th Cir.

17  2016). The Trustee points to no such conflict here.

18      The Trustee's waiver argument fares no better. Under the section of the MFAA that is

19  applicable here, the attorney must "forward a written notice to the client prior to or at the time of

20  service of summons or claim in an action against the client". Cal. Bus. & Prof. Code § 6201(a). The

21  Trustee cites In re Mkt. Ctr. E. Retail Prop., Inc., No. 11-09-11696 SA, 2011 WL 1100463 (Bankr.

22  D.N.M. Mar. 22, 2011). That case involved the pre and post-petition employment by the debtor of

23  an attorney, who the court had ruled was to be treated as employed by the estate as special counsel

24  and who was entitled to submit a claim for compensation for services rendered. Id. at *1. The Court

25  determined that "[a] determination of compensation in a bankruptcy case as an administrative claim

26  is clearly a core proceeding that needs to be decided by the bankruptcy court." Id.at *2. Obviously,

27  this is not an administrative claim. Second, the debtor had initially submitted to the bankruptcy

28  court an application to employ the attorney. Id. at *1. The debtor also delayed an excessive amount

33

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 35 of 36

1    of time before invoking the MFAA after trial. Id. at *5.

2          The Trustee had until he served Hernandez with the complaint to comply with § 6201(a).

3 Up until that time, he had not violated it. As the docket reveals, service was effectuated on

4 Hernandez when the Trustee filed the Amended Complaint after they appeared (as the Trustee had

5 served the summons on X-Law, but not Hernandez) [Dkt. No. 92.]. Thus, first raising the MFAA

6 violation in the anti-SLAPP motion, filed less than three weeks after the Trustee served Hernandez,

7 cannot be a waiver. [Dkt. No. 96 at 34-35.]  Moreover, the MFAA violation is most logically

8 asserted at the motion to dismiss stage. Wager v. Mirzayance, 67 Cal. App. 4th 1187, 1189, 79 Cal.

9 Rptr. 2d 661 (1998) (affirming dismissal obtained through motion to dismiss). Under the MFAA,

10 when the client does receive notice, a "request for arbitration shall be served and filed prior to the

11 filing of an answer in the action or equivalent response in the other proceeding." Cal. Bus. & Prof.

12 Code § 6201(b). It is appropriate to also assert the lack of notice before the filling of the answer, as

13 Hernandez has done. Such motions are often filed significantly later. See Huang v. Cheng, 66 Cal.

14 App. 4th 1230, 1232, 78 Cal. Rptr. 2d 550 (1998).

15          Finally, the Trustee argues that "because Hernandez claims that she never had an attorney-

16 client relationship with EA" there is waiver of MFAA arbitration."[5] [Dkt. No. 194 at 41.] First,

17 parties are explicitly permitted to plead in the alternative in an adversary proceeding and there is

18 no requirement for the defenses to be consistent. See Fed. R. Bankr. P. 7008; Fed. R. Civ. P. 8(d).

19 There is no contradiction for Hernandez to state that she was never the client of EA while also

20 seeking dismissal of the claims against her on the basis that the Trustee filed to comply with the

21 MFAA. If the Trustee believes that Hernandez in fact was EA's client, then he should have

22 complied with the MFAA's requirements. Second, the Trustee is suing Hernandez "individually

23 and as personal representative and successor in interest to Andres Ramirez, deceased." [Dkt. No.

24 160 ¶ 6.] Because Ramirez was EA's client, it is appropriate for Hernandez to step into the shoes

25 of Ramirez and invoke the MFAA in her capacity "as personal representative and successor in

26

27       ——————————————

28 [5] The Trustee states "any arguments not brought in this MTD have been waived."  [Dkt. No. 194 at 41.  That does not apply when the complaint fails to state a claim.  Fed. R. Civ. P. 12(h)(2).

Case 8:20-ap-01086-SC    Doc 196    Filed 04/28/21    Entered 04/28/21 23:58:44    Desc
Main Document    Page 36 of 36

1    interest."

2

3    **E.  The Trustee Should Not Be Given Leave to Further Amend the Complaint.**

4        This lawsuit has been pending for almost a year.  [Dkt. No. 1.]  As Defendants previously

5    noted, the Court expressly stated that the Trustee would not be granted leave to further amend the

6    complaint.  [Dkt. No. 171 at 29.]  Given this firm warning, there is no reason to give the Trustee

7    another chance to amend the complaint as he requests.

8

9    **III.   CONCLUSION**

10        For the foregoing reasons, the claims asserted against Defendants should be dismissed with

11    prejudice and without leave to amend.

12

13    DATED: April 28, 2021                **LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**

14                                       By:_____ //s// Kurt Ramlo_____

15                                       DAVID B. GOLUBCHIK
                                   KURT RAMLO

16                                       Attorneys for Defendants The X-Law Group, P.C.
                                   and Filippo Marchino

17

18                                       **THE X-LAW GROUP, P.C.**

19                                       By_____
                                   FILIPPO MARCHINO

20                                       Attorneys for Defendants Elba Hernandez and The Estate of
                                   Andres Ramirez

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

On **April 28, 2021**, a true and correct copy of the foregoing documents entitled

### Defendants' Reply in Support of Motion to Dismiss

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:**  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David B Golubchik on behalf of Interested Party Courtesy NEF
dbg@lnbyb.com, stephanie@lnbyb.com

D Edward Hays on behalf of Plaintiff Richard A. Marshack
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

Richard L Kellner on behalf of Plaintiff Richard A. Marshack
rlk@kellnerlaw.com, irma.c.deleon@gmail.com

Tinho Mang on behalf of Interested Party Courtesy NEF
tmang@marshackhays.com,
tmang@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com

Filippo Marchino on behalf of Defendant The X-Law Group, PC, a professional corporation
fm@xlawx.com, tc@xlawx.com

Filippo Marchino on behalf of Defendant Young Blue LLC, a limited liability company
fm@xlawx.com, tc@xlawx.com

Filippo Marchino on behalf of Defendant Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased
fm@xlawx.com, tc@xlawx.com

Filippo Marchino on behalf of Defendant Filippo Marchino
fm@xlawx.com, tc@xlawx.com

Filippo Marchino on behalf of Defendant Sandy Le, individually and on behalf of Tina Ngan Le, decedent
fm@xlawx.com, tc@xlawx.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

Kurt Ramlo on behalf of Defendant The X-Law Group, PC, a professional corporation
kr@lnbyb.com, kr@ecf.inforuptcy.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**

Kurt Ramlo on behalf of Defendant Filippo Marchino
kr@lnbyb.com, kr@ecf.inforuptcy.com

John P. Reitman on behalf of Plaintiff Richard A. Marshack
jreitman@landaufirm.com,
srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

☐ *Service information continued on attached page*

**2.  <u>SERVED BY UNITED STATES MAIL</u>**: I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

**3.  <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Judge's Copy</u>

Hon. Scott C. Clarkson
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

[Bin by 5th floor elevators]

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| **4/28/2021** | Kurt Ramlo | /s/ Kurt Ramlo |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1

# PROOF OF SERVICE OF DOCUMENT

2

3

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

4

On **April 29, 2021**, a true and correct copy of the foregoing documents entitled

5

### Table of Contents and Table of Authorities and Defendants' Reply in Support of Motion to Dismiss

6

7

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

8

9

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

10

11

David B Golubchik on behalf of Interested Party Courtesy NEF
dbg@lnbyb.com, stephanie@lnbyb.com

12

13

D Edward Hays on behalf of Plaintiff Richard A. Marshack
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

14

15

Richard L Kellner on behalf of Plaintiff Richard A. Marshack
rlk@kellnerlaw.com, irma.c.deleon@gmail.com

16

17

Tinho Mang on behalf of Interested Party Courtesy NEF
tmang@marshackhays.com,
tmang@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com

18

19

Filippo Marchino on behalf of Defendant The X-Law Group, PC, a professional corporation
fm@xlawx.com, tc@xlawx.com

20

Filippo Marchino on behalf of Defendant Young Blue LLC, a limited liability company
fm@xlawx.com, tc@xlawx.com

21

22

Filippo Marchino on behalf of Defendant Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased
fm@xlawx.com, tc@xlawx.com

23

24

Filippo Marchino on behalf of Defendant Filippo Marchino
fm@xlawx.com, tc@xlawx.com

25

Filippo Marchino on behalf of Defendant Sandy Le, individually and on behalf of Tina Ngan Le, decedent
fm@xlawx.com, tc@xlawx.com

26

27

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

28

Kurt Ramlo on behalf of Defendant The X-Law Group, PC, a professional corporation
kr@lnbyb.com, kr@ecf.inforuptcy.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**

Kurt Ramlo on behalf of Defendant Filippo Marchino
kr@lnbyb.com, kr@ecf.inforuptcy.com

John P. Reitman on behalf of Plaintiff Richard A. Marshack
jreitman@landaufirm.com,
srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com

United States Trustee (SA)
ustpregion16.sa.ecf@usdoj.gov

☐ *Service information continued on attached page*

**2.  SERVED BY UNITED STATES MAIL**: I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

**3.    SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Judge's Copy

Hon. Scott C. Clarkson
United States Bankruptcy Court
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130
Santa Ana, CA 92701-4593

~~[Bin by 5th floor elevators]~~

☐ *Service information continued on attached page*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 4/29/2021 | Kurt Ramlo | /s/ Kurt Ramlo |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**