David B. Golubchik (State Bar No. 185520)
Kurt Ramlo (State Bar No. 166856)
**LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.**
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Tel: (310) 229-1234; Fax: (310) 229-1244
DBG@LNBYB.com; KR@LNBYB.com

Attorneys for Defendants The X-Law
Group, P.C. and Filippo Marchino

Filippo Marchino (State Bar No. 256011)
Thomas E. Gray (State Bar No. 299898)
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380; Fax: (213) 599-3370
FM@XLAWX.com; TG@XLAWX.com

Attorneys for Defendants Elba Hernandez and
The Estate of Andres Ramirez

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Santa Ana Division

| | |
|---|---|
| In re: | Case No. 8:19-BK-13560-SC |
| EAGAN AVENATTI, LLP, | Chapter 7 |
| Debtor. | |
| RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan Avenatti, LLP, | Adversary No. 8:20-ap-01086-SC |
| Plaintiff, | **Defendants' Answer to Richard A. Marshack's Second Amended Complaint** |
| v. | **Demand for Trial by Jury** |
| THE X-LAW GROUP, PC, a professional corporation; et al., | |
| Defendants. | |

Defendants The X-Law Group, P.C., Filippo Marchino, Elba Hernandez, and The Estate

of Andres Ramirez answer the *Second Amended Complaint for (1) Declaratory Judgment;*

*(2) Quantum Meruit; (3) Violation of the Automatic Stay and Other Court Orders;*

*(4) Avoidance, Recovery, and Preservation of Fraudulent Transfer* (ECF No. 160, filed

1  February 25, 2021), by repeating the allegations of the complaint below and inserting their

2  answer after each paragraph of the complaint, as follows:

3        **Answer**:  Defendants deny the allegations of the complaint except as expressly

4        admitted herein and except to the extent that Defendants lack knowledge or information

5        sufficient to form a belief about the truth of the allegations as set forth herein.

6        "Plaintiff is Richard A. Marshack, chapter 7 trustee ("Trustee") for the bankruptcy estate

7  ("Estate") of Eagan Avenatti, LLP ("EA"). Because the Trustee was not appointed until after EA

8  filed bankruptcy on September 13, 2019 ("Petition Date"), the Trustee does not have personal

9  knowledge of alleged facts that occurred prior to the Petition Date and therefore makes those

10  allegations on information and belief. Such allegations are based on the following:  EA's files;

11  the records of EA's former equity receiver, Brian Weiss ("Receiver"); the testimony of EA's

12  former managing partner, Michael J. Avenatti, in various proceedings; information provided by

13  other attorneys who worked at EA; information provided by counsel for the City of Pasadena in

14  the Hernandez case, and documents filed with the Los Angeles County Superior Court, the

15  United States Bankruptcy Court for the Central District of California, and the United States

16  District Court for the Central District of California."

17        **Answer**:  Defendants admit the allegations of the first sentence and that the

18        Trustee was not appointed until after EA filed bankruptcy on September 13, 2019, but

19        deny the allegation that there was a "Hernandez case" and lack knowledge or information

20        sufficient to form a belief about the truth of the remaining allegations of this paragraph.

21                          "**JURISDICTION AND VENUE**

22        "1.    In accordance with the requirements of Local Bankruptcy Rule 7008-1, the Santa

23  Ana Division of the United States Bankruptcy Court for the Central District of California

24  ("Bankruptcy Court") has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334,

25  because the claims asserted arise under Title 11 of the United States Code or arise in or relate to

26  the Chapter 7 case of the debtor, EA, currently pending in the Bankruptcy Court as Case No.

27  8:19-bk-13560-CB ("EA Bankruptcy Case"). The outcome of this adversary proceeding will

28  have a significant effect on the Estate because it asserts claims for the establishment and

1  protection of the Estate's property rights and recovery of the proceeds of those rights. The claims

2  for relief in this Complaint constitute a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), and

3  (O). Regardless of whether this is a core proceeding, consent is given to the entry of final orders

4  and judgment by the Bankruptcy Court. The defendants are notified that Fed. R. Bankr. P.

5  7012(b) requires each defendant to state whether the defendant does or does not consent to entry

6  of final orders or judgment by the Bankruptcy Court."

7          **Answer**:  Defendants admit the allegations of the first sentence.  Defendants deny

8          the allegations of the second sentence.  Defendants admit that the Trustee was not

9          appointed until after EA filed bankruptcy on September 13, 2019, but lack knowledge or

10         information sufficient to form a belief about the truth of the remainder of the third

11         sentence.  Defendants admit that the allegations of the third count of the complaint

12         constitute a core proceeding to the extent they pertain to the automatic stay and that the

13         allegations of the fourth count of the complaint constitutes a core proceedings to the

14         extent they pertain to a claim for avoidance under 28 U.S.C. § 157(b)(2)(H), but deny the

15         remaining allegations of the fourth sentence.  The fifth sentence does not constitute an

16         allegation and requires no response.  Defendants do not consent to entry of final orders or

17         judgment by the Bankruptcy Court.  Defendants do not consent to have a jury trial

18         conducted by a bankruptcy judge.

19         "2.      Venue is proper in the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409

20  because the EA Bankruptcy Case is pending in this district and division. This Court also has

21  personal jurisdiction over defendants."

22         **Answer**:  Admit the allegations of this paragraph.

23                                  "**PARTIES**

24         3.      Plaintiff, Richard A. Marshack, is the chapter 7 trustee of the Estate."

25         **Answer**:  Admit the allegations of this paragraph.

26         "4.      Defendant The X-Law Group, PC ("X-Law"), is a California professional

27  corporation with a primary place of business in Los Angeles County, California."

28         **Answer**:  Admit the allegations of this paragraph.

1    "5.      Defendant Filippo Marchino ("Marchino") is an individual with a primary place

2    of business in Los Angeles County, California, and the president of X-Law."

3         **Answer**:  Admit the allegations of this paragraph.

4    "6.      Defendant Elba Hernandez, individually and as personal representative and

5    successor in interest to Andres Ramirez, deceased ("Hernandez"), is an individual who resides in

6    Los Angeles County, California. Hernandez is a former client of EA."

7         **Answer**:  Admit that Elba Hernandez resides in Los Angeles County, California

8         but deny the remaining allegations.

9                    "**GENERAL ALLEGATIONS**

10    7.      EA was a California based litigation law firm formed in the mid-2000s. From

11    approximately 2011 through 2019, the managing partner of EA was Michael J. Avenatti

12    ("Avenatti")."

13         **Answer**:  Defendants lack knowledge or information sufficient to form a belief

14         about the truth of the allegations of this paragraph.

15    "8.      EA primarily handled plaintiff contingency matters, whereby the firm customarily

16    received legal fees after a case was resolved in favor of EA's client. EA's general business

17    practice was to enter into a fee agreement with each client providing that EA would be paid a

18    certain percentage of the proceeds of any judgment or settlement obtained on behalf of the client

19    and granting EA a lien on those proceeds to secure its right to fees.

20         **Answer**:  Defendants lack knowledge or information sufficient to form a belief

21         about the truth of the allegations of this paragraph.

22    "**A.      Co-Defendant Filippo Marchino Was An EA Attorney Who Held Himself Out as an**

23         **EA Partner**"

24         **Answer**:  Defendants admit that Filippo Marchino is a codefendant in this

25         adversary proceeding, that he is an attorney who worked at EA, and that his email

26         signature block had been set by EA to list his position as partner.  Defendants deny that

27         Marchino was ever an equity partner at EA.  Defendants deny the remaining allegations

28         in heading A.

"9.     Beginning in or around August 2016, co-defendant Filippo Marchino was an attorney at EA who expressly represented himself as an EA partner.  In emails, Mr. Marchino would customarily include the following signature block representing himself as an EA partner:

Filippo Marchino, Esq.
Partner



1910 W. Sunset Blvd,
Suite 450
Los Angeles, CA 90026

520 Newport Center Drive,
Suite 1400
Newport Beach, CA 92660

Tel +1 (949) 706-7000
Fax +1 (949) 706-7050

"

**Answer**:  Defendants admit that Filippo Marchino is a codefendant in this adversary proceeding, that he is an attorney who worked at EA beginning in August 2016, and that his email signature block had been set by EA to list his position as partner, which would at times be included in emails he sent.  Defendants deny that Marchino was ever an equity partner at EA.  Defendants deny the remaining allegations of this paragraph.

"10.    Marchino sent out emails to publicize that he had joined EA and also identified himself in his e-mail signature block as a "Partner" of EA."

**Answer**:  Defendants admit that Marchino's signature block had been set by EA to list his position as partner.  Defendants deny that Marchino was ever an equity partner at EA.  Defendants deny the remaining allegations of this paragraph.

"11.    Consistent with the foregoing, Marchino used the EA email address of fmarchino@eaganavenatti.com in connection with his work on EA cases, had access to the EA server, worked at EA offices, and had EA legal assistants, law clerks, and attorneys providing him with services in connection with his litigation of EA cases.  Notwithstanding his recent representations to the contrary, Marchino was an EA attorney who informed colleagues and the public that he was an EA partner."

**Answer**:  Defendants admit that Marchino at times "used the EA email address of fmarchino@eaganavenatti.com in connection with his work on EA cases, had access to the EA server", worked out of EA offices, and worked on EA cases.  Defendants admit that Marchino's signature block had been set by EA to list his position as partner. Defendants deny that Marchino ever was or informed anyone that he was an equity partner at EA.  Defendants deny the remaining allegations of this paragraph.

"12.    Consistent with his employment as an agent, attorney and/or partner of EA, Marchino received biweekly payments of approximately $4,800 on the EA payroll, at least through July or August 2017, as shown in the monthly operating reports filed in the 2017 Bankruptcy."

**Answer**:  Defendants admit that Marchino is an attorney and received multiple payments of approximately $4,800 from EA though mid 2017 and that he was an employee of EA.  Defendants deny that Marchino had any other role at EA, including agent, attorney for EA, or equity partner at EA.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

"**B.    Co-Defendant Marchino Worked On and Supervised Other EA Attorneys in Connection with the Hernandez/Ramirez Action for EA**"

**Answer**:  Defendants admit that Marchino is a codefendant in this adversary proceeding and that he worked on litigation on behalf of Andres Ramirez, who was also a client of EA.  Defendants deny that *anyone* worked on a "Hernandez Action" for EA. Defendants deny the remaining allegations in heading B.

"13.    From 2016 through late 2018, Marchino continued to work as an EA attorney and represent himself as an EA partner."

**Answer**:  Defendants admit that in 2016 Marchino was an attorney and employee of EA and that his position bore the meaningless title of "partner." Defendants deny that Marchino continued to work at EA until "late 2018."  Defendants admit that Marchino's signature block had been set by EA to list his position as partner.  Defendants deny that

1    Marchino ever was or informed anyone that he was an equity partner at EA.  Defendants

2    deny the remaining allegations of this paragraph.

3    "14.    From 2016 through late 2018, Marchino supervised EA's prosecution of

4    numerous EA contingency litigation matters – including the Hernandez/Ramirez matter."

5    **Answer**:  Defendants admit that EA represented Andres Ramirez in litigation and

6    that it purported to do so on a contingency basis.  Defendants deny EA had a valid and

7    enforceable contingency fee agreement pertaining to its representation of Ramirez.

8    Defendants deny that anyone worked on a "Hernandez matter" at EA.  Defendants further

9    deny that Hernandez was ever the client of EA or had a contingency agreement with EA.

10    Defendants deny that Marchino was ever an equity partner at EA or an individual with a

11    supervisory role at that firm.  Defendants deny the remaining allegations of this

12    paragraph.

13    "15.    From retention in 2016 through mid-2018, Marchino was the EA attorney

14    supervising the prosecution of the Hernandez/Ramirez matter.  Marchino supervised other EA

15    attorneys who were working on the case – and those attorneys would not only report

16    developments in the case, but also seek his advice and consent regarding many litigation issues.

17    Marchino edited, prepared, and directed the content and filing of various pleadings in the

18    Hernandez/Ramirez matter. Marchino supervised and was involved in the propounding and

19    responding of discovery requests, and conducted multiple depositions stating his appearance as

20    an attorney for EA, without any mention of the X-Law Group."

21    **Answer**:  Defendants deny that there was a Hernandez matter at any time prior to

22    2019 or that Hernandez was ever the client of EA.  Defendants admit that on certain

23    occasions between 2016 and mid-2018 Marchino edited or prepared certain pleadings,

24    was involved to a certain extent in propounding and responding to discovery requests,

25    and conducted a few depositions in which he stated "he was appearing an attorney for

26    EA, without any mention of the X-Law Group." Defendants deny that Marchino ever had

27    a supervisory role at EA.  Defendants deny the remaining allegations of this paragraph.

28    "16.    During this time period, Marchino received compensation in the form of

1  paychecks from EA.  Indeed, in post-petition filings, Marchino was listed as being on the payroll

2  of EA as an attorney – including the time period when Marchino was handling the

3  Hernandez/Ramirez case for EA. Specifically, in several monthly operating reports filed by EA,

4  Marchino was listed as receiving biweekly payments for "Payroll" in the approximate amount of

5  $4,877."

6         **Answer**:  Defendants admit that at certain occasions between 2016 and 2018

7         "Marchino received compensation in the form of paychecks from EA" but deny that he

8         received such compensation for the whole period.  Defendants lack knowledge or

9         information sufficient to form a belief about the truth of the remaining allegations of this

10        paragraph, which pertain to the contents of certain court filings.

11        "17.    Further, in its Third Chapter 11 Status Report filed on October 18, 2017, EA

12  represented that X-Law (of which Marchino is the principal) has unsecured claims against EA's

13  contingency attorneys' fees "from certain of its litigation assets.""

14        **Answer**:  Defendants admit that Marchino is the principal of X-Law and that X-

15        Law has claims to a share of attorneys' fees obtained by EA on certain cases.  Defendants

16        lack knowledge or information sufficient to form a belief about the truth of the remaining

17        allegations of this paragraph.

18        "18.    As a result, Marchino had a direct financial and professional interest in the

19  recoveries generated by EA cases, including the Hernandez/Ramirez matter."

20        **Answer**:  Defendants deny that there was ever a "Hernandez matter" that was a

21        EA case or that Hernandez was ever a client of EA.  Defendants admit that Marchino, as

22        attorney for Ramirez and subsequently for Hernandez has had a professional interest in

23        their cases due to the existence of an attorney-client relationship with them.  Defendants

24        admit that X-Law had an agreement with EA wherein it would receive some of the

25        attorneys' fees obtained by EA on certain cases, including that of Ramirez.  Defendants

26        deny the remaining allegations of this paragraph.

27  ///

28  ///

8

"**C.**    **EA and Marchino (As an EA Attorney) Performed Significant Work on the Hernandez/Ramirez Matter and, By the Spring of 2018, Had Determined That It Had Substantial Value.**:

   **Answer**:  Defendants admit that Marchino was an EA attorney, that EA and Marchino worked on the Ramirez matter, and that Marchino recognized the case had a nonzero value by the spring of 2018.  Defendants deny that the amount of work performed was significant.  Defendants deny that EA ever did any work on behalf of Hernandez.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that EA considered the value of the case "substantial." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in heading C, which pertain to the determinations of EA.

   "19.    EA represented Hernandez both in her individual capacity and in her capacity as guardian *ad litem* for her minor son, Andres Ramirez ("Ramirez"), who was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ("Pasadena")."

   **Answer**:  Defendants admit Ramirez was the minor son of Hernandez and that Ramirez "was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ("Pasadena")."  Defendants deny the remaining allegations of this paragraph.

   "20.    In 2015, Ramirez was twelve years old and was riding his bicycle alongside an unreasonably dangerous traffic intersection located in Pasadena.  Ramirez was critically injured by a car and was in a state of unresponsive wakefulness (commonly referred to as a vegetative state).  Accordingly, Ramirez's mother, Elba Hernandez ("Hernandez") acted as Ramirez's guardian *ad litem* and retained EA to represent him."

   **Answer**:  Defendants admit that "In 2015, Ramirez was twelve years old and was riding his bicycle [through] an unreasonably dangerous traffic intersection located in Pasadena."  Defendants deny that Ramirez was riding "alongside" the intersection. Defendants deny that EA was retained to represent Ramirez in 2015.  Defendants admit

1    the remaining allegations of this paragraph.

2    "21.    In or around June 2016, EA substituted as counsel for Hernandez/Ramirez in

3    place of Jacobs & Jacobs LLP ("Jacobs Firm").  EA rejected the Jacobs Firm's position that the

4    case was not viable against the City of Pasadena, and worked up the case so that it had

5    significant value against the City of Pasadena."

6        **Answer**:  Defendants admit that EA performed minimal work on behalf of

7        Ramirez but deny that it "worked up the case so that it had significant value against the

8        City of Pasadena."  Defendants deny that EA ever represented Hernandez.  Defendants

9        deny the remaining allegations of this paragraph.

10    "22.    In a letter dated January 20, 2016, the Jacobs Firm stated that it represented "Elba

11    Hernandez, as the mother **and** on behalf of Andres Ramirez, a minor." (emphasis added)."

12        **Answer**:  Defendants admit that the January 20, 2016 letter contained the quoted

13        language but deny that it stated that the Jacobs Firm represented Hernandez.  Defendants

14        further deny that Hernandez was ever the client of the Jacobs Firm.  Defendants deny the

15        remaining allegations of this paragraph.

16    "23.    Trustee is in possession of an executed retainer agreement (in Spanish) executed

17    by Hernandez with EA. Paragraph 8 of the retainer agreement contains an attorney lien

18    provision.  The Trustee has yet to locate a copy of the retainer agreement that was countersigned

19    by EA."

20        **Answer**:  Defendants deny the existence of any EA retainer agreement executed

21        by Hernandez acting in her personal capacity.  Defendants further deny the existence of a

22        valid and enforceable retainer agreement pertaining to the representation of Hernandez or

23        Ramirez by EA.  Defendants lack knowledge or information sufficient to form a belief

24        about the truth of the remaining allegations of this paragraph

25    "24.    Hernandez's primary language is Spanish, not English, and EA attorney Carlos X.

26    Colorado acted as primary communicator with Hernandez due to his fluency in the Spanish

27    language."

28        **Answer**:  30.   Defendants deny that Carlos X. Colorado was the primary

10

1    communicator with Hernandez.  Defendants admit the remaining allegations of this

2    paragraph.

3        "25.    The subject case has been litigated in the Los Angeles Superior Court under Case

4    No. BC664114 ("Hernandez Case"), which case remains pending as to only the "driver." A true

5    and correct copy of the state court docket for the Hernandez Case is attached as Exhibit "1.""

6            **Answer**:  Defendants deny that Case No. BC664114 has been referred to as the

7        "Hernandez Case".  Defendants admit the remaining allegations of this paragraph.

8        "26.    Marchino was the attorney in charge of the Hernandez/Ramirez matter from the

9    time of EA's retention in June 2016 through at least August 2018."

10           **Answer**:  Defendants deny the allegations of this paragraph.

11       "27.    The initial trial date of December 5, 2018, was still on as of the Spring of 2018."

12           **Answer**:  Defendants admit the allegations of this paragraph.

13       "28.    Under Marchino's supervision, EA performed substantial work in the litigation of

14   the Hernandez/Ramirez matter.  Among other things, EA performed at least the following legal

15   services on behalf of Ramirez and Hernandez:

16           a.   filing a tort claim with Pasadena on October 7, 2016, including discussion and

17                legal research regarding the filing of a late claim against the city, including the

18                legal exceptions and excuses for the late-filing, which EA ultimately prevailed

19                on;

20           b.   when the claim was rejected as untimely (an administrative prerequisite for

21                filing a petition against the city), filing an application with Pasadena for leave

22                to file a late claim;

23           c.   when that application was denied (i.e. exhausting administrative remedies),

24                filing a petition in the Los Angeles Superior Court ("Superior Court") for

25                leave to file a complaint against Pasadena, which was granted based on

26                arguments generated by EA attorneys;

27           d.   preparing and filing the operative complaint against Pasadena in the Superior

28                Court;

1               e.   amending the complaint to add as a defendant Jacquelyn Licea, the driver of

2                   the car that struck Ramirez, and corresponding with counsel for Ms. Licea;

3               f.   conducting independent discovery, including the acquisition and review of

4                   public records underlying the accident;

5               g.   retaining, paying, and working with experts regarding accident reconstruction,

6                   medical issues, and biomechanical issues;

7               h.   making inquiries regarding a life-planning expert for the case;

8               i.   conducting depositions of multiple parties, including the two first responders;

9               j.   exchanging written discovery; and

10              k.   otherwise preparing the case for trial."

11      **Answer**:  Defendants deny that EA provided any legal services on behalf of Hernandez.

12  Defendants further deny that Marchino supervised anyone at EA on the Ramirez matter.

13  Defendants further deny that EA did substantial work on the Ramirez matter.  Defendants admit

14  that EA performed the items listed as subparagraphs (a), (b), (c), (d), (e), (f), (h), and (j) on

15  behalf of Ramirez.  Defendants admit that two first responders were deposed on behalf of

16  Ramirez, but deny that any parties were deposed.  Defendants deny the remaining allegations of

17  this paragraph.

18       "29.    Indeed, the billing of costs – including the depositions and experts – were sent

19  directly to Marchino – at his EA law firm and email address."

20         **Answer**:  Defendants lack knowledge or information sufficient to form a belief

21         about the truth of the allegations of this paragraph.

22       "30.    Notably, Marchino himself conducted the two depositions and stated that he was

23  doing so in his capacity as "Filippo Marchino from Eagan Avenatti."  With respect to litigation

24  questions on the case, EA attorneys sought and obtained Marchino's advice and consent."

25         **Answer**:  Defendants admit that at two depositions conducted by Marchino

26         conducted, he identified himself as being an attorney from Eagan Avenatti.  Defendants

27         deny the remaining allegations of this paragraph.

28       "31.    EA and Marchino were aware of the substantial attorneys' fees that were likely

1    recoverable in the Hernandez case.  In fact, on April 27, 2018, EA filed a Statement of Damages

2    of $116,801,000 for the case.  This included a claim of $40 million in future medical expenses

3    and $30 million in emotional distress.

4           **Answer**:  Defendants admit that Marchino was aware that Ramirez's claims had a

5           nonzero value, but lack knowledge or information sufficient to form a belief about the

6           truth of the allegation that EA was aware of the substantial attorneys' fees that were

7           likely recoverable.  Defendants admit that "on April 27, 2018, EA filed a Statement of

8           Damages of $116,801,000 for [Ramirez]. This included a claim of $40 million in future

9           medical expenses and $30 million in emotional distress."  Defendants deny there was a

10          "Hernandez case" at the time the JFL Judgment was entered.  Defendants lack knowledge

11          or information sufficient to form a belief about the truth of the remaining allegations of

12          this paragraph.

13   "32.    During the litigation, Hernandez advised EA that she did not expect Ramirez to

14   survive the litigation and still had EA continue to provide legal representation in the case (which

15   was expected to solely compensate her for the damages suffered).  Ramirez was in a vegetative

16   state with no true hope of recovery. These discussions began no later than May 2018."

17          **Answer**:  Defendants admit that Ramirez was in a state of unresponsive

18          wakefulness.  Defendants deny the remaining allegations of this paragraph.

19   "33.    Further, Hernandez maintains that she is the sole heir of her son, Andres Ramirez.

20   As a result, she would be the person to receive any financial benefit for the damages recovered in

21   the litigation upon her son's anticipated death."

22          **Answer**:  Defendants admit that "Hernandez maintains that she is the sole heir of

23          her son, Andres Ramirez."  Defendants admit that Hernandez was one person who could

24          potentially assert a financial claim for her son's wrongful death.  Defendants deny that

25          she was the only person who could potentially do so.  Defendants deny the remaining

26          allegations of this paragraph.

27   34.    Thus, both Hernandez and EA were aware that the representation that EA was

28   providing in the litigation was for Hernandez's ultimate benefit.

1    **Answer**: Deny.

2    "**D.    The JFL Judgment of $10 Million Against EA.**"

3    **Answer**: Defendants lack knowledge or information sufficient to form a belief

4    about the truth of the allegations in heading D

5    "35.    On June 1, 2018, less than two weeks after the JFL Judgment was entered against

6    EA, X-Law obtained a substitution of attorney from Avenatti pursuant to which it became

7    Hernandez' counsel in place of EA in the Hernandez Case. Marchino signed the substitution on

8    behalf of X-Law. The substitution was filed with the Superior Court on July 26, 2018, fifteen

9    days *after* the Bankruptcy Court had entered the order restraining EA from "assigning,

10    encumbering, or in any way transferring" its fee rights in a number of cases, specifically

11    including the Hernandez Case."

12    **Answer**: Defendants admit that Marchino signed a substitution of attorney on

13    behalf of X-Law in *Ramirez v. City of Pasadena* and that the document was filed with the

14    Superior Court on July 26, 2018.  Defendants admit that the bankruptcy court presiding

15    over case no. 8:17-bk-11961 entered an order restraining EA from "assigning,

16    encumbering, or in any way transferring" its fee rights in a number of cases, but denies

17    that the order addressed any case of Hernandez.  Defendants deny that "X-Law obtained

18    a substitution of attorney from Avenatti pursuant to which it became Hernandez' counsel

19    in place of EA in the Hernandez Case," deny that Hernandez was ever the client of

20    Avenatti or EA, and deny that Hernandez was a client of X-Law before 2019.

21    Defendants lack knowledge or information sufficient to form a belief about the truth of

22    the allegations in this paragraph.

23    "36.    Nonetheless, Marchino continued to work on the Hernandez Case and continued

24    to represent that he was a partner of EA on emails relating to the case – through at least August

25    2018."

26    **Answer**:  Defendants deny that any Hernandez case existed before 2019.

27    Defendants admit that Marchino worked on Case No. BC664114 on behalf of Ramirez at

28    X-Law following August 2018.  Defendants deny that he continued to do so at EA after

1    the case was transferred to X-Law.  Defendants deny the remaining allegations of this

2    paragraph.

3    "37.    Even in October 2018, EA continued to participate in the case, including the

4    tender of jury fees by EA and filing of notices, instead of X-Law."

5    **Answer**: Defendants deny the allegations of this paragraph.

6    "**D.    The JFL $10 Million Judgment Against EA.**"

7    **Answer**:  Defendants lack knowledge or information sufficient to form a belief

8    about the truth of the allegations of this paragraph.

9    "38.    In 2016, an arbitration claim was filed against EA and Avenatti by Jason Frank

10   Law ("JFL"), the professional corporation of Jason Frank.  Mr. Frank is an attorney who

11   previously worked at EA. EA fared badly in the early stages of the arbitration due to Avenatti's

12   refusal to comply with discovery requests. Two days before a major discovery deadline in the

13   arbitration, Avenatti orchestrated the filing of an involuntary bankruptcy case against EA in the

14   Middle District of Florida on March 1, 2017, thereby staying the arbitration."

15   **Answer**:  Defendants lack knowledge or information sufficient to form a belief

16   about the truth of the allegations of this paragraph.

17   "39.    Avenatti consented to EA being placed into Chapter 11 bankruptcy on March 10,

18   2017, and the case was subsequently transferred to the Bankruptcy Court on May 16, 2017 (*In re*

19   *Eagan Avenatti, LLP*, Case No. 8:17-bk-11961-CB) ("2017 Bankruptcy"). Upon the filing of the

20   2017 Bankruptcy, all assets of EA became property of the bankruptcy estate subject to the

21   automatic stay of 11 U.S.C. § 362."

22   **Answer**:  Defendants admit that upon the entry of an order for relief in the 2017

23   Bankruptcy, all assets of EA became property of the EA bankruptcy estate subject to the

24   automatic stay of 11 U.S.C. § 362.  Defendants lack knowledge or information sufficient

25   to form a belief about the truth of the remaining allegations of this paragraph.

26   "40.    The 2017 Bankruptcy was dismissed on March 15, 2018, as part of a structured

27   settlement approved by the Bankruptcy Court. That structured settlement required EA, following

28   the dismissal of the bankruptcy, to pay certain debts it owed to creditors, including JFL. The

1    dismissal order specifically provides that the Court would retain post-dismissal jurisdiction.

2    Shortly after the 2017 Bankruptcy was dismissed, EA defaulted on its obligations under the

3    settlement agreement. As a result of EA failing to make any of the required payments to JFL, the

4    Bankruptcy Court entered a judgment in favor of JFL and against EA in the amount of $10

5    million on May 22, 2018 ("JFL Judgment")."

6    **Answer**:

7    "41.    For Marchino, the JFL Judgment of $10 million against EA directly affected his

8    financial interests.  Until the $10 million JFL Judgment against EA was satisfied, the revenues

9    from EA would first have to be used to satisfy the judgment – before Marchino could receive

10    compensation for his services and any percentage interest in any EA contingency fees."

11    **Answer**:  Defendants deny that the JFL Judgment directly affected Marchino's

12    financial interests and deny that until the JFL Judgment was satisfied the revenues from

13    EA would first have to be used to satisfy the judgment before Marchino could receive

14    compensation for his services and any percentage interest in any EA contingency fees.

15    Defendants.  Defendants lack knowledge or information sufficient to form a belief about

16    the truth of the remaining allegations of this paragraph.

17    "42.    As a result, as long as the contingency cases remained at EA, Marchino knew that

18    he could potentially be working on matters for which he would receive no compensation – with

19    all of the EA fees/revenues going to satisfy the $10 million JFL judgment."

20    **Answer**:  Defendants deny the allegations of this paragraph.

21    43.    Further, at the time the JFL Judgment was entered, Marchino was aware of the

22    substantial potential value of the Hernandez/Ramirez matter – because he was the supervising

23    attorney working on the case through discovery and depositions.

24    **Answer**:  Defendants admit that Marchino was aware that Ramirez's claims had a

25    nonzero value.  Defendants deny there was a "Hernandez matter" at the time the JFL

26    Judgment was entered.  Defendants deny the remaining allegations of this paragraph.

27    "44.    Accordingly, the only way that Marchino could be guaranteed the ability to retain

28    his interest in the Hernandez/Ramirez case would be to prevent the JFL Judgment from being

1    enforced against the fee rights in the case, which was sought to be accomplished by: (a) moving

2    the case to his separate law firm entity – X Law; (b) stripping EA of its interest in the fees on the

3    case; and (c) X-Law continuing to work on the case until its conclusion with substantially the

4    same EA attorneys that previously worked on the case."

5             **Answer**: Defendants deny that prior to 2019 there existed a case where

6             Hernandez was the plaintiff.  Defendants lack sufficient information to admit or deny the

7             remaining allegations of this paragraph.

8             "45.    Indeed, the same EA attorneys and staff who worked on the Hernandez/Ramirez

9    case while at EA (including Marchino), continued to litigate the case on behalf of X-Law when

10   the case was moved over to that firm."

11            **Answer**: Defendants deny that prior to 2019 there existed a case where

12            Hernandez was the plaintiff or that any EA attorney or staff member ever worked on a

13            case on behalf of Hernandez.  Defendants admit that Marchino worked on case No.

14            BC664114 and that X-Law was substituted in as counsel for Ramirez on that case in

15            place of EA.  Defendants deny that EA attorneys or staff worked on case No. BC664114

16            on behalf of X-Law.  Defendants admit that a subset of EA attorneys and staff who

17            worked on case No. BC664114 eventually became employees of X-Law and worked on

18            case No. BC664114 at X-Law.  Defendants deny the remaining allegations of this

19            paragraph.

20            "46.    However, EA/Marchino/X-Law took actions relating to the Hernandez/Ramirez

21   matter that were done in direct violation of Bankruptcy Court Orders."

22            **Answer**: Defendants deny that Marchino or X-Law took actions relating to the

23            Ramrizez matter that were done in direct violation of Bankruptcy Court Orders, lack

24            knowledge or information sufficient to form a belief about the truth of the allegation that

25            EA took actions relating to the Ramirez matter that were done in direct violation of

26            Bankruptcy Court Orders, and deny the remaining allegation of this paragraph.

27            "47.    On June 20, 2018, as Docket No. 470 in the 2017 Bankruptcy (post-dismissal),

28   JFL filed a motion in the 2017 Bankruptcy, seeking assignment of EA's fee rights to JFL to

1  satisfy the JFL Judgment or entry of a restraining order against EA regarding certain specified

2  "Lawsuit Receivables." Among the Lawsuit Receivables were the following two specifically

3  identified actions:

|    | Case Name | Court | Case Number | Date Commenced | Source |
|----|-----------|-------|-------------|----------------|--------|
| 45. | Ramirez v. City of Pasadena | LASC | BC644094 | 12/20/2016 | Andres Ramirez, a minor |
| 46. | Ramirez v. City of Pasadena | LASC | BC664114 | 6/5/2017 | Andres Ramirez, a minor; Elba Hernandez, Guardian" |

"

**Answer**: Defendants admit that on June 20, 2018, JFL filed a motion in the 2017

Bankruptcy as docket no. 470, seeking relief with respect to Superior Court cases

BC644094 and BC664114. Defendants lack knowledge or information sufficient to form

a belief about the truth of the remaining allegations of this paragraph.

"48.    On July 11, 2018, as Docket No. 498 in the 2017 Bankruptcy, the Bankruptcy

Court entered an order restraining EA from "assigning, encumbering, or in any way transferring

any proceeds, attorney's fees, costs, rights to payments and accounts receivable it is or may be

entitled to receive from the lawsuits and clients listed on Exhibit A to the Frank Declaration

attached to the Motion" (including the two actions identified above) and requiring EA to disclose

the receipt of fees by EA or Avenatti ("July 11th Order"). A copy of the July 11th Order is

attached as Exhibit "2." No appeal of the July 11th Order was ever filed."

**Answer**: Defendants admit that the bankruptcy court presiding over case no.

8:17-bk-11961 entered an order as docket no. 498 that contained the quoted language

above and a copy of which is attached to the complaint as Exhibit 2. Defendants lack

knowledge or information sufficient to form a belief about the truth of the remaining

allegation of this paragraph.

"49.    On August 31, 2018, the JFL Judgment was registered before the United States

District Court for the Central District of California and was assigned to Chief Judge Virginia A.

1  Phillips [*In re Eagan Avenatti*, 8:18-cv-01644-VAP-KES] ("Judgment Enforcement Case")."

2  **Answer**:  Admit.

3  "50.    As part of the Judgment Enforcement Case, JFL moved for the appointment of an

4  independent receiver for the assets of EA. Avenatti stipulated to the appointment of Brian Weiss

5  as the equity receiver for EA ("Receiver"). Pursuant to that stipulation, on February 13, 2019, the

6  District Court entered a Receivership and Restraining Order against EA and Avenatti."

7  **Answer**:  Defendants lack knowledge or information sufficient to form a belief

8  about the truth of the allegations of this paragraph.

9  "51.    On September 13, 2019 ("Petition Date"), the Receiver filed a voluntary petition

10  under Chapter 7 of Title 11, initiating this case. Richard A. Marshack is the duly appointed and

11  acting Chapter 7 Trustee for the Debtor."

12  **Answer**:  Defendants admit that "Richard A. Marshack is the duly appointed and

13  acting Chapter 7 Trustee for the Debtor."  Defendants lack knowledge or information

14  sufficient to form a belief about the truth of the remaining allegation of this paragraph.

15  "52.    Marchino had knowledge of the JFL arbitration award and the JFL Judgment at or

16  around the time of entry.  Marchino also had knowledge that the only assets that might be

17  sufficient to satisfy the entire $10 million JFL Judgment would come from EA attorneys' fees

18  derived from its pending contingency matters. Marchino also knew or should have known of the

19  directive in the July 11th Order, and its application to pending actions in which EA represented

20  clients, including any action on behalf of Ramirez. In fact, notice of the July 11th Order was

21  served on Marchino's attorneys of record in the bankruptcy, the Levene Neale firm."

22  **Answer**:  Defendants lack knowledge or information sufficient to form a belief

23  about the truth of the allegation that "notice of the July 11th Order was served on

24  Marchino's attorneys of record in the bankruptcy, the Levene Neale firm."  Defendants

25  deny the remaining allegations of this paragraph.

26  "**E.    X-Law/Marchino Enter Agreements with EA to Circumvent the JFL Judgment**"

27  **Answer**:  Defendants deny the allegations in heading E.

28  "53.    Marchino's scheme was likely hatched even before entry of the JFL Judgment."

1      **Answer**: Defendants deny the allegations in this paragraph.

2      "54.    On February 2, 2018, one of the experts in the Hernandez case wrote to EA, "I

3    understand that your firm has requested all items from us to be sent to a Los Angeles location:

4    The X Law Group – 1910 W. Sunset Blvd., Suite 450, Los Angeles, CA 90026." **At the time, it**

5    **is undisputed that EA was the law firm handling the case, and Marchino was the partner in**

6    **charge of the matter.**"

7      **Answer**: Defendants deny that prior to 2019 there existed a case where

8      Hernandez was the plaintiff.  Defendants deny that EA ever handled a case on behalf of

9      Hernandez.  Defendants admit that EA represented Ramirez on February 2, 2018.

10      Defendants deny that Marchino was a partner in charge of any matter.  Defendants lack

11      knowledge or information sufficient to form a belief about the truth of the remaining

12      allegations of this paragraph.

13      "55.    In fact, during this period of time (approximately 2016 through 2018), EA was

14    paying the rent for X-Law at the address on Sunset Boulevard directly to the landlord, the

15    International Church of the Four Square, despite EA not being a party to the lease agreement."

16      **Answer**:  Defendants deny that EA was not a party to the lease agreement and

17      further deny that EA was paying the rent for X-Law, from "approximately 2016 through

18      2018."  Defendants admit that EA agreed with International Church of the Four Square to

19      take over responsibility for paying the lease when it began to use the Sunset Boulevard

20      office.  Defendants admit the remaining allegations of this paragraph.

21      "56.    After entry of the JFL Judgment and July 11th Order, and with knowledge of the

22    same, Marchino and EA (by and through Michael Avenatti) entered into a series of agreements

23    with the intent to strip EA of its financial interest in attorneys' fees derived from its large

24    contingency fee cases – and provide them to Marchino without any referral fee or other

25    consideration."

26      **Answer**: Defendants deny the allegations in this paragraph.

27      "57.    Among other things, Avenatti asserted during the 2017 Bankruptcy that EA had

28    entered into an agreement with X-Law under which EA purportedly agreed to assign a portion of

1    its fee rights to X-Law, pay the salaries of X-Law employees, and pay the entire rent for office

2    space shared by EA and X-Law.   In fact, Avenatti testified that during the pendency of the

3    bankruptcy, there were X-Law attorneys who remained on EA's payroll and provided attorney

4    services to EA for EA cases."

5         **Answer**:  Defendants admit that X-Law had an agreement with EA where it

6         would receive a portion of the attorneys' fees on certain cases.  Defendants further admit

7         X-Law was permitted to use EA's office space at 1910 W. Sunset Blvd., Suite 450, Los

8         Angeles, CA after EA agreed with International Church of the Four Square to take over

9         responsibility for paying the lease when it began to use the Sunset Boulevard office.

10        Defendants further admit that in 2016 X-Law's employees were hired by EA to work on

11        EA cases, but deny that these individuals continued to be X-Law employees.  Defendants

12        lack knowledge or information sufficient to form a belief about the truth of the remaining

13        allegations of this paragraph.

14        "58.    Avenatti and Marchino signed an agreement dated "as of August 1, 2018" under

15   which EA purported to transfer all of its personal property, including the computer servers on

16   which its client files were stored, to X-Law."

17        **Answer**:  Defendants admit that Avenatti and Marchino signed an asset purchase

18        agreement on behalf of EA and X-Law, respectively, dated "as of August 1, 2018" under

19        which certain computer servers and limited other items were to be purchased by X-Law.

20        Defendants deny that the agreement pertained to all of EA's "personal property."

21        Defendants further deny that after the agreement was signed, X-Law received any such

22        property from EA.  Defendants lack knowledge or information sufficient to form a belief

23        about the truth of the remaining allegations of this paragraph, including the allegation that

24        client files were located on the servers that were supposed to be transferred.

25        "59.    On July 26, 2018 (after the entry of the $10 million JFL Judgment), Marchino

26   arranged for his separate firm (co-defendant X-Law) to be substituted as counsel in the

27   Hernandez action."

28        **Answer**:  Defendants admit that Marchino signed a substitution of attorney on

1    behalf of X-Law and that Hernandez signed a substitution of attorney on behalf of

2    Ramirez in *Ramirez v. City of Pasadena* and that the document was filed with the

3    Superior Court on July 26, 2018.  Defendants deny that such a substitution occurred with

4    respect to a "Hernandez action" or Hernandez as a party, who was never a client of EA.

5    Defendants lack knowledge or information sufficient to form a belief about the truth of

6    the remaining allegations in this paragraph.

7    "60.    The substitution was executed on June 1, 2018 (shortly after the JFL Judgment

8    was entered), and Marchino continued to work on the Ramirez matter as an EA attorney

9    (representing himself to be an EA partner) through at least August 8, 2018 (weeks after the

10   substitution was filed and entered)."

11   **Answer**:  Defendants admit that the substitution document of attorney form was

12   signed on June 1, 2018, that Marchino is an attorney who worked at EA, and that his

13   email signature block had been set by EA to list his position as partner.  Defendants lack

14   knowledge or information sufficient to form a belief about the truth of the allegations

15   regarding the JFL Judgment.  Defendants deny the remaining allegations of this

16   paragraph.

17   "61.    On September 18, 2018, Avenatti and Marchino prepared and transmitted a letter

18   ("Fee Waiver Letter") written to "Andres Ramirez, c/o The X-Law Group" – stating that EA was

19   waiving its claim to attorneys' fees for a case that it had been litigating for well over one year

20   because EA had provided a "limited amount of time" on the case.  This was an untrue statement,

21   as EA had provided considerable substantive work in the Ramirez matter, including motion

22   practice, the conduct of depositions, retention and work with experts, the production of

23   documents and other written discovery.  Indeed, the case was being fully "worked up" by EA for

24   trial."

25   **Answer**:  Defendants deny that Marchino had any involvement in the "Fee

26   Waiver Letter".  Defendants lack sufficient information to admit or deny the date the

27   letter was prepared or who transmitted it.  Defendants admit that EA had done limited

28   work on the case, but deny that it had actively litigated the case for "well over one year".

1    Defendants admit that the Fee Waiver Letter was addressed to "Andres Ramirez, c/o The

2    X-Law Group" and stated that EA was waiving its claim to attorneys' fees and that EA

3    had spent a "limited amount of time" on the case.  Defendants admit that EA had engaged

4    in extremely limited motion practice, taking of depositions, production of documents, and

5    other written discovery, but deny that it had engaged in "considerable substantive work"

6    on behalf of Ramirez.  Defendants deny the remaining allegations of this paragraph.

7    "62.    In preparing the Fee Waiver Letter, Avenatti and Marchino intended to strip EA

8    of its right or interest in fees or contingent receivables owed to EA, which constituted property of

9    EA.  These actions were taken with actual intent to hinder, delay, or defraud creditors of EA

10    including JFL."

11    **Answer**:  Defendants deny that Marchino had any involvement in preparing the

12    Fee Waiver Letter, deny that Marchino intended to strip EA of its right or interest in fees

13    or contingent receivables owed to EA, deny that the Fee Waiver Letter involved any

14    "right or interest in fees or contingent receivables owed to EA, which constituted

15    property of EA," deny that Marchino had any intention of any sort, and deny that

16    Marchino took any action with actual intent to hinder, delay, or defraud creditors of EA,

17    including JFL.  Defendants lack knowledge or information sufficient to form a belief

18    about the truth of the remaining allegations of this paragraph.

19    "63.    Additionally, the Fee Waiver Letter was in direct violation of the Court's July

20    11th Order and constituted an actual and constructive fraudulent transfer. Moreover, when the

21    Fee Waiver Letter was written, EA and its principals actually knew or should have known of the

22    July 11th Order restraining EA from transferring its fee rights.  The existence of the Fee Waiver

23    Letter was not disclosed to the Receiver prior to bankruptcy or the Trustee after the bankruptcy

24    until September 16, 2020, in connection with X-Law's motion to strike the EA liens."

25    **Answer**:  Defendants deny that any Defendant violated the July 11th Order issued

26    by the bankruptcy court presiding over the 2017 Bankruptcy and deny that the Fee

27    Waiver Letter constituted an actual or constructive fraudulent transfer to or for the benefit

28    of any Defendant.  Defendants admit that the Fee Waiver Letter was filed in connection

with a motion to strike liens.  Defendants deny that the motion was solely filed by X-Law.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

"64.    Also, EA was not provided a referral fee by X-Law - which is customarily provided in a situation where (a) it is a high damages case; (b) where the prior law firm had done substantial work on the case; and (c) where there is a "friendly" relationship between the law firms. X-Law and Marchino were aware that such referral fees are enforceable with client approval – which was not sought by X-Law and Marchino.  Absent Marchino's relationship, EA would have sought to negotiate and receive a referral fee as part of the transition of the case to a new firm."

**Answer**:  Defendants admit EA was not provided a referral fee by X-Law. Defendants admit that "X-Law and Marchino were aware that such referral fees are enforceable with client approval – which was not sought by X-Law and Marchino." Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph.

"65.    There is no reason to believe that Hernandez would have rejected the provision of a referral fee to EA if that referral fee would not reduce the total amount of attorneys' fees that would be charged in the case."

**Answer**:  Deny.

"66.    Notwithstanding the purported substitution, on November 19, 2018, EA filed and served a notice of case management conference on behalf of "Plaintiffs" in the Hernandez Case."

**Answer**:  Deny.

"67.    EA also conversed about experts on the case following the substitution."

**Answer**:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

"68.    Further, even though he ostensibly claimed to work on the Ramirez matter as a partner of X-Law, Marchino continued to work <u>on other EA cases</u> **as an EA attorney** through at least November 2018."

1    **Answer**:  Defendants admit that Marchino worked on the Ramirez matter as an

2    X-Law attorney in 2018.  Defendants deny the remaining allegations in this paragraph.

3    "69.    At the same time, EA acted as counsel for Marchino and X-Law in an action

4    relating to a fee dispute they had with Dordick Law Corporation in the Los Angeles Superior

5    Court, Case No. BC 689324.  The last filing of record that has been located is a February 15,

6    2019 demurrer that was filed by EA for X-Law and Marchino in the Dordick action."

7    **Answer**:  Admit.

8    **"F.    X-Law/Marchino Continue EA's Representation of Hernandez/Ramirez**

9    **Answer**:  Deny the allegations in subheading F.

10    70.    The EA team working on the Hernandez/Ramirez matter (including Marchino)

11    continued to litigate the case at X-Law."

12    **Answer**:  Defendants deny that prior to 2019 there existed a case where

13    Hernandez was the plaintiff or that EA ever represented Hernandez.  Defendants admit

14    that Marchino worked on case No. BC664114.  Defendants admit that a subset of EA

15    attorneys and staff who worked on case No. BC664114 on behalf of Ramirez eventually

16    became employees of X-Law and worked on case No. BC664114 at X-Law initially on

17    behalf of Ramirez, and following his death on behalf of Hernandez.  Defendants deny the

18    remaining allegations of this paragraph.

19    "71.    Unfortunately, as anticipated, 13-year-old Ramirez passed away on February 25,

20    2019. Prior to passing away, Ramirez never fully regained consciousness and persisted in a state

21    of unresponsive wakefulness from November 30, 2015, to February 25, 2019."

22    **Answer**:  Defendants deny that the death of Ramirez was "anticipated".

23    Defendants deny that Ramirez was 13 when he died.  Defendants admit the remaining

24    allegations of this paragraph.

25    "72.    On April 26, 2019, Hernandez filed an action in the Probate Court of the Los

26    Angeles Superior Court under Case Number 19STPB03950, seeking to be appointed the personal

27    representative of her son's estate ("Probate Action"). Hernandez contends that she is the sole heir

28    and has the sole right to any proceeds generated in the Hernandez Case on behalf of her deceased

son."

       **Answer**:  Deny except to admit that Hernandez sought to be appointed the personal representative of her son's estate and that Hernandez contends that she is the sole heir of Ramirez.

"73.    On May 30, 2019, Hernandez was appointed the personal representative of Ramirez's estate – based upon the representation that he had died intestate."

       **Answer**:  Admit.

"74.    On June 12, 2019, the Receiver filed a Notice of Lien in the Hernandez Case – based upon EA's quantum meruit entitlement to fees."

       **Answer**:  Defendants deny that the notice of lien specified a quantum meruit entitlement to fees or that EA had a quantum meruit entitlement to fees.  Defendants deny that on June 12, 2019 Hernandez was a party in case No. BC664114.  Defendants admit the remaining allegations in this paragraph.

"75.    Consistent with the foregoing, as well as her prior conversations with EA attorney, Hernandez filed an amended complaint in the Hernandez Case on July 16, 2019, in which she was added as a party and asserted her sole claim to damages that she was the sole heir to son (Ramirez). A true and correct copy of the amended complaint filed by Hernandez on July 16, 2019 is attached as Exhibit "3." Specifically, Hernandez alleged in paragraph 9:

> 9.  Plaintiff ELBA HERNANDEZ is the mother of decedent Andres Ramirez. She is also the personal representative of the ESTATE OF ANDRES RAMIREZ and is a successor in interest of Ramirez. She is entitled to bring this wrongful death/survivorship action pursuant to Code of Civil Procedure Sections 377.60 and 377.30 on behalf of Plaintiff The Estate of ANDRES RAMIREZ, on behalf of Andres Ramirez, deceased, and on behalf of herself and the other Andres Ramirez heirs. Ramirez died without issue, and ELBA HERNANDEZ would be entitled to Ramirez's estate through the rules of intestate succession."

       **Answer**: Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations that the allegations of this paragraph are consistent with Hernandez's "prior conversations with EA attorney [sic]" because it is unclear which attorney or conversations the allegations are referring to.  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Hernandez

1    "asserted her sole claim to damages that she was the sole heir to son (Ramirez)" because

2    the allegation is unintelligible.  Defendants admit the remaining allegations of this

3    paragraph pertaining to case No. BC664114.  Defendants deny the remaining allegations

4    of this paragraph.

5    "76.    Upon the filing of Debtor's bankruptcy petition on September 13, 2019, all assets

6    of EA, including any contingent right to payment or creditor claims in probate became property

7    of the bankruptcy estate pursuant to 11 U.S.C. § 541(a), to which the automatic stay of 11 U.S.C.

8    § 362 applied."

9    **Answer**:  Admit except that Defendants lack knowledge or information sufficient

10    to form a belief about the truth of the allegation that that all assets of EA were subject to

11    the automatic stay and deny that the automatic stay applied to the prosecution of any

12    claims of the Debtor in the *Ramirize* probate proceeding.

13    "77.    From the latter part of 2019 through August 2020, first the Receiver and then the

14    Trustee (by and through his counsel) attempted to get information regarding the status of the

15    Hernandez Case. In response, X-Law (through Mr. Marchino) denied the existence of any valid

16    lien and even stated that it wanted the Trustee to produce a copy of the retainer – even though X-

17    Law had continued representation of Hernandez (and, until his passing, Hernandez's son)."

18    **Answer**:  Defendants deny that EA ever represented Hernandez, deny that X-Law

19    continued that representation of Hernandez, deny that there was a Hernandez Case before

20    the passing of her son, and deny that X-Law represented Hernandez before the passing of

21    her son.  Defendants admit that in 2019 and 2020 Marchino communicated with "first the

22    Receiver and then the Trustee (by and through his counsel)" but lack knowledge or

23    information sufficient to form a belief about the truth of the allegation that the goals of

24    these individuals was "to get information regarding the status of the Hernandez Case."

25    Defendants admit that "X-Law (through Mr. Marchino) denied the existence of any valid

26    lien and even stated that it wanted the Trustee to produce a copy of the retainer – even

27    though X- Law [represented] Hernandez (and, until his passing, Hernandez's son)."

28    Defendants deny the remaining allegations of this paragraph.

"78.    On August 6, 2020, Mr. Marchino made the following representation to Trustee's counsel:

> I write today to inform you and the Trustee that our case, *The Estate of Andres Ramirez v. City of Pasadena*, has now concluded and the Estate of Andres Ramirez received no net recovery. There being no recovery, the Estate of Eagan Avenatti LLP is not entitled to assert a lien in the matter. . . . "

**Answer**:  Admit.

"79.    Upon information and belief, Mr. Marchino's representation and statement on August 6, 2020, was false and deceitful. Upon further information and belief, the Hernandez Case was actually settled for approximately $10.35 million – and the attorney fees that X-Law is claiming for the Hernandez Case (that originated and was litigated by EA) is likely to be in excess of $4 million."

**Answer**: Defendants admit that Marchino made a statement on August 6, 2020. Defendants admit that at one time EA worked on case No. BC664114 on behalf of Ramirez.  Admit that a partial settlement has been reached for $10.35 million. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that the Trustee believes that X-Law is "likely" to claim in excess of $4 million in attorney fees.  Defendants deny the remaining allegations of this paragraph.

"80.    Upon further information and belief, the settlement was structured so that the Estate of Ramirez received nothing – but Hernandez would receive the entirety of the $10.35 million (less attorneys' fees and costs).  To date, the Trustee has not been provided a copy of the settlement agreement but expects that it will include releases of the claims filed by Hernandez in her capacity as guardian *ad litem*."

**Answer**:  Defendants admit that Hernandez received the entirety of the $10.35 million (less attorneys' fees and costs) pursuant to the partial settlement of case no. BC664114 and that as of the date of the complaint Defendants had not provided a copy of the settlement agreement to the Trustee, that Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that the Trustee did not receive a copy of the settlement agreement from some other source or that he expects that a copy

1    of the settlement agreement will include releases of claims filed by the Estate of

2    Ramirez,.  Defendants lack sufficient information to admit or deny the remaining

3    allegations of this paragraph.

4    "81.    As a wrongful death action, all of Hernandez's recovery is derivative of those to

5    which her son (Ramirez) would have been entitled."

6    **Answer**:  Defendants admit that Hernandez's son was Ramirez and that

7    Hernandez filed a wrongful death claim.  Defendants deny the remaining allegations of

8    this paragraph.

9    "82.    Indeed, Hernandez's claims in the action were expressly (and entirely) based upon

10    her status as the sole heir to Ramirez."

11    **Answer**:  Deny.

12    "83.    In or about May 2020, a petition was filed by Hernandez in the Probate Action for

13    a Court determination that Hernandez is the sole heir and entitled to all distributions of the

14    Decedent's Estate (as her deceased son's only legal heir). In the Petition, there is no mention in

15    the Petition about the settlement in the Hernandez Case or EA's claim to fees from settlement

16    proceeds in the Hernandez Case."

17    **Answer**:  Admit.

18    "84.    The Trustee has no knowledge whether X-Law has already appropriated all of the

19    fees generated in the Hernandez Case, or if the funds remain in an X-Law trust account."

20    **Answer**:  Defendant lack knowledge or information sufficient to form a belief

21    about the truth of the allegations that the Trustee has no knowledge and deny the

22    remaining allegations of this paragraph.

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

"**FIRST CLAIM FOR RELIEF**

**(Against Hernandez and X-Law, For Declaratory Judgment**

**Under 28 U.S.C. § 2201)**

85.    The Trustee incorporates by reference and realleges paragraphs 1-84 of this Second Amended Complaint."

**Answer**:  Defendants admit that in paragraph 85, the Trustee incorporated the preceding allegations in the complaint.  Defendants incorporate herein by reference each admission, denial, or deemed denial to the preceding allegations of the complaint as if set forth in full herein.

"86.    In or around June 2016, EA was retained to represent Hernandez in her capacity as guardian ad litem for her minor son, Andres Ramirez ("Ramirez"), who was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ("Pasadena")."

**Answer**:  Defendants admit that EA represented Ramirez in litigation and that Hernandez was guardian ad litem for her son Ramirez.  Defendants further admit that Ramirez "was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ('Pasadena')."  Defendants deny the EA represented Hernandez in any capacity at any time.  Defendants deny that EA was retained to represent Ramirez at any time prior to August 2016.  Defendants deny the remaining allegations of this paragraph.

"87.    Trustee is in possession of an executed retainer agreement (in Spanish) executed by Hernandez with EA. Paragraph 8 of the retainer agreement contains an attorney lien provision.  The Trustee has yet to locate a copy of the retainer agreement that was countersigned by EA."

**Answer**:  Defendants deny the existence of any EA retainer agreement executed by Hernandez acting in her individual capacity.  Defendants deny the existence of a valid and enforceable retainer agreement pertaining to the representation of Hernandez or Ramirez by EA.  Defendants lack knowledge or information sufficient to form a belief

1    about the truth of the remaining allegations of this paragraph.

2    "88.    EA provided representation to Hernandez as a representative of the Andres

3    Ramirez in the Hernandez Case and performed substantial services on her behalf."

4    **Answer**: Deny.

5    "89.    The Trustee has a valid and enforceable quantum meruit claim for services

6    rendered by EA in the Hernandez Case."

7    **Answer**: Deny.

8    "90.    Upon information and belief, the Hernandez Case has settled, and X-Law Group

9    received and/or is in possession of the entirety of the attorneys' fees generated in the Hernandez

10   case – believed to be in excess of $4 million.  Only the minor portion of the case relating to

11   claims against the driver survive (with limited insurance coverage)."

12   **Answer**:  Defendants admit that Case No. BC664114 was settled as against one

13   defendant, but deny that the entire case has settled.  Defendants admit that X-Law Group

14   received the entirety of the attorneys' fees they earned in Case No. BC664114 thus far.

15   Defendants admit that insurance coverage, by its nature, is always limited.  Defendants

16   admit that the portion of the case relating to claims against the driver is ongoing at the

17   time of the filing of this answer, but deny that it is "minor."  Defendants lack knowledge

18   or information sufficient to form a belief about the truth of the allegation that the Trustee

19   believes that the attorneys' fees are in excess of $4 million.  Defendants deny the

20   remaining allegations of this paragraph.

21   "91.    Marchino was the attorney in charge of the Hernandez/Ramirez matter from the

22   time of EA's retention in June 2016 through at least August 2018."

23   **Answer**: Deny.

24   "92.    Under Marchino's supervision, EA performed substantial work in the litigation of

25   the Hernandez/Ramirez matter.  Among other things, EA performed at least the following legal

26   services on behalf of Ramirez and Hernandez:

27       a.   filing a tort claim with Pasadena on October 7, 2016, including discussion and

28           legal research regarding the filing of a late claim against the city, including the

1      legal exceptions and excuses for the late-filing, which EA ultimately prevailed

2      on;

3      b.   when the claim was rejected as untimely (an administrative prerequisite for

4      filing a petition against the city), filing an application with Pasadena for leave

5      to file a late claim;

6      c.   when that application was denied (i.e. exhausting administrative remedies),

7      filing a petition in the Los Angeles Superior Court ("Superior Court") for

8      leave to file a complaint against Pasadena, which was granted based on

9      arguments generated by EA attorneys;

10     d.   preparing and filing a tort complaint against Pasadena in the Superior Court;

11     e.   amending the complaint to add as a defendant Jacquelyn Licea, the driver of

12     the car that struck Ramirez, and corresponding with counsel for Ms. Licea;

13     f.   conducting independent discovery, including the acquisition and review of

14     public records underlying the accident;

15     g.   retaining, paying, and working with experts regarding accident reconstruction,

16     medical issues, and biomechanical issues;

17     h.   making inquiries regarding a life-planning expert for the case;

18     i.   conducting depositions of multiple parties, including the two first responders;

19     j.   exchanging written discovery; and

20     k.   otherwise preparing the case for trial."

21     **Answer**: Defendants deny that EA provided any legal services on behalf of

22     Hernandez. Defendants further deny that Marchino supervised anyone at EA on the

23     Ramirez matter. Defendants further deny that EA did substantial work on the Ramirez

24     matter. Defendants admit that EA performed the items listed as subparagraphs (a), (b),

25     (c), (d), (e), (f), (h), and (j) on behalf of Ramirez. Defendants admit that two first

26     responders were deposed on behalf of Ramirez, but deny that any parties were deposed.

27     Defendants deny the remaining allegations of this paragraph.

28     "93.    Indeed, the billing of costs – including the costs of depositions and fees for

1  experts – were sent directly to Marchino at his EA law firm and email address."

2     **Answer**:  Defendants lack knowledge or information sufficient to form a belief

3    about the truth of the allegations of this paragraph.

4   "94. Notably, Marchino himself conducted the two depositions and stated that he was

5  doing so in his capacity as an EA attorney.  With respect to litigation questions on the case, EA

6  attorneys sought and obtained Marchino's advice and consent. "

7     **Answer**:  Defendants admit that at two depositions conducted by Marchino

8    conducted, he identified himself as being an attorney from Eagan Avenatti.  Defendants

9    deny the remaining allegations of this paragraph.

10   "95. EA and Marchino were aware of the substantial attorneys' fees that were likely

11  recoverable in the Hernandez case.  In fact, on April 27, 2018, EA filed a Statement of Damages

12  of $116,801,000 for the case.  This included a claim of $40 million in future medical expenses

13  and $30 million in emotional distress."

14     **Answer**:  Defendants admit that Marchino was aware that Ramirez's claims had a

15    nonzero value, but lack knowledge or information sufficient to form a belief about the

16    truth of the allegation that EA was aware of the substantial attorneys' fees that were

17    likely recoverable.  Defendants admit that "on April 27, 2018, EA filed a Statement of

18    Damages of $116,801,000 for [Ramirez]. This included a claim of $40 million in future

19    medical expenses and $30 million in emotional distress."  Defendants deny there was a

20    "Hernandez case" at the time the JFL Judgment was entered.  Defendants lack knowledge

21    or information sufficient to form a belief about the truth of the remaining allegations of

22    this paragraph.

23   "96. During the litigation, Hernandez advised EA that she did not expect Ramirez to

24  survive the litigation and she still had EA continue to provide legal representation in the case

25  (which was expected to solely benefit her).  Ramirez was in a vegetative state with no hope of

26  recovery.  These discussions began no later than May 2018."

27     **Answer**:  Defendants admit that Ramirez was in a state of unresponsive

28    wakefulness.  Defendants deny the remaining allegations of this paragraph.

1   "97.    Further, Hernandez maintains that she is the sole heir of her son, Andres Ramirez.

2   As a result, she would financially benefit from any recovery in the litigation upon her son's

3   anticipated death."

4           Defendants admit that "Hernandez maintains that she is the sole heir of her son,

5           Andres Ramirez."  Defendants admit that Hernandez was one person who could

6           potentially assert a financial claim for her son's wrongful death.  Defendants deny that

7           she was the only person who could potentially do so.  Defendants deny the remaining

8           allegations of this paragraph.

9   98.    Thus, both Hernandez and EA were aware that the representation that EA was

10  providing in the litigation was for Hernandez's ultimate financial benefit.  Pursuant to that

11  understanding, EA continued to provide legal services for Hernandez's ultimate benefit."

12          **Answer**.  Deny.

13  "99.    Hernandez, in her individual capacity and as the alleged sole heir to Ramirez has

14  benefited from the legal services provided by EA, and was actually represented in her individual

15  capacity by EA."

16          **Answer**:  Defendants admit that Hernandez is the sole heir of Ramirez.

17          Defendants deny the remaining allegations of this paragraph.

18  "100.   EA provided legal services to Hernandez at her explicit and/or implicit request for

19  the legal services. Even if there were no valid and enforceable contract for EA's representation in

20  the Hernandez Case, the amount owed to EA may still be fixed by the court pursuant to Cal.

21  Fam. Code § 6602."

22          **Answer**:  Deny.

23  "101.   The services provided by EA to Hernandez contributed to a substantial benefit to

24  her, in the full amount of the ultimate recovery in the Hernandez Case, which is believed to be

25  $10.35 million. The amount of the contribution by EA is subject to further court determination."

26          **Answer**:  Defendants lack knowledge or information sufficient to form a belief

27          about the truth of the allegation that the Trustee believes that "full amount of the ultimate

28          recovery in the Hernandez Case" is $10.35 million.  Defendants deny that the ultimate

34

1    recovery in Case No. BC664114 has occurred.  Defendants deny the remaining

2    allegations of this paragraph.

3    "102.    X-Law Group and Marchino have disavowed the attorney lien filed by the Trustee

4    in the Hernandez Case (which lien has been stricken by this Court given the Trustee's inability to

5    date to locate a countersigned copy of the retainer agreement), and have stated that they will not

6    provide any payment to the Trustee for EA's quantum meruit claim. In fact, X-Law Group and

7    Marchino have actually materially lied to the Trustee by falsely stating that there has been no

8    recovery in the Hernandez case."

9        **Answer**:  Defendants admit that "X-Law Group and Marchino have disavowed

10        the attorney lien filed by the Trustee in" Case No. BC664114 and that they "have stated

11        that they will not provide any payment to the Trustee for EA's [purported] quantum

12        meruit claim."  Defendants deny the existence of a valid quantum meruit claim.

13        Defendants admit the lien has been stricken by this Court but deny that the "the Trustee's

14        inability to date to locate a countersigned copy of the retainer agreement" was

15        determinative.  Defendants deny the remaining allegations of this paragraph.

16    "103.    The Fee Waiver Letter violated the July 11th Order by seeking to assign,

17    encumber, or in any way transfer or otherwise dispose of specified property of EA without

18    specific authorization by the Court. At the time the Fee Waiver Letter was prepared, executed,

19    and transmitted, the parties to the Fee Waiver Letter, including Avenatti and Marchino, knew or

20    should have known of the existence, scope, and application of the July 11th Order to the subject

21    matter of the Fee Waiver Letter."

22        **Answer**:  Defendants deny that Marchino was a party to the Fee Waiver Letter,

23        deny that Marchino prepared, executed, or transmitted the Fee Waiver Letter, and deny

24        that Marchino prepared, executed, or transmitted the Fee Waiver Letter with actual or

25        constructive knowledge of the July 11th Order.  Defendants lack knowledge or

26        information sufficient to form a belief about the truth of the remaining allegations of this

27        paragraph.

28    "104.    Because the Fee Waiver Letter violated the July 11th Order, any transfer, waiver,

1   assignment, or hypothecation intended to be effectuated by the Fee Waiver Letter and any

2   subsequent actions based thereon was void *ab initio* or voidable as a fraudulent transfer.

3   Specifically, to the extent that Defendants claim that the Fee Waiver Letter resulted in a valid

4   and enforceable waiver of EA's right to any recovery from the Hernandez Case, such argument

5   fails."

6        **Answer**:  Defendants deny that any Defendant violated the July 11th Order issued

7           by the bankruptcy court presiding over the 2017 Bankruptcy, deny that any Defendant

8           intended the Fee Waiver Letter to effectuate a transfer, waiver, assignment, or

9           hypothecation, deny that any Defendant's action based on the Fee Waiver Letter was void

10          ab initio or voidable as a fraudulent transfer, and deny that any Defendant's claim that the

11          Fee Waiver Letter resulted in a valid and enforceable waiver of EA's alleged right to any

12          recovery from the Hernandez Case fails.  Defendants lack knowledge or information

13          sufficient to form a belief about the truth of the remaining allegations of this paragraph.

14       "105.   Accordingly, an actual controversy has arisen and exists between the Trustee and

15   the Hernandez/the Attorney Defendants concerning EA's right to a portion of the monies

16   recovered from the settlement in the Hernandez case."

17          **Answer**:  Deny.

18       "106.   A judicial determination is necessary and appropriate at this time under the

19   circumstances so that the parties can ascertain the extent of the Trustee/EA's right to a portion of

20   the proceeds from the settlement of the Hernandez case."

21          **Answer**:  Deny.

22       "107.   The Trustee seeks a declaratory judgment under 28 U.S.C. § 2201 establishing the

23   reasonable value of fees to which the Estate is entitled."

24          **Answer**:  Admit that the Trustee seeks a declaratory judgment under 28 U.S.C. §

25          2201 establishing the reasonable value of fees to which he asserts the Estate is entitled

26          but deny the remaining allegations of this paragraph.

27   ///

28   ///

"**SECOND CLAIM FOR RELIEF**

**(For Quantum Meruit Against Hernandez)**

108.    The Trustee incorporates by reference and realleges paragraphs 1-107 of this Second Amended Complaint."

**Answer**:  Defendants admit that in paragraph 108, the Trustee incorporated the preceding allegations in the complaint.  Defendants incorporate herein by reference each admission, denial, or deemed denial to the preceding allegations of the complaint as if set forth in full herein.

"109.    In or around June 2016, EA was retained to represent Hernandez in her capacity as guardian *ad litem* for her minor son, Andres Ramirez ("Ramirez"), who was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ("Pasadena").  It was also understood by Hernandez and EA that EA's legal services would be provided for her individual benefit."

**Answer**:  Defendants admit that EA represented Ramirez in litigation and that Hernandez was guardian ad litem for her son Ramirez.  Defendants further admit that Ramirez "was severely injured when he was struck by a car while riding his bicycle through an intersection in the city of Pasadena, California ('Pasadena')."  Defendants deny the EA represented Hernandez in any capacity at any time.  Defendants deny that EA was retained to represent Ramirez at any time prior to August 2016.  Defendants deny the remaining allegations of this paragraph.

"110.    Trustee is in possession of an executed retainer agreement (in Spanish) executed by Hernandez with EA. Paragraph 8 of the retainer agreement contains an attorney lien provision.  The Trustee has yet to locate a copy of the retainer agreement that was countersigned by EA. Notwithstanding any defect in any retainer agreement between Hernandez and EA (including any failure to have the retainer agreement approved by a court of competent jurisdiction pursuant to California statutes), EA provided substantial legal services to Hernandez both in her individual capacity and in her capacity as guardian *ad litem* for Ramirez. "

**Answer**:  Defendants deny the existence of any EA retainer agreement executed

by Hernandez acting in her individual capacity.  Defendants deny the existence of a valid and enforceable retainer agreement pertaining to the representation of Hernandez or Ramirez by EA.  Defendants deny that "Notwithstanding any defect in any retainer agreement between Hernandez and EA (including any failure to have the retainer agreement approved by a court of competent jurisdiction pursuant to California statutes), EA provided substantial legal services to Hernandez both in her individual capacity and in her capacity as guardian ad litem for Ramirez."  Defendants lack sufficient information to admit or deny the remaining allegations of this paragraph.

"111.   Marchino was the attorney in charge of the Hernandez/Ramirez matter from the time of EA's retention in June 2016 through at least August 2018."

**Answer**:  Deny.

"112.   Under Marchino's supervision, EA performed substantial work in the litigation of the Hernandez/Ramirez matter.  Among other things, EA performed at least the following legal services on behalf of Ramirez and Hernandez:

    a.  filing a tort claim with Pasadena on October 7, 2016, including discussion and legal research regarding the filing of a late claim against the city, including the legal exceptions and excuses for the late-filing, which EA ultimately prevailed on;

    b.  when the claim was rejected as untimely (an administrative prerequisite for filing a petition against the city), filing an application with Pasadena for leave to file a late claim;

    c.  when that application was denied (i.e. exhausting administrative remedies), filing a petition in the Los Angeles Superior Court ("Superior Court") for leave to file a complaint against Pasadena, which was granted based on arguments generated by EA attorneys;

    d.  preparing and filing a tort complaint against Pasadena in the Superior Court;

    e.  amending the complaint to add as a defendant Jacquelyn Licea, the driver of the car that struck Ramirez, and corresponding with counsel for Ms. Licea;

f.   conducting independent discovery, including the acquisition and review of
     public records underlying the accident;

g.   retaining, paying, and working with experts regarding accident reconstruction,
     medical issues, and biomechanical issues;

h.   making inquiries regarding a life-planning expert for the case;

i.   conducting depositions of multiple parties, including the two first responders;

j.   exchanging written discovery; and

k.   otherwise preparing the case for trial."

**Answer**: Defendants deny that EA provided any legal services on behalf of
Hernandez.  Defendants further deny that Marchino supervised anyone at EA on the
Ramirez matter.  Defendants further deny that EA did substantial work on the Ramirez
matter.  Defendants admit that EA performed the items listed as subparagraphs (a), (b),
(c), (d), (e), (f), (h), and (j) on behalf of Ramirez.  Defendants admit that two first
responders were deposed on behalf of Ramirez, but deny that any parties were deposed.
Defendants deny the remaining allegations of this paragraph.

"113.   Indeed, the billing of costs – including the depositions and experts – were sent
directly to Marchino – at his EA law firm and email address."

**Answer**:  Defendants lack knowledge or information sufficient to form a belief
about the truth of the allegations of this paragraph.

"114.   Notably, Marchino himself conducted the two depositions and stated that he was
doing so in his capacity as an EA attorney.  With respect to litigation questions on the case, EA
attorneys sought and obtained Marchino's advice and consent."

**Answer**:  Defendants admit that at two depositions conducted by Marchino
conducted, he identified himself as being an attorney from Eagan Avenatti.  Defendants
deny the remaining allegations of this paragraph.

"115.   EA and Marchino were aware of the substantial attorneys' fees that were likely
recoverable in the Hernandez case.  In fact, on April 27, 2018, EA filed a Statement of Damages
of $116,801,000 for the case.  This included a claim of $40 million in future medical expenses

1    and $30 million in emotional distress."

2        **Answer**:  Defendants admit that Marchino was aware that Ramirez's claims had a

3    nonzero value, but lack knowledge or information sufficient to form a belief about the

4    truth of the allegation that EA was aware of the substantial attorneys' fees that were

5    likely recoverable.  Defendants admit that "on April 27, 2018, EA filed a Statement of

6    Damages of $116,801,000 for [Ramirez]. This included a claim of $40 million in future

7    medical expenses and $30 million in emotional distress."  Defendants deny there was a

8    "Hernandez case" at the time the JFL Judgment was entered.  Defendants lack knowledge

9    or information sufficient to form a belief about the truth of the remaining allegations of

10    this paragraph.

11    "116.    During the litigation, Hernandez advised EA that she did not expect Ramirez to

12    survive the litigation and still had EA continue to provide legal representation in the case (which

13    was expected to solely benefit her).  Ramirez was in a vegetative state with no hope of recovery.

14    These discussions began no later than May 2018."

15        **Answer**:  Defendants admit that Ramirez was in a state of unresponsive

16    wakefulness.  Defendants deny the remaining allegations of this paragraph.

17    "117.    Further, Hernandez maintains that she is the sole heir of her son, Andres Ramirez.

18    As a result, she would financially benefit from any recovery in the litigation upon her son's

19    anticipated death."

20        Defendants admit that "Hernandez maintains that she is the sole heir of her son,

21    Andres Ramirez."  Defendants admit that Hernandez was one person who could

22    potentially assert a financial claim for her son's wrongful death.  Defendants deny that

23    she was the only person who could potentially do so.  Defendants deny the remaining

24    allegations of this paragraph.

25    "118.    Thus, both Hernandez and EA were aware that the representation that EA was

26    providing in the litigation was for Hernandez's ultimate financial benefit. Hernandez, either

27    individually or on behalf of her son Ramirez, requested and received legal services from EA in

28

connection with an accident in which he was severely injured when he was struck by a car while

riding his bicycle through an intersection in the city of Pasadena, California."

**Answer**: Defendants admit that Hernandez, in her capacity as guardian ad litem

of her son Ramirez requested that EA provide Ramirez "legal services from EA in

connection with an accident in which he was severely injured when he was struck by a

car while riding his bicycle through an intersection in the city of Pasadena, California."

Defendants deny the remaining allegations of paragraph 118.

"119.   Hernandez, in her individual capacity and as the alleged sole heir to Ramirez has

benefited from the legal services provided by EA, notwithstanding the filing of an amended

complaint after Ramirez passed away on February 25, 2019. The benefit conferred on Hernandez

resulted from the substantial litigation efforts of EA prior to Ramirez's death including, without

limitation, those set forth in paragraphs 112-114 above."

**Answer**: Defendants admit that Hernandez is the sole heir of Ramirez.

Defendants deny the remaining allegations of this paragraph.

"120.   EA provided legal services to Hernandez at her explicit and/or implicit request for

the legal services. Even if there were no valid and enforceable contract for EA's representation in

the Hernandez Case, the amount owed to EA may still be fixed by the court including pursuant to

Cal. Fam. Code § 6602."

**Answer**: Deny.

"121.   The services provided by EA to Hernandez contributed to a substantial benefit to

her, in the full amount of the ultimate recovery in the Hernandez Case, which is believed to be

$10.35 million. The value of the contribution by EA is subject to further court determination

according to proof at the time of trial."

**Answer**: Defendants lack knowledge or information sufficient to form a belief

about the truth of the allegation that the Trustee believes that "full amount of the ultimate

recovery in the Hernandez Case" is $10.35 million.  Defendants deny that the ultimate

recovery in Case No. BC664114 has occurred.  Defendants deny the remaining

allegations of this paragraph.

1    "122.    Accordingly, the Estate is entitled to an award of the reasonable value of EA's

2    legal services that benefited Hernandez, from the recovery obtained by Hernandez from

3    Pasadena."

4        **Answer**:  Deny.

5    "123.    To the extent that Hernandez obtains any future recovery from any co-defendant,

6    the Trustee reserves the right to file a claim against Hernandez for such future recoveries."

7        **Answer**:   Defendants admit the Trustee purports to reserve the right to file a

8        claim against Hernandez if she obtains a future recovery from a defendant in Case No.

9        BC664114, but deny that he would be entitled to any recovery if that occurred.

10        Defendants deny the remaining allegations of this paragraph.

11        **THIRD CLAIM FOR RELIEF**

12    **(Against X-Law and Marchino For Violations of Automatic Stay and the July 11th Order –**

13    **11 U.S.C. §§ 362, 105)**

14    "124.    The Trustee incorporates by reference and realleges paragraphs 1-123 of this

15    Second Amended Complaint."

16        **Answer**:   Defendants admit that in paragraph 125, the Trustee incorporated the

17        preceding allegations in the complaint.  Defendants incorporate herein by reference each

18        admission, denial, or deemed denial to the preceding allegations of the complaint as if set

19        forth in full herein.

20    "125.    The July 11th Order qualified as a specific and definite order of the Court which

21    prohibited EA and Avenatti from "assigning, encumbering, or in any way transferring any

22    proceeds, attorney's fees, costs, rights to payments and accounts receivable it is or may be

23    entitled to receive from the lawsuits and clients listed on Exhibit A to the Frank Declaration

24    attached to the Motion." The July 11th Order specifically applied to the Hernandez Case."

25        **Answer**:  Defendants admit that the bankruptcy court presiding over case no.

26        8:17-bk-11961 entered an order restraining EA from "assigning, encumbering, or in any

27        way transferring" its fee rights in a number of cases, but deny that the order addressed

28        any case of Hernandez, who was never an EA client.   Defendants lack knowledge or

1    information sufficient to form a belief about the truth of the remaining allegations of this

2    paragraph.

3    "126.   The Fee Waiver Letter violated the July 11th Order, which prohibited Avenatti

4    and any party from transferring (including waiving) any fee rights of EA in the Hernandez Case.

5    As a violation of a federal court order, the Fee Waiver Letter and any attempt to waive EA's fee

6    rights through the Fee Waiver Letter or any other action, such as the substitution of attorney

7    from EA to X-Law, was void *ab initio* and of no legal force and effect or subject to avoidance as

8    a fraudulent transfer."

9        **Answer**:  Defendants deny that any Defendant violated the July 11th Order issued

10        by the bankruptcy court presiding over the 2017 Bankruptcy, deny that the order imposed

11        its prohibitions on any party, deny that the substitution of attorney from EA to X-Law

12        was void ab initio and of no legal force and effect or subject to avoidance as a fraudulent

13        transfer, and deny that the Fee Waiver Letter was void ab initio and of no legal force and

14        effect or subject to avoidance as a fraudulent transfer.  Defendants lack knowledge or

15        information sufficient to form a belief about the truth of the remaining allegations of this

16        paragraph.

17    "127.   On the Petition Date, EA had a right to fees, whether based on contract, claim in

18    probate, or, at a minimum, under a quantum meruit theory in connection with the Hernandez

19    Case and any recoveries therefrom."

20        **Answer**:  Deny.

21    "128.   EA has a written fee agreement executed by Hernandez which grants EA a right

22    to payment of fees, and includes an attorney's lien provision."

23        **Answer**:  Defendants deny that Hernandez ever executed a fee agreement on her

24        own behalf with EA.  Defendants deny that EA has a valid and enforceable fee agreement

25        pertaining to Ramirez and executed by Hernandez on behalf of Ramiriez that "grants EA

26        a right to payment of fees, and includes an attorney's lien provision."  Defendants admit

27        that EA may have in its possession an invalid fee agreement signed by Hernandez in her

28

43

1    capacity as guardian ad litem for Ramirez that was never signed by EA.  Defendants deny

2    the remaining allegations of this paragraph.

3    "129.    EA's right to fees and any enforceable lien on the recovery constitutes property of

4    the Estate that is protected by 11 U.S.C. § 362(a)(3)."

5    **Answer**:  Defendants admit that EA's right to fees and any enforceable lien on the

6    recovery constitutes property of the Estate that is protected by 11 U.S.C. § 362(a)(3) but

7    deny that EA has any right to fees from Defendants, deny that EA has any enforceable

8    lien on the recovery of any Defendant, and deny that EA has any rights to fees from

9    Defendants that would constitute property of the Estate that is protected by 11 U.S.C.

10    § 362(a)(3).

11    "130.    The automatic stay broadly enjoins any type of action, formal or informal, which

12    interferes with the administration of a bankruptcy estate and bankruptcy estate property. *Delpit v.*

13    *Commissioner*, 18 F.3d 768, 771 (9th Cir. 1994)."

14    **Answer**:  Defendants lack knowledge or information sufficient to form a belief

15    about the truth of the alleged abstract principal stated in this paragraph.

16    "131.    The Fee Waiver Letter was intended to provide X-Law/Marchino with control

17    over property of the Estate, and the structure of the settlement with the City of Pasadena, was

18    intended to result in the destruction of property of the Estate (i.e. the Estate's contingent right to

19    payment from recoveries in the Hernandez Case based on services rendered).  The Trustee

20    alleges that the City of Pasadena conditioned the settlement and $10.35 million payment on

21    releases for the claims prosecuted by EA on behalf of Hernandez."

22    **Answer**:  Deny.

23    "132.    Plaintiff alleges that the case was settled and that X-Law/Marchino received all

24    attorneys' fees likely in excess of $4 million. Because some portion of the settlement constitutes

25    estate property, X-Law/Marchino have exercised control over and are in possession of property

26    of the Estate."

27    **Answer**:  Defendants admit that Case No. BC664114 has partially settled, but

28    deny that the entire case has settled.  Defendants lack knowledge or information

1    sufficient to form a belief about the truth of the allegation that X-Law has received all

2    attorneys' fees that it will ultimately earn.  Defendants lack knowledge or information

3    sufficient to form a belief about the truth of the allegations that the Trustee believes X-

4    Law/Marchino likely received fees in excess of $4 million.  Defendants deny the

5    remaining allegations of this paragraph.

6    "133.    X-Law/Marchino have failed and refused to turn over any portion of the

7    attorneys' fees to the estate even though such fees are property that the trustee can use for the

8    benefit of the estate."

9        **Answer**:  Defendants admit that X-Law/Marchino have not turned over any

10       attorneys' fees to the estate, but deny the remaining allegations of this paragraph.

11   "134.    Defendants' violations of the automatic stay were willful, because Defendants had

12   knowledge of the existence of both the 2017 Bankruptcy and this current bankruptcy case, and

13   knowledge of the scope, extent, and application of the automatic stay is imputed on Defendants

14   based on their knowledge of the existence of the bankruptcy case. Additionally, Defendants had

15   actual knowledge of the July 11th Order (notice of which was served on Marchino's and X-

16   Law's attorneys of record at the Levene, Neale firm, *see* Docket No. 508 in the 2017 Bankruptcy

17   showing electronic service of the July 11th Order completed on attorneys for X Law Group) and

18   knew or should have known that it applied to the Hernandez Case."

19       **Answer**: Defendants admit that X-Law and Marchino had knowledge of the 2017

20       Bankruptcy and that Defendants have knowledge of this current bankruptcy case.

21       Defendants deny the remaining allegations of this paragraph.

22   "135.    As a result of X-Law/Marchino's violations of the stay, the bankruptcy estate has

23   suffered damages including attorneys' fees and costs in seeking to remedy the stay violations."

24       **Answer**:  Deny.

25   "136.    Plaintiff is entitled to recover all such damages according to proof pursuant to 11

26   U.S.C. § 105(a). *Havelock v. Taxel (In re Pace)*, 67 F.3d 187, 193 (9th Cir. 1995)."

27       **Answer**:  Deny.

28   ///

<u>**FOURTH CLAIM FOR RELIEF**</u>

**(Against X-Law and Marchino to Avoid, Recover, and Preserve Fraudulent Transfers**

**11 U.S.C. §§ 544, 548, 550, and 551 and Civil Code § 3439, et seq.)**

"137.    The Trustee incorporates by reference and realleges paragraphs 1-136 of this Second Amended Complaint."

**Answer**:  Defendants admit that in paragraph 137, the Trustee incorporated the preceding allegations in the complaint.  Defendants incorporate herein by reference each admission, denial, or deemed denial to the preceding allegations of the complaint as if set forth in full herein.

"138.    On May 22, 2018, the Bankruptcy Court entered a judgment in favor of JFL and against EA in the amount of $10 million ("JFL Judgment")."

**Answer**:  Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph.

"139.    Beginning in or around August 2016, co-defendant Filippo Marchino was an attorney at EA who expressly represented himself as an EA partner.  In emails, Mr. Marchino would customarily include the following signature block representing himself as an EA partner:



"

**Answer**:  Defendants admit that Filippo Marchino is a codefendant in this adversary proceeding, that he is an attorney who worked at EA beginning in August 2016, and that his email signature block had been set by EA to list his position as partner, which would at times be included in emails he sent.  Defendants deny the remaining allegations of this paragraph.

1    "140.   Marchino sent out emails to publicize that he had joined EA and also identified

2    himself in his e-mail signature block as a "Partner" of EA."

3            **Answer**:  Defendants admit that Marchino's signature block had been set by EA

4            to list his position as partner.  Defendants deny that Marchino ever was or informed

5            anyone that he was an equity partner at EA.  Defendants deny the remaining allegations

6            of this paragraph.

7    "141.   Consistent with the foregoing, Marchino used the EA email address of

8    fmarchino@eaganavenatti.com in connection with his work on EA cases, had access to the EA

9    server, worked at EA offices and had EA legal assistants, law clerks, and attorneys providing

10   him with services in connection with his litigation EA cases. **Notwithstanding his**

11   **representations to the contrary, Marchino was an EA attorney who informed colleagues**

12   **that he was an EA partner.**"

13           **Answer**:  Defendants admit that Marchino at times "used the EA email address of

14           fmarchino@eaganavenatti.com in connection with his work on EA cases, had access to

15           the EA server", worked out of EA offices, and worked on EA cases.  Defendants admit

16           that Marchino's signature block had been set by EA to list his position as partner.

17           Defendants deny that Marchino ever was or informed anyone that he was an equity

18           partner at EA.  Defendants deny the remaining allegations of this paragraph.

19   "142.   From 2016 through late 2018, Marchino continued to work as an EA attorney and

20   represent himself as an EA partner."

21           **Answer**:  152. Defendants admit that in 2016 Marchino was an attorney and

22           employee of EA and that his position bore the meaningless title of "partner."  Defendants

23           deny that Marchino was ever an equity partner at EA.  Defendants deny that Marchino

24           continued to work at EA until "late 2018."  Defendants admit that Marchino's signature

25           block had been set by EA to list his position as partner.  Defendants deny the remaining

26           allegations of this paragraph.

27   "143.   From 2016 through late 2018, Marchino supervised EA's prosecution of

28   numerous EA contingency litigation matters – including the Hernandez/Ramirez matter."

1    **Answer**:  Defendants admit that EA represented Andres Ramirez in litigation and

2    that it purported to do so on a contingency basis.  Defendants deny EA had a valid and

3    enforceable contingency fee agreement pertaining to its representation of Ramirez.

4    Defendants deny that anyone worked on a "Hernandez matter" for EA.  Defendants deny

5    that Hernandez was ever the client of EA or had a contingency agreement with EA.

6    Defendants deny the remaining allegations of this paragraph.

7    "144.   From retention in 2016 through mid-2018, Marchino was the EA attorney

8    supervising the prosecution of the Hernandez/Ramirez matter.  Marchino supervised other EA

9    attorneys who were working on the case – and those attorneys would not only report

10   developments in the case, but also seek his advice and consent regarding many litigation issues."

11   **Answer**:  Deny.

12   "145.   During this time period, Marchino received compensation in the form of

13   paychecks from EA.  Indeed, in post-petition filings, Avenatti and Marchino were both listed as

14   being on the payroll of EA as attorneys – including the time period when Marchino was handling

15   the Hernandez/Ramirez case for EA."

16   **Answer**:  Defendants admit that at certain occasions between 2016 and 2018

17   "Marchino received compensation in the form of paychecks from EA" but deny that he

18   received such compensation for the entire period.  Defendants lack knowledge or

19   information sufficient to form a belief about the truth of the remaining allegations of this

20   paragraph.

21   "146.   Further, in its Third Chapter 11 Status Report filed on October 18, 2017, EA

22   represented that X-Law (of which Marchino is the principal) has unsecured claims against EA's

23   contingency attorneys' fees "from certain of its litigation assets."

24   **Answer**:  Defendants admit that Marchino is the principal of X-Law and that X-

25   Law has claims to a share of attorneys' fees obtained by EA on certain cases.  Defendants

26   lack knowledge or information sufficient to form a belief about the truth of the remaining

27   allegations of this paragraph.

28   "147.   Marchino's law firm and codefendant X-Law also had a close, entangled

1    relationship with EA such that it should be considered an insider of the Debtor. For example,

2    Debtor and X-Law shared office space at 1910 W. Sunset Blvd., Suite 450, Los Angeles, CA –

3    and Debtor paid the rent for this location on behalf of X-Law from 2016 to 2018 directly to the

4    landlord."

5            **Answer**:  Defendants admit that X-Law was permitted to use EA's office space at

6            1910 W. Sunset Blvd., Suite 450, Los Angeles, CA after EA agreed with International

7            Church of the Four Square to take over responsibility for paying the lease when it began

8            to use the Sunset Boulevard office.  Defendants deny the remaining allegations of this

9            paragraph.

10    "148.    X-Law also shared staff and attorneys with Debtor, and the current attorneys

11    working at X-Law include a substantial number of attorneys who were formerly employed by

12    Debtor."

13            **Answer**:  158. Defendants admit that a subset of EA attorneys and staff who

14            worked on case eventually became and are currently employees of X-Law, but deny that

15            this number is "substantial" and deny that any were "shared" in the sense of

16            simultaneously employees of both EA and X-aw.  Defendants deny the remaining

17            allegations of this paragraph.

18    "149.    As a result, Marchino had a direct financial and professional interest in the

19    recoveries generated by EA cases, including the Hernandez/Ramirez matter. After entry of the

20    JFL Judgment and July 11th Order, and with knowledge of the same, Marchino and EA (by and

21    through Michael Avenatti) entered into a series of agreements with the intent to strip EA of its

22    financial interest in attorneys' fees derived from its large contingency fee cases – and provide

23    them to Marchino without any referral fee or other consideration."

24            **Answer**:  Defendants deny that there was ever a "Hernandez matter" that was a

25            EA case or that Hernandez was ever a client of EA.  Defendants admit that Marchino, as

26            attorney for Ramirez and subsequently for Hernandez has had a professional interest in

27            their cases due to the existence of an attorney-client relationship with them.  Defendants

28            admit that X-Law had an agreement with EA wherein it would receive some of the

1    attorneys' fees obtained by EA on certain cases, including that of Ramirez.  Defendants

2    deny the remaining allegations of this paragraph.

3    "150.   Among other things, Avenatti asserted during the 2017 Bankruptcy that EA had

4    entered into an agreement with X-Law under which EA purportedly agreed to assign a portion of

5    its fee rights to X-Law, pay the salaries of X-Law employees, and pay the entire rent for office

6    space shared by EA and X-Law.   In fact, Avenatti testified that during the pendency of the

7    bankruptcy, there were X-Law attorneys who remained on EA's payroll and provided attorney

8    services to EA for EA cases."

9        **Answer**:  Defendants admit that X-Law had an agreement with EA where it

10       would receive a portion of the attorneys' fees on certain cases.  Defendants further admit

11       X-Law was permitted to use EA's office space at 1910 W. Sunset Blvd., Suite 450, Los

12       Angeles, CA after EA agreed with International Church of the Four Square to take over

13       responsibility for paying the lease when it began to use the Sunset Boulevard office.

14       Defendants admit that in 2016 X-Law's employees were hired by EA to work on EA

15       cases, but deny that these individuals continued to be X-Law employees.  Defendants

16       lack knowledge or information sufficient to form a belief about the truth of the remaining

17       allegations of this paragraph.

18    "151.   On July 26, 2018 (after the entry of the $10 million JFL Judgment), Marchino

19    arranged for his separate firm (co-defendant X-Law) to be substituted as counsel in the

20    Hernandez Case."

21       **Answer**:  Defendants admit that Marchino signed a substitution of attorney on

22       behalf of X-Law and Hernandez signed the substitution of attorney on behalf of Ramirez

23       in *Ramirez v. City of Pasadena* and that the document was filed with the Superior Court

24       on July 26, 2018.  Defendants deny that such a substitution occurred with respect to

25       "Hernandez action" or Hernandez in her personal capacity or as a party, , who was never

26       the client of EA.  Defendants lack knowledge or information sufficient to form a belief

27       about the truth of the remaining allegations of this paragraph..

28

1    "152.   The substitution was executed on June 1, 2018 (shortly after the JFL Judgment

2    was entered), and Marchino continued to work on the Ramirez matter as an EA attorney

3    (representing himself to be an EA partner) through at least August 8, 2018 (weeks after the

4    substitution was filed and entered)."

5            **Answer**:  Defendants admit that the substitution document of attorney form was

6            signed on June 1, 2018.  Defendants lack knowledge or information sufficient to form a

7            belief about the truth of the allegations regarding the JFL Judgment.  Defendants deny the

8            remaining allegations of this paragraph.

9    "153.   On September 18, 2018**,** Avenatti transmitted a letter ("Fee Waiver Letter")

10   written to "Andres Ramirez, c/o The X-Law Group" – stating that EA was waiving its claim to

11   attorneys' fees for a case that it had been litigating for well over one year because EA had

12   provided a "limited amount of time" on the case.  This was an untrue statement, as EA had

13   provided considerable work in the Ramirez matter."

14           **Answer**:  Defendants lack knowledge or information sufficient to form a belief

15           about the truth of the allegations that Avenatti prepared or transmitted the "Fee Waiver

16           Letter".  Defendants admit that EA had done limited work on the case, but deny that it

17           had actively litigated the case for "well over one year".  Defendants admit that the Fee

18           Waiver Letter was addressed to "Andres Ramirez, c/o The X-Law Group" and stated that

19           EA was waiving its claim to attorneys' fees and that EA had spent a "limited amount of

20           time" on the case.  Defendants deny the remaining allegations of this paragraph.

21   "154.   This was part of a scheme by Avenatti and Marchino to strip EA of its right or

22   interest in fees or contingent receivables owed to EA, which constituted property of EA that

23   should have been available to pay EA's creditors."

24           **Answer**:  Deny.

25   "155.   Additionally, the Fee Waiver Letter was in direct violation of the Court's July

26   11th Order and constituted an actual and constructive fraudulent transfer. Moreover, when the

27   Fee Waiver Letter was written, EA and its principals actually knew and should have known of

28   the July 11th Order restraining EA from transferring its fee rights."

1  **Answer**:  Defendants deny that any Defendant violated the July 11th Order issued

2  by the bankruptcy court presiding over the 2017 Bankruptcy, deny that the Fee Waiver

3  Letter constituted an actual or constructive fraudulent transfer to or for the benefit of any

4  Defendant, deny that any Defendant wrote the letter, and deny that any Defendant wrote

5  the letter with actual or constructive knowledge of the July 11th order.  Defendants lack

6  knowledge or information sufficient to form a belief about the truth of the remaining

7  allegations of this paragraph.

8  "156.   Also, EA was not provided a referral fee by X-Law - which is customarily

9  provided in a situation where (a) it is a high damages case; (b) where the prior law firm had done

10  substantial work on the case; and (c) where there is a "friendly" relationship between the law

11  firms. X-Law and Marchino were aware that such referral fees are enforceable upon client

12  approval – which was not sought by X-Law and Marchino."

13  **Answer**:  166. Defendants admit EA was not provided a referral fee by X-Law.

14  Defendants admit that "X-Law and Marchino were aware that such referral fees are

15  enforceable with client approval – which was not sought by X-Law and Marchino."

16  Defendants lack sufficient information to admit or deny the remaining allegations of this

17  paragraph.

18  "157.   There is no reason to believe that Hernandez would have rejected the provision of

19  a referral fee to EA if that referral fee would not reduce the total amount of attorneys' fees that

20  would be charged in the case."

21  **Answer**:  Deny.

22  "158.   Notwithstanding the purported substitution, on November 19, 2018, EA filed and

23  served a notice of case management conference on behalf of "Plaintiffs" in the Hernandez Case."

24  **Answer**:  Deny.

25  "159.   EA also conversed about experts on the case following the substitution."

26  **Answer**:  Defendants lack knowledge or information sufficient to form a belief

27  about the truth of the allegations of this paragraph.

28  "160.   Further, even though he ostensibly claimed to work on the Ramirez matter as a

1    partner of X-Law, Marchino continued to work <u>on other EA cases</u> **as an EA attorney** through at

2    least November 2018."

3              **Answer**:  Defendants admit that Marchino worked on the Ramirez matter as an

4              X-Law attorney in 2018.  Defendants deny the remaining allegations of this paragraph.

5    "161.   Marchino was an attorney/partner at EA at the time the JFL Judgment was

6    entered. Irrespective of whether he was an employee or partner of EA, Marchino qualifies as an

7    insider of the Debtor."

8              **Answer**:  Defendants lack knowledge or information sufficient to form a belief

9              about the truth of the allegations regarding the date the JFL Judgment was entered and

10             that Marchino worked at EA as an attorney at the time the JFL Judgment was entered.

11             Defendants deny that Marchino was ever an equity partner at EA.  Defendants deny the

12             remaining allegations of this paragraph.

13   "162.   In fact, Marchino was the attorney in charge of the Hernandez case at EA, was

14   paid by EA for his work on the case, had direct knowledge of the substantial potential attorneys'

15   fees that would be generated by EA on the Hernandez case, had direct knowledge of the high

16   settlement value of the case, and had a personal interest in the EA attorneys' fees that would be

17   generated by the case."

18             **Answer**:  Defendants admit that Marchino was at one time an attorney at EA who

19             represented Ramirez in case No. BC664114.  Defendants deny that EA ever represented

20             Hernandez in any matter.  Defendants deny that Marchino was the attorney in charge of

21             any case at EA.  Defendants admit that EA at times paid Marchino but deny that he was

22             specifically "paid by EA for his work on the case."   Defendants admit that Marchino was

23             aware EA could potentially obtain a nonzero amount of attorneys' fees from representing

24             Ramirez in in case No. BC664114 and that the case could potentially have a nonzero

25             value settlement value.  Defendants admit that X-Law would receive a portion of any

26             attorneys' fees EA would obtain if Ramirez settled the case and that Marchino owns X-

27             Law.  Defendants deny the remaining allegations of this paragraph.

28   "163.   On July 11, 2018, the Bankruptcy Court entered an order that, among other

1   things, restrained EA from transferring its fee rights in a number of cases. X-Law's and

2   Marchino's counsel were served with notice of entry of this Order."

3       **Answer**: Defendants admit that the bankruptcy court presiding over case no.

4       8:17-bk-11961 entered an order restraining EA from "assigning, encumbering, or in any

5       way transferring" its fee rights in a number of cases, but denies that the order addressed

6       any case of Hernandez.  Defendants lack knowledge or information sufficient to form a

7       belief about the truth of the remaining allegations of this paragraph.

8   "164.   Though at least August 8, 2018, Marchino worked on the Hernandez case as an

9   EA partner and/or attorney."

10      **Answer**: Defendants deny that EA ever represented Hernandez.  Defendants

11      deny admit that at one time Marchino represented Ramirez at EA, but deny that this

12      lasted until August 8, 2018. Defendants deny that Marchino was ever an equity partner at

13      EA.  Defendants deny the remaining allegations of thos paragraph.

14  "165.   In violation of the July 11th Order and with full knowledge of the $10 million JFL

15  Judgment, Avenatti and Marchino entered into an agreement where the Hernandez Case was

16  transferred to Marchino's firm (X-Law).  Pursuant to their agreement, EA waived its right to fees

17  in the Hernandez Case.  If the Fee Waiver Letter is upheld (i.e. to the extent that it is not void as

18  alleged in the Third Claim for Relief above), it would result in no division of compensation

19  between EA and X-Law based on EA's quantum meruit contribution to the result obtained in any

20  future settlement, and constitutes a transfer pursuant to 11 U.S.C. § 101(54)."

21      **Answer**: Defendants admit that X-Law is Marchino's firm.  Defendants admit

22      that the Fee Waiver Letter purported to waive fees with regards to Ramirez, but deny that

23      it had any effect with regards to Hernandez, who was never a client of EA.  Defendants

24      lack knowledge or information sufficient to form a belief about the truth of the remaining

25      allegations about the knowledge of Avenatti.  Defendants deny the remaining allegations

26      of this paragraph.

27  "166.   Additionally, to the extent that X-Law and EA engaged in any transaction

28  whatsoever whereby EA's contingent right to receive compensation from the cases for which it

1    performed valuable services was abandoned in favor of X-Law, such transaction, abandonment,

2    or waiver constitutes a transfer pursuant to 11 U.S.C. § 101(54) to the extent that X-Law asserts

3    that it is entitled to compensation which would otherwise be collected by EA."

4        **Answer**: Defendants deny that "X-Law and EA engaged in any transaction

5        whatsoever whereby EA's contingent right to receive compensation from the cases for

6        which it performed valuable services was abandoned in favor of X-Law." Defendants

7        lack knowledge or information sufficient to form a belief about the truth of the remaining

8        allegations of this paragraph.

9    "167.    The transfer or the Hernandez case and the waiver of the right to fees occurred

10    after the JFL Judgment was entered and in contempt of the Court's July 11th Order."

11        **Answer**: Defendants deny that Ramirez's case, case No. BC664114, was

12        transferred from EA to X-Law after July 11, 2018. Defendants deny that there ever was a

13        Hernandez case that EA worked on, let alone one that was transferred to X-Law.

14        Defendants lack knowledge or information sufficient to form a belief about the truth of

15        the allegation about the date on which EA waived its right to fees with regards to the

16        Ramirez case (and EA had already lost such right by abandoning the case). Defendants

17        deny the remaining allegations of this paragraph.

18    "168.    The aforesaid transfer and waiver was made with actual intent to hinder, delay

19    and defraud JFL – a creditor of the debtor holding the $10 million JFL Judgment.:

20        **Answer**: Deny.

21    "169.    The aforesaid transfer and waiver were made without Debtor receiving any value,

22    let alone equivalent value, in exchange for the transfer."

23        **Answer**: Defendants specifically deny that the transfer and waiver had any

24        legally cognizable value and deny the remaining allegations of this paragraph.

25    "170.    At the time of the transfer and waiver, EA, X-Law, and Marchino believed or

26    reasonably should have believed that the JFL Judgment was beyond the ability of EA to pay the

27    obligation when due."

28

1      **Answer**:  Defendants deny the allegations of this paragraph with regards to X-

2     Law and Marchino.  Defendants lack knowledge or information sufficient to form a belief

3     about the truth of the allegations with regards to EA.  Defendants deny the remaining

4     allegations of this paragraph.

5     "171.   At the time of the transfer and waiver, Marchino had full knowledge of the value

6 of the Hernandez case, the JFL judgment against EA, EA's insolvency, and EA's quantum

7 meruit claims as a result of his work on the case as a partner at EA."

8      **Answer**:  Defendants deny that there ever was a Hernandez case that EA worked

9     on.  Defendants admit that Marchino had worked on Ramirez's case, case No. BC664114

10     at EA.  Defendants deny the remaining allegations of this paragraph.

11     "172.   In addition, at around the same time of the transfer and waiver, EA entered a

12 separate agreement that transferred many of its other assets of EA to X-Law and/or Marchino for

13 no actual consideration. Upon information and belief, Marchino is the sole principal of X-Law."

14      **Answer**:  182. Defendants admit that in 2018 EA entered into an agreement in

15     which EA was obligated to sell X-Law certain assets, but EA failed to perform or

16     otherwise comply with the terms of the agreement.  Defendants admit that Marchino is

17     the sole principal of X-Law.  Defendants deny the remaining allegations of this

18     paragraph.

19     "173.   The transfer and waiver of EA's rights to a portion of the fees in the Hernandez

20 case has been concealed until it was recently revealed in a Motion to Strike that was filed by X-

21 Law and Marchino in this case."

22      **Answer**:  Defendants deny that there ever was a Hernandez case that EA worked

23     on or that it had a right to fees to.  Defendants deny that EA has any entitlement to fees

24     from work it performed on behalf of Ramirez in case No. BC664114, regardless of the

25     existence of the Fee Waiver Letter.  Defendants admit that the Fee Waiver Letter was

26     filed in connection with a motion to strike liens.  Defendants deny that the motion was

27     solely filed by X-Law and Marchino.  Defendants lack knowledge or information

28     sufficient to form a belief about the truth of the remaining allegations of this paragraph.

1    "174.   At the time of the transfer and waiver of EA's rights to portion of the fees in the

2    Hernandez case, EA was insolvent."

3            **Answer**:  Defendants deny that there ever was a Hernandez case that EA worked

4            on or that it had a right to fees to.  Defendants deny that EA has any entitlement to fees

5            from work it performed on behalf of Ramirez in case No. BC664114, regardless of the

6            existence of the Fee Waiver Letter.  Defendants lack knowledge or information sufficient

7            to form a belief about the truth of the remaining allegations of this paragraph.

8            "175.   Pursuant to 11 U.S.C. §§ 544, 548, 550, and 551, and Cal. Civ. Code § 3439.07,

9    the waiver of EA's claim to fees should be avoided, recovered, and preserved for the benefit of

10   the Estate."

11           **Answer**:  Deny.

12           "176.   Pursuant to Cal. Civ. Code § 3439.07, Plaintiff is further entitled to injunctive and

13   other equitable relief as provided by statute."

14           **Answer**:  Deny.

15                          **PRAYER FOR RELIEF**

16           Insofar as a response is required, Defendants deny that the Trustee is entitled to any of the

17   relief requested against Defendants.

18                          **AFFIRMATIVE DEFENSES**

19           Defendants deny all allegations in the Second Amended Complaint that have not been

20   expressly admitted herein.  By alleging the defenses set forth below, Defendants do not concede

21   that she has the burden of proof or persuasion with respect to any of these issues.

22                              **FIRST DEFENSE**

23           The Trustee's Second Amended Complaint, and each and very count or cause of action

24   therein, fails to state a claim upon which relief may be granted against Defendants.

25                             **SECOND DEFENSE**

26           The Trustee's claims are barred, in whole, or in part, by the applicable statutes of

27   limitation and repose.

28   ///

**THIRD DEFENSE**

The Trustee's claims are barred, in whole or in part, by the doctrine of laches.

**FOURTH DEFENSE**

The Trustee's claims are barred, in whole or in part, by the doctrine of waiver, estoppel, and acquiescence.

**FIFTH DEFENSE**

The Trustee's claims are barred, in whole or in part, by the doctrine of unclean hands.

**SIXTH DEFENSE**

The Trustee's equitable claims are barred, in whole or in part, to the extent that there is an adequate remedy at law.

**SEVENTH DEFENSE**

The Trustee's claims are barred, in whole or in part, by the doctrine of ripeness.

**EIGHTH DEFENSE**

The Trustee's claims are barred, in whole or in part, by the doctrine of mootness.

**NINTH DEFENSE**

The Trustee's claims are barred, in whole or in part, because EA abandoned its client, Ramirez.

**TENTH DEFENSE**

The Trustee's claims are barred, in whole or in part, due to noncompliance with the provisions of California's Mandatory Fee Arbitration Act.

**ELEVENTH DEFENSE**

The Trustee's claims are barred, in whole or in part, due to noncompliance with Cal. Bus. & Prof. Code § 6147 and 6148.

**TWELFTH DEFENSE**

Defendants have insufficient information available upon which to form a belief as to whether they have available additional, as yet unstated, affirmative defenses. Defendants

///

//

1   specifically reserve all affirmative defenses or other defenses as may become available or appear

2   upon further developments in this case.

3   Dated:  May 19, 2021          LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

4                                 By:  _/s/ Kurt Ramlo_____
                                        DAVID B. GOLUBCHIK
5                                       KURT RAMLO
                                      Attorneys for Defendants The X-Law Group, P.C. and Filippo
6                                     Marchino

7   Dated:  May 19, 2021          THE X-LAW GROUP, P.C.

8                                 By :  ___Thomas Gray_____
                                        FILIPPO MARCHINO
9                                       THOMAS E. GRAY
                                      Attorneys for Defendants Elba Hernandez and The Estate of
10                                    Andres Ramirez

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Demand for Trial by Jury**

2

Defendants demand a jury on all triable issues.

3

Defendants do not consent to have a jury trial conducted by a bankruptcy judge.

4

Dated:  May 19, 2021          LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.

5

By:  */s/ Kurt Ramlo*
                                              DAVID B. GOLUBCHIK

6

                                              KURT RAMLO
                                     Attorneys for Defendants The X-Law Group, P.C. and Filippo

7

Marchino

8

Dated:  May 19, 2021          THE X-LAW GROUP, P.C.

9

By : _____
                                              FILIPPO MARCHINO

10

                                              THOMAS E. GRAY
                                     Attorneys for Defendants Elba Hernandez and The Estate of

11

Andres Ramirez

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

60

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, California 90067

On **May 20, 2021**, a true and correct copy of the foregoing documents entitled

### Defendants' Answer to Richard A. Marshack's Second Amended Complaint

### Demand for Trial by Jury

will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

David B Golubchik on behalf of Interested Party Courtesy NEF
dbg@lnbyb.com, stephanie@lnbyb.com

D Edward Hays on behalf of Plaintiff Richard A. Marshack
ehays@marshackhays.com,
ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com

Richard L Kellner on behalf of Plaintiff Richard A. Marshack
rlk@kellnerlaw.com, irma.c.deleon@gmail.com

Tinho Mang on behalf of Interested Party Courtesy NEF
tmang@marshackhays.com,
tmang@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com

Filippo Marchino on behalf of Defendant The X-Law Group, PC, a professional corporation
fm@xlawx.com, tc@xlawx.com

Filippo Marchino on behalf of Defendant Young Blue LLC, a limited liability company
fm@xlawx.com, tc@xlawx.com

Filippo Marchino on behalf of Defendant Elba Hernandez, individually and as personal representative and successor in interest to Andres Ramirez, deceased
fm@xlawx.com, tc@xlawx.com

Filippo Marchino on behalf of Defendant Filippo Marchino
fm@xlawx.com, tc@xlawx.com

Filippo Marchino on behalf of Defendant Sandy Le, individually and on behalf of Tina Ngan Le, decedent
fm@xlawx.com, tc@xlawx.com

Richard A Marshack (TR)
pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**

1    Kurt Ramlo on behalf of Defendant The X-Law Group, PC, a professional corporation
     kr@lnbyb.com, kr@ecf.inforuptcy.com

2
     Kurt Ramlo on behalf of Defendant Filippo Marchino
3    kr@lnbyb.com, kr@ecf.inforuptcy.com

4    John P. Reitman on behalf of Plaintiff Richard A. Marshack
     jreitman@landaufirm.com,
5    srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com

6    United States Trustee (SA)
     ustpregion16.sa.ecf@usdoj.gov

7
                                              ☐ *Service information continued on attached page*

8    **2.  SERVED BY UNITED STATES MAIL**: I served the following persons and/or entities at the last known
9    addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in
     a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows.
10   Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than
     24 hours after the document is filed.

11   Judge's Copy

12
     Hon. Scott C. Clarkson
13   United States Bankruptcy Court
     Ronald Reagan Federal Building and Courthouse
14   411 West Fourth Street, Suite 5130
     Santa Ana, CA 92701-4593

15
                                              ☐ *Service information continued on attached page*

16   **3.   SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR
17   EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR,
     I served the following persons and/or entities by personal delivery, overnight mail service, or (for those
18   who consented in writing to such service method), by facsimile transmission and/or email as follows.
     Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge
19   will be completed no later than 24 hours after the document is filed.

20   [Bin by 5th floor elevators]

21                                            ☐ *Service information continued on attached page*

22   I declare under penalty of perjury under the laws of the United States of America that the foregoing is
     true and correct.

23   **5/20/2021**                Kurt Ramlo                    */s/ Kurt Ramlo*
24   *Date*                       *Type Name*                   *Signature*

25

26

27

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                              **F 9013-3.1.PROOF.SERVICE**