David Golubchik (State Bar No. 185520)
**LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**
2818 La Cienega Ave.
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYG.com

Filippo Marchino, Esq. (SBN 256011)
FM@XLAWX.com
Thomas E. Gray, Esq. (SBN 299898)
TG@XLAWX.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Defendants The X-Law Group, P.C. and Filippo Marchino

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>Debtor. | Case No. 8:19-bk-13560-SC<br><br>Chapter 7<br><br>Adv. No.: 8:20-ap-01086-SC |
| RICHARD A. MARSHACK, Chapter 7 Trustee for Eagan Avenatti, LLP,<br><br>Plaintiff,<br><br>v.<br><br>THE X-LAW GROUP, P.C., a professional corporation; FILIPPO MARCHINO, an individual; ELBA HERNANDEZ, individually and as personal representative and successor in interest to Andres Ramirez, deceased,<br><br>Defendants. | **NOTICE OF SUBMISSION OF DRAFT SETTLEMENT AGREEMENT IN CONNECTION WITH STATUS CONFERENCE**<br><br><u>Hearing:</u><br>Date: November 17, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 5C<br>411 W. Fourth St.<br>Santa Ana, CA 92701 |

In response to this Court's tentative ruling in connection with the Status Conference, Defendants hereby file their draft version of the proposed settlement agreement with respect to the above-referenced adversary proceeding. Defendants represent to the Court that there are certain outstanding material issues with respect to the proposed settlement agreement. Defendants have reached out to Plaintiff's counsel on numerous occasions to discuss and attempt to resolve the issues. Defendants were able to speak with Plaintiff's counsel for a few minutes at 2:15pm and were able to resolve a few issues. Based on the foregoing, while it includes some last minute changes, the current version of the settlement agreement is one modified by Defendants based on their understanding of the facts and agreements between the parties, and this version has not yet been fully approved by Defendants and by Plaintiff and, as a result, is not a final version. A true and correct copy of the draft agreement is attached hereto as **Exhibit "A"**.

DATED: November 16, 2026 **LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.**

By: /s/ David Golubchik
DAVID GOLUBCHIK
Attorneys for Defendants The X-Law Group, P.C. and Filippo Marchino

# EXHIBIT "A"

SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release ("Agreement") is entered into as of the date of the last Party signature below ("Execution Date") by and between (i) Richard A. Marshack, solely in his capacity as Chapter 7 trustee ("TRUSTEE") of the bankruptcy estate ("Estate") of Eagan Avenatti, LLP ("EA"), Case No. 8:19-bk-13560-SC (the "EA Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court"); and (ii) Elba Hernandez ("HERNANDEZ"), the Estate of Andres Ramirez ("RAMIREZ"), The X-Law Group, P.C. ("X-LAW"), and Filippo Marchino ("MARCHINO"; collectively with HERNANDEZ, RAMIREZ, and X-LAW, "DEFENDANTS"). The TRUSTEE and DEFENDANTS are the "Parties." The TRUSTEE acts only as estate fiduciary and not individually. This Agreement implements the previously executed Procedures Agreement (defined below), as amended, without expanding rights waived or duties undertaken except where expressly agreed herein.

**RECITALS**

A. On September 13, 2019, EA, through its court-appointed receiver, filed a Chapter 7 petition commencing the EA Bankruptcy Case.

B. The TRUSTEE was appointed Chapter 7 trustee on September 13, 2019.

C. On May 19, 2020, the TRUSTEE commenced adversary proceeding No. 8:20-ap-01086-SC against DEFENDANTS (the "ACTION"), asserting four claims for relief. DEFENDANTS contest the claims and deny liability and personal wrongdoing.

D. The ACTION is pending before the Honorable Scott C. Clarkson in the Bankruptcy Court.

E. The Parties executed a Settlement Agreement and Mutual General Release dated February 16, 2026 and executed February 19, 2026, as modified by the Addendum executed in March 2026 (together, the "Procedures Agreement"). The Parties filed a Stipulation for Assignment to Mediation on March 2, 2026 (Action Docket No. 496), and the Bankruptcy Court approved the stipulation on March 9, 2026 (Action Docket No. 497). The Addendum provides that the Procedures Agreement became binding upon mutual execution.

F. Under the Procedures Agreement, the Parties agreed to a binding determination of the trial value of the four claims for relief, subject to the negotiated settlement floor and ceiling, and agreed to seek approval of a long-form implementing settlement.

G. On April 29, 2026, the Parties participated in mediation before the Honorable J. Barrett Marum, United States Bankruptcy Judge (the "Mediator"). The Mediator subsequently issued his determination in writing on September 8, 2026 (the "Determination").

H. The Determination established aggregate trial values exceeding the negotiated settlement payment. The Determination assessed no separately stated trial value against MARCHINO individually. Without treating the Determination as a judgment, admission, or finding of misconduct, the Parties have agreed that the amount payable upon timely performance

is $1,750,000 (the "Settlement Amount"). The Determination remains subject to the confidentiality provisions of the Procedures Agreement, except for disclosures required for approval.

I. The bankruptcy proceeding involving Avenatti & Associates, APC ("A&A") and its dismissal or any appeal thereof are separate from this ACTION. Nothing in this Agreement settles claims by or against A&A or Michael J. Avenatti except to the extent of rights actually belonging to the EA Estate and expressly released below.

J. Pursuant to Paragraph 4(a) of the Procedures Agreement, the Parties enter into this long-form Agreement to implement the agreed settlement, including the agreed release protections, without enlarging the scope of waiver or impairing rights expressly reserved herein.

K. The Parties previously executed a Stipulation for Entry of Judgment as security for performance under the Procedures Agreement and Addendum. In order to avoid conflicting enforcement instruments, the Parties expressly amend that Stipulation and any contemplated separate judgment form as specified in Sections 3.2, 3.3, and 6.12 of this Agreement and shall concurrently execute the Amendment to Stipulation for Entry of Judgment in Exhibit A. Any former form may be used only as so amended and solely upon a qualifying default.

L. The Parties dispute all claims and defenses. They enter this Agreement solely to avoid further expense, delay, inconvenience, and uncertainty, without any admission of liability, wrongdoing, receipt of funds, or fault by any DEFENDANT.

## AGREEMENT

NOW THEREFORE, in consideration of the foregoing Recitals, which are incorporated except that no statement shall be construed as an admission by DEFENDANTS, and for good and valuable consideration, the Parties agree as follows:

## ARTICLE 1.
## Court Approval

**1.1 Court Approval and Required Filing.** Within seven (7) calendar days (one week) following receipt of a fully executed copy of this Agreement, as required by Paragraph 5 of the Procedures Agreement, the TRUSTEE shall file a motion for approval under Federal Rule of Bankruptcy Procedure 9019 ("9019 Motion") seeking approval of this Agreement in its entirety, including Exhibit A and the specific amendments identified herein. The TRUSTEE shall provide DEFENDANTS and counsel a substantially complete proposed 9019 Motion and supporting declaration at least two (2) business days before filing, allowing prompt correction of any inaccurate description of DEFENDANTS or the settlement without extending the filing deadline absent written consent. The 9019 Motion shall accurately state the $1,750,000 Settlement Amount, shall not request findings of wrongdoing against MARCHINO, and shall seek no findings adverse to DEFENDANTS beyond those necessary for approval.

**1.2 Requested Limited Court Acknowledgment Regarding Disputed Transfer.** The Parties shall request that the 9019 Order acknowledge, to the extent supported by the record, that the Disputed Transfer identified in Section 5.1.7 occurred in June 2018 and that seven years

elapsed in June 2025. The proposed order shall record the Parties' present understanding under Section 4.2 that the EA Estate is the sole known holder of a presently enforceable, unreleased recovery claim against DEFENDANTS concerning that transfer. The Parties shall request acknowledgment that California Civil Code section 3439.09(c), where applicable, extinguishes a transfer-avoidance claim not timely pursued, subject to any timely preserved action or levy and any applicable federal bankruptcy preservation or extension of time. The proposed order shall not characterize this state-law rule as a universal Bankruptcy Code statute of repose, adjudicate the ownership of the funds, or purport to bar an independent nonparty claim without jurisdiction and the process required by law. Neither this Agreement nor its approval revives an expired claim or extends a filing deadline. These acknowledgments supplement, and do not replace, the protections in Article 5; the Court's refusal to make a requested acknowledgment alone does not defeat approval of the compromise.

**1.3 Limited Nonopposition; No Expanded Waiver.** Consistent with Paragraph 5 of the Procedures Agreement, the Parties shall support approval of this Agreement and shall not object to or appeal approval of the settlement as negotiated. No Defendant waives a right to contest a materially different proposed order, to seek enforcement of the Procedures Agreement. Nothing in this Agreement waives the right to challenge any independent order, underlying merits determination, proof of claim, lien, or judgment unrelated to enforcing the specifically capped compromise, including rights or remedies as to JFL, A&A, or Avenatti. No additional waiver of challenges to the Mediator's valuation, prior orders, potential judgments, or the procedural validity of other proceedings is created beyond the express terms of the Procedures Agreement.

**1.4 Standstill.** Pending a final ruling on the 9019 Motion, the Parties shall cooperate in reasonable extensions of deadlines in the ACTION; no Party shall seek entry of the previously signed stipulated judgment or undertake collection measures based on the settlement until the payment deadline and default prerequisites specified in this Agreement and Exhibit A have been satisfied. Following approval, and pending performance, all ACTION deadlines shall remain stayed or vacated by stipulation as appropriate.

**1.5 Court Approval to Incorporate Amended Enforcement Terms.** The proposed 9019 Order shall expressly approve the specific amendments to the signed payment and default instruments in Sections 3.1 through 3.3, incorporate Exhibit A as the replacement enforcement agreement between the Parties, and confirm that neither the Trustee nor any agent may submit an inconsistent prior stipulated-judgment form. The Parties shall present the reserve and reimbursement terms in Section 5.1.7 for express approval and request the limited acknowledgments under Section 1.2. If the reserve or reimbursement terms are materially rejected, Section 2.3 applies; a requested acknowledgment is governed separately by Section 1.2. This Section expressly supplements Paragraph 5 of the Procedures Agreement upon execution by the Parties and approval by the Bankruptcy Court.

## ARTICLE 2.
## Effective Date

**2.1 Effective Date.** The Parties acknowledge that the Procedures Agreement, as modified by the Addendum, became binding upon mutual execution. This implementing Agreement is binding upon mutual execution for purposes of seeking approval and performing its

express preapproval cooperation, noninterference, and amendment obligations. The duty to remit settlement funds and the conditional mutual releases remain subject to entry of a Rule 9019 order approving this Agreement, including the specific amendments and exhibits stated herein (the "9019 Order"). The date the 9019 Order is entered is the "Effective Date" for the base payment schedule, subject to the appeal and stay adjustments expressly stated in Article 3.

**2.1.1** Execution of this Agreement by each Party, through a person with authority to bind that Party; and

**2.1.2** Entry of the 9019 Order, without any material restriction or modification of the releases or protective provisions expressly required by this Agreement.

**2.2 Final Approval; Payment Triggers.** A "Final Approval Order" is a 9019 Order that has not been stayed and for which the ordinary period to appeal has expired without a pending appeal, or any timely appeal has been finally resolved without material alteration of this Agreement. The Effective Date initially starts the 90-day period for the balance, but any pending appeal of approval, even if no stay issues, tolls that period from the date of filing through final disposition, and any stay tolls the period for its duration. No payment obligation matures while approval is materially restricted, denied, or stayed. The separate release of the Gammill Law funds is not required before the 9019 Order becomes a Final Approval Order.

**2.3 Denial or Material Modification.** If the Bankruptcy Court denies approval, refuses to approve Exhibit A or the express amendment of the earlier judgment mechanism, or materially restricts the releases, duplicate-recovery protections or payment timing, this Agreement shall not take effect as an approved compromise unless all Parties consent in writing to the modification. The Parties shall resume the position contemplated in Paragraph 5 of the Procedures Agreement, the Gammill Law deposit shall be returned as that Agreement provides, and no unapproved proposal shall constitute an admission or waiver.

## ARTICLE 3.
## Terms of Settlement

**3.1 Settlement Amount; Timely Performance.** In full compromise of the claims released herein, DEFENDANTS shall pay the TRUSTEE One Million Seven Hundred Fifty Thousand Dollars ($1,750,000), inclusive of the $500,000 held by Gammill Law. That amount is fixed for timely payment, without additional per diem or prejudgment interest. The agreed effect of a later payment default, including the cap on default principal, is set out in Sections 3.2 and 3.3 and Exhibit A as an express consensual amendment to the earlier documents.

**3.1.1 Express Amendment of Payment Timing.** The Parties expressly amend and reconcile Paragraphs 4(c) and 4(e) of the Procedures Agreement by adopting a ninety (90) calendar-day period, rather than the longer period stated in Paragraph 4(e), for payment of the remaining $1,250,000 after entry of the 9019 Order, subject to the existing appeal, stay, and payment-information adjustments stated in Sections 2.2 and 3.1.3 through 3.1.4. The $500,000 Gammill Law deposit remains payable within ten (10) calendar days after final approval as specified in Section 3.1.2. This two-tranche schedule governs all payment and default calculations.

**3.1.2 Release of Gammill Law Funds.** The $500,000 already deposited with Gammill Law shall be released to the TRUSTEE within ten (10) calendar days after the 9019 Order becomes a Final Approval Order as defined in Section 2.2, provided the TRUSTEE has supplied correct verified wire instructions. Funds shall be credited dollar-for-dollar when actually received; the TRUSTEE shall provide a receipt. To effectuate this clarification of Paragraph 4(e) of the Procedures Agreement, the Parties shall deliver to Gammill Law any necessary conforming written instructions. If approval is denied or materially altered, the deposit shall be returned under Paragraph 4(e).

**3.1.3 Balance of the Settlement Amount.** The remaining $1,250,000 shall be due no later than ninety (90) calendar days after the Effective Date, provided the order has not been stayed, denied, or materially altered. The 90-day period shall be tolled while any timely appeal of the 9019 Order remains pending, whether or not stayed, and for any period during which the TRUSTEE fails to deliver verified wire instructions. At no time shall the final balance be due before ten (10) calendar days after a Final Approval Order if an appeal was filed. All payments actually received shall be credited dollar-for-dollar against the $1,750,000 Settlement Amount.

**3.1.4 Wire Instructions; W-9; Tax Reporting.** The TRUSTEE shall provide a duly completed IRS Form W-9 (to the extent not previously provided), verified estate account wire instructions, and receipts acknowledging each payment. No payment must be wired to an unverified account; delay solely caused by the absence of necessary payment information tolls the affected due date. The Parties expressly clarify the tax-reporting sentence of Paragraph 4(e) of the Procedures Agreement: after approval, DEFENDANTS shall furnish any Form 1099 required by applicable tax law, using the legally reportable payee, amount, and characterization; the reference to "Settlement Value" in that sentence does not require reporting the Mediator's larger hypothetical trial value as money paid. The Parties shall cooperate in good faith regarding reporting, without representing that any specific Form 1099 treatment is legally required.

**3.2 Stipulated Judgment; Express Amendment of Principal and Remedy.** As a material term of the negotiated long-form compromise, and effective upon approval of this Agreement, the Parties expressly amend Paragraph 3 of the Addendum and Paragraphs 1 through 3 of the signed March 2026 Stipulation for Entry of Judgment, together with any associated proposed Separate Judgment, to provide that any stipulated judgment entered for an uncured monetary default shall have principal not exceeding the unpaid balance of the $1,750,000 Settlement Amount (not the Mediator's uncapped trial-value determination), after credit for all sums received by the TRUSTEE. Only reasonable post-default enforcement fees and costs actually incurred and awarded by the Court and post-judgment interest at the signed Stipulation's specified 3.5% annual rate may be added as authorized therein; no pre-default per diem is added to the capped principal. The Parties shall contemporaneously execute Exhibit A, and the TRUSTEE shall request that the 9019 Order expressly approve this amendment. Neither the Stipulation nor any prior form of judgment shall be filed or used inconsistently with this Agreement and Exhibit A; no judgment shall constitute a finding of personal wrongdoing by MARCHINO.

**3.2.1 Credits; Accounting; One Satisfaction.** Before seeking entry of judgment under the signed Stipulation as amended, the TRUSTEE shall provide a sworn, itemized accounting of the $1,750,000 payment obligation, all funds received from Gammill Law or DEFENDANTS, and the claimed unpaid balance. The Bankruptcy Court may determine the proper

balance on notice to all Parties. No funds already received may be recovered again. The written accounting and a proposed conforming judgment must accompany any application for judgment.

**3.2.2 Supersession of Previously Signed Enforcement Forms.** Concurrently with execution of this Agreement, the Parties shall execute Exhibit A (Amendment to Stipulation for Entry of Judgment) and direct that any original signed or unsigned form of stipulated judgment retained by the Mediator, Trustee, or counsel shall not be presented for entry except as modified by Exhibit A and the 9019 Order. Upon approval, Exhibit A controls all future settlement-default applications, regardless of the date any prior form was signed. The TRUSTEE shall use only a form of judgment conforming to this Agreement and shall provide counsel with a copy before any such application.

**3.3 Notice and Opportunity to Cure; Express Amendment.** The Parties hereby specifically modify the "immediately file" remedy in Paragraph 3 of the Addendum and the corresponding default provisions of Paragraph 4(d) of the Procedures Agreement and the signed Stipulation: before applying for stipulated judgment, the TRUSTEE shall give written notice to counsel for DEFENDANTS identifying the unpaid amount and alleged breach, and DEFENDANTS shall have ten (10) business days after confirmed receipt to cure. The remedy is limited to a material, uncured payment default after the due date determined under Section 3.1; no nonmonetary breach by itself permits entry of the stipulated monetary judgment. A good-faith payment-credit dispute shall be resolved on noticed motion and shall not authorize collection of amounts already paid. Exhibit A implements this express amendment.

**3.4 Dismissal and Satisfaction.** No later than two (2) business days after confirmed receipt of the entire Settlement Amount, the TRUSTEE shall transmit an executed stipulation dismissing the ACTION in its entirety with prejudice, and shall file it promptly upon countersignature. In all events, no later than fourteen (14) calendar days after full payment, the TRUSTEE shall deliver the original Stipulation for Entry of Judgment and proposed judgment marked canceled, execute any required acknowledgment of satisfaction or withdrawal of enforcement instruments, and take reasonable steps to discharge any settlement-related collection measures against DEFENDANTS. The TRUSTEE shall not use or disclose the unfiled stipulated judgment following satisfaction.

**3.5 Further Covenant Not to Collect.** Upon receipt of the Settlement Amount, the TRUSTEE and anyone claiming through the Estate shall not initiate or continue any collection, avoidance, lien enforcement, assignment, turnover, or other proceeding against DEFENDANTS arising out of the ACTION or the transactions released herein. Any payment tendered and accepted within an expressly applicable cure period shall be deemed timely for release purposes.

## ARTICLE 4.
## Representations and Warranties

**4.1 No Additional Representations or Admissions.** No Party represents that it has not transferred any claim other than a claim such Party actually releases hereunder. Each Party acknowledges that, apart from the express contractual representations and undertakings in this Agreement, it has relied on its own judgment and counsel. No representation, tax treatment, or

finding concerning the merits of the ACTION is implied. Each DEFENDANT expressly denies wrongdoing and personal fault.

**4.2 Present Understanding of Recovery Claims; No Admission of Ownership.** Solely for settlement purposes and on the information presently known to them, the Parties believe that the EA Estate is the only known entity holding a presently enforceable, unreleased claim against DEFENDANTS to recover the Disputed Transfer. The TRUSTEE shall make reasonable inquiry and disclose to DEFENDANTS before execution any known competing demand, timely commenced action or levy, tolling agreement, or bankruptcy proceeding that may preserve a claim by A&A or another claimant notwithstanding the age of the transfer. This statement concerns the present understanding of enforceable recovery claims; it is not an admission by any DEFENDANT that the funds belonged to EA, that the transfer was avoidable, or that any DEFENDANT committed wrongdoing. This Agreement makes no representation that a nonparty is legally barred solely because the Parties agree or seven years have elapsed.

**4.3 No Assignment of Released Rights.** The TRUSTEE represents, to the best of his knowledge after reasonable inquiry, that he has not assigned or transferred to any person any EA Estate claim against a DEFENDANT that is being released herein, except as expressly identified in a writing delivered to DEFENDANTS before execution. This representation does not concern X-LAW's preserved proof of claim or any Defendant's rights against nonparties.

## ARTICLE 5.
## <u>Releases</u>

**5.1 Mutual General Release; Scope; Conditions.** Upon full receipt of the Settlement Amount (including payment made within any applicable cure period), and except for the rights specifically preserved in Sections 5.1.2 through 5.1.9 and the continuing obligations of this Agreement, the TRUSTEE, on behalf of the EA Estate and its successors, assigns, and persons claiming by or through the EA Estate, irrevocably releases and discharges each DEFENDANT and each other person or entity now or formerly named, served, joined, or involved as a defendant in the ACTION, whether formally or informally, together with such persons' and entities' present, former, and future officers, directors, shareholders, owners, members, employees, agents, attorneys, insurers, representatives, affiliates, parents, subsidiaries, predecessors, successors, assigns, heirs, and related persons acting in concert with a DEFENDANT, from all known or unknown claims, causes of action, demands, liabilities, obligations, expenses, fees, and damages held or assertable by EA or its Estate arising from, concerning, or connected with the ACTION, the transactions alleged therein (including the disputed approximately $1 million transfer and its proceeds), or any relationship between a DEFENDANT and EA or any entity/person acting on behalf of EA, to the maximum extent such rights are estate property or within the TRUSTEE's lawful authority to release. On the same conditions, each DEFENDANT releases the TRUSTEE solely in his capacity as Trustee and the EA Estate and persons acting by or through the Estate from the corresponding claims that DEFENDANT personally owns or controls in connection with the ACTION or those EA-related transactions; expressly excluded are all rights preserved in this Article 5. No Party purports to release any independent rights of a nonparty creditor or claimant.

**5.1.1 Limited Section 1542 Waiver.** Solely as to claims actually released under Section 5.1, and not as to any claims, defenses, proofs of claim, or rights expressly reserved by Sections 5.1.2 through 5.1.9, each releasing Party knowingly waives California Civil Code Section 1542, which currently provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

**5.1.2 Preservation of Rights Against Avenatti, A&A, and Third Parties.** Nothing in this Agreement releases Michael J. Avenatti, Avenatti & Associates, APC ("A&A"), Jason Frank Law, PLC ("JFL"), or any other nonparty, or releases or compromises any independent claim, cause of action, right of appeal, defense, contribution, indemnity, subrogation, reimbursement, accounting, or other remedy that DEFENDANTS may possess against such a person or entity. Neither the A&A bankruptcy nor any appeal or later action involving A&A is affected. As expressly contemplated in Paragraph 4(b) of the Procedures Agreement, the TRUSTEE releases rights that EA actually owns or legally controls, including claims EA might assert through an entity it lawfully owns or controls, only to the maximum extent of the TRUSTEE's authority; this does not purport to release independent property or avoidance claims of a separate A&A estate.

**5.1.3 Limitation on Trustee Authority; No Circumvention.** The TRUSTEE releases all claims within the EA Estate's ownership or control, including rights that EA could assert derivatively or in a representative capacity to the extent legally possessed by the Estate, and shall not pursue, authorize, assign, finance, or assist any successor, affiliate, agent, or person claiming through the Estate in reasserting a claim released hereunder. The release extends to the Trustee's successors in his official capacity.

**5.1.4 X-LAW Proof of Claim Expressly Preserved.** Notwithstanding any release, waiver, merger, integration, or other provision, the proof of claim filed by X-LAW in the EA Bankruptcy Case as Claim No. 36-1, in the stated amount of $28,537,939.33, together with all amendments, defenses to objections, distribution rights, procedural rights, and rights to seek allowance or payment, is expressly excluded from all releases and remains unimpaired by this Agreement. No payment or release hereunder constitutes satisfaction, withdrawal, compromise, waiver, subordination, credit, or setoff of Claim No. 36-1. The TRUSTEE retains only such rights to object to the proof of claim as he otherwise possesses under applicable bankruptcy law, without relying on this Agreement itself as a basis for deemed release, waiver, or concession by X-LAW. Neither this reservation nor the Trustee's acknowledgment constitutes allowance or adjudication of that claim.

**5.1.5 No Waiver of Challenge to Third-Party Claims and Liens.** Nothing in this Agreement releases or impairs any Defendant's independent right, in any capacity in which such Defendant has standing under applicable law, to investigate or challenge the validity, amount, priority, perfection, enforcement, collection, or allowance of any claim, proof of claim, judgment, or lien asserted by a nonparty, expressly including JFL, in either the 2017 or 2019 EA bankruptcy or any related proceeding. No provision establishes that any such third-party claim or lien is valid,

or prevents appropriate motions for relief from judgment, claim reconsideration, objections, appeals, or defenses, subject to existing court orders and applicable law. This clause preserves, and does not confer, standing.

**5.1.6 Independent Claims and Defensive Crossclaims.** DEFENDANTS retain all lawful claims, crossclaims, cross-complaints, rights of contribution, indemnity, reimbursement, recoupment, setoff, subrogation, and declaratory relief against A&A, Avenatti, and other nonparties, including in any later dispute about the same approximately $1,000,000 transfer or its identifiable proceeds. DEFENDANTS may join or implead EA or the TRUSTEE to enforce this Agreement or obtain an agreed reimbursement or credit for duplicate payment, notwithstanding the mutual release. No DEFENDANT admits that EA, rather than A&A, owned any particular transfer, fee receivable, or other asset; all applicable defenses remain preserved.

**5.1.7 Protection Against Overlapping EA/A&A Claims; Allocation, Reimbursement and Reserve.** For purposes of the nonduplication remedies in this Section only, the Parties agree that One Million Dollars ($1,000,000) of the $1,750,000 Settlement Amount is attributable to the claims concerning the single $1,000,000 wire transfer made in June 2018 and alleged in the Fourth Claim for Relief in the ACTION, including its identifiable proceeds (respectively, the "Transfer Allocation" and the "Disputed Transfer"). This allocation is solely a settlement-protection and accounting convention, not a determination of ownership, wrongdoing, damages, or liability, and does not alter the total Settlement Amount. The Parties intend that DEFENDANTS not pay a second time for the same Disputed Transfer merely because EA and A&A, or their respective representatives, assert inconsistent ownership or recovery theories. If A&A, an A&A trustee, or any other person asserting an independent claim to the same Disputed Transfer obtains a final enforceable monetary judgment against any DEFENDANT, or DEFENDANTS pay a commercially reasonable, good-faith settlement of such claim after timely written notice to the TRUSTEE and a reasonable opportunity for him to participate (his consent not to be unreasonably withheld or delayed), the EA Estate shall reimburse DEFENDANTS in an amount equal to the lesser of (a) the net amount actually paid on account of the same Disputed Transfer, (b) the unreimbursed Transfer Allocation, or (c) the amount necessary to avoid duplicative economic payment after credits and other reimbursements. Such reimbursement does not depend upon a judicial finding that EA lacked ownership; a judgment or approved settlement identifying the overlapping transfer is sufficient. Reasonable defense expenses directly and necessarily incurred to address the duplicate portion of the claim shall also be reimbursable to the extent lawfully approved by the Bankruptcy Court. As security for these obligations, the TRUSTEE shall seek approval in the 9019 Motion to establish and maintain from the Settlement Amount a segregated reserve of $1,000,000 (or other security mutually agreed in writing) until the competing recovery risk is eliminated by a binding release, a final adjudication binding on the relevant claimant, or a court-approved determination of the reserve's adequacy and release after notice to DEFENDANTS and affected claimants as required by law, with any timely commenced overlapping action extending the reserve pending resolution. The acknowledgment requested in Section 1.2 or the passage of seven years alone does not authorize release of the reserve. DEFENDANTS may agree in writing to other security or to release of the reserve. No distribution from the reserve shall be made without Court approval or DEFENDANTS' written consent. The TRUSTEE shall cooperate by producing nonprivileged settlement allocation information and accounting for payments. These are obligations of the EA Estate only, not of the TRUSTEE

personally, and remain subject to court approval and applicable bankruptcy priorities. No provision binds the A&A estate or constitutes an admission that it owns the transfer.

**5.1.8 Rights of Third-Party Creditors and Clients.** This Agreement does not purport to release, settle, assign, or compromise any claim or independent property interest of a nonparty, including Alexis Gardner, or other former clients or creditors of EA. No Defendant gives an undertaking on their behalf, and nothing herein shall be invoked to estop them in a separate proceeding.

**5.1.9 Continuing Obligations and Lawful Enforcement.** The releases do not impair duties to perform this Agreement, duties expressly preserved in the Procedures Agreement, or the right to seek an order enforcing the parties' settlement obligations, including the reimbursement and other surviving protections in Section 5.1.7. A release shall not be construed to bar an affirmative defense based on the fact of payment, prior satisfaction, fraud, lack of ownership, or lack of authority in any later action.

## ARTICLE 6.
## Miscellaneous

**6.1 Successors and Assigns.** The obligations and releases herein bind and benefit the Parties and, to the extent legally applicable, their heirs, representatives, estates, successors, and assigns, including any successor trustee, estate representative, liquidator, or assignee claiming through the EA Estate.

**6.2 Choice of Law.** California law governs this Agreement, except that all issues of Bankruptcy Court approval, enforcement, estate property, claims allowance, and court jurisdiction are governed by applicable federal law.

**6.3 Interpretation; Express Modifications.** All Parties have had counsel review. No provision is construed against the drafting Party. The Procedures Agreement, as amended by the signed Addendum, remains binding; this long-form Agreement is an implementing settlement and effects only those amendments expressly enumerated in Section 6.12. Any general or specific reference to "Settlement Value" as a hypothetical trial determination is distinguished from the fixed "Settlement Amount" payable on the terms of this implementing Agreement.

**6.4 No Inducement.** No Party relies upon a representation, promise, or undertaking not stated in this Agreement or the Procedures Agreement. The express representations, reservations, and continuing obligations stated in this Agreement are not disclaimed by this provision.

**6.5 No Admission; No Adverse Inference.** This is a compromise of contested claims and disputed liability. No payment, stipulation, allocation, Mediator valuation, settlement recital, or release constitutes an admission, finding, or evidence that MARCHINO personally engaged in wrongdoing, that X-LAW or another DEFENDANT committed actionable misconduct, or that any factual allegation in the ACTION was true. No Party shall characterize the settlement, in a filing or public statement, as a determination of personal fault by MARCHINO. This provision does not preclude truthful statements required by law.

**6.6 Attorneys' Fees and Costs.** Except for fees and costs that the Bankruptcy Court expressly awards following a material uncured default under Section 3.2, or in a subsequent action to enforce this Agreement, each Party bears its own attorneys' fees, costs, and expenses relating to the ACTION, mediation, negotiation, approval, and performance. The substantially prevailing Party in an action to enforce this Agreement may recover reasonable attorneys' fees and costs as awarded by the court. No fee-shifting or interest arises solely because the 9019 approval process takes time.

**6.7 Jurisdiction and Venue.** Subject to applicable federal law, the Bankruptcy Court retains jurisdiction solely to approve, interpret, and enforce this Agreement and to administer the ACTION. Consent is limited to these purposes and is not consent to adjudication of any reserved proof of claim or independent dispute, nor an admission of bankruptcy jurisdiction over other matters. Nothing waives any Party's right to contest jurisdiction in a proceeding unrelated to enforcement of this Agreement.

**6.8 Additional Documents.** Each Party shall execute reasonably necessary documents to carry out this Agreement, including the stipulated dismissal, satisfaction of settlement enforcement instruments, and payment receipts; no Party shall be required to execute any additional release, waiver, or admission not expressly required herein.

**6.9 Notices.** Any notice, service or demand permitted under this Settlement Agreement may be given by electronic mail (with proof of receipt), postage prepaid first-class mail, Federal Express (or other over-night delivery service) (with proof of receipt), or personal delivery as follows:

> **To the Trustee**: c/o Richard Kellner (rlk@kellnerlaw.com) of Kellner Law Group P.C., 315 South Beverly Drive, Suite 504, Beverly Hills, CA 90212; copy to Ed Hays (ehays@marshackhays.com) and Tinho Mang (tmang@marshackhays.com) of Marshack Hays Wood LLP, 870 Roosevelt, Irvine, CA 92620.
>
> **To Defendants**: c/o Filippo Marchino (FM@xlawx.com) of The X-Law Group PC, 625 Fair Oaks Ave, Suite 390, South Pasadena, CA 91030.

**6.10 Amendment.** No amendment or waiver is effective unless in a writing signed by every Party whose rights or obligations are affected, expressly identifying the provision amended. No oral change or course of performance modifies the Settlement Amount or express reservations.

**6.11 Execution and Counterparts.** The Agreement may be executed in counterparts, including PDF/electronic signatures, each deemed an original, and becomes binding for the limited preapproval obligations specified in Section 2.1 when all Parties have signed. No one signs on behalf of a separate estate or nonparty without authority.

**6.12 Entire Agreement; Express Priority and Amendments to Signed Instruments.** The February 2026 Procedures Agreement, March 2026 Addendum, March 2, 2026 Stipulation for Assignment to Mediation, and March 2026 Stipulation for Entry of Judgment remain effective except as expressly amended herein. Upon the Parties' execution of this Agreement and the Bankruptcy Court's approval of this Agreement and Exhibit A, the Parties specifically amend: (i) Procedures Agreement Paragraph 4(a), solely to the extent the long-form and approval obligations

are implemented here; (ii) Paragraphs 4(c) and 4(e), as to the reconciled payment schedule, appeals, wire instructions, and tax-reporting clarification in Section 3.1; (iii) Paragraph 4(d), as to the limited monetary-default remedy, notice, cure, and capped judgment principal in Sections 3.2 and 3.3; (iv) Paragraph 4(b), only to the extent necessary to preserve X-LAW's Claim No. 36-1, the rights and defenses expressly reserved by Sections 5.1.2 through 5.1.9, and the additional agreed nonduplication protections; (v) Addendum Paragraph 3, as to the agreed default mechanics; and (vi) Paragraphs 1 through 3 of the signed Stipulation for Entry of Judgment and any associated Separate Judgment, only as set out in Sections 3.2 and 3.3 and Exhibit A. For avoidance of doubt, Sections 1.2, 4.2, and 5.1.7 expressly state the additional limited-acknowledgment, disclosure, and nonduplication terms adopted here. The sole exhibit is Exhibit A, the Amendment to Stipulation for Entry of Judgment. All inconsistent earlier enforcement text is superseded only to the extent of these express amendments; otherwise the earlier signed instruments control. The $1,750,000 payment amount, broad protections for all released DEFENDANTS, and the confidentiality undertaking remain preserved. No informal negotiation is binding except as incorporated here.

**6.13 Confidentiality and Mediator Materials.** The Parties reaffirm the confidentiality provisions of Paragraphs 3(d) and 3(b)(i) of the Procedures Agreement. The signed settlement's amount and legally required terms may be disclosed in the public 9019 Motion; the confidential high-low formula, separate trial-value allocations and underlying mediation materials shall not be publicly filed merely because this Agreement is submitted, unless specifically required by the Bankruptcy Court or otherwise permitted by the Procedures Agreement and agreed by the Parties. Any Court-requested confidential information shall, where legally permissible, first be submitted under seal or in camera. Nothing in the 9019 Motion shall characterize the Mediator's confidential valuation as an adjudication of personal fault or individual liability.

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates set forth below.

Dated: ________________, 2026

THE BANKRUPTCY ESTATE OF EAGAN AVENATTI, LLP

By: ____________________________________
Richard A. Marshack, Chapter 7 Trustee

Dated: ________________, 2026

THE X-LAW GROUP PC

By: ____________________________________
Filippo Marchino, President

Dated: ________________, 2026

FILIPPO MARCHINO

By: ____________________________________
Filippo Marchino, Self

Dated: _______________, 2026

ELBA HERNANDEZ

By: ________________________________
Elba Hernandez, Self

Dated: _______________, 2026

The Estate of Andres Ramirez

By: ________________________________
Elba Hernandez, solely in her duly authorized capacity for the Estate of Andres Ramirez

**APPROVED AS TO FORM:**

MARSHACK HAYS WOOD LLP

By:____________________________
D. Edward Hays
Attorneys for Plaintiff and Chapter 7 Trustee, Richard A. Marshack

KELLNER LAW GROUP PC

By: ___________________________
Richard L. Kellner
Special Litigation Counsel for Chapter 7 Trustee, Richard A. Marshack

**APPROVED AS TO FORM:**

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.

By:____________________________
David B. Golubchik
Attorneys for Defendants The X-Law Group, P.C. and Filippo Marchino

# EXHIBIT A

## AMENDMENT TO STIPULATION FOR ENTRY OF JUDGMENT

In re Eagan Avenatti, LLP, Case No. 8:19-bk-13560-SC; Marshack v. The X-Law Group, P.C., et al., Adv. No. 8:20-ap-01086-SC.

This Amendment is entered into among Richard A. Marshack, solely as Chapter 7 Trustee of the bankruptcy estate of Eagan Avenatti, LLP, and The X-Law Group, P.C., Filippo Marchino, Elba Hernandez, and the Estate of Andres Ramirez (collectively the "Parties"). It amends, and does not merely interpret, the Stipulation for Entry of Judgment executed in March 2026 (the "Prior Stipulation") and Paragraph 3 of the Addendum executed in March 2026. It is executed concurrently with the long-form Settlement Agreement and Mutual General Release to which it is attached (the "Long-Form Agreement"). Capitalized terms have the meanings used in that agreement.

1. Effective upon entry of an order approving the Long-Form Agreement and this Amendment under Bankruptcy Rule 9019, the maximum stipulated judgment principal recoverable for a material, uncured monetary payment default shall equal the unpaid portion of $1,750,000, less every payment or amount received by the Trustee on account of that settlement. No separate trial-value determination, per diem amount, or other sum increases that principal. This provision expressly replaces contrary references to "Settlement Value" in the Prior Stipulation and any proposed Separate Judgment.

2. Before seeking entry of judgment, the Trustee shall give written notice of the amount due and alleged material payment default and afford Defendants ten (10) business days after confirmed receipt to cure. No stipulated money judgment may be sought for a nonmonetary breach alone. Appeal- and stay-related tolling and the ninety (90) calendar-day balance-payment schedule and deposit-payment provisions in Long-Form Agreement Sections 2.2 and 3.1 control the maturity of payment obligations.

3. Any conforming judgment may include only (a) unpaid settlement principal calculated under paragraph 1, (b) reasonable fees and costs actually incurred after default and awarded by the Bankruptcy Court as provided in the Prior Stipulation, and (c) post-judgment interest at the 3.5% annual rate expressly stated in paragraph 3 of the Prior Stipulation. The Trustee shall submit a sworn accounting of all credits and payments. The court shall decide any dispute about arithmetic or fee entitlement after notice and opportunity to be heard.

4. The Parties withdraw any prior consent to entry of an inconsistent Separate Judgment, whether signed, unsigned, lodged, or held by the Mediator. No inconsistent version shall be filed. This Amendment prevails over the Prior Stipulation and Addendum solely to the extent expressly set out above; all unrelated provisions of the Procedures Agreement remain effective. The Trustee shall request that the order approving the Long-Form Agreement incorporate these modifications.

5. Upon full performance of the Long-Form Agreement, the Trustee shall cancel or return the Prior Stipulation and any separate proposed judgment and file a dismissal with prejudice of the adversary proceeding as provided in the Long-Form Agreement. Nothing herein is an admission of liability or personal wrongdoing by any Defendant.

**SIGNATURES TO EXHIBIT A**

Dated: ____________________, 2026
RICHARD A. MARSHACK, solely as Chapter 7 Trustee
By: __________________________________________

Dated: ____________________, 2026
THE X-LAW GROUP, P.C.
By: __________________________________________
Filippo Marchino, President

Dated: ____________________, 2026
FILIPPO MARCHINO, individually
By: __________________________________________

Dated: ____________________, 2026
ELBA HERNANDEZ, individually
By: __________________________________________

Dated: ____________________, 2026
ESTATE OF ANDRES RAMIREZ
By: __________________________________________
Elba Hernandez, solely in her duly authorized representative capacity

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **Notice Of Defendants' Submission Of Draft Settlement Agreement In Connection With Status Conference** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 16, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **David B Golubchik dbg@lnbyg.com, dbg@lnbyg.com**
- **D Edward Hays ehays@marshackhays.com, ehays@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com**
- **Richard L Kellner rlk@kellnerlaw.com, irma.c.deleon@gmail.com**
- **Tinho Mang tmang@marshackhays.com, tmang@ecf.courtdrive.com;alinares@ecf.courtdrive.com;cmendoza@ecf.courtdrive.com; cmendoza@marshackhays.com**
- **Filippo Marchino fm@xlawx.com, tc@xlawx.com;so@xlawx.com;tg@xlawx.com;cc@xlawx.com**
- **Richard A Marshack (TR) pkraus@marshackhays.com, ecf.alert+Marshack@titlexi.com**
- **Alan I Nahmias anahmias@mbn.law, jdale@mbn.law**
- **Kurt Ramlo RamloLegal@gmail.com, kr@ecf.courtdrive.com;ramlo@recap.email**
- **John P. Reitman jreitman@landaufirm.com, vrichmond@landaufirm.com;amendes@landaufirm.com;hrichmond@landaufirm.com;jlandau@landaufirm.com**
- **United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov**

2. **SERVED BY UNITED STATES MAIL**: On **November 16, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Scott Clakson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ *Service information continued on attached page*

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 16, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

None.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 16, 2026 | J. Klassi | */s/ J. Klassi* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |